UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SPARTA INSURANCE COMPANY :
(as successor in interest to Sparta Insurance
Holdings, Inc.), :

    Plaintiff, : Civil Action
           No. 21-11205-FDS
  v.      :

PENNSYLVANIA GENERAL INSURANCE : **ORAL ARGUMENT REQUESTED**
COMPANY (now known as Pennsylvania
Insurance Company), :

    Defendant. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**PLAINTIFF SPARTA INSURANCE COMPANY'S OPPOSITION TO DEFENDANT
PENNSYLVANIA GENERAL INSURANCE COMPANY'S MOTION TO DISMISS**


James R. Carroll
Christopher G. Clark
Isaac N. Saidel-Goley
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
christopher.clark@skadden.com
isaac.saidel-goley@skadden.com

*Counsel for Plaintiff*
*SPARTA Insurance Company*

Dated:  November 1, 2021

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................... 2

A.   For More Than Fifteen Years, PGIC Fulfilled Its Contractual
Obligations To Administer And Pay Historical AEIC Claims ................................ 2

B.   In 2021, SPARTA Learned That Historical AEIC
Claims Were No Longer Being Administered And Paid......................................... 3

C.   SPARTA Commenced This Action For Declaratory Relief .................................... 4

ARGUMENT.................................................................................................................................. 5

I.   THE COMPLAINT IS PROPERLY BEFORE THE COURT
AND SPARTA IS ENTITLED TO DECLARATORY RELIEF AT THIS TIME ............. 5

A.   The Court Has Subject Matter Jurisdiction Over The Action,
And Federal Courts Routinely Exercise Jurisdiction In Like Circumstances......... 5

B.   Dismissing The Complaint Would Impose An
Unworkable Burden On SPARTA And Waste Judicial Resources ....................... 10

C.   The Complaint Satisfies The Applicable Pleading Standard
And Properly Pleads The Claims For Which PGIC Is Responsible ..................... 13

D.   PGIC Improperly Seeks Dismissal Of The Complaint At The Pleadings
Stage Based On PGIC's Misinterpretation Of Section 8.3 Of The SPA............... 14

II.   PGIC'S LEGAL AUTHORITIES ARE INAPPOSITE,
DISTINGUISHABLE AND DO NOT SUPPORT PGIC'S MOTION ........................... 16

III.   IF THE COURT IS INCLINED TO GRANT PGIC'S MOTION -- WHICH IT
SHOULD NOT -- SPARTA SHOULD BE GRANTED LEAVE TO AMEND ............. 19

CONCLUSION............................................................................................................................. 20

**TABLE OF AUTHORITIES**

**CASES**                                                                     **PAGE(S)**

*A/S Ludwig Mowinckles Rederi v. Tidewater Construction Corp.,
    559 F.2d 928 (2d Cir. 1977)................................................................... 16, 17, 18

*Abbott Laboratories v. Gardner,
    387 U.S. 136 (1967).............................................................................. 17, 18, 19

*Aetna Life Insurance Co. of Hartford v. Haworth,
    300 U.S. 227 (1937)....................................................................................... 6, 17

*Armstrong v. Alabama Power Co.,
    667 F.2d 1385 (11th Cir. 1982) .......................................................... 16, 17, 18

*Arturet-Velez v. R.J. Reynolds Tobacco Co.,
    429 F.3d 10 (1st Cir. 2005)............................................................................ 16, 17

*Ashcroft v. Iqbal,
    556 U.S. 662 (2009)................................................................................. 13, 16, 17

*Aversa v. United States,
    99 F.3d 1200 (1st Cir. 2005) ............................................................................ 16, 18

BBJ, Inc. v. MillerCoors, LLC,
    No. 12-CV-11305, 2015 WL 13236823 (D. Mass. Nov. 6, 2015) ................................. 13

*Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)............................................................................... 13, 14, 17

*Biochemics, Inc. v. Axis Reinsurance Co.,
    963 F. Supp. 2d 64 (D. Mass. 2013) .......................................................... 16, 17

*Brillhart v. Excess Insurance Co. of America,
    316 U.S. 491 (1942)...................................................................................... 17

*Chelsea Grand, LLC v. New York Hotel & Motel Trades Council,
    729 F. App'x 33 (2d Cir. 2018)...................................................................... 17

*Clapper v. Amnesty International USA,
    568 U.S. 398 (2013)...................................................................................... 17

*Columbian Financial Corp. v. BancInsure, Inc.,
    650 F.3d 1372 (10th Cir. 2011) ..................................................................... 17

---

\*       Asterisks denote cases that PGIC cited in its Opening Brief.

**<u>CASES</u>**                                                                                                   **<u>PAGE(S)</u>**

*<u>Coyne v. City of Somerville</u>,
    972 F.2d 440 (1st Cir. 1992) ................................................................. 16, 17

*<u>DaimlerChrysler Corp. v. Cuno</u>,
    547 U.S. 332 (2006)............................................................................. 16, 17

*<u>El Dia, Inc. v. Hernandez Colon</u>,
    963 F.2d 488 (1st Cir. 1992) ................................................................. 12, 17

*<u>EMC Corp. v. Chevedden</u>,
    4 F. Supp. 3d 330 (D. Mass. 2014) ...................................................... 5, 17

*<u>Ernst & Young v. Depositors Economic Protection Corp.</u>,
    45 F.3d 530 (1st Cir. 1995)................................................................... 18, 19

*<u>Feliciano-Hernandez v. Pereira-Castillo</u>,
    663 F.3d 527 (1st Cir. 2011) ................................................................. 16, 17

<u>Foley v. Wells Fargo Bank, N.A.</u>,
    772 F.3d 63 (1st Cir. 2014)................................................................... 13

*<u>Glenn v. Fay</u>,
    222 F. Supp. 3d 31 (D.D.C. 2016) ....................................................... 12, 17

*<u>Gonzalez v. United States</u>,
    284 F.3d 281 (1st Cir. 2002)................................................................. 16, 17

*<u>Haley & Aldrich, Inc. v. Specialty Technical Consultants, Inc.</u>,
    158 F. Supp. 3d 16 (D. Mass. 2016) ................................................... 17

*<u>International Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n</u>,
    389 U.S. 64 (1967)............................................................................. 16, 17, 18

*<u>Katz v. Pershing LLC</u>,
    672 F.3d 64 (1st Cir. 2012) ................................................................. 16, 17

*<u>Kuhns v. Scottrade, Inc.</u>,
    868 F.3d 711 (8th Cir. 2017) ............................................................... 17

*<u>Lear Corp. v. Johnson Electric Holdings Ltd.</u>,
    353 F.3d 580 (7th Cir. 2003)................................................................. 12, 17

*<u>Liberty Mutual Insurance Co. v. Metropolitan Life Insurance Co.</u>,
    260 F.3d 54 (1st Cir. 2001) ................................................................. 17

**CASES**                                                                                                            **PAGE(S)**

*Lincoln House, Inc. v. Dupre,
    903 F.2d 845 (1st Cir. 1990) ...................................................................................... 16, 18

*Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992) ..................................................................................................... 16, 17

*Maryland Casualty Co. v. Pacific Coal & Oil Co.,
    312 U.S. 270 (1941) ..................................................................................... 5, 6, 9, 10, 17

*Massachusetts Ass'n of Afro-American Police, Inc. v. Boston Police Department,
    973 F.2d 18 (1st Cir. 1992) .................................................................................. 16, 17, 18

*MedImmune, Inc. v. Genentech, Inc.,
    549 U.S. 118 (2007) ....................................................................................................... 6, 17

*Murphy v. United States,
    45 F.3d 520 (1st Cir. 1995) ........................................................................................ 16, 17

*National Union Fire Insurance Co. of Pittsburgh v. Maritime Terminal, Inc.,
    No. CIV.A 14-14541, 2015 WL 3952766 (D. Mass. June 29, 2015) .............................. 17

Ondis v. Barrows,
    538 F.2d 904 (1st Cir. 1976) ........................................................................................... 19

Palumbo v. Roberti,
    834 F. Supp. 46 (D. Mass. 1993) ..................................................................................... 20

*PCS 2000 LP v. Romulus Telecommunications, Inc.,
    148 F.3d 32 (1st Cir. 1998) ........................................................................................ 16, 17

*Public Research Interest Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.,
    913 F.2d 64 (3d Cir. 1990) .................................................................................. 16, 17, 18

Raytheon Co. v. Continental Casualty Co.,
    123 F. Supp. 2d 22 (D. Mass. 2000) .............................................................................. 5, 8

Rhode Island v. Narragansett Indian Tribe,
    19 F.3d 685 (1st Cir. 1994) ............................................................................ 5, 7, 9, 10, 11

Rhode Island v. Narragansett Tribe of Indians,
    816 F. Supp. 796 (D.R.I 1993) ........................................................................................... 7

Rife v. One W. Bank, F.S.B.,
    873 F.3d 17 (1st Cir. 2017) ............................................................................................. 19

**CASES**                                                                                          **PAGE(S)**

Rodriguez-Vives v. Puerto Rico Firefighters Corps of Puerto Rico,
    743 F.3d 278 (1st Cir. 2014) ........................................................................... 13

*Scottsdale Insurance Co. v. United Rentals (N. Am.), Inc.,
    152 F. Supp. 3d 15 (D. Mass. 2015) ............................................................... 17

*Steel Co. v. Citizens for a Better Environment,
    523 U.S. 83 (1998) ................................................................................... 16, 17

*Susan B. Anthony List v. Driehaus,
    573 U.S. 149 (2014) ................................................................................. 16, 17

*Taber Partners, I v. Merit Builders, Inc.,
    987 F.2d 57 (1st Cir. 1993) ..................................................................... 16, 17

Terumo Americas Holding, Inc. v. Tureski,
    251 F. Supp. 3d 317 (D. Mass. 2017) ............................................................... 8

Tocci Building Corp. of New Jersey v. Virginia Surety Co.,
    750 F. Supp. 2d 316 (D. Mass. 2010) ..................................................... passim

Traincroft, Inc. v. Insurance Co. of Pennsylvania,
    No. CIV. 14-10551, 2014 WL 2865907 (D. Mass. June 23, 2014) ............................. 6, 8

*Trustgard Insurance Co. v. Collins,
    942 F.3d 195 (4th Cir. 2019) .......................................................................... 17

*Urological Surgery Professional Ass'n v. Fecteau Benefits Group, Inc.,
    359 F. Supp. 2d 24 (D.N.H. 2005) ..................................................... 16, 17, 18

United States ex rel. Gagne v. City of Worcester,
    565 F.3d 40 (1st Cir. 2009) ............................................................................ 19

*Viquiera v. First Bank,
    140 F.3d 12 (1st Cir. 1998) ..................................................................... 16, 17

*W.R. Grace & Co. v. EPA,
    959 F.2d 360 (1st Cir. 1992) ............................................................. 16, 18, 19

*White v. Commissioner,
    899 F. Supp. 767 (D. Mass. 1995) ......................................................... 16, 17

*Wilton v. Seven Falls Co.,
    515 U.S. 277 (1995) ....................................................................................... 17

## **STATUTES & RULES**                                         **PAGE(S)**

Declaratory Judgment Act, 28 U.S.C. § 2201.................................................................... 5

Fed. R. Civ. P. 12(b)(1).................................................................................................... 5

Fed. R. Civ. P. 12(b)(6)........................................................................................... 13, 14

Fed. R. Civ. P. 15(a) ...................................................................................................... 19

## PRELIMINARY STATEMENT

In this declaratory judgment action, Plaintiff SPARTA Insurance Company ("SPARTA") seeks a declaration that Defendant Pennsylvania General Insurance Company ("PGIC") is contractually obligated to administer and pay all insurance claims asserted under historical American Employers' Insurance Company ("AEIC") policies that pre-date SPARTA's "clean shell" acquisition of AEIC from PGIC in 2005 pursuant to several agreements. For more than a decade, all claims asserted under historical AEIC policies were administered and paid in accordance with the operative contractual agreements. Earlier this year, claims made by policyholders under those historical AEIC policies were no longer administered and paid in accordance with the parties' contracts, which has left SPARTA and historical AEIC policyholders in an untenable position. Declaratory relief from this Court will resolve an active dispute as to the parties' contractual rights and obligations, and will prevent substantial harm to SPARTA -- a company that is currently ensnared in a complex web of insurance claims for which PGIC is legally responsible.

PGIC's motion to dismiss SPARTA's declaratory judgment action identifies a litany of nearly fifty legal authorities that are inapposite, distinguishable, misapplied and do not actually support PGIC's arguments. The majority of PGIC's cases stand for undisputed and unremarkable principles of law that have nothing to do with declaratory judgment actions. PGIC does not cite a single case -- not one -- where a court dismisses a declaratory judgment action under circumstances analogous to those at issue in this case.

The overwhelming weight of legal authority supports SPARTA's position and confirms that SPARTA's declaratory judgment action is properly before this Court and should proceed at this time without further delay. Indeed, PGIC ignores numerous decisions from this

Court, the First Circuit, and the U.S. Supreme Court explaining that declaratory relief is appropriate where -- as here -- parties request a judicial determination of contractual rights and obligations.  Those cases, discussed in detail below, confirm that SPARTA's complaint satisfies all of the applicable pleading requirements and that this action is properly before the Court.

As such, the Court should deny PGIC's motion to dismiss in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    **For More Than Fifteen Years, PGIC Fulfilled Its Contractual Obligations To Administer And Pay Historical AEIC Claims**

On March 12, 2007, Plaintiff SPARTA Insurance Company and Defendant Pennsylvania General Insurance Company entered into a Stock Purchase Agreement (the "Agreement" or "SPA").  (Am. Compl. ¶¶ 2, 13, ECF 19 at 1, 5.)  In the SPA, SPARTA acquired from PGIC a Massachusetts insurance corporation named American Employers' Insurance Company.  (Id.)

The transaction was structured so that SPARTA acquired AEIC as a "clean shell," which means there would be no liabilities remaining in the AEIC company after the transaction was consummated.  (Id. at ¶¶ 2, 14.)  AEIC, which held various licenses to write insurance business, would then be able to write new insurance business going forward "clean" and without any historical liabilities.  (Id. at ¶ 14.)  Those historical liabilities, such as policies with policyholders for prior time periods, would be the responsibility of PGIC (to administer and pay any associated claims).  (Id.)  To create the "clean shell" in AEIC, on June 15, 2005, more than two years before the transaction closing, all of the pre-transaction liabilities were either (i) transferred from AEIC to PGIC in their entirety or (ii) for a limited number of pre-transaction liabilities in jurisdictions in which PGIC was not licensed and other conditions were satisfied,

reinsured in their entirety by PGIC, pursuant to a transfer and assumption agreement (the

"Transfer and Assumption Agreement" or "Reinsurance Agreement").  (Id. at ¶¶ 2, 15.)

        The transaction documents contain several protections to make sure that SPARTA

in fact received a "clean shell" and would not have any responsibility for administering or paying

historical AEIC claims.  Among other things, in the SPA, PGIC agreed to indemnify and hold

harmless SPARTA for all of the liabilities for insurance policies issued by AEIC and for all of

the business of AEIC prior to the acquisition.  (Id. at ¶¶ 3, 17.)  In the Reinsurance Agreement,

PGIC agreed to assume or reinsure the historical AEIC liabilities at its sole expense, including by

performing any and all administrative functions for all of the historical insurance policies issued

by AEIC (including but not limited to claims handling).  (Id. at ¶¶ 3, 15, 21.)

    **B.**    **In 2021, SPARTA Learned That Historical AEIC**
             **Claims Were No Longer Being Administered And Paid**

        For more than a decade after the transaction, SPARTA and its affiliates tendered

liabilities for historical insurance policies issued by AEIC, and those liabilities were

administered and directly paid by or on behalf of PGIC in accordance with the SPA and

Reinsurance Agreement.  (Id. at ¶¶ 3, 19.)[1]  In mid-2021, SPARTA learned that policyholder

claims made pursuant to historical AEIC policies were no longer being administered or paid.

(Id. at ¶¶ 4, 20.)  Those historical AEIC policyholders are now looking to SPARTA to administer

and pay these claims.  Throughout the past six months, SPARTA has tendered numerous claims

to PGIC for indemnity (and more AEIC policyholders almost certainly will continue to assert

---

[1]    PGIC has questions about the precise legal entity that administered and paid the historical
AEIC claims, largely because it appears that PGIC engaged in subsequent transactions after the
SPARTA / PGIC transaction closed.  (Opening Br., ECF 22 at 3.)  That is of no moment for
purposes of this motion to dismiss:  The point is that for more than a decade SPARTA did not
administer or pay the historical AEIC claims, but is now being forced to do so as a result of
PGIC's recent refusal to honor its obligations under the SPA and Reinsurance Agreement.

additional claims on an ongoing basis), but PGIC has not honored its contractual obligations under the SPA and Reinsurance Agreement to administer and pay the historical claims made pursuant to insurance policies issued by AEIC. (Id. at ¶¶ 4, 21.)[2]  PGIC's conduct has left SPARTA -- and individual AEIC policyholders -- in an untenable position:  Those AEIC policyholders require that their claims be administered and paid.  PGIC's repeated failure to administer and pay historical AEIC claims tendered by SPARTA has frustrated SPARTA's rights under the SPA and Reinsurance Agreement, and generated a live dispute and actual controversy concerning the parties' contractual rights and obligations under the SPA and Reinsurance Agreement.  (Id. at ¶¶ 22-23.)

       **C.**    **SPARTA Commenced This Action For Declaratory Relief**

PGIC's failure to satisfy its contractual obligations has forced SPARTA to seek declaratory relief from this Court.  (Id. at ¶¶ 22-23.)  In particular, SPARTA requires declaratory relief to ensure that PGIC will honor its obligations under the SPA and Reinsurance Agreements, and administer and pay any and all historical AEIC claims, as was done for more than fifteen years.  (Id. at ¶¶ 26, 29.)  SPARTA's declaratory judgment action asserts two counts for declaratory relief:  one under the SPA (id. at ¶ 26) and another under the Reinsurance Agreement (id. at ¶ 29).

Accordingly, on July 26, 2021, SPARTA filed its complaint for declaratory relief. (ECF 1.)  After filing its complaint, SPARTA engaged in good faith discussions with PGIC concerning certain specific allegations.  To avoid any attempts by PGIC to further delay the

---

[2]    The allegations in Paragraph 21 of the complaint are more than sufficient to meet the liberal federal pleading standard.  See Fed. R. Civ. P. 8.  The notices to PGIC referenced in Paragraph 21 -- more than thirty throughout the past six months -- were in writing and specifically identify the historical AEIC claims made.  PGIC cannot assert in good faith that there is not a live dispute concerning whether PGIC is responsible for those historical AEIC claims (and the additional stream of historical claims that AEIC policyholders will make).

resolution of this action, on October 4, 2021, SPARTA filed an amended complaint.  (ECF 19.)

On October 18, 2021, PGIC's motion to dismiss followed.  (ECF 21, 22.)

## ARGUMENT

I.   **THE COMPLAINT IS PROPERLY BEFORE THE COURT
AND SPARTA IS ENTITLED TO DECLARATORY RELIEF AT THIS TIME**

A.   **The Court Has Subject Matter Jurisdiction Over The Action,
And Federal Courts Routinely Exercise Jurisdiction In Like Circumstances**

In an attempt to compensate for a lack of substance with sheer volume, PGIC

devotes more than thirteen pages of its brief and twenty-five cases to articulating unremarkable

and undisputed principles of law concerning federal subject matter jurisdiction, mootness,

ripeness and justiciability.  (Opening Br., ECF 22 at 1-13.)  PGIC's treatise on those subject

matters does not provide any insight into whether SPARTA's complaint is properly before this

Court under Rule 12(b)(1) of the Federal Rules of Civil Procedure (and it is).[3]

Notwithstanding PGIC's attempt to suggest otherwise, there are myriad cases,

many decided by this Court, demonstrating that SPARTA's complaint is properly before the

Court and that SPARTA is entitled to relief under the Declaratory Judgment Act, 28 U.S.C.

§ 2201.[4]  Indeed, federal courts routinely deny motions to dismiss declaratory judgment actions

where, as here, parties request a judicial determination of contractual rights and obligations.

---

[3]   PGIC's justiciability treatise includes seven decisions from courts in foreign circuits, two
of which apply admiralty law.  PGIC's legal authorities include just one decision from this
Court.  That case, EMC Corp. v. Chevedden, 4 F. Supp. 3d 330 (D. Mass. 2014), is cited for the
undisputed principle that the Court is "not bound to accept as true a legal conclusion couched as
a factual allegation."  (Opening Br. at 4.)

[4]   See, e.g., Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270 (1941)
(reversing dismissal of action requesting declaratory relief concerning the parties' legal rights and
obligations under an insurance contract); Rhode Island v. Narragansett Indian Tribe, 19 F.3d
685, 692 (1st Cir. 1994) (reversing dismissal of action requesting declaratory relief concerning
the parties' legal rights and obligations); Raytheon Co. v. Cont'l Cas. Co., 123 F. Supp. 2d 22, 30
(D. Mass. 2000) (denying motion to dismiss action requesting declaratory relief concerning

PGIC's Opening Brief provides a helpful starting point with its citation to

Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270 (1941), a legal authority that

supports SPARTA's position here.  (Opening Br. at 15.)[5]  In that case, the U.S. Supreme Court

reversed the dismissal of a declaratory judgment action brought by an insurance company against

an insured company and a claimant.  312 U.S. at 273-74.  The insurer brought a declaratory

judgment action seeking a declaration of the parties' rights and obligations under an insurance

contract that required the insurer to indemnify and defend the insured against claims for injuries

caused by automobiles "hired by the insured."  Id. at 271.  A claimant brought an action against

the insured under the policy.  Id.  While that action was pending, the insurer requested a

declaration that the insurer was not obligated to indemnify or defend the insured on the grounds

that the automobile driven by the claimant was not "hired by the insured."  Id. at 272.  The

claimant moved to dismiss the complaint on the basis that there was no actual controversy

between the claimant and insurer.  Id. at 272-73.  The district court dismissed the complaint and

the Sixth Circuit affirmed.  Id.  The Supreme Court reversed and held that there was an "actual

controversy within the meaning of the Declaratory Judgment Act" between the insurer and both

the insured and claimant, and that the insurer was entitled to declaratory relief.  Id. at 272-74

(citation omitted).  In so holding, the Court reasoned that there was a "substantial controversy,

between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

---

parties' legal rights and obligations under insurance contract); Tocci Bldg. Corp. of N.J. v. Va. Sur. Co., 750 F. Supp. 2d 316 (D. Mass. 2010) (same); Traincroft, Inc. v. Ins. Co. of Pa., No. CIV. 14-10551, 2014 WL 2865907 (D. Mass. June 23, 2014) (Saylor, C.J.) (same).

[5]      PGIC cites two additional Supreme Court decisions that similarly support the provision of declaratory relief in this case.  See Aetna Life Ins. Co. of Hartford v. Haworth, 300 U.S. 227 (1937) (reversing dismissal of action requesting declaratory relief concerning the parties' legal rights and obligations under an insurance contract); MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007) (reversing dismissal of action requesting declaratory relief concerning the parties' legal rights and obligations under a license agreement).

issuance of a declaratory judgment" despite the unresolved underlying policy dispute between the insured and claimant and uncertainty as to whether the insurer ultimately would be liable to the insured.  Id.

Like the Supreme Court, the First Circuit has not hesitated to reverse decisions improperly dismissing declaratory judgment actions.  For example, in Rhode Island v. Narragansett Indian Tribe, the First Circuit reversed the dismissal of an action requesting declaratory relief concerning Rhode Island's jurisdiction over settlement lands inhabited by the Narragansett Tribe.  19 F.3d 685, 692 (1st Cir. 1994).  Rhode Island and the Narragansett Tribe brought declaratory judgment actions seeking competing declarations on the application of Rhode Island's criminal and civil laws on settlement lands, specifically concerning casino gambling on settlement lands.  Rhode Island v. Narragansett Tribe of Indians, 816 F. Supp. 796, 800 (D.R.I. 1993).  The parties maintained that declaratory relief would "reduce the prospect of future litigation by defining the parameters of State and local jurisdiction over the Settlement Lands."  Id.  But the district court declined to provide declaratory relief on the basis that the "abstract disagreement over the applicability of state and local laws on the settlement lands" did not "translate into an actual controversy" and that it would be "premature" to grant declaratory relief "based upon hypothetical conflicts in the future."  Id.  The First Circuit reversed on the grounds that the district court abused its discretion by withholding declaratory relief. Narragansett Indian Tribe, 19 F.3d at 692.

The First Circuit began its analysis by noting that "declaratory actions contemplate an '*ex ante* determination of rights' that 'exists in some tension with traditional notions of ripeness.'"  Id. (citation omitted).  The First Circuit then emphasized that a party seeking declaratory relief "does not have to await the consummation of threatened injury to

obtain preventive relief. If the injury is certainly impending that is enough." Id. at 693 (citation

omitted).  As the First Circuit explained, a court must consider whether granting declaratory

relief "would serve a useful purpose, or, put another way, whether the sought-after declaration

would be of practical assistance in setting the underlying controversy to rest." Id.  Applying

these standards, the First Circuit held that the parties were entitled to declaratory relief because a

declaration "would be of great near-term utility, facilitating the course of future tribal-state

compact negotiations and clarifying to some extent the legal status of the settlement lands at a

time when substantially expanded use seems highly probable." Id. at 694.  This clarity would

serve the purpose of the Declaratory Judgment Act: "to clarify legal relationships so that

plaintiffs (and possibly defendants) could make responsible decisions about the future." Id. at

693 (citation omitted).

        Consistent with this Supreme Court and First Circuit precedent, this Court has

explained that "[i]ssues of coverage under insurance policies, including questions concerning the

meaning of language in an insurance policy, are often decided by means of a declaratory

judgment action." Raytheon Co. v. Cont'l Cas. Co., 123 F. Supp. 2d 22, 30 (D. Mass. 2000).[6]

For example, in Tocci Bldg. Corp. of N.J. v. Va. Sur. Co., the insured brought a declaratory

judgment action seeking a declaration of the parties' rights and obligations under several

contracts that provided the insured with primary and excess liability insurance coverage,

---

[6]     See also Tocci, 750 F. Supp. 2d 316, 321 ("[L]itigation over insurance coverage has
become the paradigm for asserting jurisdiction despite future contingencies that will determine
whether a controversy ever actually becomes real."); Traincroft, Inc., No. CIV. 14-10551, 2014
WL 2865907 (Saylor, C.J.) (quoting same principle with approval).

        This Court has also granted declaratory judgment in actions requesting a declaration of
the parties' rights and obligations under stock purchase agreements.  See Terumo Americas
Holding, Inc. v. Tureski, 251 F. Supp. 3d 317, 328 (D. Mass. 2017).

including indemnification.  750 F. Supp. 2d 316, 318-19 (D. Mass. 2010).  One of the excess

insurers moved to dismiss the action on the basis that there was no actual controversy between

the insured and excess insurer where there was no guarantee that the primary insurance layer

would be exhausted.  Id. at 319-20.  This Court denied the excess insurer's motion to dismiss and

held that, "[b]ecause the interpretation of insurance policy terms and coverage is a matter of law

appropriate for judicial resolution," there was an "actual controversy" between the parties and the

action was "ripe for adjudication."  Id. at 324.  In reaching its conclusion, this Court emphasized

that "[a]ctions for declaratory judgment in the insurance context nearly always depend upon

several contingencies -- whether the insured will be found liable, the extent of coverage, the size

of any potential damage award or settlement, etc.  As such, 'litigation over insurance coverage

has become the paradigm for asserting jurisdiction despite future contingencies that will

determine whether a controversy ever actually becomes real.'"  Id. at 321 (citation omitted).

Dismissing the action would also "result in considerable hardship for [the insured]" as well as

"unnecessary drain on judicial resources" -- particularly where the declaratory judgment action

sought to resolve "a complex insurance case . . . which includes multiple primary and excess

insurers covering different claims over differing periods of time."  Id. at 324-25.

       The holding and reasoning of Maryland Casualty Co., Narragansett Indian Tribe,

and Tocci confirm that the Court should deny PGIC's motion to dismiss SPARTA's declaratory

judgment action.  Here, like in Tocci, SPARTA is embroiled in a complex insurance case

concerning many different claims over differing periods of time arising out of policies for which

PGIC is contractually responsible.  (Am. Compl. ¶ 3.)[7]  Here, the injury to SPARTA is not just

---

[7]    And here, *unlike* in Tocci, there are no "future contingencies that will determine whether
a controversy ever actually becomes real."  750 F. Supp. 2d at 321 (citation omitted).

"certainly impending," as it was in <u>Narragansett Indian Tribe</u> 19 F.3d at 693.  Rather, it is already occurring in the form of a violation of SPARTA's rights under the SPA and Reinsurance Agreement, and the ensnarement of SPARTA in a web of insurance claims for which PGIC is responsible.  (Am. Compl. ¶¶ 3-5.)  Here, the controversy is even more concrete than in <u>Maryland Casualty Co.</u>  PGIC has agreed to indemnify and hold harmless SPARTA for all of the liabilities for insurance policies issued by AEIC and for all of the historical business of AEIC.  (Am. Compl. ¶¶ 3, 15.)  SPARTA has tendered to PGIC numerous AEIC policy claims for administration and payment.  (<u>Id.</u> at ¶¶ 4, 19.)  PGIC is contractually responsible for those claims.  (<u>Id.</u> at ¶¶ 15, 17.)  Yet, PGIC is not handling, much less directly paying, those claims.  (<u>Id.</u> at ¶¶ 4, 20.)  Declaratory relief here, like in all of these cases, would serve the useful purpose of clarifying the parties' contractual rights and obligations, and would extract SPARTA from a complex insurance case which it should not be involved in -- and which it deliberately contracted to avoid.  In short, the dispute between SPARTA and PGIC is far from an "abstract disagreement" (Opening Br. at 6.) -- it is an actual controversy that is injuring SPARTA and is ripe for adjudication.

**B.   Dismissing The Complaint Would Impose An <u>Unworkable Burden On SPARTA And Waste Judicial Resources</u>**

In its motion to dismiss brief, PGIC proposes a pragmatically unworkable approach to resolving the parties' dispute that would result in a seemingly endless series of individual lawsuits spanning years, if not decades.  Further, it ignores the course of conduct by the parties over the past fifteen years, where claims were managed and directly paid by or on behalf of PGIC.  Absent a declaration from this Court that the historical AEIC liabilities are the responsibility of PGIC, SPARTA would be forced to bring separate lawsuits against PGIC for every individual historical AEIC claim tendered to SPARTA (and disregarded by PGIC).  In

PGIC's world, SPARTA would have to (i) wait until each individual AEIC claim was asserted against SPARTA, (ii) front the costs associated with the administration and handling of historical AEIC claims, (iii) pay those claims, and (iv) continually file lawsuits as PGIC sits on the sidelines passively ignoring claims that PGIC is contractually obligated to administer and pay. This fundamentally unfair and inefficient state of affairs cannot be the right outcome. Fortunately, numerous federal courts, including this Court, have confirmed that it is not.

This Court has provided declaratory relief to avoid precisely the kind of unworkable burden that PGIC proposes. In Tocci, this Court noted that a key consideration in determining whether to grant declaratory relief is "the extent to which the desired declaration 'would be of practical assistance in setting the underlying controversy to rest.'" 750 F. Supp. 2d at 324 (quoting Narragansett Indian Tribe). Said differently, "the question is whether denying a declaratory judgment mechanism will create a hardship for one or more parties." Id. (citing Narragansett Indian Tribe). In Tocci, an insured company filed a declaratory judgment action seeking a declaration of the contractual rights and obligations of various parties in order to avoid the burden of piecemeal litigation where the insurer moving to dismiss had "failed to take a coverage position" or provide indemnification. Id. at 318-19. This Court held that the insurer was entitled to declaratory relief, in part because denying declaratory relief would subject the insurer to "uncertainty and duplicative costs" and "would constitute a significant hardship." Id. at 325.[8] The same rationale applies here where denying SPARTA the requested declaratory relief would subject SPARTA to substantial hardship and uncertainty, and the provision of declaratory relief would provide clarity and set the dispute between the parties to rest.

---

[8]    See also Narragansett Indian Tribe, 19 F.3d at 693-94 (providing declaratory relief where clarifying the contractual rights and obligations of the parties would "be of practical assistance in setting the underlying controversy to rest").

Against this backdrop of legal authority, which PGIC does not cite, it is ironic that PGIC's motion is framed as a plea to judicial economy.  (Opening Br. at 16-17.)  Dismissing SPARTA's complaint would accomplish the opposite result by forcing SPARTA to bring countless lawsuits over a period of many years.  See Tocci, 750 F. Supp. 2d. at 324-25 (denying motion to dismiss declaratory judgment action where declaratory relief would be "fundamentally practical for the parties and beneficial for purposes of judicial efficiency").  PGIC cites three cases for the argument that the Court should exercise discretion and dismiss this action to conserve judicial resources, none of which are insurance cases and none of which actually support PGIC' proposed outcome:

1.  In Glenn v. Fay, 222 F. Supp. 3d 31 (D.D.C. 2016), the court declined to issue a declaration that "would result in the piecemeal resolution of disputes between [the parties] as they arise, resulting in substantial inefficiencies for both the parties and the federal judicial system."  Id. at 37-8.  Here, declaratory relief would *avoid* -- not cause -- the piecemeal resolution of disputes between the parties.

2.  In El Dia, Inc. v. Hernandez Colon, 963 F.2d 488 (1st Cir. 1992), the court declined to "stride headlong into a constitutional thicket" that involved a "challenge [to] the legality of an action taken under color of office by Puerto Rico's highest elected official."  Id. at 497-98.  Here, there is no constitutional thicket or questions of comity to concern the Court.

3.  In Lear Corp. v. Johnson Electric Holdings Ltd., 353 F.3d 580 (7th Cir. 2003), the Seventh Circuit declined to "consume judicial time in order to produce a decision that may turn out to be irrelevant."  Id. at 583.  Here, declaratory relief would be immediately relevant to the parties, as it would determine whether PGIC is responsible for handling and paying the numerous claims SPARTA has tendered to PGIC under the SPA and Reinsurance Agreement.

In short, declaratory relief would not just benefit the parties -- it would also benefit the judicial system by conserving valuable resources and avoiding the piecemeal litigation of claims SPARTA has tendered to PGIC.

**C.**     **The Complaint Satisfies The Applicable Pleading Standard
And Properly Pleads The Claims For Which PGIC Is Responsible**

The first thirteen pages of PGIC's motion provide a treatise on federal court justiciability.  The last two pages provide a supplemental primer on pleading standards under Rule 8 of the Federal Rules of Civil Procedure that cites several cases applying hornbook legal principles that do not support PGIC's argument.  (Opening Br. at 18-19 (citing Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp v. Twombly, 550 U.S. 544 (2007)).)

SPARTA's complaint complies with the applicable pleading standard under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.  PGIC attempts to put the cart before the horse and require a level of specificity in the complaint that is directly contrary to the federal notice pleading standard under Rule 8.  Indeed, PGIC argues that SPARTA "fails to provide any details about the alleged claims it has 'tendered,' the likelihood it will incur substantial costs in connection with those claims, or the information it has provided about the claims to Defendant."  (Opening Br. at 7.)  But that level of "detail" is not required in a complaint in federal court.  In any event, PGIC has received detailed information concerning the specific claims and policies at issue over the course of many months.  (See Amended Compl. ¶ 21.)

Other federal courts have consistently stated that a civil complaint "need not allege every fact necessary to win at trial."  See, e.g., Iqbal 556 U.S. at 678; Rodriguez-Vives v. P.R. Firefighters Corps of P.R., 743 F.3d 278 (1st Cir. 2014) (vacating district court's order dismissing complaint).  Instead, a plaintiff "need only sufficiently allege in their complaint a plausible claim."  Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 72 (1st Cir. 2014) (vacating in part district court's order dismissing complaint).  A motion to dismiss may succeed only where "based on the factual scenario on which the cases rests, the plaintiff could never win."  Id. SPARTA's complaint easily satisfies the "low threshold set by Twombly."  BBJ, Inc. v.

13

MillerCoors, LLC, No. 12-CV-11305, 2015 WL 13236823, at *1 (D. Mass. Nov. 6, 2015) (denying motion for judgment on the pleadings under Twombly).

        SPARTA's complaint provides ample factual detail to state a claim for declaratory relief.  The complaint alleges that SPARTA and PGIC entered into two contracts governing the administration and payment of insurance claims under AEIC policies.   (Am. Compl. ¶¶ 2, 13-15.)  The complaint details that contractual relationship between SPARTA and PGIC.  (Id. at ¶¶ 2, 13-15.)  The complaint details the provisions of the SPA and Reinsurance Agreement relevant to the dispute between SPARTA and PGIC, including provisions requiring PGIC to administer and pay claims tendered under AEIC policies.  (Id. at ¶¶ 16-17.)  The complaint alleges that SPARTA tendered numerous claims under AEIC policies to PGIC.  (Id. at ¶¶ 4, 19, 21.)  The complaint alleges that PGIC has not satisfied its contractual obligations under the SPA and Reinsurance Agreement to administer and pay claims arising out of AEIC policies, and consequently a dispute has arisen between the parties.  (Id. at ¶¶ 4-5, 21-23.)  These facts and allegations are not "unsupported legal conclusions" as PGIC claims.  (Opening Br. at 18.)  They are specific facts and allegations that are more than sufficient to satisfy the federal pleading standard.[9]

### D.    PGIC Improperly Seeks Dismissal Of The Complaint At The Pleadings Stage Based On PGIC's Misinterpretation Of Section 8.3 Of The SPA

        PGIC's Rule 12(b)(6) motion to dismiss for failure to state a claim devotes considerable attention to arguing PGIC's preferred interpretation of the parties' underlying

---

[9]    PGIC argues that SPARTA "misquotes language from a 'Reinsurance Agreement' that [SPARTA] relies on to claim [PGIC] has such a duty . . . to administer claims."  (Opening Br. at 13.)  This is not true.  SPARTA does not misquote the Reinsurance Agreement.  And SPARTA alleges that PGIC has "contractual obligations under the SPA and Reinsurance Agreement to administer and pay the claims made pursuant to insurance policies issued by AEIC."  (Am. Compl. ¶ 4; see also id. at ¶ 21.)  Those allegations are sufficient at the pleading stage.

agreement, specifically certain procedures in Section 8.3 of the SPA.  (Opening Br. at 2-3,

10-12.)  In doing so, PGIC misunderstands that it is arguing a motion to dismiss for failure to

state a claim -- not the ultimate question of the proper interpretation of the parties' contractual

relationship.  PGIC may make its contractual construction argument at the appropriate

procedural stage in this case.[10]

        In any event, those pre-claim notice procedures (to the extent they even apply to

the AEIC claims at issue) are not preconditions to declaratory relief.  In Tocci, this Court denied

a motion to dismiss a declaratory judgment action and made clear that "contingencies" are

pervasive to "declaratory judgment in the insurance context" and are **not** barriers to declaratory

relief.  See 750 F. Supp. 2d at 321 ("Actions for declaratory judgment in the insurance context

nearly always depend upon several contingencies -- whether the insured will be found liable, the

extent of coverage, the size of any potential damage award or settlement, etc.  As such, 'litigation

over insurance coverage has become the paradigm for asserting jurisdiction despite future

contingencies that will determine whether a controversy ever actually becomes real.'" (citation

omitted)).

        Regardless, as SPARTA alleges in Paragraph 21 of the complaint, SPARTA has

repeatedly (throughout the past six months) provided PGIC with written notice in the form of

more than thirty separate communications detailing the numerous historical AEIC claims for

which PGIC is contractually responsible.  (Am. Compl. ¶ 21 ("In May, June, July, August and

---

[10]     As will be explained more fully in subsequent briefing in this case at the appropriate
procedural stage, Section 8.3 of the SPA concerns the determination of specific dollar amounts
of individual disputes about individual claims for indemnification.  Section 8.3 has no bearing on
the issue to be resolved in this declaratory judgment action: whether PGIC bears responsibility
for the entire block of historical AEIC claims (irrespective of the specific dollar amount of
individual claims) and for any costs, expenses and attorneys' fees SPARTA has incurred as a
result of PGIC's failure to accept its responsibility.

September 2021, SPARTA contacted PGIC concerning SPARTA's requests for indemnity to

PGIC for claims arising out of policies issued by AEIC.").)  PGIC has received and responded to

these writings.[11]   SPARTA has complied in all respects with the SPA, including Section 8.3,

which the parties will be free to argue to the court at the appropriate time in the appropriate

motion seeking the Court's declaration of the parties' contractual rights and obligations.

## II.     PGIC'S LEGAL AUTHORITIES ARE INAPPOSITE, DISTINGUISHABLE AND DO NOT SUPPORT PGIC'S MOTION

PGIC cites nearly fifty cases in its brief.  But the overwhelming majority of those

cases do not support PGIC's arguments.  As a general overview of the deficiencies in PGIC's

legal authorities:

      1.     Twenty-six cases have nothing to do with declaratory judgment actions at all.[12]

---

[11]     PGIC's motion to dismiss does not go so far as to say that, as a factual matter, PGIC does not actually have an obligation to administer and pay the historical AIEC claims.  Nor could PGIC in good faith.  Indeed, PGIC has conceded responsibility for at least some historical AEIC claims, as PGIC has agreed to fund (and has funded) some claims under a reservation of rights.

[12]     A/S Ludwig Mowinckles Rederi v. Tidewater Constr. Corp., 559 F.2d 928 (2d Cir. 1977); Armstrong v. Ala. Power Co., 667 F.2d 1385 (11th Cir. 1982); Arturet-Velez v. R.J. Reynolds Tobacco Co., 429 F.3d 10 (1st Cir. 2005); Iqbal, 556 U.S. 662; Aversa v. United States, 99 F.3d 1200 (1st Cir. 1996); Biochemics, Inc. v. Axis Reinsurance Co., 963 F. Supp. 2d 64 (D. Mass. 2013); Coyne v. City of Somerville, 972 F.2d 440 (1st Cir. 1992); DaimlerChrysler Corp. v. Cuno, 547 U.S. 332 (2006); Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527 (1st Cir. 2011); Gonzalez v. United States, 284 F.3d 281 (1st Cir. 2002); Int'l Longshoremen's Ass'n, Local 1291 v. Phila. Mar. Trade Ass'n, 389 U.S. 64 (1967); Lincoln House, Inc. v. Dupre, 903 F.2d 845 (1st Cir. 1990); Katz v. Pershing LLC, 672 F.3d 64 (1st Cir. 2012); Lujan v. Defs. of Wildlife, 504 U.S. 555 (1992); Mass. Ass'n of Afro-Am. Police, Inc. v. Bos. Police Dep't, 973 F.2d 18 (1st Cir. 1992); Murphy v. United States, 45 F.3d 520 (1st Cir. 1995); PCS 2000 LP v. Romulus Telecomms., Inc., 148 F.3d 32 (1st Cir. 1998); Pub. Interest Rsch. Grp. of N.J., Inc. v. Powell Duffryn Terminals, Inc., 913 F.2d 64 (3d Cir. 1990); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998); Susan B. Anthony List v. Driehaus, 573 U.S. 149 (2014); Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57 (1st Cir. 1993); Twombly, 550 U.S. 544; Urological Surgery Pro. Ass'n v. Fecteau Benefits Grp., Inc., 359 F. Supp. 2d 24 (D.N.H. 2005); Viquiera v. First Bank, 140 F.3d 12 (1st Cir. 1998); W.R. Grace & Co. v. EPA, 959 F.2d 360 (1st Cir. 1992); White v. Commissioner, 899 F. Supp. 767 (D. Mass. 1995).

2.      Twenty-five cases stand for unremarkable and undisputed principles of law.[13]

3.      Sixteen cases are procedurally inapposite and do not address motions to dismiss.[14]

4.      Eleven cases are not controlling in this District (two cases apply admiralty law).[15]

5.      Three cases actually support SPARTA's position and **_deny_** motions to dismiss declaratory judgment claims in circumstances similar to those at issue here.[16]

In addition to these deficiencies, PGIC's application of legal authority is

erroneous.  PGIC relies on several cases to support its argument that SPARTA should be denied

---

[13]    Arturet-Velez, 429 F.3d 10; Biochemics, Inc., 963 F. Supp. 2d 64; Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491 (1942); Clapper v. Amnesty Int'l USA, 568 U.S. 398 (2013); Coyne, 972 F.2d 440; DaimlerChrysler Corp., 547 U.S. 332; EMC Corp, 4 F. Supp. 3d 330; Iqbal, 556 U.S. 662; Feliciano-Hernandez, 663 F.3d 527; Glenn, 222 F. Supp. 3d 31; Gonzalez, 284 F.3d 281; Haley & Aldrich, Inc. v. Specialty Tech. Consultants, Inc., 158 F. Supp. 3d 16 (D. Mass. 2016); Katz, 672 F.3d 64; Liberty Mut. Ins. Co. v. Metro. Life Ins. Co., 260 F.3d 54 (1st Cir. 2001); Lujan, 504 U.S. 555; Murphy, 45 F.3d 520; Nat'l Union Fire Ins. Co. of Pittsburgh v. Mar. Terminal, Inc., 2015 WL 3952766 (D. Mass. June 29, 2015); PCS 2000 LP, 148 F.3d 32; Steel Co., 523 U.S. 83; Susan B. Anthony List, 573 U.S. 149; Taber Partners, I, 987 F.2d 57; Twombly, 550 U.S. 544; Viquiera, 140 F.3d 12; White, 899 F. Supp. 767; Wilton v. Seven Falls Co., 515 U.S. 277 (1995).

[14]    A/S Ludwig Mowinckles Rederi, 559 F.2d 928; Abbott Laboratories v. Gardner, 387 U.S. 136 (1967); Biochemics, Inc., 963 F. Supp. 2d 64; Clapper, 663 F.3d 527; Columbian Fin. Corp. v. BancInsure, Inc., 650 F.3d 1372 (10th Cir. 2011); El Dia, Inc., 963 F.2d 488; Int'l Longshoremen's Ass'n, Local 1291, 389 U.S. 64; Liberty Mut. Ins. Co., 260 F.3d 54; Mass. Ass'n of Afro-Am. Police, Inc., 973 F.2d 18; Nat'l Union Fire Ins. Co. of Pittsburgh, 2015 WL 3952766; Pardee v. Consumer Portfolio Servs., Inc., 344 F. Supp. 2d 823 (D.R.I. 2004); PCS 2000 LP, 148 F.3d 32; Pub. Interest Rsch. Grp. of N.J., Inc., 913 F.2d 64; Scottsdale Ins. Co. v. United Rentals (N. Am.), Inc., 152 F. Supp. 3d 15 (D. Mass. 2015); Trustgard Ins. Co. v. Collins, 942 F.3d 195 (4th Cir. 2019); Wilton, 515 U.S. 277 (1995).

[15]    A/S Ludwig Mowinckles Rederi, 559 F.2d 928 (applying admiralty law); Armstrong, 667 F.2d 1385 (applying admiralty law); Chelsea Grand, LLC v. New York Hotel & Motel Trades Council, 729 F. App'x 33 (2d Cir. 2018); Columbian Financial Corp., 650 F.3d 1372; Glenn, 222 F. Supp. 3d 31; Kuhns v. Scottrade, Inc., 868 F.3d 711 (8th Cir. 2017); Lear Corp. v. Johnson Elec. Holdings Ltd., 353 F.3d 580 (7th Cir. 2003); Pardee, 344 F. Supp. 2d 823; Pub. Interest Rsch. Grp. of N.J., Inc., 913 F.2d 64; Trustgard Ins. Co., 942 F.3d 195; Urological Surgery Pro. Ass'n, 359 F. Supp. 2d 24.

[16]    Aetna Life Ins. Co., 300 U.S. 227; Md. Cas. Co., 312 U.S. 270; MedImmune, Inc, 549 U.S. 118.

declaratory judgment relief, but many of those cases have nothing to do with declaratory

judgment actions and do not even mention the concept of declaratory relief.  For example:

- PGIC quotes <u>Aversa v. United States</u>, 99 F.3d 1200 (1st Cir. 1996), for the principle that the "Declaratory Judgment Act . . . does not supply jurisdiction where a plaintiff has no substantive claim of right" and "[i]t is the plaintiff's burden to prove the existence of [this] subject matter judication."  (Opening Br. at 6 (quoting <u>Aversa</u>).)  But <u>Aversa</u> says nothing whatsoever about the Declaratory Judgment Act.

- Similarly, PGIC cites five cases in connection with the argument that SPARTA's "declaratory judgment claim is . . . unripe."  (Opening Br. at 8.)[17]  But those five cases say precisely nothing about declaratory judgment.

- PGIC cites two more cases for the principle that the "Declaratory Judgment Act provides no authority to order a protected party to obey your contract."  (<u>Id.</u> at 12 (internal quotations omitted).)[18]  Yet again, those cases make no mention of the Declaratory Judgment Act.

PGIC also misquotes and misapplies a line of cases governing ripeness within the

context of government action -- a circumstance wholly unrelated to the present case involving a

contract between two private insurance companies.  PGIC outlines and applies a ripeness

standard throughout four pages of its motion, citing three cases in support of that ripeness

standard.  (<u>Id.</u> at 6, 8-10.)[19]  According to PGIC, those cases stand for the proposition that the

"basic rationale" for the ripeness doctrine "is to prevent the courts, through avoidance of

premature adjudication, from entangling themselves in abstract disagreements."  (<u>Id.</u> at 6,

quoting <u>Abbott Laboratories</u>.)  But PGIC's quotation of <u>Abbott Laboratories</u> is selective -- PGIC

---

[17]     <u>A/S Ludwig Mowinckels Rederi</u>, 559 F.2d 928; <u>Armstrong</u>, 667 F.2d 1385; <u>Lincoln House, Inc</u>, 903 F.2d 845; <u>Mass. Ass'n of Afro-Am. Police, Inc.</u>, 973 F.2d 18; <u>Urological Surgery Pro. Ass'n</u>, 359 F. Supp. 2d 24.

[18]     <u>Int'l Longshoremen's Ass'n, Local 1291</u>, 389 U.S. 64; <u>Pub. Interest Rsch. Grp. of N.J., Inc.</u>, 913 F.2d 64.

[19]     <u>Abbott Laby's</u>, 387 U.S. 136; <u>Ernst & Young v. Depositors Econ. Prot. Corp.</u>, 45 F.3d 530 (1st Cir. 1995); <u>W.R. Grace & Co.</u>, 959 F.2d 360.

quotes from the middle of a sentence (the portion below identified in blue text), but fails to include the portions identified below in bolded red text:

> **Without undertaking to survey the intricacies of the ripeness doctrine it is fair to say that** its basic rational is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements **over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.**

Abbott Lab'ys, 387 U.S. at 148-49.  PGIC also omits the sentence directly preceding its misquotation:  "**The injunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution**."  387 U.S. at 148.[20]

In short, PGIC's legal authorities are inapposite, distinguishable, misquoted, misapplied and do not support PGIC's motion to dismiss SPARTA's declaratory judgment action.

## III.   IF THE COURT IS INCLINED TO GRANT PGIC'S MOTION -- WHICH IT SHOULD NOT -- SPARTA SHOULD BE GRANTED LEAVE TO AMEND

If the Court is inclined to grant PGIC's motion -- which it should not -- SPARTA respectfully requests leave to amend the complaint.  The Court has discretion to decide whether to grant a plaintiff leave to amend.  Rife v. One W. Bank, F.S.B., 873 F.3d 17, 20-21 (1st Cir. 2017).  Amendments under Fed. R. Civ. P. 15(a) are liberally granted.  Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend a complaint] when justice so requires.");  see, e.g., United States ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009); Ondis v.

---

[20]   Ernst & Young and W.R. Grace both apply the Abbott Laboratories standard to cases involving government action:  Ernst & Young involved a constitutional challenge to a Rhode Island statute, and W.R. Grace involved a constitutional challenge to action taken by the Environmental Protection Agency.  PGIC misquotes and misapplies these cases to a contractual dispute between two private insurance companies.

Barrows, 538 F.2d 904, 909 (1st Cir. 1976).  In exercising its discretion, the Court should apply

Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities.  See

Palumbo v. Roberti, 834 F. Supp. 46, 54 (D. Mass. 1993).

## CONCLUSION

For the foregoing reasons, the Court should deny PGIC's motion in its entirety.  In

the event that the Court is inclined to grant any portion of PGIC's motion, SPARTA respectfully

requests leave to amend its complaint within thirty days of the Court's order.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), SPARTA respectfully requests oral argument on

this motion.

Dated:  November 1, 2021
        Boston, Massachusetts

Respectfully submitted,

/s/ James R. Carroll
James R. Carroll (BBO #554426)
Christopher G. Clark (BBO #663455)
Isaac N. Saidel-Goley (BBO #699659)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
christopher.clark@skadden.com
isaac.saidel-goley@skadden.com

*Counsel for Plaintiff*
*SPARTA Insurance Company*