UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SPARTA INSURANCE COMPANY (as successor in interest to Sparta Insurance Holdings, Inc.),<br><br>Plaintiff,<br><br>v.<br><br>PENNSYLVANIA GENERAL INSURANCE COMPANY (now known as Pennsylvania Insurance Company),<br><br>Defendant. | Civil Action No.<br>21-11205-FDS |

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

**SAYLOR, C.J.**

This is a dispute arising from a stock-purchase agreement between two insurance companies. Plaintiff SPARTA Insurance Company has sued Pennsylvania General Insurance Company seeking relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, related to a stock-purchase agreement and reinsurance agreement.

Defendant has moved to dismiss the complaint on different grounds, including lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the following reasons, the motion will be denied.

**I. Background**

    **A. Factual Background**

The following facts are set forth as alleged in the complaint.

SPARTA Insurance Company, formerly known as SPARTA Insurance Holdings, Inc., is

a Connecticut corporation with headquarters in Farmington, Connecticut.  (Compl. ¶ 7).

Pennsylvania General Insurance Company ("PGIC"), now known as Pennsylvania Insurance Company, is a Pennsylvania corporation with headquarters in Omaha, Nebraska.  (*Id.* ¶ 8).

American Employers' Insurance Company ("AEIC") is a Massachusetts insurance corporation that has been acquired by SPARTA.  (*Id.* ¶ 2).

On June 15, 2005, AEIC and PGIC entered into a reinsurance agreement, under which AEIC's liabilities were apparently transferred and assumed by PGIC.  (*Id.* ¶ 15; Reinsurance Agreement).[1]  AEIC and PGIC agreed to the following provision in the reinsurance agreement:

> [PGIC] shall assume as 100% reinsurance . . . the following insurance business which is in force as of the Effective Date and Time:  (a) the historical bond insurance business of [AEIC] (the "Retained Bonding Business") and (b) the historical insurance business of [AEIC] in those states in which such business has unearned premium or unpaid loss and in which [PGIC] does not have an insurance license (the "Retained Non-Bonding Business", and together with the Retained Bonding Business, the "Retained Business") . . . [PGIC] shall, at its sole expense, perform any and all administrative functions for such Retained Business, including without limitation claims handling, underwriting and regulatory functions, and shall reimburse [AEIC] for any and all out of pocket expenses related thereto.  [PGIC] shall 100% reinsure [AEIC] with respect to, and [AEIC] shall cede to [PGIC], all premiums, losses and expenses relating to such Retained Business as of the Effective Date and Time and as renewed by [AEIC] thereafter pending regulatory approvals. . . .

(Reinsurance Agreement § 6).[2]

On March 12, 2007, SPARTA and PGIC entered into a stock-purchase agreement, which

---

[1] The complaint also refers to the reinsurance agreement as a "transfer and assumption agreement."  (*See, e.g.*, Compl. ¶ 2).

[2] On a motion to dismiss, the court may properly take into account four types of documents outside the complaint without converting the motion into one for summary judgment:  (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint.  *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993); *see also Arturet-Velez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10, 13 n.2 (1st Cir. 2005) ("The court can consider . . . implications from documents incorporated into the complaint").

resulted in SPARTA acquiring AEIC from PGIC. (Compl. ¶¶ 2, 13). The transaction was structured such that SPARTA would obtain AEIC as a "clean shell" effectuated in part by the reinsurance agreement, with no liabilities remaining in AEIC after consummation of the transaction. (*Id.* ¶ 14). The reinsurance agreement was incorporated into the stock-purchase agreement in several sections. (*Id.* ¶ 16). The parties also agreed to the following provision on indemnity in the stock-purchase agreement:

> [PGIC] agrees to indemnify and hold [SPARTA] harmless of and from any loss, cost, expense, claim, interest, fine, penalty, deficiency, obligation, liability or damage, including, without limitation, reasonable attorneys' fees, accountants' fees and other investigatory fees and out-of-pocket expenses, actually expended or incurred by [SPARTA] or [AEIC] (collectively, "Losses"), arising out of or resulting from (i) any breach of representation or warranty (including any misrepresentation in, or omission from, any certificate or other document furnished or to be furnished by [PGIC] to [SPARTA] hereunder), or nonfulfillment of any covenant or agreement on the part of [PGIC] under this Agreement; (ii) the failure by [PGIC] to perform any of its obligations under the Reinsurance Agreement; (iii) any Loss arising out of or resulting from the existence of [AEIC] prior to the Closing or the conduct of the Business or other operations by or of [AEIC] prior to the Closing; . . . and (vi) all actions, suits, proceedings, demands, assessments, judgments, costs and expenses incident to any of the foregoing (any and all of which are hereafter referred to as a "Claim").
>
> [SPARTA] shall give [PGIC] written notice by certified or registered mail or overnight courier of any Claim with respect to which [SPARTA] seeks indemnification. [PGIC] shall have ten business days from the date of receipt of such notice to notify [SPARTA] that [PGIC] will assume the entire control of the defense, compromise or settlement (any and all of which are hereinafter referred to as "Defense") of such Claim through its own attorneys, which attorneys must be reasonably acceptable to [SPARTA], and at its own expense. If [PGIC] shall assume such Defense, it shall promptly advise [SPARTA] of its activities and efforts in connection therewith and of the ultimate resolution of such Claim. [PGIC] shall have the right to settle, compromise or adjust any such Claim . . . . If [PGIC] fails to notify [SPARTA] that it has assumed the Defense or does not in fact assume the Defense, [SPARTA] may, but shall not be required to, pay, compromise or settle such Claim, or take such action to settle such Claim, provided that [SPARTA] shall notify [PGIC] of such action. In such event, [SPARTA] shall be fully entitled to indemnification hereunder.

(*Id.* ¶¶ 3, 17; Stock Purchase Agreement § 8.1).

That transaction closed on August 7, 2007. (Compl. ¶ 18). For more than a decade

afterward, SPARTA and its affiliates have tendered liabilities for insurance policies issued by AEIC, which were administered and paid pursuant to the stock-purchase and reinsurance agreements. (*Id.* ¶¶ 3, 19). According to the complaint, in May 2021, SPARTA learned that claims made pursuant to AEIC policies were no longer being administered or paid. (*Id.* ¶¶ 4, 20). In each of May, June, July, August, and September 2021, SPARTA contacted PGIC concerning requests for indemnity for claims arising out of AEIC policies. (*Id.* ¶¶ 4, 21). SPARTA allegedly requested confirmation that PGIC would satisfy its contractual obligations under the stock-purchase and reinsurance agreements to administer and pay all claims arising out of AEIC policies. (*Id.*). According to the complaint, as of the filing of this lawsuit, PGIC had not agreed to do so. (*Id.*).

### B.    Procedural Background

On October 4, 2021, SPARTA filed an amended complaint seeking declaratory judgment. The amended complaint asserts two claims. Count 1 asserts a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202 seeking judicial determination of SPARTA and PGIC's rights under the stock-purchase agreement. (Compl. ¶¶ 24-27). Count 2 similarly asserts a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202 seeking judicial determination of SPARTA and PGIC's rights under the reinsurance agreement. (*Id.* ¶¶ 28-30).

PGIC has moved to dismiss the complaint for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## II.    Standard of Review

### A.    Fed. R. Civ. P. 12(b)(1)

On a motion to dismiss for lack of subject-matter jurisdiction, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (quoting *Murphy v. United States*, 45 F.3d 520, 522 (1st

Cir. 1995)).  If the party seeking to invoke federal jurisdiction "fails to demonstrate a basis for jurisdiction," the motion to dismiss must be granted.  *Id.*  When ruling on a motion to dismiss under Rule 12(b)(1), the court "must credit the plaintiff's well-[pleaded] factual allegations and draw all reasonable inferences in the plaintiff's favor."  *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).

> **B.** **Fed. R. Civ. P. 12(b)(6)**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must state a claim that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be plausible, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555 (internal citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences.  *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

**III.    Analysis**

Defendant contends that this declaratory judgment action is not ripe for judicial resolution or redressable by the relief requested in the amended complaint.  It further asserts that the complaint fails to state a claim and that the court should exercise its discretion under the

Declaratory Judgment Act to dismiss the claims.

> **A.     Standing**

Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art III, § 2. Article III standing is a prerequisite for subject-matter jurisdiction, and "the plaintiff bears the burden of pleading facts necessary to demonstrate standing." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). "The heartland of constitutional standing is composed of the familiar amalgam of injury in fact, causation, and redressability." *Id.* at 731 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Each element "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof," *Lujan*, 504 U.S. at 561, which here is "the plausibility standard applicable under Rule 12(b)(6)," *Hochendoner*, 823 F.3d at 730.

Standing issues are frequently implicated in actions brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. *See, e.g.*, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007). The Declaratory Judgment Act provides as follows:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). Courts often combine multiple justiciability concepts, "such as ripeness, standing, and the prohibition against advisory judicial rulings," when discussing the statutory requirement of an "actual controversy." *See EMC Corp. v. Chevedden*, 4 F. Supp. 3d 330, 335 (D. Mass. 2014) (quoting *In re Columbia Univ. Patent Litig.*, 343 F. Supp. 2d 35, 43 (D. Mass. 2004)). "[T]he phrase 'case of actual controversy' in the Act refers to the types of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune*, 549 U.S. at 127.

1. **<u>Injury in Fact</u>**

"An injury in fact must be both 'concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *Van Wagner Bos., LLC v. Davey*, 770 F.3d 33, 37 (1st Cir. 2014) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). A "threatened injury must be *certainly impending* to constitute injury in fact"; "allegations of *possible* future injury" are insufficient. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Count 1 seeks a declaration concerning the parties' rights and obligations under the SPA, particularly the indemnification provision. Count 2 similarly requests a declaration concerning the parties' rights and obligations under the reinsurance agreement. Defendant contends that both counts fail to allege a "certainly impending" injury because there are no allegations in the complaint about specific unreimbursed claims. It further asserts that no injury in fact results from its mere "failure to confirm" that it will honor its contractual obligations.

The complaint is somewhat cryptic in parts, which makes a detailed analysis difficult. It alleges that in May 2021, "SPARTA learned that claims made pursuant to AEIC policies were no longer being administered or paid." (Compl. ¶¶ 4, 20). It alleges that "SPARTA has tendered numerous claims to PGIC for indemnity, but PGIC has repeatedly failed to confirm that PGIC will honor its contractual obligations under the SPA and Reinsurance Agreement to administer and pay the claims made pursuant to insurance policies issued by AEIC." (*Id.* ¶ 4). And it alleges that on at least five occasions in 2021, "SPARTA contacted PGIC concerning SPARTA's requests for indemnity," that it requested confirmation that defendant would "administer and pay all such claims," and that defendant "has not agreed to do so." (*Id.* ¶ 21).

While it is far from clear, it appears that the complaint thus alleges that claims are not being administered or paid on a wholesale basis in violation of the SPA and the reinsurance agreement. In other words, it appears to allege that claims are not being declined on an

7

individualized basis, according to individualized coverage determinations, but that all claims are being declined, regardless of the underlying issues. (Compl. ¶ 20).

Under the circumstances, the complaint is sufficient to allege "certainly impending" injuries. *See Clapper*, 568 U.S. at 409.

The cases cited by defendant are largely inapposite, as they address the duty of an insurer to indemnify an insured under a specific policy. In a duty-to-indemnify case, the insured's liability remains undetermined, but the insurance company may be required, at some point in the future, to pay a resulting judgment. Courts often dismiss such claims for lack of standing. *See, e.g.*, *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 200 (4th Cir. 2019) (rejecting injury in fact based on mere possibility that "[insurance company] might have to guarantee a future judgment against [insured]," which depended on whether state-court plaintiff would receive judgment).[3] As framed by the complaint, this dispute, however, appears to be in substance a contractual dispute between businesses, not a coverage dispute arising out of particular policy language.

Defendant argues that the cryptic nature of the complaint is deliberate, and that plaintiff is concealing critical facts concerning the relationship between the parties. That may well prove to be true at the end of the day. For present purposes, however, the Court is confined to the allegations of the complaint, which are sufficiently plausible to confer standing.[4]

For those reasons, the complaint plausibly alleges an injury in fact.

---

[3] By contrast, in a duty-to-defend case, the court is addressing the issue of who is required to pay the costs of defending a lawsuit prior to judgment. The latter type of case normally does not present issues of Article III standing.

[4] Defendant's motion to dismiss is a facial challenge to subject-matter jurisdiction. (*See* Def. Mem. at 2 n.1). "Facial attacks on a complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for purposes of the motion." *See Torres-Negron v. J & N Recs., LLC*, 504 F.3d 151, 162 (1st Cir. 2007) (internal quotation marks and citation omitted).

**2.     Redressability**

The redressability element of standing requires that the requested relief directly redress the injury alleged. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 105-09 (1998). Plaintiff must establish that it is "likely," as opposed to merely "speculative," that its claimed injuries will be redressed by a favorable decision. *Lujan*, 504 U.S. at 561.

Defendant contends that the requested relief is merely a declaration that it must comply with the contract and thus does not redress any alleged injury. It further asserts that plaintiff seeks "an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, 549 U.S. at 127. However, the complaint, read broadly, does not merely seek a declaration to "obey your contract." *Compare Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 718 (8th Cir. 2017). Rather, plaintiff is seeking an interpretation and declaration of its contractual rights in light of a particular set of existing facts—specifically, that no claims are being administered or paid, in violation of defendant's contractual obligations.

Therefore, the complaint plausibly alleges that it is likely that plaintiff's claimed injuries will be redressed by a decision in its favor. *See Lujan*, 504 U.S. at 561. The motion to dismiss for lack of standing will therefore be denied.

**B.     Ripeness**

The ripeness doctrine is intended to "prevent the adjudication of claims relating to 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)). To be ripe, a complaint must "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of the judicial relief sought." *Reddy*, 845 F.3d at 500 (quotation marks and citations omitted). Ripeness analysis has two prongs: hardship and fitness.

*See Texas v. United States*, 523 U.S. 296, 301 (1998).

### 1. **Hardship**

In evaluating hardship, "the court should consider whether the challenged action creates a direct and immediate dilemma for the parties." *Verizon New England, Inc. v. Int'l Bhd. of Elec. Workers, Loc. No. 2322*, 651 F.3d 176, 188 (1st Cir. 2011) (internal citations and quotation marks omitted). This prong is "wholly prudential" and "concerns the harm to the parties seeking relief that would come to those parties from our withholding of a decision at this time." *Reddy*, 845 F.3d at 501 (internal quotation marks and citations omitted).

Defendant asserts that plaintiff has failed to establish the requisite harm, because its alleged failure to confirm that it will honor its contractual obligations does not create a "direct and immediate dilemma." Again, however, the complaint appears to allege a blanket refusal by defendant to comply with its contractual obligations at all, rather than one or more specific individual coverage disagreements. Under the circumstances, "the sought-after declaration would be of practical assistance in setting the underlying controversy to rest," and therefore a plausible claim of hardship has been alleged. *See State of R.I. v. Narragansett Indian Tribe*, 19 F.3d 685, 693 (1st Cir. 1994).

### 2. **Fitness**

"The fitness prong 'has both jurisdictional and prudential components.'" *Reddy*, 845 F.3d at 501 (quoting *Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 89 (1st Cir. 2013)). "The jurisdictional component . . . concerns 'whether there is a sufficiently live case or controversy, at the time of the proceedings, to create jurisdiction in the federal courts.'" *Id.* "The prudential component . . . concerns 'whether resolution of the dispute should be postponed in the name of judicial restraint from unnecessary decision of constitutional issues.'" *Id.*

Defendant asserts that the allegations of the complaint, coupled with its interpretation of the SPA and reinsurance agreements, confirm there is no ripe dispute. For the reasons set forth above, it appears that there is a sufficiently live case or controversy, and that there is no reason to postpone resolution of this dispute in the interest of judicial restraint. Again, it is certainly possible that as information is revealed through discovery, defendant's characterization of the dispute proves to be correct. And the Court may revisit questions of justiciability, including ripeness and Article III standing, as may be necessary or appropriate during the course of the litigation. Nonetheless, at this stage it appears that the ripeness requirement is satisfied.

In summary, at this stage, the complaint has alleged sufficient facts to establish both the fitness and hardship prongs of ripeness. There is thus an actual controversy between the parties, and defendant's motion to dismiss will be denied.

### C. Declaratory Judgment Act

Even if there is a case or controversy within the meaning of Article III, it does not follow, of course, that a declaratory judgment should issue. Generally district courts "have a 'virtually unflagging obligation' to exercise the jurisdiction conferred on them by Congress." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 284 (1995) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). However, in the declaratory judgment context, a district court has substantial discretion to decline to enter such relief. *See DeNovellis v. Shalala*, 124 F.3d 298, 313 (1st Cir. 1997).

> By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Wilton*, 515 U.S. at 288.

Defendant urges the court to exercise that discretion here. But that, in effect, would be a decision on the merits, and at this stage, there is far from sufficient information for the court to make such a decision. Among other things, the Court cannot determine whether the requested declarations have a mere "advisory quality," or raise a plausible basis for abstention. *Cf. AIG Prop. Cas. Co. v. Green*, 150 F. Supp. 3d 132, 137 (D. Mass. 2015) ("[W]here another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a federal court may abstain from exercising jurisdiction over a declaratory judgment action") (internal quotation marks omitted) (quoting *Wilton*, 515 U.S. at 283). For those reasons, the Court declines at this time to exercise its discretion to dismiss plaintiff's claims.

### D. Failure to State a Claim

Finally, defendant contends that the complaint fails to state a claim, essentially restating many of the same arguments it raises as to justiciability. Specifically, it asserts that it was under no general duty to confirm that it would abide by the agreement; that the SPA's claim procedures were not followed by plaintiff; and that the complaint does not allege that plaintiff demanded reimbursement for any particular claims.

Taking the allegations as a whole, the complaint provides sufficiently plausible factual allegations to survive a motion to dismiss. While additional facts and details will surely be critical to resolve a motion for summary judgment, "their absence does not support a motion to dismiss." *Raytheon Co. v. Cont'l Cas. Co.*, 123 F. Supp. 2d 22, 31 n.7 (D. Mass. 2000). "Dismissal under Fed. R. Civ. P. 12(b)(6) is only appropriate if the complaint, so viewed, presents no set of facts justifying recovery." *Cooperman v. Individual, Inc.*, 171 F.3d 43, 46 (1st Cir. 1999); *see also Raytheon Co.*, 123 F. Supp. 2d at 27-28 (rejecting arguments that allegations

of complaint are "too general" and "more details are needed regarding each specific [claim]"); *Tocci Bldg. Corp. of New Jersey v. Virginia Sur. Co.*, 750 F. Supp. 2d 316, 326 (D. Mass. 2010) (denying motion to dismiss after finding it "inappropriate to interpret those policies or provisions at this time because the level of detail required to interpret the relevant policies exceeds any requirement of notice pleading") (internal quotation marks and citation omitted).

Accordingly, the allegations of the complaint are sufficient to survive a motion to dismiss. The motion to dismiss for failure to state a claim will therefore be denied.

**IV.**   **Conclusion**

For the foregoing reasons, defendant's motion to dismiss is DENIED.

**So Ordered.**

Dated: August 9, 2022

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court