UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SPARTA INSURANCE COMPANY      :
(as successor in interest to Sparta Insurance
Holdings, Inc.),      :

           Plaintiff,      :     Civil Action
                                           No. 21-11205-FDS
       v.      :

PENNSYLVANIA GENERAL INSURANCE   :
COMPANY (now known as Pennsylvania
Insurance Company),      :

           Defendant.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFF SPARTA INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

James R. Carroll
Christopher G. Clark
Catherine A. Fisher
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
christopher.clark@skadden.com
catherine.fisher@skadden.com

*Counsel for Plaintiff*
*SPARTA Insurance Company*

Dated:  September 19, 2022

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND ....................................................................................................2

      A.      SPARTA Acquires AEIC As A Clean Shell Company ..........................................2

      B.      The Stock Purchase Agreement ...........................................................................3

      C.      The Reinsurance Agreement .................................................................................3

      D.      For More Than One Decade After The Transaction,
                Claims Related To Historical AEIC Policies Were Paid
                And Administered In Accordance With The Parties' Agreements .........................5

      E.      In 2021, PGIC Refused To Comply With The Parties' Agreements
                And Claims Related To Historical AEIC Policies Were No Longer
                Paid And Administered In Accordance With The Parties' Agreements .................6

      F.      SPARTA Has Paid Millions Of Dollars Related To Claims Made
                Pursuant To Historical AEIC Policies That Are The Obligation Of PGIC ............7

ARGUMENT .............................................................................................................................8

I.      THE COURT SHOULD ENTER JUDGMENT FOR
       SPARTA AND DECLARE THAT PGIC IS OBLIGATED
       TO ADMINISTER AND PAY CLAIMS MADE AGAINST AEIC POLICIES ...............8

      A.      Legal Standards Applicable To Motion For Judgment On The Pleadings .............8

      B.      The Court Should Declare That The
                Reinsurance Agreement Unambiguously Requires PGIC
                To Administer and Pay Claims Made Against AEIC Policies .............................11

      C.      The Court Should Declare That The SPA Unambiguously Requires
                PGIC To Indemnify SPARTA For Claims Made Against AEIC Policies ............14

CONCLUSION ........................................................................................................................16

**TABLE OF AUTHORITIES**

**CASES**                                                                     **PAGE(S)**

*Accents of Sterling, Inc. v. Ohio Security Insurance Co.*,
   No. 20-cv-11005-DJC, 2021 WL 2117180 (D. Mass. May 25, 2021) ..............................10

*Alexander v. McPeck*,
   75 N.E. 88 (1905)...................................................................................................13

*Atain Specialty Insurance Co. v. Boston Rickshaw LLC*,
   387 F. Supp. 3d 157 (D. Mass. 2019) .......................................................................9, 12

*Bayer Chemicals Corp. v. Albermarle Corp.*,
   171 F. App'x 392 (3d Cir. 2006) ...................................................................................10

*Concordia Partners, LLC v. Ward*,
   No. 2:12-cv-138-GZS, 2013 WL 593862 (D. Me. Feb. 15, 2013) ...................................10

*Correia v. Massachusetts Bay Commuter Railroad*,
   Civ. A. No. 12-12048-DJC, 2013 WL 6383107 (D. Mass. Dec. 4, 2013), *aff'd*,
   No. 14-1020, 2014 WL 7506802 (1st Cir. Sept. 15, 2014)...............................................8

*Curran v. Cousins*,
   509 F.3d 36 (1st Cir. 2007).............................................................................................8

*Edmonds v. United States*,
   642 F.2d 877 (1st Cir. 1981)..........................................................................................11

*Harrell v. Backstage Salon & Day Spa, Inc.*,
   No. 2184CV01795-BLS2, 2022 WL 618681 (Mass. Super. Ct. Feb. 22, 2022).........11, 12

*Hatco Corp. v. W.R. Grace & Co.—Conn.*,
   59 F.3d 400 (3d Cir. 1995)............................................................................................13

*HSBC Realty Credit Corp. (USA) v. O'Neill*,
   Civ. A. No. 12-11733-RGS, 2013 WL 362823 (D. Mass. Jan. 30, 2013), *aff'd*,
   745 F.3d 564 (1st Cir. 2014) ...........................................................................9, 10, 11, 12

*NBC Universal, Inc. v. Paxson Communications Corp.*,
   Civ. A. No. 650-N, 2005 WL 1038997 (Del. Ch. Apr. 29, 2005) ....................................10

*Nicolaci v. Anapol*,
   387 F.3d 21 (1st Cir. 2004)............................................................................................11

*R.G. Financial Corp. v. Vergara-Nuñez*,
   446 F.3d 178 (1st Cir. 2006)............................................................................................9

*Rhode Island v. Narragansett Indian Tribe*,
   19 F.3d 685 (1st Cir. 1994)..............................................................................................9

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litigation*,
    No. 13-MD-2445, 2017 WL 4810801 (E.D. Pa. Oct. 25, 2017)........................................13

*Terumo Americas Holding, Inc. v. Tureski*,
    Civ. A. No. 14-13838-DJC, 2015 WL 4529746 (D. Mass. July 27, 2015) ........................9

*Villa Health Care, Inc. v. Illinois Health Care Management II, LLC*,
    No. 12-3205, 2013 WL 3864418 (C.D. Ill. July 25, 2013)................................................10

## RULES, STATUTES AND OTHER AUTHORITIES      PAGE(S)

Fed. R. Civ. P. 12(c) ...........................................................................................................8

28 U.S.C. § 2201(a) ...........................................................................................................9

## PRELIMINARY STATEMENT

Plaintiff SPARTA Insurance Company ("SPARTA") respectfully seeks judgment on the pleadings and a declaration that Defendant Pennsylvania General Insurance Company ("PGIC") is contractually obligated to administer and pay all insurance claims asserted under historical American Employers' Insurance Company ("AEIC") policies that pre-date SPARTA's "clean shell" acquisition of AEIC from PGIC in 2007 pursuant to several agreements.

Under the transfer and assumption agreement between AEIC and PGIC (the "Reinsurance Agreement"), all of AEIC's liabilities, including future liabilities based on AEIC's insurance business, were transferred to and assumed by PGIC, either directly or as a reinsurer. As expressly provided for in the Reinsurance Agreement, this transfer of liability included responsibility for administering as well as paying any claims made against an AEIC policy in force as of the Reinsurance Agreement's Effective Date.

The Stock Purchase Agreement under which SPARTA acquired AEIC also unambiguously demonstrates the parties' agreement that PGIC, not SPARTA, be responsible for AEIC claims.  Among other things, PGIC represented in that agreement that PGIC had assumed all liabilities under an AEIC policy that had arisen or could arise in the future under the Reinsurance Agreement, and that the Reinsurance Agreement was valid and effective.  Further, PGIC agreed to indemnify and hold harmless SPARTA for all of the liabilities for insurance policies issued by AEIC and for all of the business of AEIC prior to the acquisition

Taken together, those two agreements unambiguously demonstrate that the parties' agreement was that PGIC – not SPARTA – was to administer and pay claims made against historical AEIC policies.  SPARTA respectfully submits that it is entitled to entry of judgment on the pleadings and a declaration that PGIC must comply with its contractual obligations with respect to those claims.

## FACTUAL BACKGROUND

A. **SPARTA Acquires AEIC As A Clean Shell Company**

On March 12, 2007, Plaintiff SPARTA Insurance Company and Defendant Pennsylvania General Insurance Company entered into a Stock Purchase Agreement (the "Agreement" or "SPA").  (Am. Compl. ¶¶ 2, 13, ECF 19; PGIC's Answer ¶¶ 2, 13, ECF 53 (admitting allegation).)  In the SPA, SPARTA acquired from PGIC a Massachusetts insurance corporation named American Employers' Insurance Company.  (Am. Compl. ¶ 13; PGIC's Answer ¶ 13 (admitting allegation).)

The transaction was structured so that SPARTA acquired AEIC as a "clean shell," which means there would be no liabilities remaining in the AEIC company after the transaction was consummated.  (Am. Compl. ¶ 2; PGIC's Answer ¶ 13 (admitting that the parties entered into the SPA in 2007 and referring to the SPA as the best evidence of its contents); Transmittal Declaration Of James R. Carroll (cited as "Carroll Decl.") Ex. 1 (hereinafter "SPA") § 2.19(b) (PGIC represented that "[a]ll liabilities of the Company [AEIC] that have arisen or could arise, under any insurance contract or any reinsurance treaty or otherwise, have been and will be assumed by Seller [PGIC] pursuant to the Reinsurance Agreement.").)  AEIC, which held various licenses to write insurance business, would then be able to write new insurance business going forward "clean" and without any historical liabilities.  (SPA § 2.19(b).)  Those historical liabilities, such as policies with policyholders for prior time periods, were agreed to be the responsibility of PGIC to administer and pay any associated claims.  (*Id.*)  To create the "clean shell" in AEIC, on June 15, 2005, more than two years before the transaction closing, all of the pre-transaction AEIC liabilities were either (i) transferred from AEIC to PGIC in their entirety or (ii) for a limited number of pre-transaction liabilities in jurisdictions in which PGIC was not licensed and other conditions were satisfied, reinsured in their entirety by PGIC, pursuant to the

2

Reinsurance Agreement.  (Am. Compl. ¶ 2; SPA § 2.19; *see also* Carroll Decl. Ex. 2 (hereinafter "Reinsurance Agreement").)

      **B.**      **<u>The Stock Purchase Agreement</u>**

      The agreements contain several protections to make sure that SPARTA in fact received a "clean shell" and would not have any responsibility for administering or paying claims made pursuant to historical AEIC policies.

      Among other things, in the SPA, PGIC agreed to indemnify and hold harmless SPARTA for all of the liabilities for insurance policies issued by AEIC and for all of the business of AEIC prior to the acquisition.  (SPA § 8.1.)  In the SPA, PGIC also represented and warranted that "[a]ll liabilities of [AEIC] that have arisen or could arise, under any insurance contract or any reinsurance treaty or otherwise, have been and will be assumed by [PGIC] pursuant to the Reinsurance Agreement," and that AEIC had "and will at Closing have, no liabilities of any nature, whether absolute, accrued, contingent or otherwise or whether due or to become due, other than those assumed by [PGIC] pursuant to the Reinsurance Agreement." (SPA § 2.19(b).)  The Reinsurance Agreement being in full force and effect was a condition to close.  (SPA § 6.12.)

      The parties agreed in the SPA that their rights and obligations under the SPA are governed by Massachusetts law.  (SPA § 12.8.)

      **C.**      **<u>The Reinsurance Agreement</u>**

      In the Reinsurance Agreement, PGIC agreed to assume or reinsure the historical AEIC liabilities, either through direct assumption or as a reinsurer.  (*See* Reinsurance Agreement.)  As noted in the preamble of the Reinsurance Agreement, this was done to "facilitate the Sale" of AEIC (defined as American in the Reinsurance Agreement) to an

unrelated party, *i.e.*, SPARTA.  (Reinsurance Agreement at 1.)  The Reinsurance Agreement

provided that:

> Immediately as of the Effective Date and Time, all the rights, franchises, and interests of American in and to every species of property (whether real, personal, or mixed) and choses in action thereunto belonging, shall be deemed as transferred to and vested in Pennsylvania General and ***simultaneously therewith Pennsylvania General shall be deemed to have assumed any and all of the liabilities and assets of American***; provided, that not less than eleven million dollars ($11,000,000.00) in assets, which shall include or consist of any and all statutory deposits ("Policyholders' Surplus"), shall remain in American, together with the corporate charter, minute books and the licenses of, and regulatory records and filings concerning, American (together with the Policyholders' Surplus, the "Retained Assets")

(Reinsurance Agreement § 3 (emphasis added).)  The transferred liabilities were defined broadly

to include:

> any and all of American's liabilities or contractual commitments of every nature and description, whether absolute, accrued, contingent or otherwise or whether due now or in the future, including, without limitation, the following:
>
> a.  any and all unpaid losses and loss adjustment expenses and any and all liabilities existing or arising in the future under Section 4.a. or 4.b[1] . . .
>
> h.  any and all subsequent actions, proceedings or liabilities arising from any of the foregoing liabilities or the assets of American.

(Reinsurance Agreement § 5.)

---

[1]     Sections 4.a. and 4.b. define the transferred assets of AEIC as including:

> a. any and all business, including, without limitation, any and all underwriting contracts, including direct insurance policies and endorsements in respect thereto, reinsurance contracts, facultative contracts, retrocession agreements and any and all other underwriting contracts of every kind and description;
>
> b. any and all cash, securities, choses in action and other property of every nature and description, including real property, leaseholds and other interests therein; . . .

(Reinsurance Agreement § 4.)

4

For a small subset of insurance business that PGIC could not assume directly,

defined as the Retained Business, PGIC agreed to reinsure the liabilities in their entirety:

> Pennsylvania General shall assume as 100% reinsurance, as opposed to a complete Transfer and Assumption, the following insurance business which is in force as of the Effective Date and Time: (a) the historical bond insurance business of American (the "*Retained Bonding Business*") and (b) the historical insurance business of American in those states in which such business has unearned premium or unpaid loss and in which Pennsylvania General does not have an insurance license (the "*Retained Non-Bonding Business*", and together with the Retained Bonding Business, the "*Retained Business*"); *provided*, that such reinsurance for the Retained Non-Bonding Business shall continue only until such time as Pennsylvania General receives the insurance license(s), if necessary, to permit a complete Transfer and Assumption of the Retained Non-Bonding Business into Pennsylvania General or one of its affiliates or there ceases to be unearned premium or unpaid loss on such business.

(Reinsurance Agreement § 6.)  In addition, PGIC expressly agreed that it would:

> at its sole expense, perform any and all administrative functions for such Retained Business, including without limitation claims handling, underwriting and regulatory functions, and shall reimburse American for any and all out of pocket expenses related thereto.  Pennsylvania General shall 100% reinsure American with respect to, and American shall cede to Pennsylvania General, all premiums, losses and expenses relating to such Retained Business as of the Effective Date and Time and as renewed by American thereafter pending regulatory approvals. . .

(Reinsurance Agreement § 6.)

> **D.    For More Than One Decade After The Transaction,**
> **Claims Related To Historical AEIC Policies Were Paid**
> **And Administered In Accordance With The Parties' Agreements**

In May 2021, SPARTA learned that claims made on historical AEIC policies

were no longer being paid and reached out to PGIC to confirm that PGIC (now known as

Pennsylvania Insurance Company) would "continue to honors its obligations and assume, handle

and pay all claims" arising from AEIC policies.  (Carroll Decl. Ex. 3; *see also* PGIC's Answer

¶ 21 (admitting that SPARTA sent communications to PGIC in May 2021 and referring to the

communications as the best evidence of their contents).)  Since the close of the 2007 transaction,

claims made pursuant to AEIC policies were not administered or paid by SPARTA.  (Am.

Compl. ¶ 19.)  Instead, SPARTA and its affiliates tendered those claims for administration and

payment pursuant to the SPA and/or Reinsurance Agreement.  (*Id.*)

     **E.**     **In 2021, PGIC Refused To Comply With The Parties' Agreements
And Claims Related To Historical AEIC Policies Were No Longer
<u>Paid And Administered In Accordance With The Parties' Agreements</u>**

     In May, June, July, August and September 2021, SPARTA repeatedly contacted

PGIC concerning SPARTA's requests for indemnity to PGIC for claims arising out of historical

policies issued by AEIC.  (Am. Compl. ¶ 21; PGIC's Answer ¶ 21 (admitting that SPARTA sent

communications to PGIC and referring to the communications as the best evidence of their

contents); Carroll Decl. Exs. 3-6 (May, June, July and September 2021 communications from

SPARTA to PGIC).)[2]

     In those communications, SPARTA tendered to PGIC for indemnity numerous

specific claims made pursuant to historical insurance policies issued by AEIC.  (*See* Carroll

Decl. Ex. 3 (May 28, 2021 email from SPARTA informing PGIC of four actions where

SPARTA was named as a party due to a historical AEIC policy); Carroll Decl. Ex. 4 (June 23,

2021 email from SPARTA tendering 14 additional actions for defense and indemnity to PGIC);

Carroll Decl. Ex. 5 (SPARTA July 26, 2021 notice of indemnification regarding the claims

discussed in Exhibits 3 and 4 and four additional claims); Carroll Decl. Ex. 6 (SPARTA

September 27, 2021 notice of indemnification regarding 13 additional claims).)  PGIC refused to

honor its contractual obligations under the SPA and Reinsurance Agreement to administer and

pay these claims.  (*E.g.,* ECF 22 at 18.)

---

[2]     Indeed, SPARTA has continued to receive claims made against AEIC historical policies
throughout the pendency of this litigation and has continued to provide PGIC with information
regarding the claims and the expenses SPARTA is incurring in connection with those claims.
(*See* Carroll Decl. Ex. 7.)

**F.     SPARTA Has Paid Millions Of Dollars Related To Claims Made
        <u>Pursuant To Historical AEIC Policies That Are The Obligation Of PGIC</u>**

PGIC's conduct has left SPARTA – and individual AEIC policyholders – in an untenable position:  Those AEIC policyholders require that their claims be administered and paid, but PGIC has refused to administer or pay those claims.  PGIC's repeated failure to administer and pay claims in respect of historical AEIC policies has frustrated SPARTA's rights under the SPA and Reinsurance Agreement, and generated a live dispute and actual controversy concerning the parties' contractual rights and obligations under the SPA and Reinsurance Agreement.  (Am. Compl. ¶¶ 22-23.)  Accordingly, SPARTA seeks the following declarations:

(a)     Pennsylvania General Insurance Company ("PGIC") is required to indemnify and hold SPARTA harmless of and from any loss, cost, expense, claim, interest, fine, penalty, deficiency, obligation, liability or damage, including, without limitation, reasonable attorneys' fees, accountants' fees and other investigatory fees, and out-of-pocket expenses, actually expended or incurred by SPARTA or American Employers' Insurance Company ("AEIC"), arising out of or resulting from (i) any breach of representation or warranty (including any misrepresentation in, or omission from, any certificate or other document furnished or to be furnished by PGIC to SPARTA) or nonfulfillment of any covenant or agreement on the part of PGIC under the SPA; (ii) the failure by PGIC to perform any of its obligations under the Reinsurance Agreement, as defined in the SPA; (iii) any loss arising out of or resulting from the existence of AEIC prior to the August 7, 2007 closing or the conduct of the Business, as defined in the SPA, or other operations by or of AEIC prior to the August 7, 2007 closing; and (iv) all actions, suits, proceedings, demands, assessments, judgments, costs and expenses incident to any of the foregoing.

(b)     PGIC is required to pay all of SPARTA's costs, expenses and reasonable attorneys' fees incurred in obtaining PGIC's compliance with its obligations under the SPA and in connection with this action.

(c)     PGIC is responsible for all of AEIC's liabilities and contractual commitments of every nature and description, whether absolute, accrued, contingent or otherwise, or whether due at the time of the Reinsurance Agreement, as defined in the SPA, or in the future, including, without limitation, any and all subsequent actions, proceedings or liabilities arising from any of the liabilities or assets of AEIC.

(d)     PGIC shall, at its sole expense, perform any and all administrative functions for the prior AEIC Business, as defined in the SPA, including without limitation claims handling.

(*See id.*)

## ARGUMENT

**I.     THE COURT SHOULD ENTER JUDGMENT FOR SPARTA AND DECLARE THAT PGIC IS OBLIGATED TO ADMINISTER AND PAY CLAIMS MADE AGAINST AEIC POLICIES**

### A.     Legal Standards Applicable To Motion For Judgment On The Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a Rule 12(c) motion, the Court should consider "the pleadings as a whole." *Curran v. Cousins*, 509 F.3d 36, 43 (1st Cir. 2007) (affirming district court's entry of judgment on the pleadings that resolved issues of law).

In resolving the motion, "the Court may also consider documents the authenticity of which are not disputed by the parties; documents central to plaintiff['s] claim; and documents sufficiently referred to in the complaint." *Correia v. Mass. Bay Commuter R.R.*, Civ. A. No. 12-12048-DJC, 2013 WL 6383107, at *1 (D. Mass. Dec. 4, 2013) (alterations and internal quotation marks omitted) (granting motion for judgment on the pleadings), *aff'd*, No. 14-1020, 2014 WL 7506802 (1st Cir. Sept. 15, 2014).[3] On a motion for judgment on the pleadings, the Court "view[s] the facts contained in the pleadings in the light most favorable to the [party opposing

---

[3]     The Carroll Declaration transmits herewith several documents that are referred to in the Amended Complaint, including the SPA, Reinsurance Agreement and correspondence between SPARTA and PGIC, the authenticity of which are not disputed by the parties (nor could they be in good faith), and are therefore properly before the Court on this motion. (*See* Carroll Ex. 1-6.) *See also Correia*, 2013 WL 6383107, at *1.

the motion] and draw[s] all reasonable inferences" in the opposing party's favor. *R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 182 (1st Cir. 2006).

The Declaratory Judgment Act provides that "[i]n a case of actual controversy . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In considering a request for declaratory judgment, courts should consider "whether granting relief would serve a useful purpose, or, put another way, whether the sought-after declaration would be of practical assistance in setting the underlying controversy to rest." *Rhode Island v. Narragansett Indian Tribe,* 19 F.3d 685, 693-694 (1st Cir. 1994) (finding declaratory relief claim ripe for review because it presents "a question of immediate importance to all parties" and "the required interpretation of [the statute at issue] projects a 'purely legal' issue").

A motion for judgment on the pleadings is an appropriate procedural vehicle to seek a declaration of the parties' rights on an issue of contract interpretation. *See, e.g.*, *HSBC Realty Credit Corp. (USA) v. O'Neill*, Civ. A. No. 12-11733-RGS, 2013 WL 362823 (D. Mass. Jan. 30, 2013) (granting plaintiffs' motion for judgment on the pleadings seeking enforcement of express terms of guaranty contract), *aff'd*, 745 F.3d 564 (1st Cir. 2014); *Terumo Americas Holding, Inc. v. Tureski*, Civ. A. No. 14-13838-DJC, 2015 WL 4529746, at *3 (D. Mass. July 27, 2015) (granting motion for judgment on the pleadings reasoning that procedural device "is a proper framework for enforcing unambiguous contracts because there is no need to resolve material disputes of fact" (citation omitted)); *Atain Specialty Ins. Co. v. Bos. Rickshaw LLC*, 387 F. Supp. 3d 157, 160 (D. Mass. 2019) (interpreting insurance contract language in connection

9

with motion for judgment on the pleadings); *Accents of Sterling, Inc. v. Ohio Sec. Ins. Co.*, No. 20-cv-11005-DJC, 2021 WL 2117180, at *1 (D. Mass. May 25, 2021) (same).[4]

   The Court's ruling in *HSBC Realty Credit Corporation* illustrates that a case involving unambiguous contractual terms may be resolved on a motion for judgment on the pleadings.  In that case, the plaintiff lender filed suit against a loan guarantor, seeking to enforce the guaranty contract when the borrower failed to timely meet its payment obligations.  2013 WL 362823, at *1-2.  The defendant raised eighteen affirmative defenses based on allegations that the plaintiff was required to first seek recovery from a collateral property and the plaintiff had previously represented that it would do so.  *Id.* at *3.  In granting the plaintiff's motion for judgment on the pleadings, the court found that these defenses were "eviscerated by the plain language of the Guaranty" contract.  *Id.*  The court highlighted that the contract "explicitly state[d]" that the plaintiff need not first seek recovery from any collateral and that the defendant had "'irrevocably, absolutely and unconditionally' guaranteed" the loan.  *Id.*  Because the "[p]arties are bound by the plain terms of their contract," the court granted the plaintiff's motion

---

[4]  Courts in other jurisdictions have similarly held that a motion for judgment on the pleadings is an appropriate procedural vehicle to declare the parties' rights on an issue of contract interpretation.  *See, e.g., Bayer Chems. Corp. v. Albermarle Corp.*, 171 F. App'x 392, 396 (3d Cir. 2006) (affirming the district court's decision granting plaintiff's motion for judgment on the pleadings on its declaratory judgment complaint); *Villa Health Care, Inc. v. Ill. Health Care Mgmt. II, LLC*, No. 12-3205, 2013 WL 3864418, at *2 (C.D. Ill. July 25, 2013) (granting plaintiff's motion for judgment on the pleadings and entering declaratory judgment in favor of plaintiff and recognizing that "[c]laims that raise a pure issue of contract interpretation may be resolved by motions for judgment on the pleadings because the construction of a written contract is a matter of law" (citation omitted)); *Concordia Partners, LLC v. Ward*, No. 2:12-cv-138-GZS, 2013 WL 593862, at *6 (D. Me. Feb. 15, 2013) (granting plaintiff's motion for judgment on the pleadings on its complaint for declaratory judgment concerning the interpretation of an operating agreement); *NBC Universal, Inc. v. Paxson Commc'ns Corp.*, Civ. A. No. 650-N, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005) ("[J]udgment on the pleadings . . . is a proper framework for enforcing unambiguous contracts because there is no need to resolve material disputes of fact.  Rather, a determination of whether a contract is ambiguous is a question for the court to resolve as a matter of law.").

for judgment on the pleadings and denied the defendant's request to replead their defenses, finding that "[b]ecause [the defendant] cannot plead around the express language of the Guaranty, any repleading would be futile." *Id.* at *3, *5 (citation omitted).

As explained in further detail below, the same is true here: none of PGIC's arguments can override the express and unequivocal contractual language of the parties' agreements that states that "[a]ll liabilities of the Company [AEIC] that have arisen or could arise, under any insurance contract, or any reinsurance treaty or otherwise, have been and will be assumed by Seller [PGIC] pursuant to the Reinsurance Agreement," (SPA § 2.19(b)), that AEIC had "and will at Closing have, no liabilities of any nature, whether absolute, accrued, contingent or otherwise or whether due or to come due, other than those assumed by Seller [PGIC] pursuant to the Reinsurance Agreement," (SPA § 2.19(b)), and that PGIC will "assume as 100% reinsurance" the subset of insurance business that PGIC could not directly assume (Reinsurance Agreement § 6). "Where [the plain terms] are unambiguous, 'the contract must be enforced according to its terms.'" *HSBC Realty Credit Corp.*, 2013 WL 362823, at *3 (quoting *Edmonds v. United States*, 642 F.2d 877, 881 (1st Cir. 1981)).

**B.    The Court Should Declare That The
Reinsurance Agreement Unambiguously Requires
PGIC To Administer and Pay Claims Made Against AEIC Policies**

Interpretation of an unambiguous contract "is a question of law that is appropriate for a judge to decide[, and w]hether a contract is ambiguous is also a question of law." *Harrell v. Backstage Salon & Day Spa, Inc.*, No. 2184CV01795-BLS2, 2022 WL 618681, at *3 n.1 (Mass. Super. Ct. Feb. 22, 2022) (citations omitted) (granting motion for judgment on the pleadings regarding breach of contract claim). The contract is to be "fairly and reasonably construed in order to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished." *Nicolaci v. Anapol*, 387 F.3d 21, 24 (1st Cir. 2004) (citation omitted)

(affirming district court's interpretation of indemnification clause of stock purchase agreement as a matter of law in connection with Rule 12 motion because the "[a]greement's unambiguous language leaves no question of fact to be resolved," *id.* at 27).

Absent an ambiguity, "the contract must be enforced according to its terms." *HSBC Realty Credit Corp.*, 2013 WL 362823, at *3 (citation omitted). However, "[t]he fact that the parties disagree about how to read this provision does not make it ambiguous." *Harrell*, 2022 WL 618681, at *3 n.1. Ambiguity arises only if the language "is susceptible to more than one" meaning and reasonably intelligent persons would differ as to which meaning is the proper one. *Atain Specialty*, 387 F. Supp. 3d at 161 (citation omitted).

Here, the Reinsurance Agreement unambiguously provides that PGIC assumed liability and would be responsible for claims made against AEIC policies going forward:

- The preamble of the agreement explains that "to facilitate the Sale [of AEIC to an unrelated party], it is deemed desirable to transfer any and all of American's liabilities to, and have them assumed by, Pennsylvania General" (Reinsurance Agreement at 1);

- Paragraph 2 provides that "[b]y this Instrument, the liabilities and assets of American shall be transferred to Pennsylvania General and Pennsylvania General shall thereby succeed to the liabilities and assets of American" (Reinsurance Agreement § 2);

- Paragraph 3 provides that "[i]mmediately as of the Effective Date and Time, . . . Pennsylvania General shall be deemed to have assumed any and all of the liabilities and assets of American" (Reinsurance Agreement § 3);

- For certain insurance businesses that could not be transferred to PGIC directly, PGIC agreed to assume liability for those businesses as a reinsurer until such time as PGIC was properly licensed and could directly assume liability for those claims, (Reinsurance Agreement § 6).

The liabilities assumed by PGIC are broadly defined to include "any and all of American's liabilities or contractual commitments of every nature and description, whether absolute, accrued, contingent or otherwise ***or whether due now or in the future.***" (Reinsurance Agreement § 5 (emphasis added)). In particular, the liabilities transferred expressly included

"any and all unpaid losses and loss adjustment expenses and any and all liabilities existing or arising in the future under Section 4.a," (Reinsurance Agreement § 5(a)), and "any and all subsequent actions, proceedings or liabilities arising from any of the foregoing liabilities or the assets of American" (Reinsurance Agreement § 5(h)). Section 4.a in turn provided that the assets transferred to PGIC included all of AEIC's businesses, including "underwriting contracts, including direct insurance policies and endorsements in respect thereto, reinsurance contracts, facultative contracts, retrocession agreements and any and all other underwriting contracts of every kind and description." (Reinsurance Agreement § 4(a)). Thus, the liabilities transferred to PGIC expressly included any claims made on AEIC policies, including future claims, and any litigation resulting from those claims.

As other courts have noted, "one who assumes liability, as distinguished from one who agrees to indemnify against it, takes the obligation of the transferor unto himself, including the obligation to conduct litigation." *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2017 WL 4810801, at *7 (E.D. Pa. Oct. 25, 2017) (quoting *Hatco Corp. v. W.R. Grace & Co. Conn.*, 59 F.3d 400, 406 (3d Cir. 1995)); *see also Alexander v. McPeck,* 75 N.E. 88, 89-90 (1905) (finding that an agreement to assume and discharge debts and liabilities of prior business "is something more than a mere contract of indemnity" and if the transferee "desired to have the suit defended, it was his duty to take the proper measures to that end").

Thus, the Reinsurance Agreement transferred to PGIC the responsibility to administer and pay claims made on AEIC policies, either directly through the assumption of liability or as a reinsurer pursuant to Paragraph 6 of the Reinsurance Agreement. Indeed, the

Reinsurance Agreement included a number of provisions establishing that PGIC would be the proper party to handle AEIC claims going forward:

- For the Retained Businesses, PGIC expressly agreed that it would "at its sole expense, perform any and all administrative functions for such Retained Business, including without limitation claims handling, underwriting and regulatory functions, and shall reimburse American for any and all out of pocket expenses related thereto" (Reinsurance Agreement § 6);

- Paragraph 8 provides that "all liabilities of every nature and description of American at the time of the Transfer and Assumption shall attach to and be assumed by Pennsylvania General and may be enforced against Pennsylvania General to the same extent as if such liabilities had been originally incurred or contracted by Pennsylvania General" (Reinsurance Agreement § 8); and

- The notice and certification of assumption attached as Exhibit A to the Reinsurance Agreement informed AEIC policyholders that "Pennsylvania General shall be substituted as your insurer.  All payments, notices, claims and suits or actions on your Policy shall hereafter be made to Pennsylvania General as though it were your original insurer" (Reinsurance Agreement § 7).

Because the plain language of the Reinsurance Agreement unambiguously provides that PGIC assumed all of AEIC's liabilities as of June 15, 2005, SPARTA is entitled to its requested declaration under Count II that PGIC is responsible for all of AEIC's liabilities and contractual commitments of every nature and description, whether absolute, accrued, contingent or otherwise, or whether due at the time of the Reinsurance Agreement or in the future, including, without limitation, any and all subsequent actions, proceedings or liabilities arising from any of the liabilities or assets of AEIC.

### C.    The Court Should Declare That The SPA Unambiguously Requires PGIC To Indemnify SPARTA For Claims Made Against AEIC Policies

The SPA likewise demonstrates that the parties agreed that SPARTA would obtain AEIC as a "clean shell," such that there would be no liabilities remaining in AEIC after the transaction was consummated.

First, PGIC repeatedly represented in the SPA that all of AEIC's liabilities had been transferred to PGIC as part of the Reinsurance Agreement:

- In Section 2.8 of the SPA, PGIC agreed, among other things, that the Reinsurance Agreement constitutes a legal, valid and binding obligation of each of PGIC and AEIC, enforceable against each of PGIC and AEIC, respectively, in accordance with its terms (SPA § 2.8);

- In Section 2.19 of the SPA, PGIC agreed, among other things, that all liabilities of AEIC that have arisen or could arise, under any insurance contract or any reinsurance treaty or otherwise, have been and will be assumed by PGIC pursuant to the Reinsurance Agreement (SPA § 2.19); and

- In Section 6.12 of the SPA, PGIC agreed, among other things, that the Reinsurance Agreement shall be in full force and effect as a condition precedent to the obligation of SPARTA to close on the SPA (SPA § 6.12).

Second, in Section 8.1 of the SPA, PGIC agreed, among other things, to fully indemnify SPARTA for any breaches of (i) the above representations, (ii) any failure by PGIC to comply with its obligations under the Reinsurance Agreement, and (iii) any Losses arising out of AEIC's business prior to closing.  (SPA § 8.1.)  Between May and September 2011, SPARTA provided PGIC with multiple notices regarding PGIC's obligation to indemnify SPARTA for specific claims arising out of historical policies issued by AEIC before 2007.  (*See* Carroll Decl. Exs. 3-7.)  Notwithstanding this clear contractual obligation, to date PGIC has refused to administer and pay for such claims.  Accordingly, SPARTA is entitled to a declaration requiring PGIC to comply with its contractual promises.

       \*       \*       \*

In sum, the SPA and Reinsurance Agreement establish that PGIC, not SPARTA, is responsible for all claims made against historical policies issued by AEIC, including the administration of those claims.  Based on the plain language of the parties' agreements, SPARTA is entitled to its requested declarations in Counts I and II.

## <u>CONCLUSION</u>

For the foregoing reasons, SPARTA's motion for judgment on the pleadings

should be granted in its entirety.

Dated:  September 19, 2022                                  Respectfully submitted,
          Boston, Massachusetts

                                                   /s/ James R. Carroll
                                                 James R. Carroll (BBO #554426)
                                                 Christopher G. Clark (BBO #663455)
                                               Catherine A. Fisher (BBO #686163)
                                                 SKADDEN, ARPS, SLATE,
                                                     MEAGHER & FLOM LLP
                                                 500 Boylston Street
                                                 Boston, Massachusetts 02116
                                                 (617) 573-4800
                                                 james.carroll@skadden.com
                                                 christopher.clark@skadden.com
                                                 catherine.fisher@skadden.com

                                                 *Counsel for Plaintiff*
                                                 *SPARTA Insurance Company*