UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-------------------------------------------------------- x

SPARTA INSURANCE COMPANY      :
(as successor in interest to Sparta Insurance
Holdings, Inc.),      :

     :    Civil Action
           Plaintiff,         No. 21-11205-FDS
     :

    v.      :

PENNSYLVANIA GENERAL INSURANCE      :
COMPANY (now known as Pennsylvania
Insurance Company),      :

           Defendant.

-------------------------------------------------------- x

## PENNSYLVANIA INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................................. 3

        A.      PGIC's Liabilities Were Transferred and Assumed and a Third-Party Purchased
                of PGIC in 2012, After Which Defendant Did Not Receive Communications
                About AEIC Policyholder Claims. ......................................................... 3

        B.      Communications from Plaintiff to Defendant Beginning in 2021 .......................... 5

        C.      Plaintiff's Claims in this Litigation ........................................................ 6

        D.      Defendant's Responsive Pleadings. .................................................... 7

        E.      Plaintiff's Pending Motion ..................................................................... 8

III.    LEGAL STANDARD ............................................................................................ 8

IV.     ARGUMENT ......................................................................................................... 9

        A.      Defendant's Affirmative Defenses Raise Disputes of Material Fact that Bar
                Judgment on the Pleadings on Both Counts. ......................................... 9

                1.      Plaintiff ignores Defendant's various defenses related to OneBeacon's
                        assumption of liability .............................................................. 10

                2.      Defendant ignores various affirmative defenses related to conduct after the
                        2007 SPA was finalized. ........................................................... 12

        B.      Plaintiff's Motion Ignores Ambiguities in the Contracts that Cannot Be Resolved
                at this Stage. ............................................................................................ 15

        C.      Plaintiff Fails to Establish that Count I is Ripe or Merits Declaratory Relief. ...... 19

V.      CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Accents of Sterling, Inc. v. Ohio Sec. Ins. Co.*,
No. 20-cv-11005, 2021 WL 2117180 (D. Mass. May 25, 2021)...............................................14

*Anthony's Pier Four, Inc. v. HBC Assocs.*,
411 Mass. 451 (1991) .............................................................................................................13

*Atain Specialty Ins. Co. v. Bos. Rickshaw LLC*,
387 F. Supp. 3d 157 (D. Mass. 2019) ....................................................................................14

*Bayer Chems. Corp. v. Albermarle Corp.*,
171 F. App'x 392 (3d Cir. 2006) ............................................................................................14

*Cincinnati Ins. Co. v. Leighton*,
403 F.3d 879 (7th Cir. 2005) ..................................................................................................11

*Colonial Am. Life Ins. Co. v. Comm'r*,
491 U.S. 244 (1989)................................................................................................................16

*Concordia Partners, LLC v. Ward*,
No. 12-cv-138, 2013 WL 593862 (D. Me. Feb. 15, 2013) ....................................................14

*Fanucchi & Limi Farms v. United Agri Prod.*,
414 F.3d 1075 (9th Cir. 2005) ................................................................................................11

*Frost v. Suffolk Constr. Co. Inc.*,
No. 18-CV-11578, 2020 WL 7353403 (D. Mass. Dec. 15, 2020)....................................11, 12

*Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*,
887 F.2d 228 (9th Cir. 1989) .............................................................................................10, 13

*HSBC Realty Credit Corp. (USA) v. O'Neill*,
No. 12-cv-11733, 2013 WL 362823 (D. Mass. Jan. 30, 2013)...............................................13

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No.,
13-MD-2445, 2017 WL 4810801 (E.D. Pa. Oct. 25, 2017) .............................................18, 19

*In re Vertex Pharm. Inc., Sec. Litig.*,
357 F. Supp.2d 343 (D. Mass. 2005) ........................................................................................4

*KACT, Inc. v. Rubin*,
62 Mass. App. Ct. 689 (2004).................................................................................................13

*Kolbe v. BAC Home Loans Servicing, LP*,
738 F.3d 432 (1st Cir. 2013)...................................................................................................15

*KVS Info. Sys., Inc. v. Town of Tisbury*,
753 F. Supp. 1020 (D. Mass. 1990) ........................................................................................19

*Lear Corp. v. Johnson Electric Holdings Ltd.*,
353 F.3d 580 (7th Cir. 2003) ..................................................................................................20

*Mass. Ass'n of Afro-Am. Police, Inc. v. Boston Police Dep't,*
 973 F.2d 18 (1st Cir. 1992) .................................................................................... 19

*Melrose Hous. Auth. v. New Hampshire Ins. Co.,*
 402 Mass. 27, 520 N.E.2d 493 (1988) ................................................................... 13

*Micro Networks Corp. v. HIG Hightec, Inc.,*
 195 F. Supp. 2d 255 (D. Mass. 2001) .................................................................... 13

*Murray v. Uber Techs.,*
 486 F. Supp. 3d 468 (D. Mass. 2020) .................................................................... 15

*NBC Universal, Inc. v. Paxson Commc'ns Corp.,*
 Civ. A. No. 650-N, 2005 WL 1038997 (Del. Ch. Apr. 29, 2005) .......................... 14

*OrbusNeich Med. Co., BVI v. Boston Scientific Corp.,*
 694 F. Supp. 2d 106 (D. Mass. 2010) ...................................................................... 4

*Pagounis v. Pendleton,*
 52 Mass. App. Ct. 270, 753 N.E.2d 808 (2001) .................................................... 16

*Pittner v. Castle Peak 2012-1 Loan Tr.,*
 436 F. Supp. 3d 438 (D. Mass. 2020) .................................................................... 10

*Puretest Ice Cream, Inc. v. Kraft, Inc.,*
 806 F.2d 323 (1st Cir. 1986) .................................................................................. 17

*R.G. Fin. Corp. v. Vergara-Nunez,*
 446 F.3d 178 (1st Cir. 2006) ............................................................................... 3, 4

*Rivera-Gomez v. de Castro,*
 843 F.2d 631 (1st Cir. 1988) ............................................................................... 9, 10

*Scottsdale Ins. Co. v. United Rentals (N. Am.), Inc.,*
 152 F. Supp. 3d 15 (D. Mass. 2015) ...................................................................... 20

*Sec. Benefit Life Ins. Co., v. F.D.I.C.,*
 804 F. Supp. 217 (D. Kan. 1992) ........................................................................... 18

*Sonoiki v. Harvard Univ.,*
 37 F.4th 691 (1st Cir. 2022) ................................................................................... 15

*Taboas v. Fiddler, Gonzalez & Rodriguez, PSC,*
 297 F.R.D. 16 (D.P.R. 2014) ................................................................................. 12

*Tavares de Almeida v. Children's Museum,*
 28 F. Supp. 2d 682 (D. Mass. 1998) ........................................................................ 8

*Terumo Americas Holding, Inc. v. Tureski,*
 No. 14-cv-13838, 2015 WL 4529746 (D. Mass. July 27, 2015) ............................ 14

*Vandeventer,*
 101 S.W.3d ............................................................................................................ 18

*Venetsanos v. Zucker, Facher & Zucker,*
 271 N.J. Super. 459 (1994) .................................................................................... 12

*Villa Health Care, Inc. v. Ill. Health Care Mgmt. II, LLC*,
  No. 12-3205, 2013 WL 3864418 (C.D. Ill. July 25, 2013).................................................... 14

*Zurich Am. Ins. Co. v. Watts Regul. Co.*,
  860 F. Supp. 2d 78 (D. Mass. 2012) ........................................................................................ 16

**Rules**

Fed. R. Evid. 201 ........................................................................................................................ 4, 5

Rule 12(c) of the Federal Rules of Civil Procedure................................................................... 8, 10

**Other Authorities**

30 Williston on Contracts § 76:12 (4th ed.)................................................................................ 11

44A Am. Jur. 2d Insurance § 1817 ............................................................................................. 16

Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure:* Civil 2d § 1367 ...... 8, 9

## I.      INTRODUCTION

Plaintiff SPARTA Insurance Company's ("SPARTA's") motion for judgment on the

pleadings must be denied for multiple reasons.  First and most obvious is that it does not address

any, much less all, of the various affirmative defenses asserted by Defendant Pennsylvania

Insurance Company, f/k/a Pennsylvania General Insurance Company ("PGIC") that apply

regardless of whether Plaintiff's interpretation of the original contracts is correct.  As reflected in

Defendant's Answer, these defenses relate, among other things, to (i) a 2012 sale of Defendant as

a clean shell to North American Casualty Co. ("NAC") with no knowledge of the 2007 Stock

Purchase Agreement ("SPA") that provides the basis for Plaintiff's claims; (ii) the

contemporaneous assumption of Defendant's prior liabilities by OneBeacon Insurance Company

("OneBeacon"), the guarantor of and real party in interest to the 2007 SPA; (iii) Plaintiff's

knowledge of these transactions; and (iv) Plaintiff's decade-long delay in seeking reimbursement

from Defendant.  Plaintiff's reference to the general principle that the mere *assertion* of

affirmative defenses does not by itself preclude a motion for judgment on the pleadings does

nothing to address the *substance* of the affirmative defenses relevant to Plaintiff's claims here.

This Motion thus continues Plaintiff's unfortunate pattern of cryptic pleading and avoidant

briefing.  Plaintiff's effort began with misleading statements in the original complaint that

Defendant had paid American Employer Insurance Company ("AEIC") claims through 2021.  In

fact, Defendant has not handled any such claims at least since it was spun off as a clean shell in

2012.  Plaintiff then amended its complaint to use the passive voice, obscuring who had been

paying the claims for the past decade (OneBeacon, n/k/a Bedivere, not Defendant), while adding a

new count that asked this Court to issue an order based on a misquoted contractual provision.

Plaintiff's latest chapter seeks to introduce facts outside the pleading, ignores Defendant's

affirmative defenses, and accompanies efforts to stonewall basic discovery in contravention of its prior representations that discovery would proceed apace alongside the Court's consideration of this Motion.  The Federal Rules do not allow Plaintiff to plead around the problems with its case, and Plaintiff should stop trying.

Further, and even apart from the affirmative defenses, Plaintiff's interpretation of the contracts is wrong.  Plaintiff has now changed its underlying theory of Count II from a misquoted contractual provision to a view that such contracts automatically carry the duty to administer.  This new theory ignores the difference between assumption reinsurance and indemnification reinsurance, and the requirement of a novation to achieve the former.  The Amended Complaint does not allege such a novation, a novation did not occur, and any arguments otherwise could not be established on the pleadings.  Far from it, language from the 2007 SPA (ignored in Plaintiff's selective quotation) makes clear there was no novation.  Plaintiff thus at most has alleged a duty to indemnify.  Yet the additional documents Plaintiff asks this Court to incorporate confirm it has not complied with its contractual obligations for seeking indemnification and that any future dispute over a claim for reimbursement should not be resolved with a general order that just tracks the contractual language.

Finally, it bears emphasis that (properly described) this case presents what appears to be an unprecedented attempt by one clean shell purchaser (SPARTA) to hold another clean shell (PGIC) liable for its own contracts with policyholders after a decade of accepting payment from the company (OneBeacon) that assumed PGIC's liabilities after their common parent spun off PGIC as a clean shell.  Research has revealed no case like it.  The sooner Plaintiff abandons obscurantism and time-wasting efforts, and instead participates in good faith in discovery, the sooner this case can be resolved on the merits.

## II.    FACTUAL BACKGROUND

### A.    PGIC's Liabilities Were Transferred and Assumed and a Third-Party Purchased of PGIC in 2012, After Which Defendant Did Not Receive Communications About AEIC Policyholder Claims.

Defendant did not receive any communications from Plaintiff about the AEIC policies Plaintiff references in its Amended Complaint until 2021.  According to Plaintiff's supporting exhibits, Plaintiff was tendering claims it received from AEIC policyholders to *other* parties, including OneBeacon, n/k/a Bedivere, and to third-party claims administrators.  Dkt. 61-4 (Pl.'s Ex. 4) at 4 (recognizing OneBeacon and parent OneBeacon Insurance Group as parties who handled and managed AEIC claims).  Plaintiff's practice was consistent with a 2012 Transfer and Assumption Agreement executed by PGIC and OneBeacon, who was the guarantor of the 2007 SPA between Plaintiff and PGIC.  *Id.* at 7.

That 2012 agreement by its own terms was drafted "to turn PGIC into a shell insurer with no outstanding liabilities on its books" in order to facilitate its sale by parent company OneBeacon Insurance Group to a third party.  *See* Declaration of Erika Nyborg-Burch, Ex. A at 1.[1]  Under the agreement, PGIC transferred, and OneBeacon assumed all "[l]liabilities and assets," with OneBeacon to "thereby succeed to the liabilities and assets of PGIC."  *Id.* ¶ 2.  Those assets included "all of PGIC' assets of every nature and description of whatever kind," and liabilities likewise were defined as "all of PGIC's liabilities or contractual commitments of every nature and description," including without limitation certain enumerated liabilities.  *Id.* ¶¶ 4-5.  PGIC and OneBeacon also agreed to "take such additional steps, to perform such additional acts, and to furnish such additional documents and other agreements and instruments, as may at

---

[1] *See* Nyborg-Burch Decl., Ex. A.  The 2012 Transfer and Assumption is incorporated by reference into the Answer and, therefore, may be considered by the Court on this Motion.  *See*, *e.g.*, *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).  Plaintiff's exhibits also refer to the 2012 Transfer and Assumption.

any time be necessary or appropriate to carry out the transactions contemplated by this Instrument." *Id.* ¶ 9.

Prior to the 2012 Transfer and Assumption Agreement, both PGIC and OneBeacon were part of an Intercompany Pooling Agreement under which OneBeacon acted as the primary insurance company for the companies in the OneBeacon Insurance Group family. According to public records of the Massachusetts Division of Insurance, each of the Pool Participants ceded their direct business to OneBeacon and authorized that company to effect and be responsible for all reinsurance with third parties on contracts and insurance policies issued by the pool participants.[2] In addition, according to regulatory filings, Plaintiff was aware that all of PGIC's obligations were already ceded to One Beacon in 2001, long *before* the parties signed the 2007 SPA.[3] Furthermore, in anticipation of the subsequent 2012 Transfer and Assumption Agreement between PGIC and OneBeacon, PGIC was removed from the Intercompany Pooling Agreement with permission of regulatory authorities.[4]

The 2012 Transfer and Assumption Agreement contemplated OneBeacon and PGIC's parent, OneBeacon Insurance Group, would sell PGIC as a clean shell to a third party, NAC. And

---

[2] *See* Nyborg-Burch Decl., Ex. B. This document was prepared by the state agency responsible for regulating insurance in Massachusetts and publicly posted on its website, making it a proper subject of judicial notice. *See, e.g.*, *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006) ("The court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice."); *OrbusNeich Med. Co., BVI v. Boston Scientific Corp.*, 694 F. Supp.2d 106, 111 (D. Mass. 2010) ("The public filing of this document with a regulatory agency also makes it a proper subject of judicial notice, at least with regard to the fact that it contains certain information"); *In re Vertex Pharm. Inc., Sec. Litig.*, 357 F. Supp.2d 343, 352 (D. Mass. 2005) (taking judicial notice of FDA policy published on website in deciding motion to dismiss).

[3] *See* Nyborg-Burch Decl., Ex. D. This document is also subject to judicial notice because the fact that it was presented to a state agency can be readily determined from records whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201; *see* n. 2, *supra*.

[4] *See* Nyborg-Burch Decl., Ex. E. Like Exhibit D, the Court may take judicial notice of the fact that this document was presented to and assented to the state regulatory agency. *See* nn. 2 & 3, *supra*.

the 2012 Stock Purchase Agreement with NAC ("2012 SPA") did so:

> [I]n acquiring such shares of capital stock of the Company is that, as of the Closing, the Company shall be an entity (a) the assets of which consist only of (i) its corporate franchise, (ii) its licenses and authorizations to conduct the business of insurance as specified in such licenses and authorizations and (iii) Deposits which, collectively, have an aggregate Market Value equal to the Capital Amount (as defined herein), and (iv) any Net Cash Surplus (as defined herein).

Nyborg-Burch Decl., Ex. F at 2.[5]   The 2012 SPA made closing contingent on OneBeacon

finalizing "a transfer and assumption agreement all of its liabilities resulting from policies

previously issued by the Company but expired as of Closing." *Id.* at Sch. 4.1.13.   Both the 2012

SPA and the 2012 Transfer and Assumption were approved by regulators and have dictated

respective obligations since they took effect. *See* Dkt. 53 (Answer) at 11, Twenty-Second Aff.

Defense ("AD").

### B.   Communications from Plaintiff to Defendant Beginning in 2021.

From the time it was purchased as a clean shell in 2012 until May of 2021, Defendant did

not receive any communications from Plaintiff or AEIC policyholders related to any AEIC

policies. *See* Dkt. 61-4 at 3, 5-7.   By Plaintiff's own admission, Plaintiff understood

OneBeacon/Bedivere, to be responsible for administering and paying AEIC claims. *Id.* at 4.

Consistent with this understanding, Plaintiff was tendering to Bedivere or third-party claims

administrators the claims it received from AEIC policyholders. Dkt. 61-4 at 7; *see also id.* at 5.[6]

Defendant first received communications from Plaintiff about AEIC policies in May

2021 after Bedivere entered liquidation. *See* Dkt. 61-4.   In those exchanges, Plaintiff

---

[5] The 2012 Stock Purchase Agreement is incorporated by reference in Defendant's Answer and, thus, may be properly considered by the Court on this Motion. *See* n. 1, *supra*.

[6] OneBeacon was renamed Bedivere in 2015.   That fact is subject to judicial notice based on public documents posted on public websites of state regulators confirming this fact. *See e.g.,* https://insurance.mo.gov/CompanyAgentSearch/CompanySearch/compSearchDetails.php?id=12 5923; https://apps.sos.wv.gov/business/corporations/organization.aspx?org=137750; *see also* nn. 3, *supra*.

acknowledged it was no longer able to send claims to Bedivere and demanded that Defendant confirm that it instead would manage and pay claims Plaintiff received.  *Id.* at 7.  Plaintiff also sent Defendant a copy of the 2012 Transfer and Assumption between PGIC and OBIC, as well as a copy of the 2005 and 2007 contracts it has submitted as exhibits in this litigation—neither of which Defendant has record of having seen prior to receiving them from Plaintiff.  *Id.*  Defendant still has not received a copy of underlying AEIC policies.

        **C.**      **Plaintiff's Claims in this Litigation.**

Plaintiff's original Complaint told a different story.  In that Complaint, Plaintiff alleged that, "[f]or more than a decade, PGIC and/or its affiliates handled claims ***that SPARTA tendered to PGIC***," but that recently "PGIC has failed to do so."  Dkt. 1 (Compl.) ¶ 2, 14 (emphasis added).  That was misleading.  So, in its Amended Complaint, Plaintiff reverted to alleging in the passive voice only that the claims were "administered and paid in accordance with the SPA and Reinsurance Agreement."  Dkt. 19 (FAC) ¶ 3.  The exhibits Plaintiff asks this Court to incorporate fill in some of the gaps:  For example, Plaintiff represents that *Bedivere* was managing and paying the AEIC claims under the 2012 Transfer and Assumption agreement.  *See* Dkt. 61-4.

The Amended Complaint did not change the request for declaratory judgment over indemnification provisions, but it did add a second count seeking a declaration that "(a) PGIC is responsible for all of AEIC's liabilities and contractual commitments of every nature. . . [and] (b) PGIC shall, at its sole expense, perform any and all administrative functions for the prior AEIC business, including without limitation claims handling."  Dkt. 19, ¶¶ 29; *see id.*, ¶¶ 15-17.  Regarding (b), Plaintiff quoted the 2005 Reinsurance Agreement as requiring PGIC to, "'at [PGIC's] sole expense, perform any and all administrative functions [***for the prior AEIC***

*business*] including without limitation claims handling.'" *Id.*, ¶ 15 (emphasis added) (brackets in original).  Plaintiff's use of brackets, however, omitted a key limitation on that provision that made it applicable to only a *subset* of claims.  Dkt. 23-3 at 3–4; Dkt. 22 at 13–14; Dkt. 53 ¶ 15. The complete text states:  PGIC "shall, at its sole expense, perform any and all administrative functions **for such Retained Business** including without limitation claims handling. . . "  Dkt. 23-3 at 3 (emphasis added).[7]  Despite denying any misquotation in opposing Defendant's motion to dismiss and motion for reconsideration, Dkts. 26 at 14 n. 9, 32 at 7, & 50 at 5-6, Plaintiff now belatedly admits in seeking judgment in its favor that the provision addresses only "a small subset of insurance business that PGIC could not assume directly, defined as the Retained Business."  Dkt. 60 (Pl.'s Mem.) at 5.

> **D.    Defendant's Responsive Pleadings.**

Defendant's Answer denies Plaintiff's allegations about historic claims handling to the extent Plaintiff intended to suggest that it historically tendered claims from AEIC policyholders to Defendant prior to 2021.  Dkt. 53 at ¶¶ 3, 19.  Defendant also "specifically denie[d] that Plaintiff tendered claims for indemnity, including in accordance with the indemnification procedures set forth in the SPA," *id.* at ¶ 4, and asserted an affirmative defense on that basis, *id.* at 8, 8th AD.

In asserting its affirmative defenses, Defendant pled that Plaintiff was submitting its claims from AEIC policyholders to OneBeacon or its successors, including after OneBeacon assumed PGIC's liabilities in 2012.  Dkt. 53 at 9, 11th AD.  Defendant asserted Plaintiff knew OneBeacon was the real party in interest under the 2007 SPA.  *Id.* at 9, 12th AD.  Defendant also

---

[7] "Retained Business" is defined as: "(a) the historical bond insurance business of American (the 'Retained Bonding Business') and (b) the historical insurance business of American in those states in which such business has unearned premium or unpaid loss and in which Pennsylvania General does not have an insurance."  Dkt. 23-3 at 3.

pled NAC purchased PGIC as a clean shell from One Beacon Insurance Group in 2012, when PGIC's obligations had been transferred and assumed by OneBeacon. *Id.* at 9, 11th AD. Defendant further asserted Plaintiff consented to or ratified the conduct at issue, including the substitution of the guarantor to the 2007 SPA as the party bearing liability for obligations under the 2005 Reinsurance Agreement and the 2007 SPA. *Id.* at 9-10, 12th & 16th AD. Plaintiff's newly introduced exhibits confirm Plaintiff had a copy of the 2012 Transfer and Assumption Agreement, which it sent to Defendant prior to bringing this litigation. *See* Dkt. 61-4 at 7. Defendant further pled Plaintiff was estopped from the declaratory actions it sought, its claims were barred by the applicable statute of limitations or otherwise waived by its conduct, and that Plaintiff breached the duty of good faith and fair dealing. *Id.* at 9-11, 10th, 14th, 18th & 23rd AD.

      **E.**    **Plaintiff's Pending Motion.**

In its Motion for Judgment on the Pleadings, Plaintiff argues that the 2005 Reinsurance Agreement between PGIC and AEIC should be read to "unambiguously require[] PGIC to administer and pay claims made against AEIC policies." Dkt. 60 at 11 (capitalization changed). As to its request for a declaratory judgment under the indemnity provisions, Plaintiff asserts that it is "entitled to a declaration requiring PGIC to comply with its contractual promises." *Id.* at 13.

## III.   LEGAL STANDARD

Under Rule 12(c) of the Federal Rules of Civil Procedure, a party may, "[a]fter the pleadings are closed but within such time as not to delay the trial, move for judgment on the pleadings." A Rule 12(c) motion "is 'a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings.'" *Tavares de Almeida v. Children's Museum*, 28 F. Supp. 2d 682, 685 (D. Mass. 1998) (citing Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure:* Civil 2d §

1367)).  Because judgment "in such an abrupt fashion represents an extremely early assessment

of the merits of the case, the trial court must accept all of the nonmovant's well-pleaded factual

averments as true, and draw all reasonable inferences in his favor." *Rivera-Gomez v. de Castro*,

843 F.2d 631, 635 (1st Cir. 1988) (citations omitted); *see also* 5C Charles Allan Wright et

al., *Federal Practice and Procedure* § 1367 (3rd ed.2004) ("A motion for a judgment on the

pleadings only has utility when all material allegations of fact are admitted or not controverted in

the pleadings.").  Only when the nonmovant could not prove any set of facts that could entitle it

to relief should a court grant judgment on the pleadings.  *See Rivera-Gomez*, 843 F.2d at 635.

## IV.    ARGUMENT

Plaintiff is not entitled to judgment on the pleadings and its Motion should be denied.

First, drawing all inferences in Defendant's favor, Defendant's affirmative defenses (including

defenses that require additional discovery) preclude Plaintiff's requested judgments as to both

Counts at this early stage.  Second, even if Defendant had not raised affirmative defenses,

Plaintiff has not established that unambiguous contractual language supports its requested relief.

### A.    Defendant's Affirmative Defenses Raise Disputes of Material Fact that Bar Judgment on the Pleadings on Both Counts.

Plaintiff's Motion ignores that Defendant's responsive pleading and affirmative defenses

prevent resolution at this early stage.  These affirmative defenses raise at least two categories of

issues:  First, that OneBeacon, not PGIC, assumed any obligations to Plaintiff for administration

or indemnification of AEIC claims, either because Plaintiff consented to or otherwise ratified the

2012 Transfer and Assumption Agreement under which OneBeacon (the guarantor to the SPA)

assumed those liabilities, or because OneBeacon was the real party in interest to the SPA.  Dkt.

53 at 9, 11th & 12th AD.  Second, that Plaintiff's delay in seeking redress forecloses its broad-

sweeping request for declaratory relief, including because it waived its claims, is estopped from

raising them, or because the statute of limitations has run.  Such factual disputes preclude judgment on the pleadings, as they affect the viability of Plaintiff's claims.  *E.g.*, *Rivera-Gomez*, 843 F.2d at 635 ("the court may not grant a Rule 12(c) motion unless it appears beyond doubt that the [nonmoving party] can prove no set of facts in support of his claim") (quotation marks omitted); *Pittner v. Castle Peak 2012-1 Loan Tr.*, 436 F. Supp. 3d 438, 439–41 (D. Mass. 2020) (denying plaintiff's motion for judgment on pleading where facts in dispute as to conduct that could give rise to breach of contract and unfair competition claims).  In addition, where an affirmative defense would vitiate claims of liability, that defense "bars a judgment on the pleadings," "[e]ven assuming everything [Plaintiff] alleges is true."  *Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230, 231 (9th Cir. 1989).

      1.     *Plaintiff ignores Defendant's various defenses related to OneBeacon's assumption of liability.*

Defendant alleges in its Answer that Plaintiff's conduct, together with additional facts to be developed through discovery, establish Plaintiff consented to or otherwise ratified the substitution of OneBeacon for PGIC, including as memorialized in the 2012 Transfer and Assumption Agreement (which is virtually identical to the agreement Plaintiff relies on here). Dkt. 53 at 9-10, 12th & 16th AD.  Plaintiff's own exhibits confirm Plaintiff had a copy of that 2012 Transfer and Assumption Agreement prior to this litigation and continued to tender claims to OneBeacon even after it was spun off from the OneBeacon Insurance Group family and renamed Bedivere.  Evidence before this Court also establishes Plaintiff was well aware prior to purchasing AEIC that PGIC's liabilities were fully ceded to OneBeacon under the Intercompany Pooling Agreement, from which PGIC was removed with regulatory approval prior to the 2012 Transfer and Assumption Agreement.

Caselaw establishes that a substitution or novation may be effectuated through written consent or inferred from facts and surrounding circumstances, so long as those surrounding circumstances make clear the parties' assent.[8]  If proven, Defendant's allegations that Plaintiff gave express or implied assent to the 2012 Transfer and Assumption Agreement between PGIC and OneBeacon would thus prevent issuance of the declaratory order Plaintiff seeks.  Plaintiff's course of conduct in tendering claims from AEIC policyholders to OneBeacon (now Bedivere) is consistent with such consent.  Additional evidence of consent uncovered during discovery will further establish Plaintiff is not entitled to declaratory relief, and any factual dispute over consent only further illustrates why Plaintiff's requested judgment on the pleadings is premature.  *See Frost v. Suffolk Constr. Co. Inc.*, No. 18-CV-11578, 2020 WL 7353403, at *7 (D. Mass. Dec. 15, 2020) (denying defendant's 12(c) motion because plaintiff's factual allegations stated claim that defendant's conduct manifested assent to terms of contract and its indemnification obligations).

Defendant also asserts that OneBeacon was the real party in interest to the 2007 SPA—either by virtue of express contract or by implicit conduct.  Indeed, at the time Plaintiff signed the 2007 SPA, PGIC's business was already ceded to OneBeacon under the Intercompany Pooling Agreement, and OneBeacon, as the primary insurance company, was authorized to act on behalf of the pool.  *See* Nyborg-Burch Decl., Ex. B.   In an attachment to the application for regulatory approval for Plaintiff's acquisition of AEIC, the parties acknowledged that, "[a]s a

---

[8] *See Cincinnati Ins. Co. v. Leighton*, 403 F.3d 879, 888 (7th Cir. 2005) (implied novation where creditor's actions showed it would look solely to new debtor for payment of debt); *Fanucchi & Limi Farms v. United Agri Prod.*, 414 F.3d 1075, 1082 (9th Cir. 2005) (to find a novation, "it is not necessary to meet and state either in writing or orally that the original contract was rescinded. If the intent to abandon can be ascertained from the acts and conduct of the parties the same result will be attained.") (citations omitted); 30 Williston on Contracts § 76:12 (4th ed.) (intent to create a novation "may be determined from the actions of the parties given the contractual relationships that exist between or among them," so parties "need not expressly manifest their intent to accomplish a novation because a novation may be inferred from the facts and circumstances surrounding the transaction").

practical matter, [OneBeacon's] Guarantee [of the 2007 SPA] will not result in any increase in OneBeacon's liabilities, since ***all of PGIC's insurance obligations are already ceded to OneBeacon*** under the Reinsurance (Pooling) Agreement dated as of January 1, 2001." *Id.*, Ex. D (emphasis added).   While Defendant has not yet received a copy of the original pooling agreement, this agreement may further prove that Plaintiff understood OneBeacon to be the exclusive entity responsible for any AEIC liabilities even prior to the 2012 Transfer and Assumption Agreement.  *See e.g.*, *Venetsanos v. Zucker, Facher & Zucker*, 271 N.J. Super. 459, 463 (1994) (a second reinsurer "should be regarded as the direct insurer" where parent company "responsible for negotiating and settling" the insured's claims, "made the underwriting decisions," and "undertook 100% of each risk").

>    2.    *Defendant ignores various affirmative defenses related to conduct after the 2007 SPA was finalized.*

Defendant's additional affirmative defenses, including waiver, estoppel, statute of limitations, and breach of the covenant of good faith and fair dealing likewise preclude judgment on the pleadings.  *See e.g.*, Dkt. 53 at 10-11, 13th, 14th, 18th, 19th, & 24th AD.  Where "a plain reading of the complaint and answer" demonstrates disputed facts as to defendant's affirmative defenses, "judgment on the pleadings is not appropriate." *Taboas v. Fiddler, Gonzalez & Rodriguez, PSC*, 297 F.R.D. 16, 18 (D.P.R. 2014).  As discussed above, the Answer pleads Plaintiff sent AEIC claims exclusively to the guarantor of the 2007 SPA who assumed PGIC's liability in 2012, to the parent company, or to a third-party claims administrator.  Plaintiff admitted it was tendering the claims it received from AEIC policyholders to the guarantor even after that guarantor was sold and became Bedivere.  Indeed, only after that company went into liquidation did Plaintiff first assert any claims against Defendant arising out of a contract of which Defendant has no record.

Defendant's affirmative defenses that Plaintiff's conduct constitutes waiver and a breach of the covenant of good faith of fair dealing, and that Plaintiff is estopped or otherwise barred by the statute of limitations from entitlement to the order it requests, turn on disputed issues of material fact. *See*, *e.g.*, *Micro Networks Corp. v. HIG Hightec, Inc.*, 195 F. Supp. 2d 255, 266 (D. Mass. 2001) (company's "affirmative conduct and the silence of its officer" supported application of equitable estoppel to provisions of SPA); *KACT, Inc. v. Rubin*, 62 Mass. App. Ct. 689, 695–97 (2004) (recognizing "[w]hether waiver exists is a question of fact"); *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471–473 (1991) (noting every Massachusetts contract is subject to an implied covenant of good faith and fair dealing); *Melrose Hous. Auth. v. New Hampshire Ins. Co.*, 402 Mass. 27, 32, 520 N.E.2d 493, 497 (1988) (recognizing accrual under statute of limitations turns on whether alleged breach was inherently unknowable, and holding, where it was not limitations period had run). Because Defendant's responsive allegations "create a question of material fact that should not [be] determined in a judgment on the pleadings," Plaintiff's motion should be denied. *Gen. Conf. Corp. of Seventh-Day Adventists*, 887 F.2d at 231.

Neither Plaintiff's motion nor the authorities it cites provide any justification for ignoring Defendant's affirmative defenses at this stage. None of Plaintiff's cited authorities involved contested facts as to liability, or affirmative defenses raising issues of entitlement to relief. In Plaintiff's primary authority, the defendant's affirmative defenses raised only *legal* questions. *See* Dkt. 60 (citing *HSBC Realty Credit Corp. (USA) v. O'Neill*, No. 12-cv-11733, 2013 WL 362823 (D. Mass. Jan. 30, 2013), *aff'd*, 745 F.3d 564 (1st Cir. 2014)).[9] Plaintiff's additional

---

[9] The defendant in *HSBC Realty Credit Corp.* relied on two theories under which it would not be liable, both of which were foreclosed by explicit and contradictory provisions in the contract. 2013 WL 362823, at *3–4 (finding express contractual right for plaintiff to first seek

authorities likewise did not require the court to address defenses that turned on disputed factual questions. *See Atain Specialty Ins. Co. v. Bos. Rickshaw LLC*, 387 F. Supp. 3d 157, 160 (D. Mass. 2019) (dispute over coverage under policy where court determined as a matter of law whether uncontested facts of event fell within exception, and defendant's objection challenged only the correct answer to this analysis); *Terumo Americas Holding, Inc. v. Tureski*, No. 14-cv-13838, 2015 WL 4529746, at *3 (D. Mass. July 27, 2015) (counterclaims did not raise factual disputes but instead argued alternative interpretations of provisions at issue as a matter of law); *see also Accents of Sterling, Inc. v. Ohio Sec. Ins. Co.*, No. 20-cv-11005, 2021 WL 2117180, at *1 (D. Mass. May 25, 2021) (addressing competing interpretations of contract's exclusion provision based on uncontested facts on defendants 12(c) motion and concluding defense could be resolved because plaintiff made no factual allegations that could create required objective impression).[10]   In contrast, Defendant has raised viable affirmative defenses that turn on the parties' conduct after the respective contracts were finalized, and cannot be resolved at this early stage based on contractual text alone.  Plaintiff did not challenge the sufficiency of any of these defenses in moving for judgement on the pleadings and has thus waived any such arguments. *See*

---

recovery from defendant precluded assertion that plaintiff must pursue alternative remedies first; defendant would have been *per se* unreasonable in relying on prior contrary representations).

[10] Plaintiff also cites several out-of-circuit cases, all of which likewise are distinguishable.  *See Bayer Chems. Corp. v. Albermarle Corp.*, 171 F. App'x 392, 396 (3d Cir. 2006) (contract language contained specific and unambiguous requirements that a product contain certain percentages of chemicals, and there was no factual dispute that Defendant's product did not meet them); *Villa Health Care, Inc. v. Ill. Health Care Mgmt. II, LLC*, No. 12-3205, 2013 WL 3864418, at *2 (C.D. Ill. July 25, 2013) (contract contained unambiguous date on which contract would terminate and defendant raised only a legal defense regarding interpretation of language elsewhere in the contract); *Concordia Partners, LLC v. Ward*, No. 12-cv-138, 2013 WL 593862, at *6 (D. Me. Feb. 15, 2013) (defendant raised only a legal argument that contract in dispute was ambiguous, and court disagreed with contract interpretation because it required reading conflicting interpretations into the same clause); *NBC Universal, Inc. v. Paxson Commc'ns Corp.*, Civ. A. No. 650-N, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005) (in addressing cross-motions, granting or denying judgment on the pleadings on questions of law about contract interpretation, but declining to rule on issues of fact, which required discovery).

*Murray v. Uber Techs.*, 486 F. Supp. 3d 468, 473 (D. Mass. 2020) ("Arguments raised for the first time in a rely brief are generally deemed waived."). Drawing all factual inferences in Defendant's favor, Plaintiff has not established it is entitled to the declaratory orders it seeks.

**B.     Plaintiff's Motion Ignores Ambiguities in the Contracts that Cannot Be Resolved at this Stage.**

Ambiguities in the operative contracts further preclude judgment on the pleadings as to Count II. When "an agreement's terms are inconsistent on their face or where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken, the language is ambiguous." *Sonoiki v. Harvard Univ.*, 37 F.4th 691, 711 (1st Cir. 2022). Facing ambiguous contractual language, it "is inappropriate for a court to resolve a contract dispute on the pleadings, because the outcome will depend on extrinsic evidence that will surface at discovery or at trial." *Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 440 n.6 (1st Cir. 2013).

While Plaintiff urges the Court to "declare that the Reinsurance Agreement unambiguously requires PGIC to administer and pay claims made against AEIC policies," Dkt. 60 at 11, Plaintiff's shifting theory on Count II belies the professed lack of ambiguity. In its Amended Complaint and opposition to Defendant's motion to dismiss, Plaintiff tied the asserted obligation to administer and pay claims to a provision of the Reinsurance Agreement that addressed a limited set of liabilities (the "Retained Business"). Plaintiff did not plead that claims arising from the Retained Business were at issue, but used misleading brackets to obscure that textual limitation. In its present motion, Plaintiff has quietly moved away from that theory, and now asserts that the 2005 Reinsurance Agreement "transferred to PGIC the responsibility to administer and pay claims made on AEIC policies, either directly through the assumption of liability or as a reinsurer pursuant to [the paragraph quoted in the Amended Complaint]." Dkt.

-15-

60 at 13.  At a minimum, Plaintiff's two different theories in support of a purported duty to administer claims raise ambiguities that preclude a judgment on the pleadings.

Plaintiff's newest argument that the assumption of liabilities implicitly intended to impose a duty for PGIC to administer claims fails to account for ambiguous and contradictory contractual language.  While the 2007 SPA refers to the 2005 Reinsurance Agreement as a "Reinsurance Agreement," reinsurance may refer to two different transactions: assumption reinsurance and indemnity reinsurance.  *See Colonial Am. Life Ins. Co. v. Comm'r*, 491 U.S. 244, 247 (1989).  "In the case of assumption reinsurance, the reinsurer steps into the shoes of the ceding company with respect to the reinsured policy, assuming all its liabilities and its responsibility to maintain required reserves against potential claims."  *Id.*  For indemnity reinsurance, "it is the ceding company that remains directly liable to its policyholders, and that continues to pay claims and collect premiums," with the reinsurer indemnifying for any liability incurred.  *Id.*  Determining the intended type of reinsurance is thus an important step in interpreting the contracts.

The requirement of a novation is a dispositive factor that distinguishes assumption reinsurance from indemnity reinsurance.  *See* 44A Am. Jur. 2d Insurance § 1817 ("The existence of an assumption depends on proof of the ordinary elements of novation, including the agreement of all parties to the new contract and the extinguishment of the old one.").  Novation, in turn, requires the "agreement of all parties to the new contract." *Zurich Am. Ins. Co. v. Watts Regul. Co.*, 860 F. Supp. 2d 78, 90 (D. Mass. 2012) (quotation marks omitted); *see also Pagounis v. Pendleton*, 52 Mass. App. Ct. 270, 273, 753 N.E.2d 808, 811 (2001) ("Without the agreement of the parties to an extinguishment of the prior contract and to a substitution of the new contract, there can be no novation.").  When Plaintiff, Defendant, and OneBeacon entered

-16-

into the SPA two years after the 2005 Reinsurance Agreement, that SPA—the only contract to which Plaintiff is a party—expressly disclaimed this fundamental requirement of assumption reinsurance.

Specifically, § 2.4 of the 2007 SPA states:

> Notwithstanding the provisions of this Section 2.4, or any other provisions of this Agreement, it is acknowledged and agreed that Seller ***makes no representation that the Reinsurance Agreement constitutes a novation*** or that policyholders did not have any right of consent with respect thereto.

Dkt. 61-1 at 10-11 (emphasis added).  Because the parties disclaimed a novation with policyholders, the parties would have understood that AEIC (now Plaintiff) retained its direct relationship with its policyholders, and PGIC or OneBeacon was responsible to indemnify.[11]

That the 2007 SPA contains an indemnification provision further undermines Plaintiff's claim that the agreements set forth an unambiguous obligation for PGIC to administer and pay claims.  That indemnification provision allows the Purchaser (Plaintiff) to seek indemnification for "any Loss arising out of or resulting from the existence of the Company prior to the Closing or the conduct of the Business" prior to closing, or breaches of contractual obligations.  Dkt. 61-1 at 46-47, § 8.1.  If the Agreement had required PGIC to take on direct obligations, there would be no need for Plaintiff to seek indemnification under these provisions for AEIC claims. At a minimum, the indemnification provision and Plaintiff's efforts to enforce it create ambiguities that foreclose the conclusive interpretation Plaintiff asks this Court to render on the pleadings.

---

[11] To the extent that the 2007 SPA codified an intervening change in what the parties understood to be the obligations under the 2005 Reinsurance Agreement, the express terms of the 2007 SPA would supersede any contradictory terms in the 2005 Reinsurance Agreement. *See Puretest Ice Cream, Inc. v. Kraft, Inc.*, 806 F.2d 323, 325 (1st Cir. 1986) (explaining that "the merger doctrine holds that where the subject matter of one contract is subsequently entirely subsumed in another, the latter becomes the exclusive medium of ascertaining the contract by which the parties bound themselves") (quotation marks omitted).  Determining whether the parties did, in fact, intend to modify the 2005 Reinsurance Agreement when they drafted and signed the 2007 SPA requires reference to additional evidence to be discovered.

Terms in the purported notice to policyholders attached to both agreements further undermine Plaintiff's claim that it is asking this Court to interpret two unambiguous contracts. That attachment, "Exhibit A," was incomplete and unsigned, raising questions as to what, if any, notice was provided to policyholders.[12]  The 2005 agreement stated that Exhibit A was sent to policyholders of in-force premiums, while the 2007 SPA represented that it had been sent to policyholders of unearned premiums.  Dkt. 61-1 at 10; Dkt. 61-2 at 4.  Even if sent to some subset of policyholders, the notice would not give rise to a novation where it: (1) purported to advise policyholders that a transfer and assumption had already occurred; (2) did not require written consent of policyholders prior to (let alone after) that agreement was executed; (3) provided only 30 days for objections; and (4) did not purport to release AEIC from its obligations.[13]  Together, these issues preclude the contractual interpretation Plaintiff asks this Court to render, even had Defendants not pled a single affirmative defense.

In arguing otherwise, Plaintiff does not address the relevant legal standard for insurance contracts or the factual disputes in applying that standard here, and its authorities do not otherwise establish it is entitled to judgment.  For example, Plaintiff cites a case addressing corporate pharmaceutical subsidiaries for the principle that assumption of liability is different from indemnification.  *See* Dkt. 60 at 13 (citing *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2017 WL 4810801, at *7 (E.D. Pa. Oct. 25,

---

[12] *See* Dkt. 61-2 at 7 (("This change is effective as of [Date]" and "Attn.: [Name] Telephone [  ] Telecopier [  ]" and "By: _____ [  ], Senior Vice President, By: _____ [ ], Secretary").

[13] *See Vandeventerv. All Am. Life & Cas. Co.*, 101 S.W.3d 703, 715 (Tex. App. 2003) ("The Assumption Agreement, to which [policyholders] were not parties and which was never furnished to them, is no evidence that Appellants agreed to a substitution" even though policyholders sent an "Assumption Certificate" notifying them of the agreement); *Sec. Benefit Life Ins. Co., v. F.D.I.C.*, 804 F. Supp. 217, 226-27 (D. Kan. 1992) (assumption agreement was not sufficient to extinguish or relieve original insurer of its obligations where certificates failed to state original insurer was "released").

2017)).  That case only illustrates Defendant's point.  After drawing the distinction between assumption and indemnification, the court further clarified that an assumption agreement requires consent to be liable to third parties.  *In re Suboxone*, 2017 WL 4810801, at *7.  Here, the 2007 SPA disclaimed any representation that the 2005 Reinsurance Agreement constituted a novation.  Given that disclaimer, and the additional ambiguities raised above and in Plaintiff's shifting arguments, Plaintiff has failed to establish that Defendant entered into an assumption reinsurance agreement that would have imposed an obligation to administer AEIC policyholders' claims as a matter of law.  *See KVS Info. Sys., Inc. v. Town of Tisbury*, 753 F. Supp. 1020, 1024–25 (D. Mass. 1990) (finding "dispute as to material facts that go to the issue of the validity of the contract between KVS and the Town" required denial of competing motions for judgment on the pleadings and summary judgment).  These contractual ambiguities provide an independent reason to find that Plaintiff is not entitled to a judgment on the pleadings.

C.    **Plaintiff Fails to Establish that Count I is Ripe or Merits Declaratory Relief.**

Defendant is concurrently filing a partial cross-motion for judgment on the pleadings seeking an order that Count I is not justiciable.  Even if the Court finds that it cannot grant Defendant's Motion at this stage, the issues Defendant raises in that motion at a minimum foreclose Plaintiff's request for an order parroting an indemnification provision in the 2007 SPA.

The exhibits Plaintiff has sought to incorporate fail to establish that Plaintiff tendered claims for a specific monetary amount under the procedures set forth in the 2007 SPA.  *See* Dkts. 61-3; 61-4; 6-15; 61-6; *see also* Dkt. 61-1 (SPA) at 49-50, §§ 8.3 & 8.4.  Where there is no evidence that Plaintiff sought indemnification pursuant to those procedures, there are, at a minimum, factual issues as to whether a declaratory order parroting existing contractual language would be an impermissible or inappropriate advisory opinion.  *See*, *e.g.*, *Mass. Ass'n of Afro-Am. Police, Inc. v. Boston Police Dep't*, 973 F.2d 18, 20 (1st Cir. 1992) (*per curiam*)

-19-

(emphasizing requested relief not ripe where turns on "contingent events that may not occur as anticipated or may not occur at all"); *Scottsdale Ins. Co. v. United Rentals (N. Am.), Inc.*, 152 F. Supp. 3d 15, 20 (D. Mass. 2015) (finding request "not yet ripe for consideration regarding the duty to indemnify where, as here, the underlying action has not determined liability or adjudicated factual disputes"); *Lear Corp. v. Johnson Electric Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) (affirming discretionary dismissal of claim in light of the requested declaration's "advisory quality").  For this independent reason, Plaintiff's motion should further be denied.

## V.     CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's Motion.

DATED: October 19, 2022

Respectfully submitted,

/s/ Samuel C. Kaplan

Samuel C. Kaplan (admitted *pro hac vice*)
skaplan@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

Maxwell V. Pritt (admitted *pro hac vice*)
mpritt@bsfllp.com
Reed D. Forbush (admitted *pro hac vice*)
rforbush@bsfllp.com
Erika Nyborg-Burch (admitted *pro hac vice*)
enyborg-burch@bsfllp.com
Mariah J. Noah (admitted *pro hac vice*)
mnoah@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

John F. Dew (BBO #668467)
jdew@cohenkinne.com
COHEN, KINNE, VALICENTI & COOK
28 North Street, 3rd Floor
Pittsfield, MA 01201
Telephone: (413) 443-9399
Facsimile: (413) 442-9399

*Counsel for Defendant, Pennsylvania
Insurance Company*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on October 19, 2022, the foregoing document was electronically filed using the Court's CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

/s/ *Samuel C. Kaplan*
Samuel C. Kaplan