# EXHIBIT B



**THE COMMONWEALTH OF MASSACHUSETTS**

**OFFICE OF CONSUMER AFFAIRS AND BUSINESS
REGULATION**

**DIVISION OF INSURANCE**

*REPORT OF EXAMINATION OF THE*

**ONEBEACON AMERICA INSURANCE COMPANY**

**Canton, Massachusetts**

**As of December 31, 2006**

**NAIC GROUP CODE 1129**

**NAIC COMPANY CODE 20621**

**EMPLOYERS ID NO. 04-2475442**

**ONEBEACON AMERICA INSURANCE COMPANY**

**TABLE OF CONTENTS**

| | Page |
|---|---|
| Salutation | 1 |
| Scope of Examination | 2 |
| History | 3 |
| General | 3 |
| Common Capital Stock | 3 |
| Dividends to Stockholders | 4 |
| Growth of Company | 4 |
| Management | 4 |
| Annual Meeting of Stockholders | 4 |
| Board of Directors | 4 |
| Officers | 5 |
| Conflict of Interest Procedures | 6 |
| Management Continuity and National Emergency | 6 |
| Corporate Records | 7 |
| Affiliated Companies | 7 |
| Corporate Governance | 7 |
| Transactions and Agreements with Subsidiaries and Affiliates | 8 |
| Organization Chart | 8 |
| Fidelity Bond and Other Insurance | 9 |
| Statutory Deposits | 9 |
| Insurance Products and Related Practices | 10 |
| Territory and Plan of Operation | 10 |
| Treatment of Policyholders and Claimants – Market Conduct | 10 |
| Reinsurance | 10 |
| OneBeacon Inter-Company Reinsurance Pool | 10 |
| Other Inter-Company Ceded | 12 |
| Accounts and Records | 13 |
| Financial Statements | 14 |
| Statement of Assets, Liabilities, Surplus and Other Funds | 15 |
| Statement of Income | 17 |
| Statement of Capital and Surplus | 18 |
| Reconciliation of Capital and Surplus | 19 |
| Notes to Financial Statements | 20 |
| Comments and Recommendations | 22 |
| Acknowledgement | 23 |



# COMMONWEALTH OF MASSACHUSETTS
## Office of Consumer Affairs and Business Regulation
### DIVISION OF INSURANCE

One South Station • Boston, MA 02110-2208
(617) 521-7794 • FAX (617) 521-7771
TTY/TDD (617) 521-7490
http://www.state.ma.us/doi

DEVAL L. PATRICK
GOVERNOR

TIMOTHY P. MURRAY
LIEUTENANT GOVERNOR

DANIEL O'CONNELL
SECRETARY OF HOUSING AND
ECONOMIC DEVELOPMENT

DANIEL C. CRANE
DIRECTOR

NONNIE S. BURNES
COMMISSIONER OF INSURANCE

May 9, 2008

Honorable Scott Richardson
Secretary, Southeastern Zone, NAIC
Director of Insurance
South Carolina Department of Insurance
Capital Center
1201 Main Street, Suite 1000
Columbia, South Carolina, 29201

Honorable Merle D. Scheiber
Secretary, Midwestern Zone, NAIC
Director of Insurance
South Dakota Division of Insurance
Department of Revenue and Regulation
445 East Capital Avenue, 1st Floor
Pierre, South Dakota 57501-3185

Honorable Morris Chavez
Secretary, Western Zone, NAIC
Superintendent of Insurance
New Mexico Insurance Division
PERA Building
1120 Paseo de Peralta
Santa Fe, New Mexico 87501

Honorable Thomas R. Sullivan
Secretary, Northeastern Zone, NAIC
Commissioner of Insurance
Connecticut Department of Insurance
153 Market Street, 7th Floor
Hartford, Connecticut 06103

Honorable Nonnie S. Burnes
Commissioner of Insurance
Commonwealth of Massachusetts
Office of Consumer Affairs and Business
    Regulation
Division of Insurance
One South Station
Boston, MA 02110-2208

Honorable Alfred W. Gross
Chairman, Financial Condition (E)
    Committee, NAIC
Commissioner of Insurance
State Corporation Commission
Bureau of Insurance
Commonwealth of Virginia
1300 East Main Street
Richmond, Virginia 23219

Honorable Commissioners, Directors, and Superintendent:

Pursuant to your instructions and in accordance with Massachusetts General Laws, Chapter 175, Section 4, an examination has been made of the financial condition and affairs of the

### ONEBEACON AMERICA INSURANCE COMPANY
### Canton, Massachusetts

at its home office located at One Beacon Lane, Canton, MA, 02021-1030. The following report thereon is respectfully submitted.

## SCOPE OF EXAMINATION

OneBeacon America Insurance Company (hereinafter referred to as "the Company" or "OneBeacon America") was last examined for the period January 1, 1997 through December 31, 2001. The current National Association of Insurance Commissioners ("NAIC") association plan examination covers the intervening period from January 1, 2002 through December 31, 2006, and any material transactions and/or events occurring subsequent and noted during the examination.

The current examination was conducted at the direction of, and under the overall management and control of the examination staff of the Massachusetts Division of Insurance (the "Division") representing the NAIC Northeastern Zone. Representatives from the firm of RSM McGladrey, Inc. were engaged by the Division to assist in the examination by performing certain examination procedures. The current examination was conducted concurrent with, and as part of the examination of the OneBeacon Group of companies and the OneBeacon Inter-Company Reinsurance Pool, (the "OneBeacon Pool") with Pennsylvania as the lead state. RSM McGladrey was also retained by the Pennsylvania Insurance Department to assist the Pennsylvania Insurance Department in conducting its examination of the OneBeacon Pool and the Pennsylvania domiciled insurers in the OneBeacon Group. The Pennsylvania Insurance Department also retained the actuarial services of KPMG LLP to review the actuarially determined loss and loss adjustment expense reserves of the OneBeacon Pool. The Division has relied on Pennsylvania for all of the work performed on the pooled accounts and KPMG LLP for the work performed on the pooled loss reserves.

The examination was conducted in accordance with standards established by the NAIC Financial Condition (E) Committee as well as with the requirements of the NAIC Financial Condition Examiner's Handbook, the examination standards of the Division and with Massachusetts General Laws. The principal focus of the examination was 2006 activity; however transactions both prior and subsequent thereto were reviewed as deemed appropriate. The examination was conducted following the NAIC Risk Focused Examination model.

In addition to a review of the financial condition of the Company, the examination included a review of the Company's business policies and practices, corporate records, reinsurance treaties, conflict of interest disclosure statements, fidelity bonds and other insurance, disaster recovery plan and other pertinent matters to provide reasonable assurance that the Company was in compliance with applicable laws, rules and regulations. In planning and conducting the examination, consideration was given to the concepts of materiality and risk and examination efforts were directed accordingly.

The Company is audited annually by PricewaterhouseCoopers LLP, an independent certified public accounting firm, in accordance with 211 CMR 23.00. The firm expressed unqualified opinions on the Company's financial statements for the calendar years 2002 through 2006. A review and use of the Certified Public Accountants' work papers were made to the extent deemed appropriate and effective.

The examination was performed in conjunction with and concurrent with the examination of four of its Massachusetts domiciled affiliates; American Employers' Insurance Company; The Employers' Fire Insurance Company; The Northern Assurance Company of America; and, Massachusetts Homeland Insurance Company.

## HISTORY

### General

The Company is an outgrowth of the United States branch of Commercial Union Assurance Company Limited (which entered New York State in 1871) and, over the intervening century, the domestications and mergers with a number of insurance carriers operating in the United States. In 1960, the original Commercial Union Fire Insurance Company of New York (1891) was replaced by Commercial Union Insurance Company of New York upon merger with British General Insurance Corporation. In 1968, Commercial Union Insurance Company of America was formed to succeed Commercial Union Insurance Company of New York and, in 1971, was itself replaced by Employers' Commercial Union Insurance Company upon merger with the affiliated Pennsylvania Insurance Company. Employers' Commercial Union Insurance Company was incorporated under the laws of the Commonwealth of Massachusetts on March 10, 1971. The Employers' Commercial Union Insurance Company changed its name to Commercial Union Insurance Company effective January 1, 1973.

In June 1998, Commercial Union plc and General Accident plc were merged in a pooling of interests. The U.S. operations of the companies were formally combined on December 31, 1998 when all of the assets of General Accident Corporation of America were transferred to Commercial Union Corporation and the name was changed to CGU Corporation.

On June 1, 2001, White Mountains Insurance Group, Ltd. ("White Mountains") acquired CGU Corporation together with its subsidiaries, from London-based CGNU plc. On July 19, 2001 CGU Corporation was renamed OneBeacon Corporation, which merged into Fund American Companies, Inc. on December 30, 2001. On December 31, 2001, all assets formerly owned by OneBeacon Corporation were contributed by Fund American Companies, Inc. to OneBeacon Insurance Group LLC, a newly formed holding company.

On August 31, 2001, the Company changed its name from Commercial Union Insurance Company to the current name of OneBeacon America Insurance Company. The Company is a wholly owned subsidiary of OneBeacon Insurance Company (hereinafter referred to as "OneBeacon" or the, "Lead Company"), a Pennsylvania domestic.

### Common Capital Stock

As of December 31, 2006, the Company had 60,000 shares of $100 par value common stock authorized, issued and outstanding with an aggregate stated value of $6,000,000. All of the common stock was owned by OneBeacon.

## Dividends to Stockholders

The following table summarizes the dividends paid during the examination period.

| Year | Dividend |
|------|----------|
| 2006 | $46,187,556 |
| 2005 | 44,504,935 |
| 2004 | -0- |
| 2003 | -0- |
| 2002 | -0- |

## Growth of Company

The growth of the Company for the years 2002 through 2006 is shown in the following schedule, which was prepared from the Company's annual statements. All amounts are in thousands.

| Year | Admitted Assets | Liabilities | Surplus | Direct Premiums Written | Net Premiums Written |
|------|-----------------|-------------|---------|-------------------------|----------------------|
| 2006 | $ 1,056,962 | $ 536,072 | $ 520,890 | $ 242,409 | $ 308,444 |
| 2005 | 1,051,999 | 589,751 | 462,248 | 197,275 | 328,541 |
| 2004 | 1,299,575 | 703,008 | 596,567 | 300,997 | 346,459 |
| 2003 | 1,207,519 | 698,764 | 508,755 | 400,148 | 244,969 |
| 2002 | 1,316,193 | 882,108 | 434,085 | 471,683 | 319,976 |

## MANAGEMENT

### Annual Meeting of Stockholders

The annual meeting of the stockholders was held on the first Tuesday in May each year during the examination period. At any meeting of the stockholders, a majority in interest of all stock issued and outstanding and entitled to vote upon a question to be considered at the meeting shall constitute a quorum for the consideration of such question. The minutes indicated that a written consent of sole stockholder in lieu of annual meeting was obtained for each year during the examination period.

### Board of Directors

The by-laws provide that the business and affairs of the Company shall be managed by the Board of Directors except as otherwise provided by the Articles of Incorporation or by a valid shareholder agreement. The Board of Directors shall consist of not less than seven or more than fifteen Directors with the number determined at each annual meeting by resolution of the shareholders. Each Director holds office for a term of one year.

The minutes of the Board of Directors meetings indicated that meetings were held four times per year during the examination period. At any meeting of the Board, a majority of Directors, but not less than four, shall constitute a quorum. The minutes indicated that a quorum was obtained at all meetings of the Board of Directors held during the examination period.

At December 31, 2006 the Board of Directors was comprised of nine Directors. Directors duly elected and serving at December 31, 2006, with business affiliations, were as follows:

| Director | Business Affiliation |
| --- | --- |
| T. Michael Miller<br>Chairman of the Board | Deputy Chairman, President and CEO, OneBeacon Insurance Group, Ltd.; Managing Director, Chairman of the Board, President and CEO, OneBeacon Insurance Group LLC |
| Alex C. Archimedes | Senior Vice President, OneBeacon Insurance Company |
| Andrew C. Carnase | Senior Vice President, OneBeacon Insurance Company |
| Mark K. Dorcus | Managing Director and President, White Mountains Advisors LLC |
| Thomas L. Forsyth | Secretary, OneBeacon Insurance Group, Ltd.; Managing Director, Senior Vice president, General Counsel and Secretary, OneBeacon Insurance Group LLC |
| Paul H. McDonough | Vice President and CFO, OneBeacon Insurance Group, Ltd.; Managing Director, Senior Vice President and CFO, OneBeacon Insurance Group LLC |
| Brian D. Poole | Managing Director, Senior Vice President and Chief Actuary, OneBeacon Insurance Group LLC |
| Thomas N. Schmitt | Senior Vice President and Chief Human Resources Officer, OneBeacon Insurance Company |
| Roger M. Singer | Senior Vice President, OneBeacon Insurance Company |

## Officers

The by-laws of the Company provide that the officers of the Company shall be a president, one or more vice presidents, a secretary, and a treasurer and other officers as deemed necessary. Pursuant to the by-laws, the officers of the Company are elected by the Board of Directors. Vacancies among the officers shall be filled by the Board of Directors.

For Information Purposes Only

The elected senior officers and their respective titles at December 31, 2006 follow:

| Name | Title |
|------|-------|
| T. Michael Miller | Chairman of the Board, President and Chief Executive Officer |
| Alex C. Archimedes | Senior Vice President |
| Andrew C. Carnase | Senior Vice President |
| Michael J. Daly | Senior Vice President |
| Eugene C. Fazzie | Senior Vice President |
| Thomas L. Forsyth | Senior Vice President and General Counsel |
| Dana P. Hendershott | Senior Vice President and Chief Administrative Officer |
| Michael R. Keane | Senior Vice President |
| Paul H. McDonough | Senior Vice President and Chief Financial Officer |
| Michael J. McSally | Senior Vice President |
| John M. Meuschke | Senior Vice President |
| Michael F. Natan | Senior Vice President and Chief Information Officer |
| Donald P. Nibouar | Senior Vice President |
| Brian D. Poole | Senior Vice President and Chief Actuary |
| Kevin J. Rehnberg | Senior Vice President |
| Thomas N. Schmitt | Senior Vice President and Chief Human Resources Officer |
| Roger M. Singer | Senior Vice President |
| Kathleen M. Taylor | Senior Vice President |
| Dennis R. Smith | Secretary |
| Frederick J. Turcotte | Vice President and Treasurer |

## Conflict of Interest Procedures

The Company has adopted a policy statement pertaining to conflict of interest. The Company has an established procedure for the disclosure to the Board of Directors of any material interest or affiliation on the part of any officer or Director, which is in or is likely to conflict with his/her official duties.

Annually, each officer, Director and responsible employee completes a questionnaire disclosing any material conflicts of interest. The completed questionnaires were reviewed, and no discrepancies were noted in the responses to the General Interrogatories regarding conflicts of interest as reflected in the Company's 2006 Annual Statement.

## Management Continuity and National Emergency

The Company provides for the continuity of management in the event of a catastrophe or other emergency in accordance with sections 180M through 180Q of Chapter 175 of the Massachusetts General Laws.

**Corporate Records**

*Articles of Incorporation and By-laws*

The by-laws and Articles of Incorporation and amendments thereto were read. There was one change to the by-laws since the prior examination. This change was made to include an indemnification clause and was properly filed with the Secretary of the Commonwealth of Massachusetts.

## AFFILIATED COMPANIES

Per Form B, as filed with the Division, the Company is a member of a holding company system and is subject to the registration requirements of Chapter 175, Section 206C of the Massachusetts General Laws. The Company is a wholly owned subsidiary of OneBeacon Insurance Company; a Pennsylvania domiciled insurance company, which is a wholly owned subsidiary of OneBeacon Insurance Group LLC, an insurance holding company domiciled in the state of Delaware. OneBeacon Insurance Group LLC is an indirect wholly owned subsidiary of OneBeacon Insurance Group, Ltd., a publicly traded insurance holding company domiciled in Bermuda. White Mountains Insurance Group, Ltd., also an insurance holding company domiciled in Bermuda, is the "ultimate controlling person" for the Company, and indirectly owned 72.4% of the outstanding shares of OneBeacon Insurance Group, Ltd. as of December 31, 2006.

The Company is the direct parent of two subsidiary companies, York Insurance Company of Maine and OneBeacon Lloyds of Texas.

**Corporate Governance**

OneBeacon Insurance Group, Ltd. is a publicly traded company listed on the New York Stock Exchange ("NYSE"). As such, OneBeacon Insurance Group, Ltd. is subject to the rules and regulations of the Sarbanes-Oxley Act of 2002, the Securities Exchange Commission and the NYSE. OneBeacon Insurance Group, Ltd. has ultimate fiduciary responsibilities for the Company's operations, corporate actions, and treatment of constituents, particularly, policyholders, claimants, employees, shareholders, etc.

It should be noted that OneBeacon Insurance Group, Ltd. has an audit committee of its Board of Directors that is comprised of "independent" Directors; it meets four times a year; appears to have a financially sound acumen within its outside Directors composition; is ultimately responsible to the full Board for outside external auditor selection (CPA firm) and review of such services; for the financial reporting accounting and disclosure environment; for the internal control environment from which the corporation operates; and for control of selection of other consulting firms services as to "independence" from a "sound practices" perspective.

## Transactions and Agreements with Subsidiaries and Affiliates

*Investment Management Agreement*

The Company maintains an agreement with White Mountains Advisors, LLC to act as investment advisor. Under this agreement, White Mountains Advisors, LLC provides investment management services, including the investment and reinvestment of the Company's invested assets. The fee for these services is paid on a quarterly basis at rates applied to its investment portfolio.

*Tax Sharing Agreement*

The Company is a party to a consolidated income tax agreement which covers the allocation, settlement, and financial statement presentation of current federal income taxes among companies included in the consolidated income tax return of the Fund America Financial Services, Inc. and its subsidiaries.

## ORGANIZATION CHART

White Mountains Insurance Group, Ltd. (Bermuda)
  White Mountains Holdings Bermuda, Ltd. (Bermuda)
    OneBeacon Insurance Group, Ltd. (Bermuda) (72.4%)
      Mill Shares Holdings (Bermuda), Ltd.
        OneBeacon Holdings (Gibraltar), Ltd.
          OneBeacon Holdings (Luxembourg) S.a.r.l.
            Fund American Financial Services, Inc. (DE)
              Fund American Enterprise Holdings, Inc. (DE)
            Fund American Companies, Inc. (DE)
              OneBeacon Insurance Group LLC (DE)
              OneBeacon Insurance Company (PA)
                  Atlantic Specialty Insurance Company (NY)
                  AutoOne Insurance Company (NY)
                  AutoOne Select Insurance Company (NY)
                  Homeland Insurance Company of New York (NY)
                  Farmers and Merchants Insurance Company (OK)
                  Midwestern Insurance Company (OK)
                  Traders and General Insurance Company (TX)
                  **OneBeacon America Insurance Company (MA)**
                    York Insurance Company of Maine (ME)
                    OneBeacon Lloyd's of Texas (TX)
                  The Employers' Fire Insurance Company (MA)
                    Massachusetts Homeland Insurance Company (MA)
                  The Northern Assurance Company of America (MA)
                    OneBeacon Midwest Insurance Company (WI)
              The Camden Fire Insurance Company (NJ)
              Pennsylvania General Insurance Company (PA)
                American Employers' Insurance Company (MA)
                American Central Insurance Company (MO)
              Potomac Insurance Company (PA)
              New Jersey Skylands Management LLC Attorney-In-Fact (DE)
                New Jersey Skylands Insurance Association (NJ)
                  New Jersey Skylands Insurance Company (NJ)
              Adirondack AIF, LLC Attorney-In-Fact (NY)
                Adirondack Insurance Exchange (NY)

For Informational Purposes Only

## Organization Chart, Continued

Houston General Insurance Management Company Attorney-In-Fact (TX)
Houston General Insurance Exchange (TX)
Houston General Insurance Company (TX)

## FIDELITY BOND AND OTHER INSURANCE

The Company maintains fidelity coverage with an authorized Massachusetts insurer, consistent with Massachusetts General Laws, Chapter 175, Section 60. The aggregate limit of liability exceeds the NAIC suggested minimum.

The Company has further protected its interests and property by policies of insurance covering other insurable risks. Coverage is provided by insurers licensed in the Commonwealth of Massachusetts and was in force as of December 31, 2006.

## STATUTORY DEPOSITS

The statutory deposits of the Company at December 31, 2006 are as follows:

| State | Purpose of Deposit | Book Value | Fair Value |
|---|---|---|---|
| Arizona | Reserved for Workers' Compensation | $403,064 | $404,257 |
| California | Reserved for Workers' Compensation | 10,902,304 | 10,934,581 |
| Connecticut | Reserved for Workers' Compensation | 7,122,716 | 7,143,803 |
| Delaware | Reserved for Workers' Compensation | 121,231 | 120,111 |
| Georgia | Protection of Georgia Policyholders | 114,850 | 113,790 |
| Idaho | Reserved for Workers' Compensation | 31,903 | 31,608 |
| Illinois | Reserved for Workers' Compensation | 57,581 | 57,751 |
| Indiana | Reserved per Ins Code Stat 27-01-20-12 | 31,903 | 31,608 |
| Kansas | Reserved for Workers' Compensation | 76,567 | 75,860 |
| Kentucky | Reserved for Licensing Purposes | 633,386 | 635,261 |
| Louisiana | Reserved for Fidelity and Surety | 89,328 | 88,503 |
| Maryland | Reserved for Workers' Compensation | 57,581 | 57,751 |
| Massachusetts | Protection of All Policyholders | 3,460,592 | 3,470,837 |
| Nevada | Reserved for Workers' Compensation | 127,611 | 126,433 |
| New Hampshire | Reserved for Workers' Compensation | 63,700 | 63,575 |
| New Mexico | Protection of New Mexico Policyholders | 395,595 | 391,942 |
| New York | Reserved for Workers' Compensation | 57,581 | 57,751 |
| North Carolina | Multiple Purposes | 319,028 | 316,082 |
| Oregon | Surety & Workers' Compensation | 808,984 | 807,408 |
| Texas | Protection of All Policyholders | 57,581 | 57,751 |
| Virginia | Reserved per Ins Code Stat 382-1045 | 255,223 | 252,866 |
| Wisconsin | Reserved for Workers' Compensation | 40,623,089 | 40,743,354 |
| Aggregate Alien | | 1,205,864 | 1,197,327 |
| | Totals | $67,017,262 | $67,180,210 |

## INSURANCE PRODUCTS AND RELATED PRACTICES

### Territory and Plan of Operation

The Company is licensed to write business in all 50 states, the District of Columbia and Puerto Rico. As a member of the OneBeacon Insurance Group, the Company operates as a multi-line organization that sells commercial, personal and specialty products. OneBeacon Insurance Group works with approximately 2,400 agencies and brokers.

### Treatment of Policyholders and Claimants – Market Conduct

During the financial examination of the Company, the Division's Market Conduct Section initiated a comprehensive market conduct examination of Massachusetts business of certain members of the OneBeacon Insurance Group, including the Company, for the period January 1, 2006 through June 30, 2007. The market conduct examination was called pursuant to authority in Massachusetts General Laws Chapter 175, Section 4. The market conduct examination was conducted at the direction of, and under the overall management and control of, the Market Conduct Examination Staff of the Division. Representatives from the firm of Rudmose & Noller Advisors, LLC were engaged to complete certain agreed upon procedures which were developed using the guidance and standards of the NAIC Market Conduct Examiner's Handbook, the market conduct examination standards of the Division, and the Commonwealth of Massachusetts insurance laws, regulations and bulletins. The basic business areas reviewed under this market conduct examination are company operations/management; complaint handling; marketing and sales; producer licensing; policyholder services; underwriting and rating; claims; and an assessment of the Company's internal control environment. Since the Company has no premium or claim activity during the 18 month market conduct examination period, it was not expected that procedures would be performed directly relating to the Company. Once this market conduct examination is completed, a Report on the Comprehensive Market Conduct Examination of the Massachusetts domiciled members of the OneBeacon Insurance Group for the period January 1, 2006 through June 30, 2007 will be issued and become available as a public document.

## REINSURANCE

### OneBeacon Inter-Company Reinsurance Pool

The Company is a participant in the OneBeacon Inter-Company Reinsurance Pool (the "Pool") along with numerous affiliates (collectively called "Pool Participants"). The current reinsurance pooling agreement was amended and restated effective January 1, 2001 and amended twice effective January 1, 2004. Under the pooling agreement, each of the Pool Participants cedes 100% of its direct business to OneBeacon Insurance Company, the "Lead Company" in the Pool, and after recording all assumed reinsurance from affiliates and third parties and ceded reinsurance to third parties, the remaining net underwriting activity is retro-ceded to each Pool Participant in accordance with each participant's pooling percentage. The Company's participation ratio during the examination period has increased from 14.3% as of January 1, 2001 to 16.4% as of December 31, 2006. The Pool Participants and their respective participation percentages as of December 31, 2006 were as follows:

| Company (State of Domicile) | NAIC CoCode | Participation Ratio |
|---|---|---|
| OneBeacon Insurance Company (PA) | 21970 | 54.0% |
| **OneBeacon America Insurance Company (MA)** | **20621** | **16.4%** |
| Homeland Insurance Company of New York (NY) | 34452 | 10.0% |
| Pennsylvania General Insurance Company (PA) | 21962 | 10.0% |
| The Northern Assurance Company of America (MA) | 38369 | 5.0% |
| AutoOne Select Insurance Company (NY) | 34479 | 1.5% |
| The Employers' Fire Insurance Company (MA) | 20648 | 1.5% |
| AutoOne Insurance Company (NY) | 34460 | 1.0% |
| Atlantic Specialty Insurance Company (NY) | 27154 | 0.6% |
| | | 100.0% |

Under the terms of the pooling agreement, each Pool Participant authorizes the Lead Company to perform various services on behalf of the Pool Participants including policy development, marketing, underwriting, policy administration, loss settlement, personnel, purchasing, accounting, data processing and facilities management. The joint expenses attributable to these services are allocated among the Pool Participants in accordance with their respective participation percentages. Net settlements of all amounts under the pooling agreement are made quarterly.

The Pool Participants also authorize the Lead Company to effect and be responsible for all reinsurance with third parties on contracts and insurance policies issued by the Pool Participants. As a result, all third party reinsurance of the Pool is recorded in the Lead Company prior to being ceded to the Pool, and therefore, the Company does not cede or assume any business other than that business based on its participation in the Pool.

In addition to the entities identified above, which ultimately share in the results of the Pool by virtue of their respective assumed participation pooling ratio, the Lead Company assumes business from a number of its other subsidiaries and affiliates outside of the pooling agreement, in a manner similar to that of the Pool Participants, except that no business is retro-ceded back to these other entities.

The following is a list of subsidiary and affiliated companies which ceded underwriting activity to the Lead Company and ultimately the Pool, but which do not assume any net underwriting business back from the Pool or the Lead Company:

| Company (State of Domicile) | NAIC CoCode |
|---|---|
| American Central Insurance Company (MO) | 37915 |
| American Employers' Insurance Company (MA) | 20613 |
| Camden Fire Insurance Association (NJ) | 21946 |
| OneBeacon Midwest Insurance Company (WI) | 42650 |
| Farmers and Merchants Insurance Company (OK) | 25707 |
| Massachusetts Homeland Insurance Company (MA) | 40320 |
| Midwestern Insurance Company (OK) | 19011 |
| OneBeacon Lloyd's of Texas (TX) | 42650 |
| Traders and General Insurance Company (TX) | 38857 |
| York Insurance Company of Maine (ME) | 31267 |

**Other Inter-Company Ceded**

The OneBeacon Insurance Group continues to have $2.5 billion of reinsurance coverage on asbestos and environmental losses under an Aggregate Loss Portfolio Reinsurance Agreement effective June 1, 2001 between the Company and its affiliate Potomac Insurance Company ("Potomac"). The coverage is then retro-ceded by Potomac to National Indemnity Company ("NICO"). The reinsurance coverage is for 100% of losses and allocated LAE incurred and paid or payable on or after January 1, 2000, net of reinsurance recoverable from other third party reinsurers. The coverage includes $955 million of initial aggregate reserves transferred, and uncollectible third party reinsurance is also covered. As of December 31, 2006, $2.1 billion of incurred losses and ALAE had been ceded by the Group to NICO via Potomac under these reinsurance coverages, of which $847.0 million had been recovered.

The reinsurance between OneBeacon and Potomac is recorded as prospective reinsurance in accordance with SSAP No. 62, Paragraph 30d. The reinsurance between Potomac and NICO is recorded as retroactive reinsurance in accordance with SSAP No. 62, Paragraph 28.

There is an Administrative Services Agreement among OneBeacon, Potomac and NICO in connection with the Aggregate Loss Portfolio Reinsurance Agreement whereby NICO handles all of the direct business claims administration as well as collection of reinsurance recoverable from other third party reinsurers. If and when such recoverables become uncollectible, they are covered by the Aggregate Loss Portfolio Reinsurance Agreement to the extent that such coverage is still available. OneBeacon reports its recoverables from such third parties as recoverable from NICO.

OneBeacon and its affiliates also continue to have excess of loss reinsurance coverage on accident year 2000 and prior losses and LAE covering all classes of business other than the policies covered in the Aggregate Loss Portfolio Reinsurance Agreement described above. The Company's reinsurance agreement is with Potomac, and the coverage is then retro-ceded by Potomac to General Reinsurance Corporation ("Gen Re"). The coverage is the sum of $170 million of the Company's initial reserves plus $400 million excess of the Company's initial reserves for a total of $570 million. As of December 31, 2006, $550 million of reserves had

been ceded by the Group to Gen Re via Potomac under these reinsurance agreements. Paid losses and LAE have not yet reached the stage where paid amounts are recoverable under the agreements.

In accordance with SSAP No. 62, the reinsurance between OneBeacon and Potomac is recorded as prospective reinsurance, and the reinsurance between Potomac and General Re is recorded as retroactive reinsurance.

## ACCOUNTS AND RECORDS

The Company's internal control structure was discussed with management through questionnaires and through a review of the work performed by the Company's independent certified public accountants, PricewaterhouseCoopers LLP, including work papers generated to support the requirements of the Sarbanes-Oxley Act of 2002. As part of its engagement for the Pennsylvania Insurance Department, RSM McGladrey performed a review and evaluation of the control environment of OneBeacon Group's IT systems. The NAIC's Information Systems Questionnaire (ISQ) completed by the Company was reviewed and interviews with Company management and IT staff were conducted to gather supplemental information and corroborate the Company's responses to the ISQ. Included was a review of the documentation supporting Management and Organization Controls, Application Systems Development and Maintenance Controls, Operating and Processing Controls, Logical and Physical Security Controls, Contingency Planning Controls, Personal Computers, Local Area Network (LAN), Wide Area Network (WAN) and Internet Controls. The control environment of the Company's information systems was found to have in place sufficient internal controls.

No material internal control weaknesses were noted in connection with the examination, nor were any such matters reported in the CPA firm's filings with the Division.

The Company uses an automated general ledger system. Trial balances were traced from the general ledger and supporting documents to the 2006 Annual Statement. No material exceptions were noted.

13

## FINANCIAL STATEMENTS

The following financial statements are presented on the basis of accounting practices prescribed or permitted by the Division of Insurance of the Commonwealth of Massachusetts and by the NAIC as of December 31, 2006.

Statement of Assets, Liabilities, Surplus and Other Funds as of December 31, 2006

Statement of Income for the Year Ended December 31, 2006

Statement of Capital and Surplus as of December 31, 2006

Reconciliation of Capital and Surplus for Each Year in the Five Year Period Ended December 31, 2006

For Information Purposes Only

OneBeacon America Insurance Company
Statement of Assets, Liabilities, Surplus and Other Funds
As of December 31, 2006

| | As Reported by the Company | Examination Changes | Per Statutory Examination |
|---|---|---|---|
| **Assets** | | | |
| Bonds | $535,653,235 | | $535,653,235 |
| Preferred stocks | 3,281,772 | | 3,281,772 |
| Common stocks | 186,638,828 | | 186,638,828 |
| Cash and short-term investments | 40,565,524 | | 40,565,524 |
| Other invested assets | 182,658,237 | | 182,658,237 |
| Receivable for securities | 1,365,560 | | 1,365,560 |
| Subtotals, cash and invested assets | 950,163,156 | | 950,163,156 |
| Investment income due and accrued | 6,253,302 | | 6,253,302 |
| Uncollected premiums and agents' balances in course of collection | 30,281,115 | | 30,281,115 |
| Deferred premiums, agents' balances and installments booked but deferred and not yet due | 48,490,725 | | 48,490,725 |
| Amounts recoverable from reinsurers | 4,362,338 | | 4,362,338 |
| Net deferred tax asset | 2,382,568 | | 2,382,568 |
| Guaranty funds receivable or on deposit | 152,679 | | 152,679 |
| Electronic data processing equipment and software | 1,024,859 | | 1,024,859 |
| Receivable from parents, subsidiaries and affiliates | 12,333,343 | | 12,333,343 |
| Aggregate write-ins for other than invested assets | 1,518,202 | | 1,518,202 |
| Total Assets | $1,056,962,287 | | $1,056,962,287 |

For Information Purposes Only

OneBeacon America Insurance Company
Statement of Assets, Liabilities, Surplus and Other Funds (Continued)
As of December 31, 2006

| | As Reported by the Company | Examination Changes | Notes | Per Statutory Examination |
|---|---|---|---|---|
| **Liabilities** | | | | |
| Losses | $290,006,507 | | 1 | $290,006,507 |
| Reinsurance payable of paid losses and loss adjustment expenses | 7,560,083 | | | 7,560,083 |
| Loss adjustment expenses | 40,272,387 | | 1 | 40,272,387 |
| Other expenses (excluding taxes, licenses and fees) | 457,702 | | | 457,702 |
| Taxes, licenses and fees (excluding federal and foreign income taxes) | 3,438,324 | | | 3,438,324 |
| Current federal and foreign income taxes | 13,885,000 | | | 13,885,000 |
| Unearned premiums | 141,160,829 | | | 141,160,829 |
| Advance premium | 932,880 | | | 932,880 |
| Ceded reinsurance premiums payable | 4,591,211 | | | 4,591,211 |
| Payable for securities | 28,221,341 | | | 28,221,341 |
| Aggregate write ins for liabilities | 5,545,440 | | | 5,545,440 |
| | | | | |
| Total Liabilities | 536,071,704 | | | 536,071,704 |
| | | | | |
| Common capital stock | 6,000,000 | | | 6,000,000 |
| Gross paid in and contributed surplus | 390,566,817 | | | 390,566,817 |
| Unassigned funds (surplus) | 124,323,766 | | | 124,323,766 |
| Surplus as regards policyholders | 520,890,583 | | | 520,890,583 |
| | | | | |
| Total Liabilities, Capital and Surplus | $1,056,962,287 | | | $1,056,962,287 |

For Information Purposes Only

OneBeacon America Insurance Company
Statement of Income
For the Year Ended December 31, 2006

| | As Reported by the Company | Examination Changes | Per Statutory Examination |
|---|---|---|---|
| Premiums earned | $329,170,801 | | $329,170,801 |
| Losses incurred | 155,651,166 | | 155,651,166 |
| Loss expenses incurred | 50,098,148 | | 50,098,148 |
| Other underwriting expenses incurred | 115,851,532 | | 115,851,532 |
| Aggregate write-ins for underwriting deductions | (4,459,822) | | (4,459,822) |
| Total underwriting deductions | 317,141,024 | | 317,141,024 |
| Net underwriting gain/(loss) | 12,029,777 | | 12,029,777 |
| | | | |
| Net investment income | 32,553,189 | | 32,553,189 |
| Net realized capital gains | 57,912,620 | | 57,912,620 |
| Net investment gain | 90,465,809 | | 90,465,809 |
| | | | |
| Net gain/(loss) from agents' or premium balances charged off | (656,211) | | (656,211) |
| Finance and service charges not included in premiums | 2,021,624 | | 2,021,624 |
| Aggregate write-ins for miscellaneous income | 4,680,731 | | 4,680,731 |
| Total other income | 6,046,144 | | 6,046,144 |
| | | | |
| Net income before dividends to policyholders and before federal and foreign income taxes | 108,541,730 | | 108,541,730 |
| | | | |
| Federal and foreign income taxes incurred | (6,338,936) | | (6,338,936) |
| Net Income | $114,880,666 | | $114,880,666 |

For Information Purposes Only

OneBeacon America Insurance Company
Statement of Capital and Surplus
As of December 31, 2006

| | As Reported by the Company | Examination Changes | Per Statutory Examination |
|---|---|---|---|
| Capital and Surplus, December 31, prior year | $462,248,316 | | $462,248,316 |
| Net Income | 114,880,666 | | 114,880,666 |
| Change in net unrealized capital gains or (losses) | (13,989,292) | | (13,989,292) |
| Change in net unrealized foreign exchange | 3,293,041 | | 3,293,041 |
| Change in net deferred income tax | (1,930,589) | | (1,930,589) |
| Change in nonadmitted assets | 2,575,997 | | 2,575,997 |
| Paid in surplus adjustments | 0 | | 0 |
| Dividends to stockholders | (46,187,556) | | (46,187,556) |
| Aggregate write-ins | 0 | | 0 |
| Change in surplus | 58,642,267 | | 58,642,267 |
| Capital and Surplus, December 31, current year | $520,890,583 | | $520,890,583 |

For Information Purposes Only

OneBeacon America Insurance Company
Reconciliation of Capital and Surplus
For Each Year in the Five Year Period Ended December 31, 2006

| | 2006 | 2005 | 2004 | 2003 | 2002 |
|---|---|---|---|---|---|
| Capital and Surplus, December 31, prior year | $462,248,316 | $596,566,817 | $508,755,179 | $434,085,076 | $382,722,910 |
| Net Income | 114,880,666 | 34,717,872 | 45,845,846 | 74,426,150 | 61,054,506 |
| Change in net unrealized capital gains or (losses) | (13,989,292) | 16,739,689 | 28,143,808 | 13,717,781 | 10,887,038 |
| Change in net unrealized foreign exchange | 3,293,041 | (6,040,251) | 4,730,602 | 34,980 | 0 |
| Change in deferred tax | (1,930,589) | (567,572) | 7,745,707 | (19,002,138) | 15,405,309 |
| Change in nonadmitted assets | 2,575,997 | 19,156,361 | 1,345,675 | 5,493,330 | (20,669,387) |
| Paid in surplus adjustments | 0 | (155,495,065) | 0 | 0 | 0 |
| Dividends to stockholders | (46,187,556) | (44,504,935) | 0 | 0 | 0 |
| Aggregate write-ins | 0 | 1,675,400 | 0 | 0 | (15,315,300) |
| Change in surplus as regards policyholders | 58,642,267 | (134,318,501) | 87,811,638 | 74,670,103 | 51,362,166 |
| | $520,890,583 | $462,248,316 | $596,566,817 | $508,755,179 | $434,085,076 |

For Information Purposes Only

## NOTES TO FINANCIAL STATEMENTS

### Note 1: Loss and Loss Adjustment Expense (LAE) Reserves

As part of the coordinated financial examination of the OneBeacon Insurance Companies by the Pennsylvania Insurance Department, the "lead state" of the Group, it retained the actuarial services of KPMG LLP ("KPMG") to perform an actuarial analysis of the loss and loss adjustment expenses (LAE) reserves of the OneBeacon Pool, which includes all reinsured affiliates as of December 31, 2006. Actuarial data utilized by KPMG, as provided by the Company, was reviewed and tested by the examination staff for both accuracy and completeness by performing various examination procedures on statistically valid samples of paid losses and case reserves. KPMG has made an independent assessment of the Pool's loss and LAE reserves as of December 31, 2006 to determine whether the reserve amounts carried are reasonably stated in accordance with sound actuarial principals. This analysis was performed both gross and net of reinsurance.

As a member of the Pool, the Company shares the results of its underwriting operations, including loss and LAE reserves, with a number of affiliates. The Company and all participants cede 100% of underwriting operations to the Pool, and assume from the Pool their respective share of the net underwriting results of the Pool on a pro-rata basis. The Company's participation ratio in the Pool as of December 31, 2006 was 16.4%.

KPMG has concluded that based on its review of OneBeacon's loss and LAE reserve calculations, as well as its own independent testing, that loss and LAE reserves held by the OneBeacon Pool are reasonably stated and fall within a range of reasonableness as of December 31, 2006. The tables below summarizes a comparison of KPMG's gross, ceded, and net loss and LAE reserve estimates to those carried by the Pool in total and the Company's based on its pro-rata participation percentage as of December 31, 2006. All amounts shown are in millions.

| OneBeacon Inter-Company Reinsurance Pool (in millions) | | | | |
|---|---|---|---|---|
| | KPMG Estimates | | | |
| | Low | Selected | High | OneBeacon Carried | Redundancy/ (Deficiency) |
| Gross Loss & LAE | $ 3,836 | $ 4,332 | $ 4,962 | $ 4,218 | $ (114) |
| Ceded Loss & LAE | 1,907 | 2,272 | 2,680 | 2,204 | (68) |
| Total Net Loss & LAE | 1,929 | 2,060 | 2,282 | 2,014 | (46) |

| OneBeacon America Insurance Company Net Loss and LAE Reserves (in millions) | | | | |
|---|---|---|---|---|
| | KPMG Estimates | | | |
| | Low | Selected | High | Company Carried | Redundancy/ (Deficiency) |
| Company Net Loss and LAE Reserves | 316 | 338 | 374 | 330 | (8) |

Total net reserves for loss and LAE carried by the Pool as of December 31, 2006 are $2,013,895,700, and are within approximately 3% of KPMG's select point estimate and fall within a range of reasonableness.  Based on the Company's pool participation ratio of 16.4%, the Company reported net carried reserves for loss and LAE are $330,278,894.



## COMMENTS AND RECOMMENDATIONS

### Agents' Balances and Premiums Receivable Over 90 Days Past Due

We have determined that the non-admitted portion of the premiums receivable that are over 90 days past due is not in accordance with SSAP No. 6, paragraph 9. The Company calculates its GAAP allowance for uncollectible accounts and writes-off this amount through an allowance for doubtful accounts that nets the allowance against the premiums receivable balances. As long as the amount written-off exceeds the actual statutory overdue calculation, the Company does not record an additional non-admitted amount.

During 2006, the Company did not reconcile the GAAP allowance with the STAT allowance to provide that the STAT allowance was properly reflecting the non-admitted portion. This caused an understatement of the OneBeacon Group's allowance/non-admitted asset portion of the overdue premiums receivable at December 31, 2006. Upon further inquiry, the problem was found to be systemic and not just a one-time occurrence. The Company made the necessary corrections during 2007 and due to the immaterial amount, no financial statement adjustment has been made.

We recommend that the Company institute procedures to assure GAAP to STAT allowance reconciliation processes are instituted to provide assurance that the calculation is properly presented and recorded.

### Reinsurance Recoverable on Paid Losses

As noted in the REINSURANCE section of this report, the Company participates in the OneBeacon Reinsurance Pool. The Company cedes 100% of its insurance business to the lead company OneBeacon Insurance Company ("OneBeacon"). OneBeacon assumes and cedes all outside (nonaffiliated) reinsurance. OneBeacon then retrocedes the net balance to pool participants in accordance with their pooling percentage. The Company is recording reinsurance recoverable on paid losses from OneBeacon Insurance Company in accordance with their pooling percentage of the total reinsurance recoverable on paid losses from non-affiliated reinsurers. The Company also records ceded balances payable in accordance with their pooling percentage of the total ceded balances payable to non-affiliated reinsurers.

We interpret the inter-company pooling agreement such that these non-affiliated reinsurance accounts are receivables/payables of OneBeacon Insurance Company and the participants in the pool have already effectively received/paid these balances through the pooling/settlement process. As such, this transaction does not affect the pooled accounting.

Therefore, we recommend that the Company record the non-affiliated reinsurance balances in OneBeacon Insurance Company and discontinue pooling these balances. Further, we suggest that the Company review its inter-company pooling agreement and clarify the terms and conditions of the agreement as they relate to the accounting thereof.

## ACKNOWLEDGEMENT

Acknowledgment is made of the cooperation and courtesies extended by the officers and employees of the Company to all the examiners during the course of the examination.

_____
John M. Curran, CFE
Supervising Examiner and Examiner-in-Charge
Commonwealth of Massachusetts
Division of Insurance
Representing Northeastern Zone, NAIC