UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------- x
SPARTA INSURANCE COMPANY :
(as successor in interest to Sparta Insurance
Holdings, Inc.), :

                Plaintiff, : Civil Action
                 No. 21-11205-FDS
  v. :

PENNSYLVANIA GENERAL INSURANCE :
COMPANY (now known as Pennsylvania
Insurance Company), :

               Defendant. :
---------------------------------------------------------- x

**DEFENDANT PENNSYLVANIA GENERAL INSURANCE COMPANY'S
SURREPLY MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................. 1

    A. Defendant's Affirmative Defenses Preclude Judgment on the Pleadings. ............ 1

        1. Plaintiff's Reply Ignores that Plaintiff has Failed to Meet its Burden at this Stage ................................................................................ 2

        2. The Defense of Novation and Facts Surrounding the 2012 Transfer and Assumption Agreement Require Plaintiff's Motion Be Denied. ........ 3

        3. Plaintiff's Remaining Conclusory Objections Fail to Establish Additional Affirmative Defenses Cannot be Proven Through Discovery. ...................................................................................................... 9

        4. Plaintiff's Failure to Address Numerous Other Affirmative Defenses Confirms Judgment Cannot be Rendered on the Pleadings. ............................................................................................................. 10

    B. Plaintiff Ignores Its Own Inconsistent Interpretation of the Contracts in Asserting that They are Clear and Unambiguous. ............................................... 11

III. CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

Cases

*Allied Home Mortg. Cap. Corp. v. Mark*,
  2014 WL 4964728, at *12 (D. Mass. Sept. 30, 2014) .............................................................. 11

*Cincinnati Ins. Co. v. Leighton*,
  403 F.3d 879 (7th Cir. 2005) ................................................................................................ 4, 7

*Craig J. Duchossois Revocable Tr. UAD 9/11/1989 v. CDX Lab'ys, Inc.*,
  495 F. Supp. 2d 869 (N.D. Ill. 2006) ........................................................................................ 8

*Fanucchi & Limi Farms v. United Agri Prod.*,
  414 F.3d 1075 (9th Cir. 2005) ................................................................................................... 8

*Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*,
  887 F.2d 228 (9th Cir. 1989) .............................................................................................. 2, 11

*Hansen v. Rhode Island's Only 24 Hour Truck & Auto Plaza, Inc.*,
  287 F.R.D. 119 (D. Mass. 2012).............................................................................................. 3

*HSBC Realty Credit Corp. (USA) v. O'Neill*,
  2013 WL 362823, at *3 (D. Mass. Jan. 30, 2013) ................................................................... 8

*In re Newport Plaza Assocs., L.P.*,
  985 F.2d 640 (1st Cir. 1993)..................................................................................................... 4

*Johnston v. Holiday Inns, Inc.*,
  565 F.2d 790 (1st Cir. 1977).................................................................................................. 7, 8

*Micro Networks Corp. v. HIG Hightec, Inc.*,
  195 F. Supp. 2d 255 (D. Mass. 2001) ...................................................................................... 9

*Page v. LeRoux*,
  43 Mass. App. Ct. 708 (1997)................................................................................................ 10

*Pagounis v. Pendleton*,
  52 Mass. App. Ct. 270, 753 N.E.2d 808 (2001) ...................................................................... 8

*Rivera-Gomez v. de Castro*,
  843 F.2d 631 (1st Cir. 1988).............................................................................................. 2, 11

*Sec. Ben. Life Ins. Co. v. F.D.I.C.*,
  804 F. Supp. 217 (D. Kan. 1992)............................................................................................. 8

*Sonoiki v. Harvard Univ.*,
  37 F. 4th 691, 704 (1st Cir. 2022).......................................................................................... 12

*Williams v. Ashland Eng'g Co.*,
  45 F.3d 588 (1st Cir. 1995)....................................................................................................... 2

*Zurich Am. Ins. Co. v. Watts Regul. Co.*,
  860 F. Supp. 2d 78 (D. Mass. 2012) ........................................................................................ 8

I.   INTRODUCTION

This case involves agreements that are more than a decade old that Plaintiff SPARTA Insurance Company ("Plaintiff") did not seek to enforce against Defendant Pennsylvania Insurance Company, f/k/a Pennsylvania General Insurance Company ("Defendant") for well over a decade after they were executed. Defendant previously established that Plaintiff's motion for judgment on the pleadings must be denied both because its claims present an interpretative dispute that cannot be resolved on the pleadings and because Defendant has asserted numerous affirmative defenses that require denial of the motion wholly apart from the parties' interpretative dispute. Plaintiff's motion failed to address the substance of any of Defendant's affirmative defenses. Plaintiff's reply raises new arguments that continue its effort to obscure the underlying facts while improperly seeking to win the case on the cheap by ignoring various factual issues and depriving Defendant of the discovery to which it is entitled.

As explained herein, none of the new arguments Plaintiff raises in reply provides any basis for resolving any much less all of Defendant's affirmative defenses on the pleadings. Likewise, ambiguities in the contract prevent resolution of the parties' interpretative dispute at the pleading stage. Plaintiff's argument to the contrary ignores how its own story has changed as to the source of the obligation. It further fails to identify any language in the 2005 Reinsurance Agreement that unambiguously imposes the duty to administer that Plaintiff failed even to assert in its original complaint.

II.  ARGUMENT

A.   **Defendant's Affirmative Defenses Preclude Judgment on the Pleadings.**

As shown in Defendant's initial Opposition, Defendant's Answer raises more than two dozen affirmative defenses that require denial of Plaintiff's motion for judgment on the pleadings. Plaintiff's motion failed to address the substance of those defenses at all. Plaintiff makes an initial

attempt to do so on reply, but still provides no basis for resolving these defenses at the pleading stage. In the sections that follow, Defendant explains why none of Plaintiff's objections to the defenses it addresses on reply are dispositive.

### 1. Plaintiff's Reply Ignores that Plaintiff has Failed to Meet its Burden at this Stage.

In addition to failing to account for the evident merit of Defendant's affirmative defenses based on the limited record to date (discussed in subsections 2 through 4), Plaintiff's belated effort to address Defendant's affirmative defenses ignores well-established authority making clear that judgment cannot be rendered on the pleadings when, as here, facts in dispute could support the affirmative defenses. *See* Dkt. 63 (Opp.) at 9-10. Under the standard that governs motions for judgment on the pleadings, Plaintiff must establish Defendant could not prove *any* set of facts that would entitle it to relief. *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988); *see also Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989) (when "defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings"). Plaintiff has not done so. While purporting to rely on what it refers to as the "admitted facts in the record," the only "admitted facts" it cites are the contents of the contract. Dkt. 66 (Reply) at 10. Yet nearly all Defendant's affirmative defenses rely on events subsequent to that contract. Plaintiff has not proffered any authorities granting judgment over affirmative defenses that depend on such disputed post-contractual conduct.

Plaintiff asserts generally that Defendant's affirmative defenses are insufficiently pled but offers no support for that proposition or argument as to what level of factual detail is required. Even apart from the basic flaws in its analysis with respect to specific defenses (discussed in the next two subsections), Rule 8 only requires Defendants to plead in general terms that give Plaintiff notice of the defenses being asserted. *See Williams v. Ashland Eng'g Co.*, 45 F.3d 588, 593 (1st

Cir. 1995) ("The purpose of Rule 8(c) is to give the court and the other parties fair warning that a particular line of defense will be pursued."). Defendant has met this requirement by notifying Plaintiff of the defenses it intends to pursue and by elaborating on the basis for those defenses with various factual allegations to be further developed through discovery.

Plaintiff's suggestion that further detail is required ignores the limitations defendants face generally, and that Defendant faces in a case involving 15 and 17-year-old agreements in which Defendant has had no involvement for at least a decade and likely more. Recognizing textual and policy considerations, a court in this jurisdiction has properly declined to extend the *Twombly* plausibility standard to affirmative defenses. *See Hansen v. Rhode Island's Only 24 Hour Truck & Auto Plaza, Inc.*, 287 F.R.D. 119, 123 (D. Mass. 2012). The Court in *Hansen* explained the distinctions between Rule 8(a)(2) and Rule 8(c) and emphasized "it would be unreasonable to expect defendants to be aware of all the necessary facts or even to know for sure whether a particular affirmative defense is applicable, given that discovery has not occurred." This reasoning applies with even greater force in a case such as this one which is based on a 2007 contract of which Defendant had no notice until 2021. This Court need not resolve the extent of *Twombly*'s applicability to affirmative defenses to deny Plaintiff's motion because of the evident plausibility of the defenses on the current record (see subsections I(A)(2)-(3)), but the inapplicability of the standard is an additional reason why the motion must be denied.

  **2.  The Defense of Novation and Facts Surrounding the 2012 Transfer and Assumption Agreement Require Plaintiff's Motion Be Denied.**

Defendant's Opposition established that Plaintiff is not entitled to judgment on the pleadings in part because Defendant's affirmative defenses establish that any liability under the Reinsurance Agreement was transferred with Plaintiff's consent to One Beacon Insurance Company ("One Beacon") nearly a decade ago. Plaintiff's first effort to address the substance of

these defenses comes on reply. Its new arguments provide no more basis for resolving these defenses at the pleading stage than its generic and inapposite citation in its original brief.

Plaintiff first argues that the 2007 Stock Purchase Agreement ("SPA") forecloses any claim of novation because that agreement requires assignments or amendments to be in writing. Plaintiff is incorrect. To begin with, Plaintiff's claims are premised upon obligations under the Reinsurance Agreement. *See* Dkt. 19 ¶ 29 ("SPARTA requires a judicial determination of the respective rights of itself and PGIC under the Reinsurance Agreement"); Dkt. 61-1 at 46-47 (§ 8.1(ii)) (indemnification triggered by a "the failure by the Seller to perform any of its obligations under the Reinsurance Agreement."). That agreement contains no requirements that modifications or assignments be in writing. Far from it, the Reinsurance Agreement expressly contemplates that the terms and conditions of that agreement shall bind "permitted assigns" with no reference to any subsequent written agreement. *See* Dkt. 61-2 at 5 (¶ 11). The SPA's requirement of a written assignment is therefore irrelevant to Plaintiff's claims.

Moreover, even when applicable, such provisions do not apply to claims of substitution or novation, through which a new agreement extinguishes prior contractual obligations. *See, e.g.*, *In re Newport Plaza Assocs., L.P.*, 985 F.2d 640, 644 (1st Cir. 1993) (recognizing that a novation discharges all rights and obligations under the previous agreement). Plaintiff's cited provisions addressing amendments and assignments (SPA §§ 12.4 & 12.15), thus would not "eclipse the possibility of release by novation" even if they were relevant. *Cincinnati Ins. Co. v. Leighton*, 403 F.3d 879, 888 (7th Cir. 2005) (emphasizing that the plain terms of the agreement did not encompass release by novation, where cited provision did not address "the effect of a subsequent agreement").

Plaintiff otherwise attempts to argue that the facts and circumstances alleged do not establish an implied novation because "[m]ere knowledge of an agreement between two third parties . . . without more, is not sufficient to show that SPARTA consented to, or novated that agreement." Reply at 9. This argument first fails because, as discussed above, Defendant is not required to allege much less prove all facts underlying its defenses to survive a Rule 12(c) motion. That is true as a matter of basic civil procedure, and requiring otherwise would be particularly inequitable in a case based on an agreement that was first brought to the attention of Defendant more than 14 years after its execution. Under such a standard, liability could be imposed even if Plaintiff was in sole possession of indisputable proof establishing the defense.

Moreover, and regardless, even the limited record available to Defendant—adduced without any discovery at all to date—points to *far* "more" than "mere knowledge" of the 2012 Transfer and Assumption Agreement ("2012 Agreement") supporting Defendant's contention as to these defenses.

*First*, Plaintiff's professed understanding that PGIC retained liability after 2012 contradicts the background facts of the transactions. The 2005 Reinsurance Agreement was entered into between two members of the same corporate family (PGIC and American Employers' Insurance Company ("AEIC")) with a third member of that corporate family (One Beacon) guaranteeing the subsequent SPA with Plaintiff. In 2012, PGIC and One Beacon entered into the 2012 Agreement under which the latter expressly assumed all liabilities of the former for the express purpose of enabling their common corporate parent, One Beacon Insurance Group, to sell off PGIC as a clean shell with no liabilities. *See* Opp. at 3-9; *see also* Dkt. 63-2 at 2 ("WHEREAS, to facilitate the Sale, it is deemed desirable to turn PGIC into a shell insurer ***with no outstanding liabilities on its books*** *. . .* ***by an assignment of any and all of its liabilities and assets to, and by assumption by,***

*OBIC*") (emphasis added). Leaving PGIC with liabilities to Plaintiff would have run directly counter to the intent of the 2012 transactions, whereas the 2005 contract expressly contemplated that PGIC's obligations could be transferred to a permitted assign without a written agreement. The SPA between One Beacon Insurance Group and the purchaser of PGIC in 2012 did not disclose the 2007 SPA as one of the contracts to which PGIC was a party. This further reinforces the inference that the contract was no longer considered to impose ongoing potential liability on PGIC; otherwise, the seller would have committed fraud in the inducement.

*Second*, there is ample reason to believe that the 2012 Agreement occurred with Plaintiff's knowledge and consent, that Plaintiff understood One Beacon as the true guarantor of its liabilities both from the start and following the sale of PGIC as a clean shell, and that Plaintiff would not have seen the substitution of One Beacon for PGIC and novation of PGIC as in any way contrary to its interests at the time. Plaintiff, for example, knew at the time of the original agreements that PGIC *already had ceded* its liabilities and business to One Beacon under a 2001 pooling agreement *specifically cited* in documents Plaintiff submitted in seeking regulatory approval of the 2007 SPA. *See* Dkts. 63-3 at 10-11; 63-5 at 14. PGIC was removed from the pool in anticipation of the 2012 Agreement. For the same reasons, Plaintiff would not have looked to PGIC as a source of recourse after 2012—*i.e.*, PGIC already had ceded its business and liabilities to One Beacon before being sold out of the One Beacon Insurance Group family. It also would have been grossly unfair to saddle PGIC with those contingent liabilities once it left the One Beacon corporate family both because it was being purchased with the understanding it was a clean shell and because it was not being sold with the corresponding assets to cover them as required for regulatory approval.

*Third*, the mechanics of the 2007 SPA confirm that One Beacon was the financially responsible party and that there would have been no expectation that PGIC would retain liabilities

if it was sold outside of the One Beacon corporate family. For example, the same corporate official signed the 2007 SPA on behalf of One Beacon and PGIC, and likewise the Reinsurance Agreement for AEIC and PGIC. Dkts. 61-1 at 74; 61-2 at 6. Moreover, notices to both the Seller and Guarantor were to be sent to One Beacon at its corporate address. Dkt. 61-1 at 68-69 (§ 12.9). There was no separate address for PGIC. After both PGIC and One Beacon were sold from the One Beacon corporate family, notices went only to One Beacon, n/k/a Bedivere.

*Fourth*, Plaintiff's conduct confirms that it understood and agreed that PGIC had no liability to Defendant after One Beacon assumed its liabilities in 2012. In the decade that followed that agreement, Plaintiff never once sent notice to Defendant of any claims arising under the 2007 SPA. Instead, Plaintiff dealt exclusively with One Beacon, including in the seven-year period after One Beacon was spun off from the One Beacon corporate family and became Bedivere. *See* Opp. at 5-6; Dkt. 53 (Answer) ¶¶ 3, 19.

Accordingly, even without discovery, with Plaintiff in possession of all contemporaneous records of the transactions, and with Defendant having access only to limited public records, the facts already adduced establish that the parties would not have understood PGIC to remain liable to Plaintiff after 2012. Through discovery, Defendant is seeking access to documents concerning the 2005, 2007, and 2012 agreements and the subsequent course of conduct, as well as potential expert discovery on the related regulatory approvals. The additional facts developed through discovery will be probative to the elements of novation at summary judgment or a trial on the merits. At the same time, Plaintiffs cannot establish at this stage that there are no set of facts under which the defense could be established.

As discussed above, whether "a novation has occurred is a question for the trier of fact." *Johnston v. Holiday Inns, Inc.*, 565 F. 2d 790, 796 (1st Cir. 1977). It does not require proof of a

subsequent written contract, *Cincinnati Ins. Co. v. Leighton supra*, but "may be inferred despite a lack of express language to that effect," and "based solely on the circumstances and conduct of the parties." *Pagounis v. Pendleton*, 52 Mass. App. Ct. 270, 273 (2001) (quotation omitted); *see also Fanucchi & Limi Farms v. United Agri Prod.*, 414 F. 3d 1075, 1082 (9th Cir. 2005) (to find a novation "it is not necessary to meet and state either in writing or orally that the original contract was rescinded" where "the intent to abandon can be ascertained from the acts and conduct of the parties"); *Johnston*, 565 F.2d at 796–97 ("The defendant need not prove novation by an express consent. It is enough that a plaintiff's conduct or silence in the light of the factual circumstances was sufficient to find the requisite assent.").

Plaintiff has no credible answer to the above authority and facts. It attempts to limit *Fannuchi* and *Leighton* to cases where the subsequent agreement involved the same parties when nothing in the reasoning of the cases would justify that limitation. *See* Reply at 9-10. At the same time, it offers no authority that would support judgment under the current procedural posture. First, its primary authority did not raise affirmative defenses that turned on subsequent conduct or events. Instead, the defenses were expressly precluded by the plain language of the contract. *See HSBC Realty Credit Corp. (USA) v. O'Neill*, 2013 WL 362823, at *3 (D. Mass. Jan. 30, 2013). Its second case involved an alleged oral contract that the Court found to be unenforceable by its plain terms. *See Craig J. Duchossois Revocable Tr. UAD 9/11/1989 v. CDX Lab'ys, Inc.*, 495 F. Supp. 2d 869 (N.D. Ill. 2006). Plaintiff's other cited authorities were decided at summary judgment on a fully developed evidentiary record, and further confirm that novation may be implied by facts and circumstances in the record. *See Zurich Am. Ins. Co. v. Watts Regul. Co.*, 860 F. Supp. 2d 78, 90 (D. Mass. 2012) (recognizing that the original contract could have been changed by later modification but finding absence of evidence to support theory on summary

judgement); *Sec. Ben. Life Ins. Co. v. F.D.I.C.*, 804 F. Supp. 217, 227–28 (D. Kan. 1992) (emphasizing question of implied consent should generally be a fact question for the jury, though allowing for resolution on *summary judgment* if evidence is so insufficient at that stage). The 2012 Agreement and surrounding facts thus require denial of Plaintiff's motion.

### 3. Plaintiff's Remaining Conclusory Objections Fail to Establish Additional Affirmative Defenses Cannot be Proven Through Discovery.

Defendant also has pled material facts that support a finding of estoppel, statute of limitations, and breach of the covenant of good faith and fair dealing. Plaintiff offers only cursory responses that fail to engage with Defendant's allegations and ignore both the terms of the contract and the surrounding facts and circumstances alleged by Defendant. *See* Reply at 10-12. On the defense of estoppel, Plaintiff is simply wrong in its suggestion that its conduct could not have caused forbearance because it had no direct communications with Defendant. Plaintiff failed to communicate with Defendant for a full decade after Defendant had been spun off as a clean shell. Moreover, absent a novation, Plaintiff would have been required to provide notice to PGIC as "Seller" under Article 12.9 of the SPA, but Defendant never received such notice. By withholding notice despite that contractual provision and the knowledge that both One Beacon and PGIC had been sold to separate companies (PGIC as a clean shell), Plaintiff prevented Defendant from learning material facts about the alleged liabilities and the existence of the contract for a decade. As a result, and in reliance on Plaintiff's conduct, Defendant took no action, to its detriment, inasmuch as it could have acted to protect itself against those liabilities had it known of them. *See Micro Networks Corp. v. HIG Hightec, Inc.*, 195 F. Supp. 2d 255, 266 (D. Mass. 2001) (emphasizing that estoppel is not governed by "rigid criteria" and finding pleading of "affirmative conduct and the silence of [company's] officer" showed acquiescence to the revised version of provision it sought to challenge).

Plaintiff likewise has no basis for ruling out an implied covenant defense at the pleading stage. Plaintiff's sole argument to the contrary is that it cannot be a violation of the implied covenant to assert an alleged contractual right. Plaintiff thus ignores, among other things, that if Plaintiff truly believed that it was still in contractual privity with Defendant post-2012, then it had an obligation to provide PGIC with the requisite notices under the 2007 SPA. Plaintiff ignores that, by failing to provide notice to or even contact PGIC for a decade following the 2012 Agreement, it violated a contractual provision it claims was still operative, and frustrated the contractual rights triggered by that notice provision.

Finally, Plaintiff has no basis for asserting that no set of facts will establish a violation of the statute of limitations. It asserts only that the statute of limitations could not have begun to run until 2021 when it first contacted Defendant concerning AEIC claims. That is not so, and certainly cannot be assumed at the pleading stage. As recognized by Plaintiff's authority, the statute of limitations begins to run when a controversy arises between the parties. *See* Reply at 11 (citing *Page v. LeRoux*, 43 Mass. App. Ct. 708, 712 (1997)). The known facts establish at a minimum that Plaintiff would have had reason to know that Defendant did not understand itself to have liability to Plaintiff given, *inter alia*, the fact that PGIC's parent sold PGIC off as a clean shell to a company outside the One Beacon orbit a decade ago, all surrounding facts and circumstances, and the absence of contact between the companies for a decade. Plaintiff also cannot rule out other facts and circumstances that would have given it reason to know that Defendant did not believe itself to be responsible for the claims. The statute of limitations defense thus also requires denial of Plaintiff's motion.

### 4. Plaintiff's Failure to Address Numerous Other Affirmative Defenses Confirms Judgment Cannot be Rendered on the Pleadings.

Plaintiff also is not entitled to judgment on the pleadings because of affirmative defenses

asserted in the Answer that Plaintiff does not address at all. Plaintiff's initial motion addressed none of Defendant's affirmative defenses, and its reply addressed only those that were discussed in Defendant's Opposition as illustrative of what Plaintiff had ignored. *See Allied Home Mortg. Cap. Corp. v. Mark*, 2014 WL 4964728, at *12 (D. Mass. Sept. 30, 2014) (stating it "is not appropriate to use a reply brief to raise a new argument"). Examples of defenses that Plaintiff has yet to address include laches (13), unclean hands (15), and Plaintiff's general lack of entitlement to the favorable exercise of the Court's discretion under the Declaratory Judgment Act (3, 11, 19) in light of the various facts alleged and those that will be further adduced through discovery. It is Plaintiff's burden to establish that judgment can be rendered despite all of Defendant's affirmative defenses, and it has failed to do so both as to the defenses to which it has devoted limited attention on reply and those it has ignored entirely. *Rivera-Gomez*, 843 F.2d at 635 ("[T]he court may not grant a [] Rule 12(c) motion unless it appears beyond doubt that the [nonmoving party] can prove no set of facts in support of his claim") (quotation marks omitted). Plaintiff's cursory treatment of the affirmative defenses fails to carry this burden. *See, e.g.*, *Gen. Conf. Corp. of Seventh-Day Adventists*, 887 F.2d at 230 ("[I]f the defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings.").

### B. Plaintiff Ignores Its Own Inconsistent Interpretation of the Contracts in Asserting that They are Clear and Unambiguous.

This surreply focuses on affirmative defenses because most of Plaintiff's new arguments on reply focused on those defenses, which as discussed above and previously, apply regardless of the parties' dispute over the contractual terms. Defendant thus primarily relies on its prior filings with respect to its assertions about the contracts themselves. Nothing in Plaintiff's reply, however, establishes that the contracts are unambiguous as to the duty to administer. Plaintiff previously relied on a misquotation of section 6 of the Reinsurance Agreement, and now relies on sections 6

and 8 to assert (in conclusory terms) that "the agreement explicitly addresses PGIC's obligation to administer claims." Reply at 3. This shifting theory alone establishes the ambiguity of the contract on this point. Further, Plaintiff's newfound reliance on section 8 is unavailing, particularly at this stage, inasmuch as nothing in section 8 unambiguously imposes a duty to administer claims on Defendant. Only section 6 expressly imposes a duty to administer, and it does so only with respect to a subset of claims ("the Retained Business") that Plaintiff has not alleged are at issue. That express language if anything contrasts with the language of section 8.

Plaintiff now appears to suggest that the assumption of liabilities contemplated by section 8 necessarily encompassed a duty to administer, but it points to no language that unambiguously imposes a duty to administer. To the contrary, as Defendant showed previously, assumption reinsurance presupposes a novation, and the subsequent SPA expressly disclaims any representation that AEIC's obligations to its policyholders were novated. *See* Opp. at 17-19. Plaintiff attempts to sidestep the SPA by arguing that ambiguous provisions between contracts must "actually conflict[]" in such a way that it is "not possible to comply with them all." Reply at 2. The authority it cites, however, establishes only that conflicting obligations can be a source of ambiguity, not that such a conflict is required to find ambiguity. *Sonoiki v. Harvard Univ.*, 37 F. 4th 691, 704 (1st Cir. 2022).

### III. CONCLUSION

For the foregoing reasons, and the reasons set forth in Defendant's initial Opposition, this Court should deny Plaintiff's motion for judgment on the pleadings.

DATED: November 9, 2022            Respectfully submitted,

                                           */s/ Samuel C. Kaplan*
                                           Samuel C. Kaplan (admitted *pro hac vice*)
                                           skaplan@bsfllp.com

BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

Maxwell V. Pritt (admitted *pro hac vice*)
mpritt@bsfllp.com
Reed D. Forbush (admitted *pro hac vice*)
rforbush@bsfllp.com
Erika Nyborg-Burch (admitted *pro hac vice*)
enyborg-burch@bsfllp.com
Mariah J. Noah (admitted *pro hac vice*)
mnoah@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

John F. Dew (BBO #668467)
jdew@cohenkinne.com
COHEN, KINNE, VALICENTI & COOK
28 North Street, 3rd Floor
Pittsfield, MA 01201
Telephone: (413) 443-9399
Facsimile: (413) 442-9399

*Counsel for Defendant, Pennsylvania Insurance Company*

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 9, 2022, the foregoing document was electronically filed using the Court's CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

*/s/ Samuel C. Kaplan*
Samuel C. Kaplan
