**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

|  |  |
|---|---|
| **SPARTA INSURANCE COMPANY** | ) |
| **(as successor in interest to Sparta** | ) |
| **Insurance Holdings, Inc.),** | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) |
| **v.** | ) |
|  | ) |
| **PENNSYLVANIA GENERAL** | ) |
| **INSURANCE COMPANY (now known** | ) |
| **as Pennsylvania Insurance Company),** | ) |
|  | ) |
| **Defendant.** | ) |

_____ )

Civil Action No.
21-11205-FDS

**MEMORANDUM AND ORDER ON**
**PARTIES' CROSS-MOTIONS FOR JUDGMENT ON THE PLEADINGS**

**SAYLOR, C.J.**

This is a dispute arising from a stock-purchase agreement between two insurance companies. Plaintiff SPARTA Insurance Company has sued defendant Pennsylvania General Insurance Company seeking relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, related to a stock-purchase agreement and reinsurance agreement.

SPARTA has moved for judgment on the pleadings on the ground that the agreements require PGIC to administer, pay, and indemnify SPARTA for claims. PGIC has also moved for judgment on the pleadings as to Count 1 on the ground that it should be dismissed for lack of ripeness. For the following reasons, both motions will be denied.

**I.    Background**

**A.    Factual Background**

The following facts, unless noted otherwise, are set forth as alleged in the complaint.

Because this memorandum and order also addresses SPARTA's motion for judgment on the pleadings, the Court also will consider the allegations in PGIC's pleadings.

SPARTA Insurance Company, formerly known as SPARTA Insurance Holdings, Inc., is a Connecticut corporation with headquarters in Farmington, Connecticut.  (Compl. ¶ 7).

Pennsylvania General Insurance Company ("PGIC"), now known as Pennsylvania Insurance Company, is a Pennsylvania corporation with headquarters in Omaha, Nebraska.  (*Id.* ¶ 8).

American Employers' Insurance Company ("AEIC") is a Massachusetts insurance corporation that has been acquired by SPARTA.  (*Id.* ¶ 2).

On June 15, 2005, AEIC and PGIC entered into a reinsurance agreement, under which AEIC's liabilities were apparently transferred and assumed by PGIC.  (*Id.* ¶ 15; *see generally* Reinsurance Agreement).[1]  AEIC and PGIC agreed to the following provisions in the reinsurance agreement:

> By this Instrument, the liabilities and assets of [AEIC] shall be transferred to [PGIC] and [PGIC] shall thereby succeed to the liabilities and assets of [AEIC].

(Reinsurance Agreement § 2).

> Immediately as of the Effective Date and Time . . . [PGIC] shall be deemed to have assumed any and all of the liabilities and assets of [AEIC].

(*Id.* § 3).

> [T]he assets of [AEIC] as of the Effective Date and Time shall include any and all of [AEIC's] assets of every nature and description of whatever kind and wheresoever situated including, without limitation . . . all underwriting contracts, including direct insurance policies and endorsements in respect thereto, reinsurance contracts, facultative contracts, retrocession agreements and any and all other underwriting contracts of every kind and description.

---

[1] The complaint also refers to the reinsurance agreement as a "transfer and assumption agreement."  (*See, e.g.*, Compl. ¶ 2).

(*Id.* § 4).

> [T]he liabilities of [AEIC] as of the Effective Date and Time shall include any and all of [AEIC's] liabilities or contractual commitments of every nature and description, whether absolute, accrued, contingent or otherwise or whether due now or in the future, including . . . any and all unpaid losses and loss adjustment expenses and any and all liabilities existing or arising in the future under Section 4.a . . . [and] any and all subsequent actions, proceedings, or liabilities arising from any of the foregoing liabilities or the assets of [AEIC].

(*Id.* § 5).

> [PGIC] shall assume as 100% reinsurance . . . the following insurance business which is in force as of the Effective Date and Time:  (a) the historical bond insurance business of [AEIC] (the "Retained Bonding Business") and (b) the historical insurance business of [AEIC] in those states in which such business has unearned premium or unpaid loss and in which [PGIC] does not have an insurance license (the "Retained Non-Bonding Business", and together with the Retained Bonding Business, the "Retained Business") . . . [PGIC] shall, at its sole expense, perform any and all administrative functions for such Retained Business, including without limitation claims handling, underwriting and regulatory functions, and shall reimburse [AEIC] for any and all out of pocket expenses related thereto.  [PGIC] shall 100% reinsure [AEIC] with respect to, and [AEIC] shall cede to [PGIC], all premiums, losses and expenses relating to such Retained Business as of the Effective Date and Time and as renewed by [AEIC] thereafter pending regulatory approvals.

(Reinsurance Agreement § 6).

On March 12, 2007, SPARTA and PGIC entered into a stock-purchase agreement that resulted in SPARTA acquiring AEIC from PGIC.  (Compl. ¶¶ 2, 13).  The transaction was structured such that SPARTA would obtain AEIC as a "clean shell," effectuated in part by the reinsurance agreement, with no liabilities remaining in AEIC after consummation of the transaction.  (*Id.* ¶ 14).  The reinsurance agreement was incorporated into the stock-purchase agreement in several sections.  (*Id.* ¶ 16).  The parties also agreed to the following provision on indemnity in the stock-purchase agreement:

> [PGIC] agrees to indemnify and hold [SPARTA] harmless of and from any loss, cost, expense, claim, interest, fine, penalty, deficiency, obligation, liability or damage, including, without limitation, reasonable attorneys' fees, accountants' fees and other investigatory fees and out-of-pocket expenses, actually expended

or incurred by [SPARTA] or [AEIC] (collectively, "Losses"), arising out of or
resulting from (i) any breach of representation or warranty (including any
misrepresentation in, or omission from, any certificate or other document
furnished or to be furnished by [PGIC] to [SPARTA] hereunder), or
nonfulfillment of any covenant or agreement on the part of [PGIC] under this
Agreement; (ii) the failure by [PGIC] to perform any of its obligations under the
Reinsurance Agreement; (iii) any Loss arising out of or resulting from the
existence of [AEIC] prior to the Closing or the conduct of the Business or other
operations by or of [AEIC] prior to the Closing; . . . and (vi) all actions, suits,
proceedings, demands, assessments, judgments, costs and expenses incident to
any of the foregoing (any and all of which are hereafter referred to as a "Claim").

[SPARTA] shall give [PGIC] written notice by certified or registered mail or
overnight courier of any Claim with respect to which [SPARTA] seeks
indemnification.  [PGIC] shall have ten business days from the date of receipt of
such notice to notify [SPARTA] that [PGIC] will assume the entire control of the
defense, compromise or settlement (any and all of which are hereinafter referred
to as "Defense") of such Claim through its own attorneys, which attorneys must
be reasonably acceptable to [SPARTA], and at its own expense.  If [PGIC] shall
assume such Defense, it shall promptly advise [SPARTA] of its activities and
efforts in connection therewith and of the ultimate resolution of such Claim.
[PGIC] shall have the right to settle, compromise or adjust any such Claim . . . .
If [PGIC] fails to notify [SPARTA] that it has assumed the Defense or does not in
fact assume the Defense, [SPARTA] may, but shall not be required to, pay,
compromise or settle such Claim, or take such action to settle such Claim,
provided that [SPARTA] shall notify [PGIC] of such action.  In such event,
[SPARTA] shall be fully entitled to indemnification hereunder.

(*Id.* ¶¶ 3, 17; Stock Purchase Agreement § 8.1).

The stock-purchase agreement also establishes a procedure for valuation of claims arising

under the agreement:

After [SPARTA] has determined the dollar amount of any Claim, [SPARTA]
shall provide written notice to indemnifying party of the amount of such Claim,
which notice shall include in reasonable detail information explaining calculation
of the amount of such Claim.

(Stock Purchase Agreement § 8.3).

That transaction closed on August 7, 2007.  (Compl. ¶ 18).  According to PGIC,

OneBeacon Insurance Company served as its guarantor for the 2007 transaction.  (Answer at 2).[2]
For more than a decade afterward, SPARTA and its affiliates have tendered liabilities for
insurance policies issued by AEIC, which were administered and paid pursuant to the stock-
purchase and reinsurance agreements.  (Compl. ¶¶ 3, 19).  According to PGIC, OneBeacon, not
PGIC, received and paid claims from SPARTA during this period.  (Answer at 9).  According to
the complaint, in May 2021, SPARTA learned that claims made pursuant to AEIC policies were
no longer being administered or paid.  (Compl. ¶¶ 4, 20).  In each of May, June, July, August,
and September 2021, SPARTA contacted PGIC concerning requests for indemnity for claims
arising out of AEIC policies.  (*Id.* ¶¶ 4, 21).  SPARTA allegedly requested confirmation that
PGIC would satisfy its contractual obligations under the stock-purchase and reinsurance
agreements to administer and pay all claims arising out of AEIC policies.  (*Id.*).  According to
the complaint, as of the filing of this lawsuit, PGIC had not agreed to do so.  (*Id.*).  According to
PGIC, SPARTA did not tender claims for indemnity in accordance with the indemnification
procedures set forth by the stock-purchase agreement (Answer ¶ 4).

### B.   Procedural Background

On October 4, 2021, SPARTA filed an amended complaint seeking a declaratory
judgment.  The amended complaint asserts two claims.  Count 1 asserts a claim for declaratory
judgment pursuant to 28 U.S.C. §§ 2201, 2202 seeking a judicial determination of the rights of
SPARTA and PGIC under the stock-purchase agreement.  (Compl. ¶¶ 24-27).  Count 2 similarly
asserts a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202 seeking a judicial
determination of the rights of SPARTA and PGIC under the reinsurance agreement.  (*Id.* ¶¶ 28-

---

[2] OneBeacon changed its name to "Bedivere" in 2015.  (Def. Opp. at 5 n.6, Dkt. #63).  The Court refers to
the company as "OneBeacon" for clarity.

30).

On October 18, 2021, PGIC moved to dismiss the complaint for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state a claim under Fed. R. Civ. P. 12(b)(6).

On August 9, 2022, the Court denied PGIC's motions to dismiss the complaint.

SPARTA has moved for judgment on the pleadings as to both counts.

PGIC has cross-moved for judgment on the pleadings as to Count 1.  PGIC contends that Count 1 is not ripe for adjudication because SPARTA has not followed the stock-purchase agreement's procedure for presenting claims to be indemnified.

## II.   <u>Standard of Review</u>

A motion for judgment on the pleadings under Rule 12(c) differs from a motion to dismiss under Rule 12(b)(6) primarily because it is filed after the close of pleadings and "implicates the pleadings as a whole." *Aponte-Torres v. University of P.R.*, 445 F.3d 50, 54-55 (1st Cir. 2006).  It is, however, treated similarly.  *See id.* at 54.  To survive a motion for judgment on the pleadings, a complaint must state a claim that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  For a claim to be plausible, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.* at 555 (internal citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

In determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences.  *See R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 182 (1st Cir. 2006).  In addition to well-pleaded facts, a court may consider documents incorporated by reference into the complaint, matters of

6

public record, and facts susceptible to judicial notice.  *Grajales v. Puerto Rico Auth.*, 682 F.3d 40, 44 (1st Cir. 2012).  A court may also consider documents whose authenticity is not disputed by the parties and documents central to the plaintiff's claim, even when those documents are incorporated into the movant's pleadings.  *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007).

A court may only enter a judgment on the pleadings "only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." *Aponte-Torres*, 445 F.3d at 54.

## III.   PGIC's Motion for Judgment on the Pleadings

PGIC contends that the pleadings demonstrate that SPARTA has failed to present it with a request to pay a specific loss accompanied by an explanation of how the claim amount was calculated.  It contends that because such a presentment is required by the stock-purchase agreement as a condition precedent for indemnification, there is no actual controversy as to its obligations under the stock-purchase agreement.

PGIC raised that argument in its original motion to dismiss.  (Def. Mem. at 9, Dkt. #22). In denying that motion, this Court noted that the amended complaint "appears to allege that claims are not being declined on an individualized basis, according to individualized coverage determinations, but that all claims are being declined, regardless of the underlying issues." *SPARTA Ins. Co. v. Pennsylvania Gen. Ins. Co.*, 2022 WL 3214947, at *4 (D. Mass. 2022). However, the Court also noted that it "may revisit questions of justiciability, including ripeness and Article III standing, as may be necessary or appropriate during the course of the litigation." *Id.* at *6.  In substance, PGIC is asking the Court to revisit the issue of ripeness based on exhibits submitted by SPARTA in support of its own motion for judgment on the pleadings.

### A.   Legal Standard

The Declaratory Judgment Act requires that there be an "actual controversy" between the

7

parties before a declaratory judgment may issue.  28 U.S.C. § 2201(a).  "[T]he phrase 'case of actual controversy' in the Act refers to the types of 'Cases' and 'Controversies' that are justiciable under Article III."  *MedImmune*, 549 U.S. 118, 127 (2007).   PGIC contends that Count 1 does not involve an actual controversy because it is not ripe.

The ripeness doctrine is intended to "prevent the adjudication of claims relating to 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) (quoting *Thomas v. Union Carbide Agric. Prods. Co*., 473 U.S. 568, 580-81 (1985)).  To be ripe, a complaint must "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of the judicial relief sought."  *Reddy*, 845 F.3d at 500 (quotation marks and citations omitted).  Ripeness analysis has two prongs:  hardship and fitness. *See Texas v. United States*, 523 U.S. 296, 301 (1998).

In evaluating hardship, "the court should consider whether the challenged action creates a direct and immediate dilemma for the parties."  *Verizon New England, Inc. v. Int'l Bhd. of Elec. Workers, Loc. No. 2322*, 651 F.3d 176, 188 (1st Cir. 2011) (internal citations and quotation marks omitted).  This prong is "wholly prudential" and "concerns the harm to the parties seeking relief that would come to those parties from our withholding of a decision at this time."  *Reddy*, 845 F.3d at 501 (internal quotation marks and citations omitted).

"The fitness prong 'has both jurisdictional and prudential components.'"  *Reddy*, 845 F.3d at 501 (quoting *Roman Cath. Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 89 (1st Cir. 2013)).  "The jurisdictional component . . . concerns 'whether there is a sufficiently live case or controversy, at the time of the proceedings, to create jurisdiction in the federal courts.'" *Id.*  "The prudential component . . . concerns 'whether resolution of the dispute should be

postponed in the name of judicial restraint from unnecessary decision of constitutional issues.'"

*Id.*

**B.**     **Analysis**

PGIC contends that Count 1 does not involve an actual case or controversy because SPARTA has not presented a specific and explained loss arising out of an AEIC policy for PGIC to indemnify—a condition precedent required by the stock-purchase agreement.  On its face, the current motion raises essentially the same issue that PGIC raised in its motion to dismiss.  PGIC clarifies in its reply that

> [while] [PGIC] was constrained by [SPARTA's] cryptic pleading in its ability to refer to the contents of documents described vaguely by the First Amended Complaint, [SPARTA] has now given [PGIC] license to do so by relying on those documents in its motion for judgment on the pleadings.

(Def. Reply at 1, Dkt. #76).  The distinction, therefore, between this motion and the prior motion is that PGIC is asking the Court to consider documents submitted by SPARTA in support of its motion.  PGIC contends that those documents show that SPARTA has not properly presented claims that it is required to indemnify under the stock-purchase agreement, and that any declaratory judgment concerning its obligations under the stock-purchase agreement would amount to an advisory opinion.

The Court will assume, without deciding, that it may consider those documents to be part of the "pleadings" in ruling on PGIC's motion.  The documents consist principally of correspondence between representatives of SPARTA and PGIC from May 2021 to September 2021.  (*See* Carroll Decl., Exs. 4-7, Dkt. #61).  PGIC contends that the correspondence shows that SPARTA only sought confirmation that PGIC would indemnify SPARTA when payment was due—not payment on specific claims as specified under § 8.3 of the stock-purchase agreement.

PGIC is correct that none of SPARTA's exhibits appears to show a specific claim accompanied by "information explaining calculation of the amount of such Claim," as required by § 8.3.  Nonetheless, those documents are not sufficient to trigger dismissal of the complaint. As the Court found earlier, the complaint alleges that PGIC has failed to pay all claims, regardless of the underlying issues.  (*See* Compl. ¶¶ 20-22).  Although none of the documents appears to show a specific, properly presented claim, SPARTA has not asserted that those communications are the totality of its communications with PGIC regarding claims.  (*See* Pl. Mem. at 6, Dkt. #60).  The documents therefore do not make the bare allegations of the complaint entirely implausible.  Accordingly, judgment on the pleadings as to Count 1 is not appropriate, as the pleadings sufficiently allege the existence of an actual controversy.

Of course, this ruling, like the Court's earlier ruling, is not a final and conclusive determination that Count 1 can survive summary judgment, or even that it is a ripe dispute.  It may well be true that there is no evidence that SPARTA has properly presented specific claims to PGIC, and indeed this proceeding could prove to be entirely baseless.  But the Court cannot resolve those questions on a motion for judgment on the pleadings.  The motion of PGIC for judgment on the pleadings will therefore be denied.

## IV.   SPARTA's Motion for Judgment on the Pleadings

SPARTA contends that judgment on the pleadings is appropriate for both counts.  As to Count 1, it contends that the stock-purchase agreement unambiguously requires PGIC to indemnify it for claims made against AEIC policies.  As to Count 2, SPARTA contends that the reinsurance agreement unambiguously requires PGIC to administer and pay claims made against AEIC policies.  PGIC contends that affirmative defenses raised in its answer should preclude judgment on the pleadings, and that discovery will provide evidence that can resolve ambiguities in both contracts.

10

**A.**     <u>Count 1</u>

SPARTA contends that the stock-purchase agreement requires PGIC to indemnify it for claims made against AEIC policies.  PGIC, among other arguments, again contends that Count 1 is nonjusticiable because SPARTA has not properly presented specific claims for PGIC to indemnify, as required by § 8 of the stock-purchase agreement.

As a general proposition, and where there are no factual issues in dispute, a court may resolve a contract interpretation issue on a motion for judgment on the pleadings.  *See, e.g.*, *Atain Specialty Ins. Co. v. Boston Rickshaw LLC*, 387 F. Supp. 3d 157, 160 (D. Mass. 2019).  That is not the situation here.  Viewing the facts in the light most favorable to PGIC—here, the nonmoving party—it is plausible that SPARTA has failed to comply with one or more conditions precedent under the contract; that one or more of PGIC's affirmative defenses is valid; or that PGIC should prevail for some other reason.  As noted, the stock-purchase agreement requires that SPARTA present specific claims with information explaining the calculation of each claim. Assuming that PGIC's characterization of SPARTA's May-September 2021 correspondence is correct, SPARTA has not properly presented claims that would trigger PGIC's duty to indemnify under the stock-purchase agreement.  A judgment on the pleadings as to Count 1 is therefore inappropriate.  *See MedImmune*, 549 U.S. at 127.

**B.**     <u>Count 2</u>

SPARTA asserts that the reinsurance agreement unambiguously requires PGIC to administer and pay claims made under AEIC policies.

The parties dispute whether the reinsurance agreement requires PGIC to administer claims, as opposed to indemnify claims.  The agreement transfers "all of the liabilities and assets" of AEIC to PGIC.  (Reinsurance Agreement §§ 2, 3).  It defines "assets" to include "direct insurance policies and endorsements in respect thereto."  (*Id.* § 4).  It defines "liabilities"

as including "unpaid losses and loss adjustment expenses and any and all liabilities" arising from the insurance policies and endorsements.  (*Id.* § 5).  It also declares that "all liabilities of every nature and description . . . shall attach to and be assumed by [PGIC] and may be enforced against [PGIC] to the same extent as if such liabilities had been originally incurred or contracted by [PGIC]."

PGIC contends that the reinsurance agreement should be read in light of language in the stock-purchase agreement and treated as indemnity reinsurance, under which a reinsurer has a duty to indemnify claims but no duty to administer claims.  SPARTA argues that the reinsurance agreement reflects an unambiguous commitment on PGIC's part to administer claims.

Contract interpretation is a matter of law for the court to resolve.  Nonetheless, at this stage, it is not necessary to resolve the dispute concerning the language of the reinsurance agreement, because PGIC has asserted 28 affirmative defenses, at least several of which are plausible.  The language of the reinsurance and stock-purchase agreements does not clearly preclude the assertion of all such defenses.  *Contra HSBC Realty Credit Corp. (USA) v. O'Neill*, 2013 WL 362823, at *7 (D. Mass. Jan. 30, 2013) (finding that defendant's affirmative defenses were "flatly contradicted" by the plain language of the contract).

To give a single example, the reinsurance agreement does not by its terms clearly preclude PGIC's defense that OneBeacon is the real party in interest and that SPARTA assented to a novation that transferred PGIC's liabilities to OneBeacon.  Viewing the facts in the light most favorable to PGIC, SPARTA knew that PGIC had ceded its liabilities and business to OneBeacon in 2001.  And SPARTA was aware that before and after the 2007 consummation of the stock-purchase agreement, PGIC had ceded its insurance obligations to OneBeacon.  Further, SPARTA tendered claims related to AEIC policies to OneBeacon for years after PGIC's sale to a

third party in 2012.  PGIC argues that SPARTA's post-2012 conduct shows that it assented to OneBeacon's assumption of PGIC's liabilities.

At the end of the day, that defense may prove to be unsupported by the evidence.  But "[w]hether a novation has occurred is a question for the trier of fact."  *Johnston v. Holiday Inns, Inc.*, 565 F.2d 790, 796 (1st Cir. 1977).  "A novation may be inferred from the circumstances and from the conduct of the parties."  *Clark v. General Cleaning Co.*, 345 Mass. 62, 64 (1962).  It may be difficult for a defendant to show that a plaintiff has consented to a novation by accepting payment from a third party rather than the defendant.  *See Union Mut. Life Ins. Co. v. Chrysler Corp.*, 793 F.2d 1 (1st Cir. 1986).  However, the Court is unwilling to declare that the facts as asserted by PGIC in the pleadings preclude a finding of novation.  The language of the reinsurance agreement does not prohibit a novation.  PGIC contends that the stock-purchase agreement requires written consent for amendment or assignment, but Count 2 is premised on SPARTA's rights under the reinsurance agreement, not the stock-purchase agreement.  Furthermore, a novation operates as a subsequent agreement, and therefore could supersede the stock-purchase agreement.  *See* RESTATEMENT (SECOND) OF CONTRACTS § 280 (Am. L. Inst. 2022) ("A novation is a substituted contract."); *Cincinnati Ins. Co. v. Leighton*, 403 F.3d 879, 888 (7th Cir. 2005).

In any event, the issue cannot be resolved in the context of a motion for judgment on the pleadings.  The motion will therefore be denied as to Count 2.

## V.    <u>Conclusion</u>

For the foregoing reasons, the motion for judgment on the pleadings of plaintiff SPARTA Insurance Company, and the motion for judgment on the pleadings of defendant Pennsylvania General Insurance Company, are DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV
_____
F. Dennis Saylor IV
Chief Judge, United States District Court

Dated: January 13, 2022