UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SPARTA INSURANCE COMPANY     :
(as successor in interest to Sparta Insurance
Holdings, Inc.),           :

          Plaintiff,     :    Civil Action
                           No. 21-11205-FDS
   v.                :

PENNSYLVANIA GENERAL INSURANCE  :
COMPANY (now known as Pennsylvania
Insurance Company),        :

          Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SECOND AMENDED COMPLAINT

       Plaintiff SPARTA Insurance Company (formerly known as Sparta Insurance

Holdings, Inc.) ("SPARTA" or "Purchaser"), by and through its undersigned counsel, brings this

action against Pennsylvania General Insurance Company (now known as Pennsylvania Insurance

Company) ("PGIC" or "Seller") and alleges upon knowledge with respect to itself and its own

acts, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

       1.    This is an action for a declaratory judgment pursuant to 28 U.S.C.

§§ 2201-02 concerning the rights and obligations of the parties pursuant to a stock purchase

agreement and related transfer and assumption agreement, and for breach of two agreements

between the parties pursuant to which PGIC has failed to pay more than $11 million to

SPARTA.

       2.    On March 12, 2007, SPARTA and PGIC entered into a Stock Purchase

Agreement (the "Agreement" or "SPA") pursuant to which SPARTA acquired from PGIC a

Massachusetts insurance corporation named American Employers' Insurance Company ("AEIC" or the "Company"). In the transaction, SPARTA acquired AEIC as a "clean shell" because all of the pre-transaction liabilities were transferred from AEIC to PGIC pursuant to a transfer and assumption agreement (the "Transfer and Assumption Agreement" or "Reinsurance Agreement"). The transaction subsequently closed in 2007, after obtaining the necessary regulatory approvals, including from the Massachusetts Division of Insurance.

3.     As set forth in further detail below, in the SPA, PGIC agreed to indemnify and hold harmless SPARTA for, among other things, all of the liabilities for insurance policies issued by AEIC and all of the business of AEIC prior to the acquisition. In the Reinsurance Agreement, PGIC agreed to, at its sole expense, perform any and all administrative functions for all of the insurance policies issued by AEIC, including but not limited to claims handling. For more than a decade, SPARTA and its affiliates tendered liabilities for insurance policies issued by AEIC and those liabilities were administered and paid in accordance with the SPA and Reinsurance Agreement.

4.     Recently, however, SPARTA learned that claims made pursuant to AEIC policies were no longer being administered or paid. SPARTA has tendered numerous claims to PGIC for indemnity, but PGIC has repeatedly failed to indemnify those claims or to confirm that PGIC will honor its contractual obligations under the SPA and Reinsurance Agreement to administer and pay the claims made pursuant to insurance policies issued by AEIC. As a result, SPARTA has incurred and continues to incur damages by administering and paying those claims that are the responsibility of PGIC.

5.     SPARTA requires declaratory relief to prevent the further frustration of its rights pursuant to the SPA and Reinsurance Agreement (to which SPARTA is a party and/or

successor in interest as a result of its ownership of AEIC). In its declaratory judgment claims, SPARTA seeks a declaration that, based on the plain language of the SPA:

(a)     PGIC is required to indemnify and hold SPARTA harmless of and from any loss, cost, expense, claim, interest, fine, penalty, deficiency, obligation, liability or damage, including, without limitation, reasonable attorneys' fees, accountants' fees and other investigatory fees, and out-of-pocket expenses, actually expended or incurred by SPARTA or AEIC, arising out of or resulting from (i) any breach of representation or warranty (including any misrepresentation in, or omission from, any certificate or other document furnished or to be furnished by PGIC to SPARTA) or nonfulfillment of any covenant or agreement on the part of PGIC under the SPA; (ii) the failure by PGIC to perform any of its obligations under the Reinsurance Agreement [as defined in the SPA]; (iii) any loss arising out of or resulting from the existence of AEIC prior to the August 7, 2007 closing or the conduct of the Business [as defined in the SPA] or other operations by or of AEIC prior to the August 7, 2007 closing; and (iv) all actions, suits, proceedings, demands, assessments, judgments, costs and expenses incident to any of the foregoing.

(b)     PGIC is required to pay all of SPARTA's costs, expenses and reasonable attorneys' fees incurred in obtaining PGIC's compliance with its obligations under the SPA and in connection with this action.

6.     SPARTA further seeks a declaration that, based on the plain language of the Reinsurance Agreement:

(a)     PGIC is responsible for all of AEIC's liabilities and contractual

commitments of every nature and description, whether absolute, accrued,

contingent or otherwise, or whether due at the time of the Reinsurance

Agreement or in the future, including, without limitation, any and all

subsequent actions, proceedings or liabilities arising from any of the

liabilities or assets of AEIC.

(b)     PGIC shall, at its sole expense, perform any and all administrative

functions for the prior AEIC business, including, without limitation,

claims handling.

7.      SPARTA also seeks an award of monetary damages for the harm

SPARTA has suffered as a result of PGIC's wrongful conduct, including, but not limited to,

$11,849,047 in claim payments, attorneys' fees and costs, and third party administrator costs that

SPARTA has incurred.

## THE PARTIES

8.      Plaintiff SPARTA Insurance Company is a Connecticut corporation that

has its headquarters and its principal place of business at 5 Batterson Park Road, Farmington, CT

06032.

9.      Defendant Pennsylvania General Insurance Company is a New Mexico

corporation that has its headquarters and its principal place of business at 10805 Old Mill Road,

Omaha, NE 68154.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this case pursuant to

28 U.S.C. § 1332, because the parties are citizens of different States and the amount in

controversy in this action exceeds $75,000, exclusive of interest and costs.

11.     This Court has personal jurisdiction over PGIC pursuant to M.G.L. c. 223A, § 3, because, among other things, PGIC transacted business in Massachusetts and contracted to insure a person, property or risk located within Massachusetts at the time of contracting.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.  A substantial part of the events giving rise to the claims occurred in Massachusetts.  In addition, in the Agreement, PGIC agreed that the Agreement would be governed by Massachusetts law and that certain suits related to the Agreement could be brought in the courts of Massachusetts.

13.     The requested declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201-02, because there is a present and actual controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## THE TRANSACTION AND DISPUTED PROVISIONS OF THE AGREEMENT

14.     On March 12, 2007, SPARTA and PGIC entered into the Agreement pursuant to which SPARTA acquired AEIC, a Massachusetts insurance company.

15.     The transaction was structured so that after the transaction closed in 2007, SPARTA would obtain AEIC as a "clean shell," meaning that there would be no liabilities remaining in AEIC after the transaction was consummated.  AEIC, which held various licenses to write insurance business, would then be able to write new business going forward.

16.     To create the "clean shell" in AEIC, among other things, PGIC and AEIC entered into the Reinsurance Agreement on June 15, 2005.  In the Reinsurance Agreement, PGIC agreed to assume "all of [AEIC's] liabilities or contractual commitments of every nature and description, whether absolute, accrued, contingent or otherwise or whether due now or in the future," either through direct assumption or as a reinsurer pursuant to Paragraph 6 of that contract.

17.     PGIC assumed all obligations with respect to the liabilities that were directly assumed by PGIC, including the obligation to conduct litigation, as a matter of law.

18.     PGIC "assume[d] as 100% reinsurance, as opposed to a complete Transfer and Assumption," certain Retained Business.  For those Retained Businesses, PGIC expressly agreed that it would, "at its sole expense, perform any and all administrative functions for such Retained Business, including without limitation claims handling."

19.     The Reinsurance Agreement further provided that "all liabilities of every nature and description of American [AEIC] at the time of the Transfer and Assumption shall attach to and be assumed by Pennsylvania General and may be enforced against Pennsylvania General to the same extent as if such liabilities had been originally incurred or contracted by Pennsylvania General."

20.     The Reinsurance Agreement included as Exhibit A, is a notice and certification of assumption that informed AEIC policyholders that "Pennsylvania General shall be substituted as your insurer.  All payments, notices, claims and suits or actions on your Policy shall hereafter be made to Pennsylvania General as though it were your original insurer."

21.     The Reinsurance Agreement provides that "the terms and conditions contained in this Instrument shall inure to the benefit of, and be binding upon, the Parties and their respective successors and permitted assigns."

22.     The Reinsurance Agreement was incorporated into the SPA repeatedly. For example:

(a)     In Section 2.8 of the SPA, PGIC agreed, among other things, that the Reinsurance Agreement constitutes a legal, valid and binding obligation of

each of PGIC and AEIC, enforceable against each of PGIC and AEIC, respectively, in accordance with its terms.

(b)     In Section 2.19 of the SPA, PGIC agreed, among other things, that all liabilities of AEIC that have arisen or could arise, under any insurance contract or any reinsurance treaty or otherwise, have been and will be assumed by PGIC pursuant to the Reinsurance Agreement.

(c)     In Section 6.12 of the SPA, PGIC agreed, among other things, that the Reinsurance Agreement shall be in full force and effect as a condition precedent to the obligation of SPARTA to close on the SPA.

23.     In Section 8.1 of the SPA, PGIC agreed, among other things, to fully indemnify SPARTA for any breaches of PGIC's obligations under the Reinsurance Agreement, all liabilities of AEIC prior to the closing of the sale, and all of the costs and expenses associated therewith, including but not limited to attorneys' fees and expenses. That provision of the SPA states, in relevant part:

> Seller [PGIC] agrees to indemnify and hold Purchaser [SPARTA] harmless of and from any loss, cost, expense, claim, interest, fine, penalty, deficiency, obligation, liability or damage, including, without limitation, reasonable attorneys' fees, accountants' fees and other investigatory fees and out-of-pocket expenses, actually expended or incurred by Purchaser [SPARTA] or the Company [AEIC] (collectively, "Losses"), arising out of or resulting from (i) any breach of representation or warranty (including any misrepresentation in, or omission from, any certificate or other document furnished or to be furnished by the Seller to Purchaser hereunder), or nonfulfillment of any covenant or agreement on the part of Seller under this Agreement; (ii) the failure by the Seller [PGIC] to perform any of its obligations under the Reinsurance Agreement; (iii) any Loss arising out of or resulting from the existence of Company [AEIC] prior to the Closing or the conduct of the Business or other operations by or of Company [AEIC] prior to the Closing; . . . and (vi) all actions, suits, proceedings, demands, assessments, judgments, costs and expenses incident to any of the foregoing (any and all of which are hereafter referred to as a "Claim").

24.     Section 8.1 further establishes procedures by which SPARTA may seek

and thereby be entitled to receive indemnification, stating in relevant part:

> Purchaser [SPARTA] shall give Seller [PGIC] written notice by certified or registered mail or overnight courier of any Claim with respect to which Purchaser [SPARTA] seeks indemnification. Seller [PGIC] shall have ten business days from the date of receipt of such notice to notify Purchaser [SPARTA] that Seller [PGIC] will assume the entire control of the defense, compromise or settlement (any and all of which are hereinafter referred to as "Defense") of such Claim through its own attorneys, which attorneys must be reasonably acceptable to Purchaser [SPARTA], and at its own expense. If Seller [PGIC] shall assume such Defense, it shall promptly advise Purchaser [SPARTA] of its activities and efforts in connection therewith and of the ultimate resolution of such Claim. . . . If Seller [PGIC] fails to notify Purchaser [SPARTA] that it has assumed the Defense or does not in fact assume the Defense, Purchaser [SPARTA] may, but shall not be required to, pay, compromise or settle such Claim, or take such action to settle such Claim, provided that Purchaser [SPARTA] shall notify Seller [PGIC] of such action. In such event, Purchaser [SPARTA] shall be fully entitled to indemnification hereunder.

25.     Section 8.3 of the SPA sets out additional procedures regarding the

valuation of claims for indemnification, stating in relevant part:

> After the indemnified party has determined the dollar amount of any Claim, such indemnified party shall provide written notice to indemnifying party of the amount of such Claim, which notice shall include in reasonable detail information explaining calculation of the amount of such Claim.  Unless, within thirty (30) business days after the receipt of such notice by the indemnifying party, the indemnified party receives written notice that indemnifying party does not concur with the indemnified party's determination of the amount of the Claim, the amount of such Claim provided in such written notice shall conclusively be deemed to have been accepted by the indemnifying party and to be the agreed amount which the indemnified party and, in the event that Purchaser [SPARTA] is the indemnified party, Company [AEIC] are entitled to receive by way of indemnification from the indemnifying party (the "Indemnification Loss").  If the indemnified party within such thirty (30) business day period receives written notice that the indemnifying party disagrees with the amount of the Claim, the parties shall endeavor forthwith, and within ten (10) business days after receipt of such notice of disagreement by the indemnified party, to negotiate in good faith to resolve the issue or issues which form the basis of their disagreement.  If no resolution with respect to such disagreement has been reached by the parties within such ten (10) business day period, either the indemnified party (on behalf of itself or, in the event Purchaser [SPARTA] is the indemnified party, the Company [AEIC]) or the indemnifying party may commence litigation with respect to such disagreement in a court of competent jurisdiction in the Commonwealth of Massachusetts. . . .

26. Section 8.4 provides for payment of indemnification losses within five business days of the valuation of a claim for indemnification being determined, stating in relevant part:

> Any indemnification amount payable by any indemnifying party pursuant to Section[] 8.1 or 8.2 hereunder shall be promptly remitted by such indemnifying party to a bank account of the indemnified party (or, if Purchaser [SPARTA] is the indemnified party and so directs the Seller [PGIC], the Company [AEIC]), as designated in writing by the indemnified party, within five business days after the determination of the amount of such indemnification amount.

27. The transaction Closing occurred on August 7, 2007.

28. Following the transaction, AEIC was renamed SPARTA Insurance Company in August 2007, and later merged with SPARTA Insurance Holdings, Inc. in October 2015.

## SPARTA SEEKS INDEMNIFICATION FROM PGIC FOR AEIC CLAIMS

29. For more than a decade after SPARTA acquired AEIC, claims made pursuant to AEIC policies were not administered or paid by SPARTA. Instead, SPARTA and its affiliates tendered claims for administration and payment pursuant to the SPA and/or Reinsurance Agreement.

30. In May 2021, SPARTA learned that claims made pursuant to AEIC policies were no longer being administered or paid.

31. Since May 2021, SPARTA has contacted PGIC multiple times concerning SPARTA's requests for indemnity to PGIC for claims arising out of policies issued by AEIC pursuant to the procedures in Section 8.1 of the SPA. For example, among others:

(a) On May 28, 2021, Amy Gallant, counsel for SPARTA, sent an e-mail to Jeff Silver of PGIC notifying him that SPARTA had been named and served in four actions arising under AEIC policies. Ms. Gallant asked Mr.

Silver to confirm that PGIC would "continue to honor its obligations and assume, handle, and pay all claims" pursuant to the Transfer and Assumption Agreement.  On June 1, 2021, she reiterated SPARTA's request that PGIC advise that it would "continue to protect [SPARTA's] interests and manage and pay claims."  A copy of the May 28, 2021 e-mail and subsequent related correspondence is attached as Exhibit A.  PGIC did not notify SPARTA that it would assume control of the defense, compromise or settlement of any of the claims described in Exhibit A within ten (10) business days of May 28, 2021.

(b)     On June 23, 2021, Joshua Weiner, counsel for SPARTA, e-mailed Mr. Silver 14 tenders for defense and indemnity that SPARTA had received from an AEIC policyholder and identified two additional coverage cases in which a third party had directly sued SPARTA as a result of alleged liabilities arising from policies issued by AEIC.  A copy of the June 23, 2021 e-mail and previous and subsequent related correspondence is attached as Exhibit B.  PGIC did not notify SPARTA that it would assume control of the defense, compromise or settlement of any of the claims described in Exhibit B within ten (10) business days of June 23, 2021.

(c)     On July 26, 2021, Mr. Weiner sent Mr. Silver a letter providing notice of its indemnification obligations pursuant to Section 8.1 of the SPA regarding the claims described above, as well as four additional matters related to AEIC policies.  A copy of the July 26, 2021 letter is attached as Exhibit C.  PGIC did not notify SPARTA that it would assume control of

the defense, compromise or settlement of any of the claims described in Exhibit C within ten (10) business days of July 26, 2021.

(d)     On September 27, 2021, SPARTA's counsel sent PGIC's counsel a letter providing notice of its indemnification obligations pursuant to Section 8.1 of the SPA with respect to all AEIC claims that SPARTA had accepted tender of from Bedivere's liquidator after PGIC refused tender, including 13 specific additional claims.  A copy of the September 27, 2021 letter is attached as Exhibit D.  PGIC did not notify SPARTA that it would assume control of the defense, compromise or settlement of any of the claims described in Exhibit D within ten (10) business days of September 27, 2021.

32.     Since assuming defense of claims arising under AEIC policies, SPARTA has periodically informed PGIC of the status of all claims arising under AEIC policies for which SPARTA is seeking indemnification pursuant to Section 8.1 of the SPA.  A redacted copy of the most recent update, which was provided to PGIC on January 17, 2023, is attached as Exhibit E. PGIC has never notified SPARTA that it would assume control of the defense, compromise or settlement of any claims arising under AEIC policies.

33.     On November 7, 2022, SPARTA notified PGIC pursuant to Section 8.3 of the SPA that SPARTA had expended $11,849,047 through September 30, 2022 on the AEIC claims of which it had previously notified PGIC.  SPARTA requested that PGIC promptly remit payment to SPARTA in that amount.  A copy of the November 7, 2022 letter and redacted copy of the enclosed spreadsheet are attached as Exhibit F.  SPARTA also reserved the right to

recover additional amounts incurred by SPARTA after September 30, 2022, and stated that it would provide PGIC with notice of such additional amounts.

34. PGIC received the November 7, 2022 letter on November 8, 2022.

35. PGIC did not respond to SPARTA within thirty (30) business days of its receipt of the November 7, 2022 letter, *i.e.* December 8, 2022.

36. Pursuant to Section 8.3 of the SPA, PGIC therefore has conceded that $11,849,047 is the amount it owes to SPARTA for indemnified costs that SPARTA incurred through September 30, 2022.

37. PGIC was required to remit $11,849,047 to SPARTA within five business days after the determination of the amount of such indemnification amount, *i.e.*, December 15, 2022. PGIC did not remit $11,849,047 to SPARTA by December 15, 2022.

38. As of February 3, 2023, SPARTA had not received any response from PGIC regarding its November 7, 2022 letter or any payments for the amounts set forth in that letter. SPARTA therefore sent a second letter to PGIC noting that the $11,849,047 amount was now considered the deemed amount for SPARTA's indemnification claims as of September 30, 2022, and that PGIC was required to, but had not paid SPARTA that amount. A copy of that February 3, 2022 letter is attached as Exhibit G.

39. To date, PGIC has made no payments to SPARTA for any of the claims made pursuant to the historical AEIC policies that are the subject of this action.

40. SPARTA has incurred and continues to incur costs related to the defense, compromise or settlement of the claims identified in Exhibits A through E, as well as other claims arising under AEIC policies that PGIC has not agreed to administer and pay.

41. To date, PGIC has not indemnified SPARTA for those costs pursuant to the SPA or agreed to satisfy PGIC's contractual obligation under the SPA and Reinsurance Agreement to, among other things, administer and pay all such claims.

42. A dispute has arisen between SPARTA and PGIC concerning PGIC's contractual obligation under the SPA and Reinsurance Agreement to, among other things, administer and pay all such claims arising out of policies issued by AEIC.

43. An actual controversy has arisen and now exists between plaintiff and defendant concerning the parties' rights and obligations under the SPA. This is a live dispute that remains unresolved and is ripe for adjudication as a matter of law.

<u>COUNT I</u>
**(Declaratory Judgment Pursuant To 28 U.S.C. §§ 2201, 2202)**

44. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

45. An actual controversy has arisen and now exists between SPARTA and PGIC concerning the parties' rights and obligations under the SPA.

46. SPARTA requires a judicial determination of the respective rights of itself and PGIC under the SPA. Specifically, SPARTA seeks a declaration that, based on the plain language of the SPA:

(a) PGIC is required to indemnify and hold SPARTA harmless of and from any loss, cost, expense, claim, interest, fine, penalty, deficiency, obligation, liability or damage, including, without limitation, reasonable attorneys' fees, accountants' fees and other investigatory fees, and out-of-pocket expenses, actually expended or incurred by SPARTA or AEIC, arising out of or resulting from (i) any breach of representation or

warranty (including any misrepresentation in, or omission from, any certificate or other document furnished or to be furnished by PGIC to SPARTA) or nonfulfillment of any covenant or agreement on the part of PGIC under the SPA; (ii) the failure by PGIC to perform any of its obligations under the Reinsurance Agreement [as defined in the SPA]; (iii) any loss arising out of or resulting from the existence of AEIC prior to the August 7, 2007 closing or the conduct of the Business [as defined in the SPA] or other operations by or of AEIC prior to the August 7, 2007 closing; and (iv) all actions, suits, proceedings, demands, assessments, judgments, costs and expenses incident to any of the foregoing.

(b) PGIC is required to pay all of SPARTA's costs, expenses and reasonable attorneys' fees incurred in obtaining PGIC's compliance with its obligations under the SPA and in connection with this action.

47. Such a declaration is necessary and appropriate at this time in order that SPARTA may ascertain its rights under the SPA and will serve a useful purpose in clarifying the parties' legal relations and terminate the uncertainty giving rise to this proceeding.

<u>**COUNT II**</u>
**(Declaratory Judgment Pursuant To 28 U.S.C. §§ 2201, 2202)**

48. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

49. SPARTA requires a judicial determination of the respective rights of itself and PGIC under the Reinsurance Agreement. Specifically, SPARTA seeks a declaration that, based on the plain language of the Reinsurance Agreement:

(a)    PGIC is responsible for all of AEIC's liabilities and contractual commitments of every nature and description, whether absolute, accrued, contingent or otherwise, or whether due at the time of the Reinsurance Agreement or in the future, including, without limitation, any and all subsequent actions, proceedings or liabilities arising from any of the liabilities or assets of AEIC.

(b)    PGIC shall, at its sole expense, perform any and all administrative functions for the prior AEIC business, including without limitation claims handling.

50.    Such a declaration is necessary and appropriate at this time in order that SPARTA may ascertain its rights under the SPA and Reinsurance Agreement, and will serve a useful purpose in clarifying the parties' legal relations and terminate the uncertainty giving rise to this proceeding.

## COUNT III
### (Breach of Contract – SPA)

51.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

52.    The SPA is a valid and binding contract.

53.    Pursuant to the SPA, PGIC agreed to indemnify and hold SPARTA harmless of and from any loss, cost, expense, claim, interest, fine, penalty, deficiency, obligation, liability or damage, including, without limitation, reasonable attorneys' fees, accountants' fees and other investigatory fees, and out-of-pocket expenses, actually expended or incurred by SPARTA or AEIC, arising out of or resulting from, among other things, (i) any breach of representation or warranty (including any misrepresentation in, or omission from, any certificate

or other document furnished or to be furnished by PGIC to SPARTA) or nonfulfillment of any covenant or agreement on the part of PGIC under the SPA; (ii) the failure by PGIC to perform any of its obligations under the Reinsurance Agreement; (iii) any Loss arising out of or resulting from the existence of AEIC prior to August 7, 2007 or the conduct of the Business, as defined in the SPA, or other operations by or of AEIC prior to August 7, 2007; and (iv) all actions, suits, proceedings, demands, assessments, judgments, costs and expenses incident to any of the foregoing.

54.     SPARTA has satisfied all of its contractual obligations under the SPA at all relevant times.

55.     SPARTA has timely provided all of the notice required under the SPA.

56.     SPARTA has incurred expenses arising out of or resulting from claims made against AEIC policies issued before August 7, 2007, including but not limited to $11,849,047 in claim payments, attorneys' fees and costs, and third party administrator costs that SPARTA has incurred and paid as of September 30, 2022 (the "Indemnification Losses").

57.     The Indemnification Losses arise from or are a result of the existence of AEIC prior to August 7, 2007, or the conduct of the Business, as defined in the SPA, or other operations by or of AEIC prior to August 7, 2007.

58.     The Indemnification Losses arise from or are a result of PGIC's failure to perform its obligations under the Reinsurance Agreement.

59.     The Indemnification Losses arise from or are a result of PGIC's breach of its representations and warranties and/or nonfulfillment of its covenants or agreements under the SPA, including without limitation Sections 2.8, 2.19, 6.12 and 12.16 of the SPA.

60. PGIC has breached its contractual obligations to SPARTA by refusing to indemnify SPARTA for the Indemnification Losses and for SPARTA's costs, expenses and reasonable attorneys' fees incurred in obtaining PGIC's compliance with its obligations under the SPA and in connection with this action.

61. SPARTA has suffered and continues to suffer damages as a result of PGIC's breach of the SPA and is entitled to damages in an amount to be determined at the trial of this action.

**COUNT VI**
**(Breach of Contract – Reinsurance Agreement)**

62. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

63. The Reinsurance Agreement is a valid and binding contract.

64. Pursuant to the Reinsurance Agreement, PGIC assumed substantially all of AEIC's assets, excluding $11 million in policyholders' surplus and AEIC's corporate records, insurance licenses and regulatory records.

65. In return, PGIC agreed to assume substantially all of AEIC's liabilities, whether existing at the time of the transfer or arising in the future, including, without limitation, liabilities related to payments and administrative responsibilities under policies issued by AEIC on or prior to the Effective Date of the Reinsurance Agreement and liabilities related to subsequent actions or proceedings arising from any of the liabilities or the assets of AEIC, whether existing at the time of the transfer or arising in the future.

66. PGIC also agreed to perform, at its sole expense, "any and all administrative functions for the Retained Businesses, which were assumed as 100% reinsurance rather than through direct assumption, including without limitation claims handling, underwriting

and regulatory functions," and agreed to "reimburse [AEIC] for any and all out of pocket expenses related thereto."

67. PGIC also agreed that "all liabilities of every nature and description of American [AEIC] at the time of the Transfer and Assumption shall attach to and be assumed by Pennsylvania General and may be enforced against Pennsylvania General to the same extent as if such liabilities had been originally incurred or contracted by Pennsylvania General."

68. PGIC has refused to accept tender of, make payments for and/or handle administrative responsibilities for claims made against AEIC policies issued before the Effective Date of the Reinsurance Agreement, and has instead taken the position that SPARTA should bear these costs. PGIC has also refused to reimburse SPARTA for its expenses related to said claims.

69. PGIC's refusal to assume the liabilities for claims made against historical AEIC policies or to reimburse SPARTA for its expenses is a breach of the Reinsurance Agreement, including, without limitation, the provisions obligating PGIC to assume "any unpaid losses, loss adjustment expenses and any and all liabilities existing or arising in the future" under the business transferred to PGIC, and "any and all subsequent actions, proceedings or liabilities arising from the foregoing assets or liabilities of [AEIC]."

70. SPARTA has satisfied all of its contractual obligations under the Reinsurance Agreement at all relevant times.

71. SPARTA has suffered and continues to suffer damages as a result of PGIC's breach of the Reinsurance Agreement, including, but not limited to, $11,849,047 in claim payments, attorneys' fees and costs, and third party administrator costs that SPARTA has

incurred and paid as of September 30, 2022, and is entitled to damages in an amount to be determined at the trial of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SPARTA respectfully requests that this Court:

1.  Grant judgment to SPARTA on its claims;

2.  Declare and decree that based on the plain language of the SPA:

    (a)  PGIC is required to indemnify and hold SPARTA harmless of and from any loss, cost, expense, claim, interest, fine, penalty, deficiency, obligation, liability or damage, including, without limitation, reasonable attorneys' fees, accountants' fees and other investigatory fees, and out-of-pocket expenses, actually expended or incurred by SPARTA or AEIC, arising out of or resulting from (i) any breach of representation or warranty (including any misrepresentation in, or omission from, any certificate or other document furnished or to be furnished by PGIC to SPARTA) or nonfulfillment of any covenant or agreement on the part of PGIC under the SPA; (ii) the failure by PGIC to perform any of its obligations under the Reinsurance Agreement [as defined in the SPA]; (iii) any loss arising out of or resulting from the existence of AEIC prior to the August 7, 2007 closing or the conduct of the Business [as defined in the SPA] or other operations by or of AEIC prior to the August 7, 2007 closing; and (iv) all actions, suits, proceedings, demands, assessments, judgments, costs and expenses incident to any of the foregoing.

(b)     PGIC is required to pay all of SPARTA's costs, expenses and reasonable attorneys' fees incurred in obtaining PGIC's compliance with its obligations under the SPA and in connection with this action.

3.     Declare and decree that based on the plain language of the Reinsurance Agreement:

(a)     PGIC is responsible for all of AEIC's liabilities and contractual commitments of every nature and description, whether absolute, accrued, contingent or otherwise, or whether due at the time of the Reinsurance Agreement or in the future, including, without limitation, any and all subsequent actions, proceedings or liabilities arising from any of the liabilities or assets of AEIC.

(b)     PGIC shall, at its sole expense, perform any and all administrative functions for the prior AEIC business, including without limitation claims handling.

4.     Award SPARTA such damages as it has sustained as a result of PGIC's breach of contract, including, at minimum, $11,849,047;

5.     Award SPARTA pre- and post-judgment interest;

6.     Award SPARTA its attorneys' fees and costs in bringing this action; and

7.     Grant SPARTA such other and further relief as this Court may deem just and proper.

Dated:  February 28, 2023  
        Boston, Massachusetts

Respectfully submitted,

/s/ James R. Carroll
James R. Carroll (BBO #554426)
Christopher G. Clark (BBO #663455)
Catherine A. Fisher (BBO #686163)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
christopher.clark@skadden.com
catherine.fisher@skadden.com

*Counsel for Plaintiff*
*SPARTA Insurance Company*