UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
SPARTA INSURANCE COMPANY  :
(as successor in interest to Sparta Insurance
Holdings, Inc.),  :

    Plaintiff,  :  Civil Action
              No. 21-11205-FDS
 v.  :

PENNSYLVANIA GENERAL INSURANCE  :
COMPANY (now known as Pennsylvania
Insurance Company),  :

    Defendant.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF SPARTA INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
COMPEL THE DEPOSITION OF DEFENDANT PENNSYLVANIA GENERAL
<u>INSURANCE COMPANY'S OFFICER AND DIRECTOR STEVEN M. MENZIES</u>**

                    James R. Carroll
                    Christopher G. Clark
                    Catherine A. Fisher
                    SKADDEN, ARPS, SLATE,
                      MEAGHER & FLOM LLP
                    500 Boylston Street
                    Boston, Massachusetts 02116
                    (617) 573-4800
                    james.carroll@skadden.com
                    christopher.clark@skadden.com
                    catherine.fisher@skadden.com

                    *Counsel for Plaintiff*
Dated: December 20, 2023       *SPARTA Insurance Company*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................................1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ......................................2

    A.    The 2005 And 2007 Transactions
Transferred All Historical AEIC Liabilities To PGIC ...............................................2

    B.    Before Menzies Signed The 2012 SPA To Purchase PGIC,
Menzies Participated In Internal Discussions Regarding The 2012 SPA ................2

    C.    Since 2012, Menzies Has Served As PGIC's Officer And
Director And Is Involved In PGIC's Day-To-Day Activities ..................................4

    D.    Since The Very Beginning Of Discovery In This Litigation, PGIC
Identified Menzies On Its Initial Disclosures As An Individual
With Information Relevant To The Parties' Claims And Defenses .........................5

    E.    In April 2023, SPARTA Noticed The
Deposition Of Menzies But PGIC Refused To Produce Him ..................................5

    F.    In September 2023, SPARTA Again Noticed The
Deposition Of Menzies And PGIC Again Refused To Produce Him ......................6

    G.    In October 2023, SPARTA Deposed PGIC's Corporate Representative,
Who Confirmed That Menzies Has Knowledge Of Issues In This Case .................6

    H.    In December 2023, PGIC Again
Refused To Produce Menzies For Deposition .........................................................7

ARGUMENT .........................................................................................................................8

I.    THIS COURT SHOULD COMPEL MENZIES TO APPEAR FOR DEPOSITION .........8

    A.    PGIC Identifies Menzies On Its Initial Disclosures .................................................9

    B.    PGIC's Reliance On The Apex Doctrine Fails ......................................................10

    C.    SPARTA Has Offered A Range Of Accommodations To Minimize
Any Undue Burden, But Menzies Still Refuses To Appear For A Deposition .....13

CONCLUSION ....................................................................................................................14

# TABLE OF AUTHORITIES

**CASES**                                                                           **PAGE(S)**

*In re Chase Bank USA, N.A. Check Loan Contract Litigation*,
    No. 3:09-md-2032, 2011 WL 5248158 (N.D. Cal. Nov. 3, 2011) ..................................... 12

*Confederate Motors, Inc. v. Terny*,
    No. 11-10213, 2012 WL 612506 (D. Mass. Feb. 24, 2012) ......................................... 9, 14

*Foley v. Blake*,
    No. 21-CV-10615, 2022 WL 3088049 (D. Mass. Aug. 3, 2022) ................................. 8, 13

*Fugett v. Security Transport Services, Inc.*,
    No. 14-2291, 2015 WL 419716 (D. Kan. Feb. 2, 2015) ....................................................... 9

*Google Inc. v. American Blind & Wallpaper Factory, Inc.*,
    No. C 03-5340, 2006 WL 2578277 (N.D. Cal. Sept. 6, 2006) .......................................... 11

*Koninklijke Philips Electronics N.V. v. ZOLL Medical Corp.*,
    No. 10-11041, 2013 WL 1833010 (D. Mass. Apr. 30, 2013) ............................................ 13

*Lynx System Developers, Inc. v. Zebra Enterprise Solutions Corp.*,
    No. 15-12297, 2018 WL 3580294 (D. Mass. July 25, 2018) ............................................ 13

*Moog, Inc. v. ClearMotion, Inc.*,
    No. 19-CV-12066, 2022 WL 16636250 (D. Mass. June 8, 2022) ............................... 13, 14

*Northwestern University v. City of Evanston*,
    No. 00 C 7309, 2001 WL 743756 (N.D. Ill. June 29, 2001) ................................................ 9

*Oakley, Inc. v. Neff, LLC*,
    No. 15cv148, 2015 WL 4479424 (S.D. Cal. July 21, 2015) .............................................. 12

*Ranburn Corp. v. Argonaut Great Central Insurance Co.*,
    No. 4:16-CV-88, 2018 WL 4042852 (N.D. Ind. Aug. 24, 2018) ......................................... 9

*SEC v. Sargent*,
    229 F.3d 68 (1st Cir. 2000) .................................................................................................. 8

*Travelers Rental Co., Inc. v. Ford Motor Co.*,
    116 F.R.D. 140 (D. Mass. 1987) ....................................................................................... 13

*TrustLabs, Inc. v. Daniel Jaiyong An*,
    No. 21-cv-02606, 2023 WL 8230559 (N.D. Cal. June 26, 2023) ................................ 11, 12

*Virtek Vision International Inc. v. Assembly Guidance Systems, Inc.*,
    344 F.R.D. 141 (D. Mass. 2023) ......................................................................................... 8

**RULES**

Fed. R. Civ. P. 26 ................................................................................................................... 8, 10

Fed. R. Civ. P. 30 ......................................................................................................................... 5

# PRELIMINARY STATEMENT

Plaintiff SPARTA Insurance Company ("SPARTA") seeks to depose Steven M. Menzies, an officer and director of defendant Pennsylvania General Insurance Company ("PGIC"). Menzies indisputably has information relevant to this litigation: PGIC listed him on PGIC's initial disclosures and the fact discovery taken over the past 15 months confirms that Menzies has personal knowledge of information central to this litigation.

PGIC has nonetheless refused to produce Menzies for deposition. PGIC offers no specific factual or legal basis in support of its refusal. Rather, PGIC conclusorily asserts that SPARTA cannot take Menzies's deposition because Menzies is the "head" of a company and it would be an "apex" deposition of an officer or director of PGIC (which has no employees and no office space of its own). But that narrow doctrine does not apply here. As set forth below in detail, PGIC identified Menzies on its Rule 26 initial disclosures as a person with knowledge and that PGIC may call to support its defenses, Menzies was personally and directly involved in the matters in dispute and has specific knowledge relevant to the litigation (he is the person who approved the purchase price for the PGIC entity and he is the person who signed one of the operative contracts, among other things), and SPARTA has taken all other discovery. The party fact discovery period closes this week and Menzies would be the final witness deposed.

In addition, PGIC insists on an outright ban of any testimony of Menzies -- and has rejected SPARTA's compromise overtures. SPARTA has offered to limit the length of the Menzies deposition to only four hours of on-the-record time, to be taken on a mutually agreed date and time, and at a mutually agreed location in Boston, New York City, or Washington, D.C. PGIC said no. PGIC bears the heavy burden of establishing that this Court should take the extraordinary step of entirely prohibiting the deposition of Menzies. PGIC has not and cannot carry that burden. This Court should compel Menzies to testify at deposition.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. The 2005 And 2007 Transactions Transferred All Historical AEIC Liabilities To PGIC

In 2005, defendant PGIC assumed substantially all of the liabilities of American Employers Insurance Company ("AEIC") pursuant to a Transfer and Assumption Agreement dated June 15, 2005 (the "2005 T&A"). At the time of the 2005 T&A, PGIC owned 100% of the stock of AEIC.

Two years later, in 2007, PGIC sold AEIC as a "clean shell" to SPARTA Insurance Holdings, Inc. pursuant to a Stock Purchase Agreement dated March 12, 2007 (the "2007 SPA"). As a result of the 2005 T&A and 2007 SPA, substantially all of the liabilities <u>and all of the assets</u> of AEIC were transferred to PGIC. SPARTA then received the AEIC company as a "clean shell" with all of AEIC's licenses to operate the business going forward. Following the 2007 SPA, AEIC became SPARTA as a result of a corporate reorganization.

Under the 2005 T&A and the 2007 SPA, PGIC is responsible for all of the historical liabilities associated with AEIC policies written prior to the 2007 SPA. The primary issue in dispute in this lawsuit is the responsibility for those historical liabilities, and more specifically whether PGIC is responsible to pay for the historical AEIC liabilities (PGIC is).

### B. Before Menzies Signed The 2012 SPA To Purchase PGIC, Menzies Participated In Internal Discussions Regarding The 2012 SPA

Approximately five years later, in 2012, PGIC was sold to new owners in a stock transaction to which SPARTA was not a party and about which SPARTA had no advance notice. PGIC's current owners dispute that it is responsible for the historical AEIC liabilities and asserts as one of PGIC's primary affirmative defenses that the later-in-time transaction in 2012 somehow extinguished SPARTA's rights under the 2005 T&A and the 2007 SPA executed years earlier.

Specifically, PGIC's current owners claim that (1) a 2012 Stock Purchase Agreement between North American Casualty Co. ("NAC") and OneBeacon Insurance Group ("OBIG") (the "2012 SPA") and (2) a 2012 Transfer and Assumption Agreement between PGIC and OneBeacon Insurance Company, somehow erased PGIC's obligations to SPARTA and extinguished SPARTA's rights in the 2005 and 2007 agreements. (*See, e.g.,* PGIC's Answer & Affirmative Defenses, ECF No. 91 at 20 ("Plaintiff's claims and requested declaratory relief are otherwise barred in whole or in part by the [2012] transfer and assumption agreement between PGIC and OneBeacon and the [2012] stock purchase agreement between OneBeacon and [NAC], which complied with all applicable statutes and regulations and were approved by all relevant government authorities.").)

Menzies was a key player in the 2012 acquisition of PGIC and remains today an officer and director of PGIC. The factual record demonstrates that Menzies was personally involved in NAC's purchase of PGIC in 2012. According to PGIC's corporate representative, Menzies "approve[d] the decision to buy PGIC" and was "involved in determining the purchase price" of PGIC. (Clark Decl. Ex. 7, PGIC Dep. at 462, 472.) Menzies also was "involved in . . . internal discussions regarding the 2012 SPA" and signed the 2012 SPA:



3

(Clark Decl. Ex. 4, 2012 SPA at 47; Ex. 7, PGIC Dep. at 461.) In addition, Menzies is identified in the 2012 SPA as the contact person for any notices or communications to the buyer:

> IF TO THE BUYER:    North American Casualty Co.
> 10805 Old Mill Road
> Omaha, NE 68154
> Attention: Mr. Steven M. Menzies, President
> Facsimile: 402-393-8558
> Telephone: 402-342-4900
> Email: steve@auw.com

(Clark Decl. Ex. 4, 2012 SPA at 37.)

The disclosure schedule to the 2012 SPA that Menzies signed also expressly identified -- not once, but three separate times -- the 2005 T&A, one of the agreements that makes PGIC responsible for AEIC's historical liabilities. (Clark Decl. Ex. 5, 2012 Disclosure Schedule at 27, 31, 41.) PGIC's current owners have asserted in this litigation that they were somehow unaware of the 2005 T&A, but the identification of the 2005 T&A in the disclosure schedule eviscerates PGIC's baseless defense that PGIC was unaware of the 2005 T&A (to the extent that PGIC's new owners' awareness even matters, which it does not).

### C. Since 2012, Menzies Has Served As PGIC's Officer And Director And Is Involved In PGIC's Day-To-Day Activities

Since 2012, for more than 10 years, Menzies has continuously served as PGIC's president and treasurer and as one of PGIC's five directors. (Clark Decl. Ex. 6, Compendium of PGIC Annual and Quarterly Statements.) Since 2018, Menzies also has served as PGIC's CEO. (*See id.*) Since 2012, Menzies has signed PGIC's annual and quarterly statements in his capacity as either PGIC's president and treasurer or CEO. (*See id.*) Notwithstanding those lofty titles, there should be no misimpression: PGIC has no employees and does not have its own offices. (Clark Decl. Ex. 7, PGIC Dep. at 99.)

4

In addition to signing PGIC's annual statements, Menzies is involved in PGIC's day-to-day activities. (*Id.* at 458-59.) Menzies is also aware of and agrees with PGIC's decision not to pay for the claims at issue in this case arising from historical AEIC policies. (*Id.* at 464.) And Menzies is "involved in the AM Best rating situation," which PGIC's corporate representative acknowledged is "an important issue." (*Id.* at 459-60.)

D. **Since The Very Beginning Of Discovery In This Litigation, PGIC Identified Menzies On Its Initial Disclosures As An Individual With Information Relevant To The Parties' Claims And Defenses**

More than 15 months ago in August 2022, fact discovery in this litigation commenced. On October 14, 2022, PGIC served its Rule 26 initial disclosures, which identified Menzies as one of eight individuals PGIC believed "may have discoverable information relevant to disputed facts." (Clark Decl. Ex. 3, PGIC Initial Disclosures at 2-3.) Menzies is the second individual PGIC identified. (*Id.*) In PGIC's initial disclosures, PGIC represented that Menzies may have discoverable information on the "[p]rocess of finalizing [the] 2012 [SPA] between NAC and OBIG and subsequent business of" PGIC. (*Id.*) On December 15, 2022, PGIC also identified Menzies as a custodian of potentially relevant documents and electronic information.

E. **In April 2023, SPARTA Noticed The Deposition Of Menzies But PGIC Refused To Produce Him**

On April 3, 2023, SPARTA noticed the Rule 30 deposition of Menzies as well as another individual (Alan Quasha, who is involved with certain aspects of an entity related to PGIC's ultimate parent). At the same time, SPARTA noticed other depositions, including the Rule 30(b)(6) deposition of PGIC and the Rule 30 deposition of PGIC's General Counsel.

On April 11, 2023, counsel for SPARTA and PGIC held a meet and confer telephone call to discuss several discovery issues. At that time, PGIC objected to the depositions of Menzies and Quasha primarily on the basis that PGIC viewed those depositions as premature

5

and so-called "apex" depositions of senior executives. SPARTA did not insist on taking those depositions at that time and agreed to complete other fact discovery first.

### F. In September 2023, SPARTA Again Noticed The Deposition Of Menzies And PGIC Again Refused To Produce Him

After conducting extensive fact discovery, on September 1, 2023, SPARTA again noticed the depositions of PGIC, PGIC's General Counsel, Menzies, and Quasha. PGIC again refused to produce Menzies and Quasha. (Clark Decl. Ex. 8, Sept. 4 Email at 1.) As to Menzies, SPARTA reminded PGIC that Menzies is listed on PGIC's initial disclosures and is a signatory of the 2012 SPA that is the basis for many of PGIC's affirmative defenses. (Clark Decl. Ex. 9, Sept. 8 Email at 2.) On September 14, 2023, the parties held another discovery meet and confer during which PGIC's counsel suggested that the parties defer on the depositions of Menzies and Quasha until after the deposition of PGIC's corporate representative. SPARTA agreed to do so.[1]

### G. In October 2023, SPARTA Deposed PGIC's Corporate Representative, Who Confirmed That Menzies Has Knowledge Of Issues In This Case

On October 26 and 27, 2023, SPARTA took two days of testimony from PGIC's corporate representative. That deposition testimony confirmed that Menzies has personal knowledge of facts and documents relevant to this litigation that PGIC's corporate representative could not testify to. As one example, PGIC's corporate representative could not say whether Menzies "approved" the 2012 SPA that Menzies signed. (Clark Decl. Ex. 7, PGIC Dep. at 472.)

PGIC's corporate representative did not speak with Menzies about "any topic of any substance" in preparation for PGIC's corporate representative's testimony. (*Id.* at 109-10.)

---

[1] Over the past 15 months, the parties have met and conferred in good faith on multiple discovery disputes and have been able to resolve all of them without the need to seek the Court's assistance. SPARTA did not renew its request that PGIC produce Quasha for a deposition because other discovery taken in this case, including PGIC's Rule 30(b)(6) corporate representative's deposition testimony, provided the necessary information and revealed that Quasha does not have knowledge relevant to this litigation. That is not the case with Menzies.

PGIC's corporate representative testified that as of that time he had spoken with Menzies for only ten minutes total in preparation for the PGIC corporate deposition, broken into two, five minute conversations. (*Id*. at 108.) The discussions were merely procedural about topics such as "how long [PGIC's corporate representative] expected to be deposed." (*Id.* at 108-09.)

### H. In December 2023, PGIC Again Refused To Produce Menzies For Deposition

Earlier this month, in December 2023, SPARTA completed the PGIC Rule 30(b)(6) corporate deposition.[2] At its conclusion, counsel for the parties spoke by telephone during which SPARTA's counsel again requested that PGIC produce Menzies for deposition. That telephone conversation was memorialized in a subsequent email. (Clark Decl. Ex. 10, Dec. 13 Email.) SPARTA offered to limit the deposition to four hours of on-the-record testimony and take the deposition at a mutually agreeable location in Boston, New York City, or Washington, D.C. on a date convenient to Menzies. PGIC refused. PGIC continues to altogether refuse to produce Menzies for deposition. All outstanding depositions have been completed.

---

[2] As set forth in the Joint Status Report filed December 19, 2023 (ECF No. 108), there are several discrete discovery issues that remain outstanding, including PGIC's seemingly unending discovery of new tranches of emails. On the evening of December 11, 2023 -- less than 48 hours before the final scheduled day of the deposition of PGIC's corporate representative -- PGIC produced more than 16,000 pages of documents consisting of emails collected from PGIC's corporate representative related to the 2012 transaction that is the basis for many of PGIC's affirmative defenses. On December 15, 2023, PGIC informed SPARTA that it expects to make an additional production of documents from 2011 and 2012 that PGIC recently determined should have been but were not collected. That was not the first time that PGIC produced documents on the eve of a deposition. The night before the first day of PGIC's Rule 30(b)(6) deposition, PGIC produced 184 pages of documents. The night before another day of PGIC's Rule 30(b)(6) deposition, PGIC produced 856 pages of documents. In both cases, PGIC's belated document productions consisted largely of emails from or to PGIC's corporate representative who was testifying the next day. It remains to be seen what else PGIC has to produce.

With party fact discovery scheduled to conclude this week, and PGIC unwilling to compromise, SPARTA regrettably has no choice but to file this motion to compel.[3]

## ARGUMENT

### I. THIS COURT SHOULD COMPEL MENZIES TO APPEAR FOR DEPOSITION

The Federal Rules of Civil Procedure are to be "construed liberally in favor of discovery." *SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000). Rule 26(b)(1) states that a party can "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevance is broadly construed at the discovery stage." *Virtek Vision Int'l Inc. v. Assembly Guidance Sys., Inc.*, 344 F.R.D. 141, 144 (D. Mass. 2023) (internal quotation marks omitted) (denying protective order and granting motion to compel party to re-produce a witness for deposition).

This Court has made clear that "prohibiting the taking of depositions is an extraordinary measure, requiring a heavy burden of showing extraordinary circumstances based on specific facts that would justify such an order." *See Foley v. Blake*, No. 21-CV-10615, 2022 WL 3088049, at *2 (D. Mass. Aug. 3, 2022) (internal quotation marks omitted). As set forth below, PGIC cannot satisfy its burden to establish why SPARTA should not be allowed to take the deposition of Menzies.

---

[3] Pursuant to Local Rule 37.1, undersigned counsel certifies that counsel for the parties have participated in multiple discovery conferences concerning the deposition of Menzies. Counsel for the parties participated in telephonic meet and confer discussions on April 11, 2023 and September 14, 2023, and in subsequent written communications. (Clark Decl. Ex. 9, Sept. 8 Email.) Most recently, on December 13, 2023 at the conclusion of a deposition in this case at approximately 8:30 p.m., Christopher G. Clark (counsel for SPARTA) and Samuel Kaplan (counsel for PGIC) spoke by telephone for approximately five minutes to again discuss SPARTA's request to depose Menzies. PGIC would not agree to produce Menzies for deposition. That conversation was memorialized in a subsequent email submitted as Clark Declaration Exhibit 10.

### A. PGIC Identifies Menzies On Its Initial Disclosures

PGIC conceded long ago in its Rule 26 initial disclosures that Menzies is an individual who may have discoverable information, including information relevant to the "[p]rocess of finalizing [the] 2012 Stock Purchase Agreement between NAC and OBIG and [the] subsequent business of" PGIC. (Clark Decl. Ex. 3, PGIC Initial Disclosures at 2-3.)

This Court has expressly held that an individual identified on a party's initial disclosures is subject to deposition. In *Confederate Motors, Inc. v. Terny*, No. 11-10213, 2012 WL 612506, at *2 (D. Mass. Feb. 24, 2012) (Dein, M.J.), this Court held that a defendant was "entitled to depose" an individual the plaintiff identified in its initial disclosures as "likely to have discoverable information relevant to disputed facts." The Court denied a motion to quash the deposition and held that the defendant could obtain the "specific, personal knowledge of key events" that the plaintiff said the witness possessed. *Id.*

Other federal courts have similarly compelled the deposition of an individual that a party identified on its initial disclosures. *See, e.g., Ranburn Corp. v. Argonaut Great Cent. Ins. Co.*, No. 4:16-CV-88, 2018 WL 4042852, at *3 (N.D. Ind. Aug. 24, 2018) (denying motion to quash deposition of company's former president and principal shareholder where company listed the witness on its initial disclosures and recognizing that "it is reasonable to conclude that an individual listed in an initial disclosure as likely having discoverable information on a particular subject area relevant to the litigation will have information relevant to the litigation"); *Fugett v. Sec. Transport Servs., Inc.*, No. 14-2291, 2015 WL 419716, at *3 (D. Kan. Feb. 2, 2015) (denying motion for protective order and compelling deposition where the witness was "the second-named individual appearing on [the company's] initial disclosures" and "[t]he disclosures state[d] that he is likely to have discoverable information relevant to disputed facts" (internal quotation marks omitted)); *Nw. Univ. v. City of Evanston*, No. 00 C 7309, 2001 WL 743756, at

9

*2, *4 (N.D. Ill. June 29, 2001) (denying motion for protective order seeking to block depositions of mayor and city manager where the city listed both witnesses on its initial disclosures and thus "it is reasonable to conclude that they could have some information that would likely produce or lead to admissible evidence, and it is only fair to allow the [noticing party] to seek this information through depositions" (internal quotation marks omitted)).

The Court should reach the same conclusion here. PGIC listed Menzies as the second person on PGIC's initial disclosures as someone who "may have discoverable information" and who PGIC may as a result "use to support its claims or defenses." (Fed. R. Civ. P. 26(a)(1)(A)(i); Clark Decl. Ex. 3, PGIC's Initial Disclosures at 2-3.)

Beyond PGIC's identification of Menzies as a person who "may" have discoverable knowledge, discovery has revealed that Menzies in fact _does_ have discoverable information based on his personal involvement in events and documents relevant to this litigation. (*See id.*) For example, Menzies _signed the 2012 SPA_ that PGIC principally relies on in defending this action. (Clark Decl. Ex. 4, 2012 SPA at 47.) No witness has (or can) speak to Menzies's motivation in entering and signing the 2012 SPA, his views of the 2012 SPA or its impact on PGIC's pre-existing contractual obligations. PGIC's 30(b)(6) corporate representative certainly could not, as he testified that he did not know whether Menzies "approved" the 2012 SPA. (Clark Decl. Ex. 7, PGIC Dep. at 472.) Menzies also participated in internal discussions leading up to the execution of the 2012 SPA, serves as an officer and director of PGIC, and is involved in PGIC's day-to-day activities. Menzies accordingly has relevant information that SPARTA is entitled to explore.

B. **PGIC's Reliance On The Apex Doctrine Fails**

PGIC suggested during the meet and confer process that PGIC believes Menzies's deposition would be an "apex deposition[]" of a "current head[]" of a "compan[y]" who PGIC

10

proclaims does not have "any knowledge that [PGIC's corporate representative] lacks." (Clark Decl. Ex. 9, Sept. 11 Email at 2.)

The apex doctrine simply does not apply here. The apex doctrine applies only in narrow circumstances, not present here, where a high-level executive "has no first hand knowledge of the facts of the case or where the [executive's] testimony would be repetitive" and the party seeking the deposition has not previously pursued other discovery avenues. *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. C 03-5340, 2006 WL 2578277, at *3 & n.3 (N.D. Cal. Sept. 6, 2006) (granting motion to compel deposition of Google co-founder Larry Page after moving party learned at the 30(b)(6) deposition of Google's corporate representative of Page's possible involvement in an issue relevant to the litigation). PGIC's reliance on the apex doctrine fails for several reasons:

*First*, PGIC's self-serving assertion that Menzies is the "head" of a company is insufficient to invoke the apex doctrine. A "fancy title" does not, without more, preclude deposition. *TrustLabs, Inc. v. Daniel Jaiyong An*, No. 21-cv-02606, 2023 WL 8230559, at *4 (N.D. Cal. June 26, 2023) (rejecting invocation of the apex doctrine based "on the job title each witness has, with no information provided about how big the company is or how many employees these witnesses supervise"). While Menzies has held various officer and director roles at PGIC, this is far from a large company with Menzies sitting at the helm. PGIC appears to have only a handful of individuals who have served as officers and directors of PGIC over a 10-year period. (*See* Clark Decl. Ex. 6, Compendium of PGIC Annual and Quarterly Statements.) PGIC has no employees and no offices of its own. (Clark Decl. Ex. 7, PGIC Dep. at 99.)

*Second*, SPARTA invested 15 months completing other written, document, and deposition fact discovery before pressing for the deposition of Menzies. SPARTA first noticed Menzies's deposition nine months ago, but SPARTA agreed to defer that deposition until after conducting other discovery. SPARTA again noticed Menzies's deposition three months ago, and again agreed to defer his deposition until after the completion of the PGIC corporate representative deposition. The parties have completed all of the noticed depositions except for Menzies's deposition (which will be the final party deposition). Fact discovery concludes this week, yet PGIC still refuses to produce Menzies. The time is now. The only way SPARTA can obtain Menzies's personal knowledge of issues relevant to this litigation is by deposing him. *See In re Chase Bank USA, N.A. Check Loan Cont. Litig.*, No. 3:09-md-2032, 2011 WL 5248158, at *1 (N.D. Cal. Nov. 3, 2011) (denying bank's motion to quash the deposition of its CEO where plaintiffs had "taken the depositions of other lower level employees" and the information sought was "specific and unique to [the CEO] and his involvement in the decision to change the terms of the life of loan agreements" at issue).

*Third*, PGIC's inclusion of Menzies on its initial disclosures forecloses the apex doctrine. As another federal court explained in *Oakley, Inc. v. Neff, LLC*, No. 15cv148, 2015 WL 4479424, at *2 (S.D. Cal. July 21, 2015), a company cannot squirrel away its CEO based on an argument that his "knowledge may be cumulative of the testimony of other employees" where the company has specifically identified the individual on its initial disclosures and thereby "has conceded that [its CEO] has knowledge of matters relevant to the litigation."[4]

---

[4] *See also Trustlabs*, 2023 WL 8230559, at *4 (rejecting assertion that a company's "Head of People" was an "apex" deponent and granting motion to compel her deposition where the company listed her on its initial disclosures and thereby "paved the way for [it] to call her as a witness at trial, and [d]efendant has every right to use discovery to prepare for that").

12

*Fourth*, ordering Menzies to appear for deposition is entirely consistent with longstanding precedent in this District. Indeed, this Court routinely requires executives to testify at depositions where, like here, the executive has knowledge of issues relevant to the litigation:

- In *Moog, Inc. v. ClearMotion, Inc.*, No. 19-CV-12066, 2022 WL 16636250, at *4 (D. Mass. June 8, 2022), Judge Kelley denied a motion for a protective order and directed the plaintiff's CEO to appear for a deposition where discovery revealed that the CEO could "speak directly to some of the primary disputes" in the litigation.

- In *Lynx System Developers, Inc. v. Zebra Enterprise Solutions Corp.*, No. 15-12297, 2018 WL 3580294, at *2 (D. Mass. July 25, 2018), Judge O'Toole denied a motion for a protective order and ordered the defendant's CEO to appear for deposition where the CEO "was active not only in [defendant's] business dealings with [plaintiff] but also in negotiations" that were relevant to the litigation.

- In *Koninklijke Philips Electronics N.V. v. ZOLL Medical Corp.*, No. 10-11041, 2013 WL 1833010, at *1-2 (D. Mass. Apr. 30, 2013), Judge Sorokin denied a motion for a protective order and ordered the deposition of a CEO and Executive Vice President who oversaw "more than 37,000 employees worldwide" because there was "a good faith basis for believing" that the executive had "specific, unique knowledge of an issue central to one of [defendant's] defenses."

- In *Travelers Rental Co. v. Ford Motor Co.*, 116 F.R.D. 140, 141-42 (D. Mass. 1987), Magistrate Judge Collings granted a motion to compel the "depositions of several high-level executives at the Ford Motor Company" reasoning that the plaintiff was "entitled to depose those corporate officials of Ford who approved and/or administered the plan."

In sum, the apex doctrine simply does not apply in this case. PGIC has offered "precisely the sort of conclusory assertions that fall far short of what would be required for the Court to seriously entertain prohibiting deposition testimony." *Foley*, 2022 WL 3088049, at *2.

### C. SPARTA Has Offered A Range Of Accommodations To Minimize Any Undue Burden, But Menzies Still Refuses To Appear For A Deposition

SPARTA has offered a range of compromise measures to limit any perceived burden on Menzies (to the extent that there is any undue burden at all). SPARTA proposed to limit the length of the deposition to only four hours on-the-record. SPARTA offered to depose Menzies at a mutually agreed date and time at a mutually agreed location in Boston, New York

13

City, or Washington, D.C. PGIC rejected all of those overtures and is insisting on an outright ban on any deposition of Menzies.

Courts in this District have repeatedly compelled depositions where such reasonable accommodations have been offered. *See, e.g., Moog*, 2022 WL 16636250, at *4 (denying motion for protective order and ordering deposition of CEO where counsel "willingly offered to compromise with regard to finding a mutually agreeable time, conducting the deposition via videoconference, and limiting it to three hours"); *Confederate Motors, Inc.*, 2012 WL 612506, at *1 (denying motion to quash subpoena and compelling deposition of witness where defendant "ha[d] agreed to schedule the deposition at a mutually convenient time"). The Court should do the same here.

## **CONCLUSION**

For the foregoing reasons, SPARTA respectfully requests that this Court grant SPARTA's motion in its entirety.

Dated: December 20, 2023  
       Boston, Massachusetts

Respectfully submitted,

/s/ Christopher G. Clark
James R. Carroll (BBO #554426)
Christopher G. Clark (BBO #663455)
Catherine A. Fisher (BBO #686163)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
christopher.clark@skadden.com
catherine.fisher@skadden.com

*Counsel for Plaintiff*
*SPARTA Insurance Company*