# EXHIBIT 7

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

---------------------------------- )

SPARTA INSURANCE COMPANY (as        )

successor in interest to Sparta    )

Insurance Holdings, Inc.,           )

              Plaintiff,       )Case No.

    vs.                                )21-11205-FDS

PENNSYLVANIA GENERAL INSURANCE      )

COMPANY (now known as Pennsylvania  )

Insurance Company),                 )

              Defendant.       )

---------------------------------- )


DEPOSITION OF JEFFREY SILVER

VOLUME I

WASHINGTON, D.C.

OCTOBER 25, 2023




REPORTED BY:  Tina Alfaro, RPR, CRR, RMR

 1      Q.   Any other reasons?

 2      A.   No.

 3      Q.   As of today PGIC is a New Mexico company,

 4   correct?

 5      A.   Yes.

 6      Q.   How many employees does PGIC have today?

 7      A.   PGIC has no employees today.

 8      Q.   Between 2012 and today how many PGIC --

 9   how many employees has PGIC had?

10      A.   PGIC has had no employees between 2012 and

11   today.

12      Q.   Does PGIC have its own office space today?

13           MR. KAPLAN:  Objection to the form.

14           MR. CLARK:  Agree.  Withdraw.  That's a

15   bad question.

16           Does PGIC have office space today that it

17   uses exclusively for PGIC?

18      A.   No.

19      Q.   Does PGIC have any office space today?

20      A.   Yes.

21      Q.   And where is that office space?

22      A.   It has office space in New Mexico and also

1   speaking with Mr. Menzies in connection with your

2   preparation to testify as PGIC's Rule 30(b)(6)

3   designee?

4        A.   Probably ten minutes.

5        Q.   Okay.  And when was that conversation?

6        A.   Probably two conversations of five minutes

7   each, once when it was -- my deposition was

8   originally scheduled and then again last week

9   advising him that I was being deposed this week.

10       Q.   Okay.  Were those two conversations held

11  on the telephone?

12       A.   Yes.

13       Q.   Okay.  Was a lawyer other than you present

14  during that telephone communication?

15       A.   No.

16       Q.   Please tell me everything Mr. Menzies said

17  to you during the first conversation.

18       A.   He wanted to know how long I expected to

19  be deposed.  That was essentially what he was

20  asking me about.

21       Q.   And what did you tell him?

22       A.   I told him I was scheduled for at least

 1   two days and maybe three days as the 30(b)(6)

 2   deponent.

 3        Q.   Okay.  What did he say in response to

 4   that?

 5        A.   Just do your best.

 6        Q.   Helpful.

 7             Have you told me everything that you and

 8   Mr. Menzies discussed during that first

 9   conversation?

10        A.   Yes.

11        Q.   Okay.  Please tell me everything that you

12   and Mr. Menzies discussed during the second

13   conversation.

14        A.   Pretty much the same as the first

15   conversation in terms of letting him know exactly

16   what dates I was going to be here being deposed.

17        Q.   Is it a fair characterization to say that

18   your two discussions with Mr. Menzies were about

19   process and logistics and not the substance of your

20   testimony?

21        A.   That's a fair statement.

22        Q.   Okay.  Did you speak with Mr. Menzies at

 1   all on any topic of any substance to prepare for

 2   your testimony as PGIC's Rule 30(b)(6) designee?

 3        A.   No.

 4        Q.   Okay.  Did you speak with any former

 5   officers, directors, or employees of PGIC to

 6   prepare for your testimony as PGIC's Rule 30(b)(6)

 7   designee?

 8        A.   No.

 9        Q.   Okay.  Approximately how many documents

10   did you review to prepare to testify as PGIC's Rule

11   30(b)(6) designee?

12        A.   They were numerous.  I can't give you an

13   approximation, but they were numerous as you can

14   see by the books that you've given me this

15   morning.

16        Q.   And did you review more or less documents

17   than the five books of documents I gave you this

18   morning?

19        A.   I think it would be a comparable number.

20        Q.   Okay.  To prepare for your testimony today

21   did you speak with Michael Miller?

22        A.   No.

Jeffrey Silver Volume II
October 26, 2023

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

------------------------------------ )

SPARTA INSURANCE COMPANY (as         )

successor in interest to Sparta      )

Insurance Holdings, Inc.,            )

     Plaintiff,           )Case No.

  vs.                            )21-11205-FDS

PENNSYLVANIA GENERAL INSURANCE       )

COMPANY (now know as Pennsylvania    )

Insurance Company),                  )

     Defendant.           )

------------------------------------ )


DEPOSITION OF JEFFREY SILVER

VOLUME II

WASHINGTON, D.C.

OCTOBER 26, 2023




REPORTED BY:  Tina Alfaro, RPR, CRR, RMR

 1   terms of time.

 2        Q.  More than 50 hours?

 3        A.  I can't quantify it.  Sometimes I talk to

 4   him often.  Sometimes I don't talk to him for some

 5   time.

 6        Q.  How many employees does Mr. Menzies

 7   supervise?

 8        A.  He is --

 9            MR. KAPLAN:  I'm sorry.  Objection to the

10   form, scope.  Go ahead and answer in your

11   individual capacity.

12            THE WITNESS:  He's the ultimate

13   controlling person of North American Casualty.

14   So -- and each of the insurance companies.

15        Q.  Do you know how many direct reports

16   Mr. Menzies has at North American Casualty?

17            MR. KAPLAN:  Objection to the form and

18   scope.

19        A.  I do not know the answer to that question.

20        Q.  Who would know?

21        A.  Mr. Stafford probably would know.

22        Q.  Does Mr. Menzies have any involvement in

1   the day-to-day operation of PGIC?

2         A.   You have to explain when you say

3   "day-to-day operations."

4         Q.   What do you understand that phrase to mean

5   as someone who works in the industry?

6         A.   It could mean various things.  It could

7   mean daily involvement, weekly involvement, monthly

8   involvement.  It could mean a whole host of the

9   things.

10        Q.   Let's use all of those.  So does

11  Mr. Menzies have any daily involvement in the

12  operation of PGIC?

13             MR. KAPLAN:  Objection to the form.

14        A.   It depends on the issue involved, the

15  nature of the issue involved as to whether or not

16  he spends a certain amount of time or not.  It's

17  probably issue driven.

18        Q.   What are the types of issues that

19  Mr. Menzies has been involved with with respect to

20  the business of PGIC in 2023?

21             MR. KAPLAN:  Objection to the form and

22  scope.  You can answer in your individual

1  capacity.

2          MR. CLARK:  I continue to accept that

3  you're making the objection, but topic 22 squarely

4  covers.  We can reserve for another time whether or

5  not it's within the scope of the deposition.

6          You can answer, sir.

7          MR. KAPLAN:  But I have a standing

8  objection on the line.  Okay.

9      A.  He would be involved in the AM Best rating

10 situation.

11     Q.  The AM Best rating is an important issue

12 to Mr. Menzies, correct?

13         MR. KAPLAN:  Objection to the form.

14     A.  Yes.

15     Q.  The AM Best is an important issue to Jeff

16 Silver, correct?

17     A.  It is.

18     Q.  Does Mr. Menzies have any involvement in

19 the handling of claims at PGIC?

20     A.  No.

21         MR. KAPLAN:  Objection to the form.

22     Q.  Does California Insurance Company have any

 1   employees today?

 2       A.  No.

 3       Q.  Does Continental Indemnity Company have

 4   any employees today?

 5       A.  The same answer in terms of the management

 6   agreement process we've discussed before is equally

 7   applicable to California Insurance Company and

 8   Continental Indemnity Company.

 9       Q.  Is your answer the same with respect to

10   Illinois Insurance Company and Texas Insurance

11   Company?

12       A.  Yes, it would be.

13       Q.  Was Steven Menzies involved in the

14   negotiation of the 2012 SPA we marked as Exhibit 6?

15       A.  You have to explain "negotiation."  I

16   guess the answer would be he was aware of it, but

17   he did not participate directly in negotiations.

18       Q.  Was Mr. Menzies involved in any internal

19   discussions regarding the 2012 SPA?

20           MR. KAPLAN:  Objection to the form.

21       A.  Yes.

22       Q.  Can you please tell me the substance of

 1   those internal discussions.

 2        A.   He was involved in determining the

 3   purchase price.

 4        Q.   Anything else?

 5        A.   Not that I recall.

 6        Q.   Did Mr. Menzies participate in the due

 7   diligence process in connection with the 2012

 8   transaction?

 9        A.   No.

10        Q.   Other than you, who else was involved with

11   the diligence process in connection with the 2012

12   transaction?

13        A.   As I indicated yesterday in answer to that

14   question, there were folks from the accounting

15   department and the actuarial department that were

16   involved.

17        Q.   Were there any other lawyers involved on

18   behalf of NAC in the diligence process in

19   connection with the 2012 transaction?

20             MR. KAPLAN:  Asked and answered.  Go

21   ahead.

22        A.   As I indicated yesterday, no.

1        THE VIDEOGRAPHER:  Back on the record at

2   4:06.

3   BY MR. CLARK:

4        Q.  Mr. Silver, you conferred with your

5   counsel off the record on an issue of privilege.

6   Let me withdraw my last question and I'll ask it

7   this way.

8            Did Mr. Menzies make the decision that

9   PGIC would not pay AEIC claims?

10       A.  No.

11       Q.  Okay.  Who made the decision that PGIC

12  would not pay AEIC claims?

13       A.  I did.

14       Q.  Does Mr. Menzies agree with the decision

15  that PGIC would not pay AEIC claims?

16           MR. KAPLAN:  And Mr. Silver, I'm allowing

17  him to answer that question subject to what I

18  understand to be a stipulation that answering that

19  question is not a subject matter waiver.

20           MR. CLARK:  Agreed.

21       A.  Yes.

22       Q.  Has Mr. Menzies been involved in any

 1        Q.   Do the NAC insurance companies use the

 2   same accounting system?

 3             MR. KAPLAN:  Objection to form.

 4        A.   I don't know.  I believe the answer is

 5   yes.

 6        Q.   Okay.  Did Mr. Menzies approve the

 7   decision to buy PGIC?

 8        A.   Yes.

 9        Q.   And did Mr. Menzies approve the 2012 SPA

10   that we marked as Exhibit 6?

11             MR. KAPLAN:  Objection to the form.

12        A.   I don't know if he approved it.  He signed

13   it.

14        Q.   Switching topics.

15             Did PGIC distribute a legal hold notice in

16   connection with this lawsuit?

17        A.   I believe we did.

18        Q.   Okay.  And when was that legal hold first

19   issued?

20        A.   I don't recall.

21        Q.   Has the document been produced in this

22   litigation such that we could share it with you and