*Exhibit 17*

*Excerpts from the Transcript of the Deposition of Steven M. Menzies, dated March 27, 2024*

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

-------------------------------------------X
SPARTA INSURANCE COMPANY (as successor in
interest to Sparta Insurance Holdings, Inc.),

              Plaintiff,

                   Case no. 21-11205-FDS

              v.

PENNSYLVANIA GENERAL INSURANCE COMPANY (now
known as Pennsylvania Insurance Company),

              Defendants.
-------------------------------------------X

VIDEOTAPED DEPOSITION

OF

STEVEN MENZIES

WEDNESDAY, MARCH 27, 2024

HELD REMOTELY

Reported by:
CANDIDA BORRIELLO
JOB NO. 6555348-001

```
 1                 S. Menzies

 2   deposition, have you ever seen Exhibit

 3   Number 1 before?

 4       A.   No, not that I can recall.

 5       Q.   Turning to Exhibit Number 2, before

 6   today, have you ever seen Exhibit Number 2

 7   before?

 8       A.   No, I don't recall ever having seen

 9   this document.

10       Q.   Turning to Exhibit Number 5, before

11   today's deposition, have you ever seen

12   Exhibit Number 5 before?

13       A.   No, I can't recall ever having seen

14   this document.

15       Q.   Turning to Exhibit Number 6, before

16   today's deposition, have you ever seen

17   Exhibit Number 6 before?

18       A.   Yes.

19       Q.   When was the first time you saw

20   Exhibit Number 6?

21       A.   I believe I signed it, so I

22   would've seen it then.

23       Q.   Between the time that you signed it

24   and today, have you reviewed Exhibit Number 6

25   at any point in time?
```

1                    S. Menzies

2        A.   Yes, I reviewed a few pages of it

3    with counsel.

4        Q.   Other than your review with

5    counsel, between today and the date which you

6    signed Exhibit 6, have you otherwise reviewed

7    Exhibit 6?

8        A.   No, not that I can recall.

9        Q.   Prior to signing Exhibit 6, did you

10   review any drafts of the document that

11   ultimately became Exhibit Number 6?

12       A.   No, not that I can recall.

13       Q.   Did you read Exhibit Number 6

14   before you signed it?

15       A.   No, not that I can recall.

16       Q.   Do you customarily sign documents

17   that you don't review?

18       A.   It depends on the circumstance.

19       Q.   Do you customarily sign documents

20   to acquire companies without reading them?

21       A.   Again, it would depend upon the

22   circumstance.

23       Q.   Can you think of any other

24   circumstance in which you signed a document

25   to acquire a company without reading it?

1                    S. Menzies

2              MR. KAPLAN:  I'm going to object

3         as beyond the scope, but I will allow

4         him to answer the question.

5         A.   I rely on my general counsel to

6    prepare and review documents.  He tells me

7    what we're doing and I rely on his judgment.

8    And based upon that, I will sign stock

9    purchase agreements as needed.

10        Q.   And you will sign those stock

11   purchase agreements as needed without reading

12   them first, is that your testimony?

13        A.   Yes.

14        Q.   Do you sign annual reports without

15   reading them?

16              MR. KAPLAN:  Objection to the form

17         and beyond the scope.

18              I'm also going to instruct you not

19         to answer that as beyond the scope.

20              MR. CLARK:  I'll take the

21         instruction.  I'll say I disagree with

22         it and we can come back to it later if

23         we need to, Mr. Kaplan.  But I'm

24         trying to understand his pattern and

25         practice given the testimony he just

1                    S. Menzies

2          testified concerning his signing of

3          the operative 2012 SPA, but we can

4          come back to that a little bit later.

5          Q.   Turning to within Exhibit 6,

6     Mr. Menzies, if you turn to page 47 of that

7     document, there's a signature block for North

8     American Casualty Co.

9               My question to you will be, is that

10    your signature on Exhibit 6?

11         A.   Yes.

12         Q.   You also -- strike that.

13              Turning to Exhibit 7.  Before

14    today, have you ever seen Exhibit 7 before?

15         A.   No, not that I can recall.

16         Q.   You can put this binder aside for a

17    few minutes, Mr. Menzies, but of course feel

18    free to consult it if you need to.

19              I'd like to turn your attention to

20    Exhibit X which we'll mark as Exhibit 173.

21              (Exhibit 173, Defendant's Answer

22          to Plaintiff's Second Amended

23          Complaint, was marked for

24          identification.)

25              MR. KAPLAN:  Sorry, what number,

         1                    S. Menzies

 2    other and that effectively takes concept of

 3    my question out of it, so I'm gonna ask it

 4    again, sir.  Mine isn't one way or the other,

 5    it's an only one way question.

 6              Are you or are you not suggesting

 7    that PGIC is bound to the terms of the

 8    written contract that you signed in 2012?

 9              MR. KAPLAN:  Objection to the

10         form.  Asked and answered.  Calls for

11         a legal conclusion.

12         A.   I made no suggestions at all.

13         Q.   So, you agree that the contract

14    that you signed in 2012 on behalf of North

15    American Casualty should be enforced

16    according to its terms?

17              MR. KAPLAN:  Objection to the

18         form.  Misstates the testimony.  Calls

19         for a legal conclusion.

20         A.   Could you read back the question,

21    please?

22         Q.   Sure.

23              Did you agree that the contract

24    that you signed in 2012 on behalf of North

25    American Casualty should be enforced

1                          S. Menzies

2    according to its terms?

3              MR. KAPLAN:  Same objections.

4         A.   I don't know the context.  I'm not

5    sure how to answer.

6         Q.   When you signed the 2012 contract,

7    you expected that North American Casualty

8    would receive certain things and that it

9    would do certain things as spelled out in the

10   written contract, right?

11             MR. KAPLAN:  Objection to the

12        form.

13        A.   I don't have any knowledge of

14   what's in -- specific knowledge of what's in

15   the contracts.  I can't really answer.

16        Q.   You just signed it and it says what

17   it says?

18             MR. KAPLAN:  Objection to the

19        form.

20        A.   Yes, I -- the document was prepared

21   by counsel, I trust his judgment.  He told me

22   what we were doing, we were buying a clean

23   shell and I signed the document.

24        Q.   Why didn't North American Casualty

25   hire outside legal counsel to advise in

1                    S. Menzies

2    connection with the acquisition of PGIC?

3              MR. KAPLAN:  Objection.

4              One second, Mr. Menzies.

5              Objection to the form and to the

6         extent you know, Mr. Menzies, and to

7         the extent that your answer depends

8         upon the conversations with legal

9         counsel, your in-house legal counsel,

10        I'd instruct you not to answer.

11        However, to the extent that you know

12        and you -- and it's not based on legal

13        advice provided to you by your

14        counsel, you can answer the question.

15        A.   Prior to this question, I have no

16    knowledge whether we had outside counsel or

17    not.  So, I don't -- I don't have any

18    information on this.

19        Q.   Approximately how much time did you

20    personally spend reviewing due diligence

21    materials in connection with the acquisition

22    of PGIC?

23        A.   I did not, I was not part of the

24    due diligence process.

25        Q.   Do you know approximately how much

1              S. Menzies

2          C E R T I F I C A T E

3

4    STATE OF NEW YORK      )
                           :  SS.:
5    COUNTY OF RICHMOND     )

6

7          I, CANDIDA BORRIELLO, a Notary

8    Public for and within the State of New York,

9    do hereby certify:

10         That the witness, STEVEN MENZIES,

11   whose examination is hereinbefore set forth

12   was duly sworn and that such examination is a

13   true record of the testimony given by that

14   witness.

15         I further certify that I am not

16   related to any of the parties to this action

17   by blood or by marriage and that I am in no

18   way interested in the outcome of this matter.

19         IN WITNESS WHEREOF, I have hereunto

20   set my hand this 8th day of April, 2024.

21

22   _____
                Candida Borriello
              CANDIDA BORRIELLO
23

24

25