*Exhibit 19*

*Massachusetts Division of*
*Insurance Report of Examination of AEIC*



**COMMONWEALTH OF MASSACHUSETTS**
**Office of Consumer Affairs and Business Regulation**
**DIVISION OF INSURANCE**
One South Station • Boston, MA 02110-2208
(617) 521-7794 • FAX (617) 521-7771
TTY/TDD (617) 521-7490
http://www.mass.gov/doi

MAY 7 2008

DEVAL L. PATRICK
GOVERNOR

TIMOTHY P. MURRAY
LIEUTENANT GOVERNOR

DANIEL O'CONNELL
SECRETARY OF HOUSING AND
ECONOMIC DEVELOPMENT

DANIEL C. CRANE
DIRECTOR

NONNIE S. BURNES
COMMISSIONER OF INSURANCE

May 5, 2008

T. Michael Miller
Chief Executive Officer
OneBeacon Insurance Companies
One Beacon Lane
Canton, MA 02021-1030

Dear Mr. Miller:

Enclosed is the original Report of the Statutory Examination of American Employers' Insurance
Company for the year ending December 31, 2006 from the Division of Insurance of the
Commonwealth of Massachusetts. Kindly make a written submission within thirty (30) days
formally acknowledging receipt of the report and its acceptance; or if you take exception to any
part of the report, send us your rebuttal referencing those matters.

Also attached is a list of instructions regarding report acknowledgment and distribution. Please
note that only Section "(A)" applies to this initial mailing. The rest of the instructions are to be
followed after we receive your formal letter of acceptance of the report per Section "(A)".

Kindly give me a call at 617.521.7417 if you have any questions.

Very truly yours,

John Smallwood, CFE
Chief Examiner

Copies to: John A. Ritacco, CPA
Deputy Commissioner of Insurance, Financial Examination and
Chief Administrative Examiner (617.521.7418)

Silver
Exhibit No. 156
Date: 12/5/23
T. Alfaro

**Exhibit
0011**
5/23/2023
Weiner

## COMMONWEALTH OF MASSACHUSETTS
### Division of Insurance

### *INSTRUCTIONS FOR ISSUANCE OF REPORT OF EXAMINATION*

(A)  M.G.L. Chapter 175, Section 4 requires that within 30 days from the date of the attached letter, the Company send a letter to the Division acknowledging receipt of the enclosed original copy of the Statutory Report Of Examination. The letter is to also include a written response of acceptance or rebuttal with respect to comments, recommendations or other matters contained in the report.

(B)  Within 30 days of the Division receiving the Company's letter of acceptance or rebuttal, the Commissioner will review the reports and response and enter an Order to do one of the following:

     a.  Adopt the examination report as filed with modifications or corrections

     b.  Reject the examination report with directions to examiners to reopen the examination for the purposes of obtaining additional data, documentation or information

     c.  Call for an investigatory hearing with no less than twenty days notice to the Company for purposes of obtaining additional information and documentation,

(C)  Within 30 days of the date of the Commissioner's Order adopting the examination report, the Company shall complete and file affidavits (see attached Affidavit Confirming Receipt Of Statutory Report Of Examination and Related Order) pursuant to M.G.L. C.175 Section 4 (11) executed by each member of the Board of Directors stating under oath that they received a copy of the adopted report(s) and related order(s).

(D)  Within 30 days of the date of the Commissioner's Order adopting the examination report, an Executive Officer of the Company shall complete and return an affidavit(s) (see attached Affidavit Confirming Distribution Of Statutory Report of Examination) stating under oath that a copy of the adopted Statutory Report of Examination has been filed in each state in which the Company is authorized to transact business. *Please indicate on the affidavit the date the reports were mailed to the states.*

(E)  Within 30 days of the date of the Commissioner's Order adopting the examination report, the Company will provide the Division with one copy of the report of examination and *return the original* to the Division so that it may be filed as a public document.

(F)  The Division of Insurance requires that the Company retain a certified copy of the report of examination with the certificate attached thereto as a public document at the Company's Home Office. Copies of examination reports are certified by the Division for a fee of $20.00 each.

CONFIDENTIAL



THE COMMONWEALTH OF MASSACHUSETTS

OFFICE OF CONSUMER AFFAIRS AND BUSINESS
REGULATION

DIVISION OF INSURANCE

*REPORT OF EXAMINATION OF THE*

# AMERICAN EMPLOYERS' INSURANCE COMPANY

Canton, Massachusetts

As of December 31, 2006

NAIC GROUP CODE 1129

NAIC COMPANY CODE 20613

EMPLOYERS ID NO. 04-1027270

CONFIDENTIAL

SPARTA-00025340

# AMERICAN EMPLOYERS' INSURANCE COMPANY

## TABLE OF CONTENTS

**Page**

| | |
|---|---|
| Salutation | 1 |
| Scope of Examination | 2 |
| History | 3 |
| General | 3 |
| Common Capital Stock | 3 |
| Dividends to Stockholders | 4 |
| Growth of Company | 4 |
| Management | 4 |
| Annual Meeting of Stockholders | 4 |
| Board of Directors | 5 |
| Officers | 6 |
| Conflict of Interest Procedures | 6 |
| Management Continuity and National Emergency | 7 |
| Corporate Records | 7 |
| Affiliated Companies | 7 |
| Corporate Governance | 7 |
| Transactions and Agreements with Subsidiaries and Affiliates | 8 |
| Organization Chart | 8 |
| Fidelity Bond and Other Insurance | 9 |
| Statutory Deposits | 9 |
| Insurance Products and Related Practices | 10 |
| Territory and Plan of Operation | 10 |
| Reinsurance | 10 |
| Accounts and Records | 10 |
| Subsequent Events | 11 |
| Financial Statements | 12 |
| Statement of Assets, Liabilities, Surplus and Other Funds | 13 |
| Statement of Income | 15 |
| Statement of Capital and Surplus | 16 |
| Reconciliation of Capital and Surplus | 17 |
| Notes to Financial Statements | 18 |
| Acknowledgement | 19 |

SPARTA-00025341



**COMMONWEALTH OF MASSACHUSETTS**
**Office of Consumer Affairs and Business Regulation**
**DIVISION OF INSURANCE**
One South Station • Boston, MA 02110-2208
(617) 521-7794 • FAX (617) 521-7771
TTY/TDD (617) 521-7490
http://www.state.ma.us/doi

DEVAL L. PATRICK
GOVERNOR

TIMOTHY P. MURRAY
LIEUTENANT GOVERNOR

DANIEL O'CONNELL
SECRETARY OF HOUSING AND
ECONOMIC DEVELOPMENT

DANIEL C. CRANE
DIRECTOR

NONNIE S. BURNES
COMMISSIONER OF INSURANCE

April 25, 2008

Honorable Scott Richardson
Secretary, Southeastern Zone, NAIC
Director of Insurance
South Carolina Department of Insurance
Capital Center
1201 Main Street, Suite 1000
Columbia, South Carolina, 29201

Honorable Merle D. Scheiber
Secretary, Midwestern Zone, NAIC
Director of Insurance
South Dakota Division of Insurance
Department of Revenue and Regulation
445 East Capital Avenue, 1st Floor
Pierre, South Dakota 57501-3185

Honorable Morris Chavez
Secretary, Western Zone, NAIC
Superintendent of Insurance
New Mexico Insurance Division
PERA Building
1120 Paseo de Peralta
Santa Fe, New Mexico 87501

Honorable Thomas R. Sullivan
Secretary, Northeastern Zone, NAIC
Commissioner of Insurance
Connecticut Department of Insurance
153 Market Street, 7th Floor
Hartford, Connecticut 06103

Honorable Nonnie S. Burnes
Commissioner of Insurance
Commonwealth of Massachusetts
Office of Consumer Affairs and Business
  Regulation
Division of Insurance
One South Station
Boston, MA 02110-2208

Honorable Alfred W. Gross
Chairman, Financial Condition (E)
  Committee, NAIC
Commissioner of Insurance
State Corporation Commission
Bureau of Insurance
Commonwealth of Virginia
1300 East Main Street
Richmond, Virginia 23219

Honorable Commissioners, Directors, and Superintendent:

Pursuant to your instructions and in accordance with Massachusetts General Laws, Chapter 175, Section 4, an examination has been made of the financial condition and affairs of

**AMERICAN EMPLOYERS' INSURANCE COMPANY**
**Canton, Massachusetts**

1

at its home office located at One Beacon Lane, Canton, MA, 02021-1030. The following report thereon is respectfully submitted.

## SCOPE OF EXAMINATION

American Employers' Insurance Company (hereinafter referred to as "the Company" or "American Employers'") was last examined for the period January 1, 1997 through December 31, 2001. The current National Association of Insurance Commissioners ("NAIC") association plan examination covers the intervening period from January 1, 2002 through December 31, 2006, and any material transactions and/or events occurring subsequent and noted during the examination.

The current examination was conducted at the direction of, and under the overall management and control of the examination staff of the Massachusetts Division of Insurance (the "Division") representing the NAIC Northeastern Zone. Representatives from the firm of RSM McGladrey, Inc. were engaged by the Division to assist in the examination by performing certain examination procedures. The current examination was conducted concurrent with, and as part of the examination of the OneBeacon Group of companies and the OneBeacon Inter-company Reinsurance Pool, (the "OneBeacon Pool") with Pennsylvania as the lead state. RSM McGladrey was also retained by the Pennsylvania Insurance Department to assist the Pennsylvania Insurance Department in conducting its examination of the OneBeacon Pool and the Pennsylvania domiciled insurers in the OneBeacon Group. The Pennsylvania Insurance Department also retained the actuarial services of KPMG LLP to review the actuarially determined loss and loss adjustment expense reserves of the OneBeacon Pool. The Division has relied on Pennsylvania for all of the work performed on the pooled accounts and KPMG LLP for the work performed on the pooled loss reserves.

The examination was conducted in accordance with standards established by the NAIC Financial Condition (E) Committee as well as with the requirements of the NAIC Financial Condition Examiner's Handbook, the examination standards of the Division and with Massachusetts General Laws. The principal focus of the examination was 2006 activity; however transactions both prior and subsequent thereto were reviewed as deemed appropriate. The examination was conducted following the NAIC Risk Focused Examination model.

In addition to a review of the financial condition of the Company, the examination included a review of the Company's business policies and practices, corporate records, reinsurance treaties, conflict of interest disclosure statements, fidelity bonds and other insurance, disaster recovery plan and other pertinent matters to provide reasonable assurance that the Company was in compliance with applicable laws, rules and regulations. In planning and conducting the examination, consideration was given to the concepts of materiality and risk and examination efforts were directed accordingly.

The Company is audited annually by PricewaterhouseCoopers LLP, an independent certified public accounting firm, in accordance with 211 CMR 23.00. The firm expressed unqualified opinions on the Company's financial statements for the calendar years 2002 through 2006. A review and use of the Certified Public Accountants' work papers were made to the extent deemed appropriate and effective.

2

The Examination was performed in conjunction with and concurrent with the examination of four of its Massachusetts domiciled affiliates; OneBeacon America Insurance Company; The Employers' Fire Insurance Company; The Northern Assurance Company of America; and, Massachusetts Homeland Insurance Company.

## HISTORY

### General

The Company was incorporated under the laws of Massachusetts on February 10, 1923 and commenced business on March 2, 1923, under the sponsorship of Employers' Liability Assurance Corporation, Limited, of London, England, with authority to write casualty and bonding coverages. All of the Company's capital stock was purchased in 1928 by Employers' Group Associates, a Massachusetts voluntary trust. The Company became affiliated with CGU Group upon the 1968 unification of the Employers' Group Associates with the original Commercial Union Group. Commercial Union Corporation acquired all the outstanding shares through a tender offer in 1971.

On June 2, 1998, Commercial Union plc and General Accident plc were merged in a pooling of interests. The U.S. operations of the companies were formally combined on December 31, 1998 when all of the assets of General Accident Corporation of America were transferred to Commercial Union Corporation and the name was changed to CGU Corporation. The Company was a wholly owned subsidiary of General Accident Insurance Company which was renamed Pennsylvania General Insurance Company on August 28, 2001.

On June 1, 2001, White Mountains Insurance Group, Ltd. ("White Mountains") acquired CGU Corporation together with its subsidiaries, from London-based CGNU plc. On July 19, 2001 CGU Corporation was renamed OneBeacon Corporation, which merged into Fund American Companies, Inc. on December 30, 2001. On December 31, 2001, all assets formerly owned by OneBeacon Corporation were contributed by Fund American Companies, Inc. to OneBeacon Insurance Group LLC, a newly formed holding company.

### Common Capital Stock

As of December 31, 2006, the authorized capital stock of the Company consisted of 60,000 shares of $100 par value common stock of which 45,000 shares were issued and outstanding with an aggregate stated value of $4,500,000. All of the common stock was owned by Pennsylvania General Insurance Company, a wholly owned subsidiary of OneBeacon Insurance Group, LLC.

3

SPARTA-00025344

## Dividends to Stockholders

The following table summarizes the ordinary dividends paid by the Company during the examination period.

| Year | Dividend |
|------|----------|
| 2006 | $ 3,300,000 |
| 2005 | 9,226,408 |
| 2004 | 15,900,000 |
| 2003 | -0- |
| 2002 | -0- |

Effective June 30, 2005, the Company and its sole stockholder, Pennsylvania General Insurance Company, entered into an "Instrument of Transfer and Assumption Agreement" (See REINSURANCE) with respect to certain assets and liabilities of the Company. Pursuant to the Instrument of Transfer and Assumption, on or about June 30, 2005, the Company paid an extraordinary dividend of $88,753,505 to Pennsylvania General Insurance Company, consisting of all of the common stock of the Company's wholly owned subsidiary, American Central Insurance Company, and $47,688,527 in cash and securities.

## Growth of Company

The growth of the Company for the years 2002 through 2006 is shown in the following schedule, which was prepared from the Company's Annual Statements. All amounts are in thousands.

| Year | Admitted Assets | Liabilities | Surplus | Direct Premiums Written | Net Premiums Written |
|------|----------------|-------------|---------|------------------------|---------------------|
| 2006 | $ 35,375 | $ 165 | $ 35,210 | $ 0 | $ 0 |
| 2005 | 37,480 | 36 | 37,444 | 87 | 0 |
| 2004 | 123,589 | 752 | 122,837 | 1,165 | (34,212) |
| 2003 | 341,338 | 211,801 | 129,536 | 19,940 | 71,949 |
| 2002 | 397,393 | 282,165 | 115,227 | 119,157 | 93,979 |

## MANAGEMENT

### Annual Meeting of Stockholders

The annual meeting of the stockholders was held on the first Tuesday in May each year during the examination period. At any meeting of the stockholders, a majority in interest of all stock issued and outstanding and entitled to vote upon a question to be considered at the meeting shall constitute a quorum for the consideration of such question. The minutes indicated that a written consent of the sole stockholder in lieu of an annual meeting was obtained for each year during the examination period.

CONFIDENTIAL                                                                 SPARTA-00025345

## Board of Directors

The by-laws provide that the business and affairs of the Company shall be managed by the Board of Directors except as otherwise provided by the Articles of Incorporation or by a valid shareholder agreement. The Board of Directors shall consist of not less than seven or more than fifteen Directors with the number determined at each annual meeting by resolution of the shareholders. Each Director holds office for a term of one year.

The minutes of the Board of Directors meetings indicated that meetings were held four times per year during the examination period. At any meeting of the Board, a majority of Directors, but not less than four, shall constitute a quorum. The minutes indicated that a quorum was obtained at all meetings of the Board of Directors held during the examination period.

At December 31, 2006 the Board of Directors was comprised of nine Directors. Directors duly elected and serving at December 31, 2006, with business affiliations were as follows:

| Director | Business Affiliation |
|---|---|
| T. Michael Miller<br>Chairman of the Board | Deputy Chairman, President and CEO, OneBeacon Insurance Group, Ltd.; Managing Director, Chairman of the Board, President and CEO, OneBeacon Insurance Group LLC |
| Alex C. Archimedes | Senior Vice President, OneBeacon Insurance Company |
| Andrew C. Carnase | Senior Vice President, OneBeacon Insurance Company |
| Mark K. Dorcus | Managing Director and President, White Mountains Advisors LLC |
| Thomas L. Forsyth | Secretary, OneBeacon Insurance Group, Ltd.; Managing Director, Senior Vice President, General Counsel and Secretary, OneBeacon Insurance Group LLC |
| Paul H. McDonough | Vice President and CFO, OneBeacon Insurance Group, Ltd.; Managing Director, Senior Vice President and CFO, OneBeacon Insurance Group LLC |
| Brian D. Poole | Managing Director, Senior Vice President and Chief Actuary, OneBeacon Insurance Group LLC |
| Thomas N. Schmitt | Senior Vice President and Chief Human Resources Officer, OneBeacon Insurance Company |
| Roger M. Singer | Senior Vice President, OneBeacon Insurance Company |

CONFIDENTIAL

## Officers

The by-laws of the Company provide that the officers of the Company shall be a president, one or more vice presidents, a secretary, and a treasurer and other officers as deemed necessary. Pursuant to the by-laws, the officers of the Company are elected by the Board of Directors. Vacancies among the officers shall be filled by the Board of Directors.

The elected senior officers and their respective titles at December 31, 2006 follow:

| Name | Title |
| --- | --- |
| T. Michael Miller | Chairman of the Board, President and Chief Executive Officer |
| Alex C. Archimedes | Senior Vice President |
| Andrew C. Carnase | Senior Vice President |
| Michael J. Daly | Senior Vice President |
| Eugene C. Fazzie | Senior Vice President |
| Thomas L. Forsyth | Senior Vice President and General Counsel |
| Dana P. Hendershott | Senior Vice President and Chief Administrative Officer |
| Michael R. Keane | Senior Vice President |
| Paul H. McDonough | Senior Vice President and Chief Financial Officer |
| Michael J. Sally | Senior Vice President |
| John M. Meuschke | Senior Vice President |
| Michael F. Natan | Senior Vice President and Chief Information Officer |
| Donald P. Nibouar | Senior Vice President |
| Brian D. Poole | Senior Vice President and Chief Actuary |
| Kevin J. Rehnberg | Senior Vice President |
| Thomas N. Schmitt | Senior Vice President and Chief Human Resources Officer |
| Roger M. Singer | Senior Vice President |
| Kathleen M. Taylor | Senior Vice President |
| Dennis R. Smith | Secretary |
| Frederick J. Turcotte | Vice President and Treasurer |

## Conflict of Interest Procedures

The Company has adopted a policy statement pertaining to conflict of interest. The Company has an established procedure for the disclosure to the Board of Directors of any material interest or affiliation on the part of any officer or Director, which is in or is likely to conflict with his/her official duties.

Annually, each officer, Director and responsible employee completes a questionnaire disclosing any material conflicts of interest. The completed questionnaires were reviewed, and no discrepancies were noted in the responses to the General Interrogatories regarding conflicts of interest as reflected in the Company's 2006 Annual Statement.

6

SPARTA-00025347

## Management Continuity and National Emergency

The Company provides for the continuity of management in the event of a catastrophe or other emergency in accordance with sections 180M through 180Q of Chapter 175 of the Massachusetts General Laws.

## Corporate Records

*Articles of Incorporation and By-laws*

The by-laws and Articles of Incorporation and amendments thereto were read. There was one change to the by-laws since the prior examination. This change was made to include an indemnification clause and was properly filed with the Secretary of the Commonwealth of Massachusetts.

## AFFILIATED COMPANIES

Per Form B, as filed with the Division, the Company is a member of a holding company system and is subject to the registration requirements of Chapter 175, Section 206C of the Massachusetts General Laws. The Company is a wholly owned subsidiary of Pennsylvania General Insurance Company, a Pennsylvania domiciled insurance company, which is a wholly owned subsidiary of OneBeacon Insurance Group LLC, an insurance holding company domiciled in the state of Delaware. OneBeacon Insurance Group LLC is an indirect wholly-owned subsidiary of OneBeacon Insurance Group, Ltd., a publicly traded insurance holding company domiciled in Bermuda. White Mountains Insurance Group, Ltd., also an insurance holding company domiciled in Bermuda, is the "ultimate controlling person" for the Company, and indirectly owned 72.4% of the outstanding shares of OneBeacon Insurance Group, Ltd. as of December 31, 2006.

## Corporate Governance

OneBeacon Insurance Group, Ltd. is a publicly traded company listed on the New York Stock Exchange ("NYSE"). As such, OneBeacon Insurance Group, Ltd. is subject to the rules and regulations of the Sarbanes-Oxley Act of 2002, the Securities Exchange Commission and the NYSE. OneBeacon Insurance Group, Ltd. has ultimate fiduciary responsibility for the Company's operations, corporate actions, and treatment of constituents, particularly, policyholders, claimants, employees, shareholders, etc.

It should be noted that OneBeacon Insurance Group, Ltd. has an audit committee of its Board of Directors that is comprised of "independent" Directors; it meets four times a year, appears to have a financially sound acumen within its outside Directors composition; is ultimately responsible to the full Board for outside external auditor selection (CPA firm) and review of such services; for the financial reporting accounting and disclosure environment; for the internal control environment from which the corporation operates; and for control of selection of other consulting firms services as to "independence" from a "sound practices" perspective.

CONFIDENTIAL                                                    SPARTA-00025348

## Transactions and Agreements with Subsidiaries and Affiliates

*Investment Management Agreement*

The Company maintains an agreement with White Mountains Advisors, LLC to act as investment advisor. Under this agreement, White Mountains Advisors, LLC provides investment management services, including the investment and reinvestment of the Company's invested assets. The fee for these services is paid on a quarterly basis at rates applied to its investment portfolio.

*Tax Sharing Agreement*

The Company is a party to a consolidated income tax agreement which covers the allocation, settlement, and financial statement presentation of current federal income taxes among companies included in the consolidated income tax return of the Fund America Financial Services, Inc. and its subsidiaries.

## ORGANIZATION CHART

White Mountains Insurance Group, Ltd. (Bermuda)
  White Mountains Holdings Bermuda, Ltd. (Bermuda)
   OneBeacon Insurance Group, Ltd. (Bermuda) (72.4%)
    Mill Shares Holdings (Bermuda), Ltd.
     OneBeacon Holdings (Gibraltar), Ltd.
      OneBeacon Holdings (Luxembourg) S.a.r.l.
       Fund American Financial Services, Inc. (DE)
       Fund American Enterprise Holdings, Inc. (DE)
       Fund American Companies, Inc. (DE)
        OneBeacon Insurance Group LLC (DE)
         OneBeacon Insurance Company (PA)
               Atlantic Specialty Insurance Company (NY)
               AutoOne Insurance Company (NY)
               AutoOne Select Insurance Company (NY)
               Homeland Insurance Company of New York (NY)
               Farmers and Merchants Insurance Company (OK)
               Midwestern Insurance Company (OK)
               Traders and General Insurance Company (TX)
               OneBeacon America Insurance Company (MA)
                  York Insurance Company of Maine (ME)
                  OneBeacon Lloyd's of Texas (TX)
               The Employers' Fire Insurance Company (MA)
                  Massachusetts Homeland Insurance Company (MA)
               The Northern Assurance Company of America (MA)
                  OneBeacon Midwest Insurance Company (WI)
        The Camden Fire Insurance Company (NJ)
        Pennsylvania General Insurance Company (PA)
          **American Employers' Insurance Company (MA)**
          American Central Insurance Company (MO)
       Potomac Insurance Company (PA)
       New Jersey Skylands Management LLC Attorney-In-Fact (DE)
         New Jersey Skylands Insurance Association (NJ)
         New Jersey Skylands Insurance Company (NJ)
       Adirondack AIF, LLC Attorney-In-Fact (NY)
         Adirondack Insurance Exchange (NY)

CONFIDENTIAL SPARTA-00025349

**Organization Chart, Continued**

Houston General Insurance Management Company Attorney-In-Fact (TX)
Houston General Insurance Exchange (TX)
Houston General Insurance Company (TX)

## FIDELITY BOND AND OTHER INSURANCE

The Company maintains fidelity coverage with an authorized Massachusetts insurer, consistent with Massachusetts General Laws, Chapter 175, Section 60. The aggregate limit of liability exceeds the NAIC suggested minimum.

The Company has further protected its interests and property by policies of insurance covering other insurable risks. Coverage is provided by insurers licensed in the Commonwealth of Massachusetts and was in force as of December 31, 2006.

## STATUTORY DEPOSITS

The statutory deposits of the Company at December 31, 2006 are as follows:

| State | Purpose of Deposit | Book Value | Fair Value |
|---|---|---|---|
| Arizona | Reserved for Workers' Compensation | $126,476 | $127,052 |
| California | Reserved for Workers' Compensation | 126,476 | 127,052 |
| Connecticut | Reserved for Workers' Compensation | 87,000 | 86,317 |
| Delaware | Reserved for Workers' Compensation | 121,877 | 122,432 |
| Georgia | Benefit of Georgia Policyholders | 121,608 | 120,111 |
| Idaho | Reserved for Workers' Compensation | 295,495 | 296,840 |
| Illinois | Reserved for Workers' Compensation | 57,489 | 57,751 |
| Indiana | Reserved per Ins Code Stat 27-01-20-12 | 32,002 | 31,608 |
| Kansas | Reserved for Workers' Compensation | 76,805 | 75,860 |
| Louisiana | Reserved for Fidelity and Surety | 89,606 | 88,503 |
| Maryland | Reserved for Workers' Compensation | 57,489 | 57,751 |
| Massachusetts | Benefit of All Policyholders | 3,460,855 | 3,476,612 |
| Nevada | Reserved for Workers' Compensation | 128,008 | 126,433 |
| New Hampshire | Reserved for Workers' Compensation | 63,725 | 63,575 |
| New Mexico | Benefit of New Mexico Policyholders | 382,879 | 384,622 |
| New York | Reserved for Workers' Compensation | 57,489 | 57,751 |
| North Carolina | Multiple Purposes | 309,368 | 309,050 |
| Oregon | Reserved for Surety | 425,421 | 427,358 |
| Texas | Reserved for Fidelity and Surety | 86,234 | 86,627 |
| Vermont | Reserved for Workers' Compensation | 76,805 | 75,860 |
| Virginia | Reserved per Ins Code Stat 382-1945 | 256,017 | 252,866 |
| | Totals | $6,439,124 | $6,452,031 |

CONFIDENTIAL SPARTA-00025350

## INSURANCE PRODUCTS AND RELATED PRACTICES

### Territory and Plan of Operation

The Company is licensed to write business in all 50 states, the District of Columbia and the U.S. Virgin Islands. In 2005, the Company entered into a Transfer and Assumption Agreement under the terms of which all direct insurance assets and liabilities were transferred to Pennsylvania General Insurance Company. The Company did not actively underwrite or market any business in 2006.

## REINSURANCE

Effective January 1, 2001, the Company and twelve (12) of its affiliates (collectively called "pool members") entered into an Amended and Restated Reinsurance Agreement ("Pooling Agreement") pursuant to which each pool member cedes 100% of its direct underwriting activity to the OneBeacon Insurance Company, the lead company in the pool. After recording all assumed and ceded reinsurance from other affiliates and third parties, the remaining net underwriting activity is retroceded by OneBeacon Insurance Company to each pool member in accordance with each company's pooling percentage. The Company's participation at January 1, 2001 was 4.2%. On January 1, 2004 the Pooling Agreement was amended and the Company's assuming participation was reduced to 0.0%.

On July 1, 2004 the Company's ceding and assuming participation in the Pooling Agreement was effectively terminated. The Company then entered into a 100% quota share agreement with OneBeacon Insurance Company. On July 1, 2005 the 100% quota share agreement with OneBeacon Insurance Company was terminated and effective June 30, 2005 the Company entered into a Transfer and Assumption Agreement with its immediate parent, Pennsylvania General Insurance Company. As such, as of the examination date, the Company had no direct or net written premium, and all liabilities have been assumed by Pennsylvania General Insurance Company. The Company was sold by Pennsylvania General Insurance Company on August 9, 2007. See the Subsequent Events section (next page) for additional details relating to the change in ownership.

## ACCOUNTS AND RECORDS

The Company's internal control structure was discussed with management through questionnaires and through a review of the work performed by the Company's independent Certified Public Accountants, PricewaterhouseCoopers LLP, including work papers generated to support the requirements of the Sarbanes-Oxley Act of 2002. As part of its engagement for the Pennsylvania Insurance Department, RSM McGladrey performed a review and evaluation of the control environment of OneBeacon Group's IT systems. The NAIC's Information Systems Questionnaire (ISQ) completed by the Company was reviewed and interviews with Company management and IT staff were conducted to gather supplemental information and corroborate the Company's responses to the ISQ. Included was a review of the documentation supporting Management and Organization Controls, Application Systems Development and Maintenance Controls, Operating and Processing Controls, Logical and Physical Security Controls, Contingency Planning Controls, Personal Computer, Local Area Network (LAN), Wide Area

10

SPARTA-00025351

Network (WAN) and Internet Controls. The control environment of the Company's information systems was found to have in place sufficient internal controls.

No material internal control weaknesses were noted in connection with the examination, nor were any such matters reported in the CPA firm's filings with the Division.

The Company uses an automated general ledger system. Trial balances were traced from the general ledger and supporting documents to the 2006 Annual Statement. No material exceptions were noted.

## SUBSEQUENT EVENTS

Effective August 9, 2007, all of the issued and outstanding capital stock of the Company was sold by its parent, Pennsylvania General Insurance Company, to SPARTA Insurance Holdings, Inc., an unrelated party. Pennsylvania General Insurance Company's obligations to SPARTA Insurance Holdings, Inc. in connection with the sale were guaranteed by OneBeacon Insurance Company.

Concurrent with the purchase Sparta Insurance Holding Inc. made a capital contribution of $219,630,000 of cash and short term securities increasing the surplus of the Company to $255,405,931.

Effective August 9, 2007 the Company filed Articles of Amendment with the Commonwealth of Massachusetts. The Company's Articles of Incorporation and the By-Laws were amended to change the name of the Company to SPARTA Insurance Company; change the home address to 155 Federal Street, Suite 700, Boston Massachusetts 02110; and change the mailing address of the Company to CityPlace II, 185 Asylum Street, Hartford, Connecticut 06103. The amendment was approved by the Division on August 30, 2007.

11

## FINANCIAL STATEMENTS

The following financial statements are presented on the basis of accounting practices prescribed or permitted by the Division of Insurance of the Commonwealth of Massachusetts and by the NAIC as of December 31, 2006.

Statement of Assets, Liabilities, Surplus and Other Funds as of December 31, 2006

Statement of Income for the Year Ended December 31, 2006

Statement of Capital and Surplus as of December 31, 2006

Reconciliation of Capital and Surplus for Each Year in the Five Year Period Ended December 31, 2006

12

CONFIDENTIAL

SPARTA-00025353

American Employers' Insurance Company
Statement of Assets, Liabilities, Surplus and Other Funds
As of December 31, 2006

|  | As Reported by the Company | Examination Changes | Per Statutory Examination |
|---|---|---|---|
| **Assets** | | | |
| Bonds | $29,271,738 | | $29,271,738 |
| Cash and short-term investments | 2,445,542 | | 2,445,542 |
| Other invested assets | 2,557,700 | | 2,557,700 |
| Subtotals, cash and invested assets | 34,274,980 | | 34,274,980 |
| Investment income due and accrued | 353,179 | | 353,179 |
| Net deferred tax asset | 616,009 | | 616,009 |
| Guaranty funds receivable or on deposit | 130,321 | | 130,321 |
| Aggregate write-ins for other than invested assets | 949 | | 949 |
| Total Assets | $35,375,438 | | $35,375,438 |

13

SPARTA-00025354

American Employers' Insurance Company
Statement of Assets, Liabilities, Surplus and Other Funds (Continued)
As of December 31, 2006

|  | As Reported by the Company | Examination Changes | Per Statutory Examination |
|---|---|---|---|
| **Liabilities** | | | |
| Other expenses | $27,450 | | $27,450 |
| Payable to parent, subsidiaries and affiliates | 17,176 | | 17,176 |
| Aggregate write-ins for liabilities | 120,722 | | 120,722 |
| Total Liabilities | 165,348 | | 165,348 |
| | | | |
| Common capital stock | 4,500,000 | | 4,500,000 |
| Gross paid in and contributed surplus | 29,583,144 | | 29,583,144 |
| Unassigned funds (surplus) | 1,126,946 | | 1,126,946 |
| Surplus as regards policyholders | 35,210,090 | | 35,210,090 |
| | | | |
| Total Liabilities, Capital and Surplus | $35,375,438 | | $35,375,438 |

14

American Employers' Insurance Company
Statement of Income
For the Year Ended December 31, 2006

|  | As Reported by the Company | Examination Changes | Per Statutory Examination |
|---|---|---|---|
| Net investment income | $991,104 |  | $991,104 |
| Net realized capital gains | 3,333,663 |  | 3,333,663 |
| Net investment gain | 4,324,767 |  | 4,324,767 |
| Net income before dividends to policyholders and before federal and foreign income taxes | 4,324,767 |  | 4,324,767 |
| Federal and foreign income taxes incurred | 0 |  | 0 |
| Net Income | $4,324,767 |  | $4,324,767 |

15

SPARTA-00025356

American Employers' Insurance Company
Statement of Capital and Surplus
For the Year Ended December 31, 2006

|  | As Reported by the Company | Examination Changes | Per Statutory Examination |
|---|---|---|---|
| Capital and Surplus, December 31, prior year | $37,443,925 |  | $37,443,925 |
| Net income | 4,324,767 |  | 4,324,767 |
| Change in net unrealized capital gains or (losses) | (2,831,324) |  | (2,831,324) |
| Change in net unrealized foreign exchange | (283) |  | (283) |
| Change in deferred tax | (473,328) |  | (473,328) |
| Change in nonadmitted assets | 46,333 |  | 46,333 |
| Paid in surplus adjustments | 0 |  | 0 |
| Dividends to stockholders | (3,300,000) |  | (3,300,000) |
| Aggregate write-ins | 0 |  | 0 |
| Change in surplus | (2,233,835) |  | (2,233,835) |
| Capital and Surplus, December 31, current | $35,210,090 |  | $35,210,090 |

16

SPARTA-00025357

American Employers' Insurance Company
Reconciliation of Capital and Surplus
For Each Year in the Five Year Period Ended December 31, 2006

|  | 2006 | 2005 | 2004 | 2003 | 2002 |
|---|---|---|---|---|---|
| Capital and Surplus, December 31, prior year | $37,443,925 | $122,836,649 | $129,535,994 | $115,227,269 | $103,688,791 |
| Net Income | 4,324,767 | 11,525,938 | 11,889,196 | 17,698,331 | 10,436,645 |
| Change in net unrealized capital gains or (losses) | (2,831,324) | (5,492,265) | (592,339) | (1,242,804) | 4,610,695 |
| Change in net unrealized foreign exchange | (283) | (8,334) | 8,619 | 0 | 0 |
| Change in deferred tax | (473,328) | (2,186,069) | (8,808,686) | (5,745,654) | 8,717,431 |
| Change in nonadmitted assets | 46,333 | (478,489) | 6,703,865 | 3,598,852 | (8,172,636) |
| Paid in surplus adjustments | 0 | (79,527,097) | 0 | 0 | 0 |
| Dividends to stockholders | (3,300,000) | ($9,226,408) | (15,900,000) | 0 | 0 |
| Aggregate write-ins | 0 | 0 | 0 | 0 | (4,053,657) |
| Change in capital and surplus | (2,233,835) | (85,392,724) | (6,699,345) | 14,308,725 | 11,538,478 |
| Capital and Surplus, December 31, current year | $35,210,090 | $37,443,925 | $122,836,649 | $129,535,994 | $115,227,269 |

17

SPARTA-00025358

## NOTES TO FINANCIAL STATEMENTS

### Loss and Loss Adjustment Expense Reserves

As part of the coordinated financial examination of the OneBeacon Insurance Companies by the Pennsylvania Insurance Department, the "lead state" of the group, it retained the actuarial services of KPMG LLP ("KPMG") to perform an actuarial analysis of the loss and loss adjustment expense reserves of the OneBeacon Pool, which includes all its reinsured affiliates as of December 31, 2006. KPMG has made an independent assessment of the OneBeacon Pool's loss and loss adjustment expense reserves as of December 31, 2006 to determine whether the reserve amounts carried are reasonably stated in accordance with sound actuarial principals. This analysis was performed both gross and net of reinsurance.

As noted previously in this report and subsequent to the examination date, the Company was sold by its immediate parent, Pennsylvania General Insurance Company ("PA General"), to an unrelated party effective August 9, 2007. Prior to this sale, the Company discontinued writing business and ceased to be a participant in the OneBeacon Pool. To facilitate the sale, the Company entered into a Transfer and Assumption Agreement effective June 30, 2005 with PA General, its direct parent within the group, which assumed all remaining underwriting assets and liabilities including all loss and loss adjustment expense reserves of the Company.

As of December 31, 2006, PA General was a member of the OneBeacon Pool with a ten percent participation ratio. As such, all outstanding loss and loss adjustment expense reserves of the Company assumed by PA General were retro-ceded by PA General to the OneBeacon Pool and therefore included in KPMG's actuarial analysis of the OneBeacon Pool's loss and loss adjustment expense reserves. KPMG has concluded that based on its review of OneBeacon's reserve calculations, as well as its own independent testing, that the OneBeacon Pool's gross and net loss and loss adjustment reserves are reasonably stated and fall within a range of reasonableness as of December 31, 2006.

18

SPARTA-00025359

## **ACKNOWLEDGEMENT**

Acknowledgment is made of the cooperation and courtesies extended by the officers and employees of the Company to all the examiners and RSM McGladrey, Inc. during the course of the examination.

John M. Curran, CFE
Supervising Examiner and Examiner-in-Charge
Commonwealth of Massachusetts
Division of Insurance
Representing Northeastern Zone, NAIC

19

SPARTA-00025360