UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SPARTA INSURANCE COMPANY     :
(as successor in interest to Sparta Insurance          Civil Action
Holdings, Inc.),     :    No. 21-11205-FDS

         Plaintiff,     :    **REDACTED PUBLIC VERSION**
                                   **AS OF JANUARY 6, 2025**

    v.     :

                                     **LEAVE TO FILE 30 PAGES**
PENNSYLVANIA GENERAL INSURANCE  :    **GRANTED ON DECEMBER 30,**
COMPANY (now known as Pennsylvania            **2024 (DKT NO. 179)**
Insurance Company),     :

         Defendant.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### PLAINTIFF SPARTA INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

James R. Carroll
Christopher G. Clark
Catherine A. Fisher
Anne E. Rabon
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
christopher.clark@skadden.com
catherine.fisher@skadden.com
anne.rabon@skadden.com
*Counsel for Plaintiff*
*SPARTA Insurance Company*

Dated: January 6, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL BACKGROUND..............................................................................................2

    A.    In 2005, PGIC Assumed Substantially All Of AEIC's Liabilities ...........................3

    B.    In 2007, SPARTA Acquired AEIC And PGIC Agreed To
        Indemnify SPARTA For Any Losses Related To Pre-2007 AEIC Policies............3

    C.    In 2012, In A Subsequent Transactions That Did Not Involve
        SPARTA, North American Casualty Co. Purchased PGIC Pursuant To
        A Stock Purchase Agreement That Disclosed The 2005 T&A Three Times ..........4

    D.    In 2021, PGIC Disclaimed Its Contractual Obligations To
        SPARTA, Forcing SPARTA To Administer And Pay The AEIC Claims ..............5

PROCEDURAL BACKGROUND.......................................................................................6

LEGAL STANDARD..........................................................................................................7

ARGUMENT .......................................................................................................................8

I.    THE COURT SHOULD GRANT SPARTA
    SUMMARY JUDGMENT ON ITS DECLARATORY JUDGMENT CLAIMS ..............8

    A.    The Court Should Declare That PGIC Is
        Directly Liable For And Must Administer The AEIC Claims.................................9

        1.    The Plain Language Of The 2005 T&A
            States That PGIC Assumed AEIC's Liabilities.............................................9

        2.    Because PGIC Expressly Assumed The
            AEIC Liabilities, PGIC Is Directly Liable For Them.................................11

        3.    Because PGIC Is Directly Liable For The
            AEIC Claims, PGIC Must Administer Them .............................................12

    B.    The Court Should Declare That PGIC Must Indemnify
        SPARTA For Losses Related To The AEIC Claims .............................................13

        1.    The Plain Language Of The 2007 SPA States That PGIC Must
            Indemnify SPARTA For Losses Related To The AEIC Claims................13

        2.    PGIC's Theory That PGIC Somehow Is Not The
            "Real Party In Interest" To The 2007 SPA Is Meritless ...........................14

C. PGIC's Obligations To SPARTA Under
The 2005 T&A And 2007 SPA Have Not Been Novated .......................................17

   1. A Contract Can Be Novated Only If All Parties Consent...........................18

   2. SPARTA Never Consented
   To Novation Of The 2005 T&A Or The 2007 SPA...................................20

II. THE COURT SHOULD GRANT SPARTA
SUMMARY JUDGMENT ON ITS BREACH OF CONTRACT CLAIMS ...................20

A. PGIC Breached The 2005 T&A By
Failing To Pay Or Administer AEIC Claims...........................................21

B. PGIC Breached The 2007 SPA By Failing To Indemnify
SPARTA For Amounts SPARTA Paid In Respect Of AEIC Claims...................22

   1. SPARTA Delivered To PGIC Section 8.1
   Notices Identifying AEIC Claims With
   Respect To Which SPARTA Seeks Indemnification................................23

   2. SPARTA Delivered To PGIC Section 8.3
   Notices Providing Reasonable Detail For The
   Calculation Of The Amount Of SPARTA's Indemnification Claims........24

C. SPARTA Has Sustained Undisputed
Damages As A Result Of PGIC's Breaches...........................................27

   1. Because PGIC Failed To Administer The
   AEIC Claims, SPARTA Incurred Damages of $75,735,002.60...............28

   2. Because PGIC Failed To Indemnify
   SPARTA For Losses Related To The AEIC
   Claims, SPARTA Incurred Damages of $75,735,002.60 .........................28

   3. SPARTA Is Entitled To An Award Of More
   Than Seven Million Dollars In Pre-Judgment Interest ..............................29

   4. SPARTA Is Entitled To An Award Of Its
   Costs, Expenses and Reasonable Attorneys' Fees .......................................30

CONCLUSION...........................................................................................................30

## TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

*10X Genomics, Inc. v. Celsee, Inc.,*
    505 F. Supp. 3d 334 (D. Del. 2020)..................................................................................4

*Aluminum Co. of America v. Beazer East, Inc.,*
    124 F.3d 551 (3d Cir. 1997)........................................................................................10

*Barbour v. Dynamics Research Corp.,*
    63 F.3d 32 (1st Cir. 1995).............................................................................................8

*Bose Corp. v. Ejaz,*
    732 F.3d 17 (1st Cir. 2013) ...........................................................................................7

*Charlestown Five Cents Savings Bank v. Wolf,*
    309 Mass. 547 (1941), *superseded by statute on separate issue as stated in*
    *D'Annolfo v. D'Annolfo Construction Co.,* 39 Mass. App. Ct. 189 (1995).......................17

*Craig J. Duchossois Revocable Trust UAD 9/11/1989 v. CDX Laboratories, Inc.,*
    495 F. Supp. 2d 869 (N.D. Ill. 2006) ...........................................................................18

*F.D.I.C. v. Hopping Brook Trust,*
    117 F.3d 639 (1st Cir. 1997)........................................................................................17

*Fusco v. City of Union City,*
    261 N.J. Super. 332, 618 A.2d 914 (App. Div. 1993) ......................................................19

*LSDP 15, LLC v. EAC Organics, Inc.,*
    No. 17-10333-RGS, 2018 WL 491660 (D. Mass. Jan. 19, 2018)......................................16

*Minturn v. Monrad,*
    64 F.4th 9 (1st Cir. 2023)........................................................................................8, 21

*North American Specialty Insurance Co. v. MPF Corp.,*
    No. 09–11122–LTS, 2010 WL 5452721 (D. Mass. Dec. 29, 2010)............................25, 27

*Quinn v. State Ethics Commission,*
    401 Mass. 210 (1987) ............................................................................................9, 13

*R&T Roofing Contractor, Corp. v. Fusco Corp.,*
    265 F. Supp. 3d 145 (D.P.R. 2017)..........................................................................28, 29

*Realty Finance Holdings, LLC v. KS Shiraz Manager, LLC,*
    86 Mass. App. Ct. 242 (2014)................................................................................16, 17

*Robinson v. Guarantee Trust Life Insurance Co.,*
    389 F.3d 475 (5th Cir. 2004) ......................................................................................18

*Reserves Development LLC v. Crystal Properties, LLC,*
    986 A.2d 362 (Del. 2009) ...............................................................................................18

*Security Benefit Life Insurance Co. v. F.D.I.C.,*
    804 F. Supp. 217 (D. Kan. 1992)......................................................................................19

*Shepperson v. Metropolitan Property & Casualty Insurance Co.,*
    312 F. Supp. 3d 183 (D. Mass. 2018) ................................................................................9

*Society of the Holy Transfiguration Monastery, Inc. v. Archbishop Gregory of Denver,*
    754 F. Supp. 2d 219 (D. Mass. 2010), *aff'd* 689 F.3d 29 (1st Cir. 2012) ...........................8

*SPARTA Insurance Co. v. Pa. General Insurance Co.,*
    651 F. Supp. 3d 391 (D. Mass. 2023) ................................................................................9

*Town of Lexington v. Pharmacia Corp.,*
    2015 WL 1321457 (D. Mass. Mar. 24, 2015).............................................................11, 12

*TransCanada Power Marketing Ltd. v. Narragansett Electric Co.,*
    542 F. Supp. 2d 127 (D. Mass. 2008) ................................................................................8

*Tsitsilianos v. City of Worcester,*
    No. 001623, 2005 WL 3729023 (Mass. Super. Ct. Dec. 23, 2005)...................................18

*Union Mutual Life Insurance Co. v. Chrysler Corp.,*
    793 F.2d 1 (1st Cir. 1986) ................................................................................................19

*Wipro Limited. v. Analog Devices, Inc.,*
    527 F. Supp. 3d 93 (D. Mass. 2021) ................................................................................12

*Wistron Neweb Corp. v. Genesis Networks Telecom Services, LLC,*
    No. 22-cv-2538 (LJL), 2023 WL 4493542 (S.D.N.Y. July 12, 2023)...............................18

*Zurich American Insurance Co. v. Watts Regulator Co.,*
    860 F. Supp. 2d 78 (D. Mass. 2012) .......................................................................*passim*

**STATUTES AND RULES**

Mass. Gen. Laws ch. 231 § 6C ................................................................................................30

Fed. R. Civ. P. 56(a) ................................................................................................................7

## PRELIMINARY STATEMENT

In 2005, defendant Pennsylvania General Insurance Company ("PGIC") entered into a transfer and assumption agreement with American Employers' Insurance Company ("AEIC") pursuant to which PGIC assumed substantially all of AEIC's liabilities (the "2005 T&A"). In 2007, PGIC sold AEIC to SPARTA Insurance Holdings, Inc., predecessor-in-interest to plaintiff SPARTA Insurance Company ("SPARTA"), pursuant to a stock purchase agreement (the "2007 SPA"), and non-party OneBeacon Insurance Company ("OBIC") guaranteed PGIC's obligations under that same agreement. For over 15 years, and consistent with the 2005 and 2007 agreements, SPARTA did not administer, handle, or otherwise pay for claims made on AEIC policies issued prior to June 30, 2005 (the "AEIC Claims"). Rather, administration of the AEIC Claims was handled by a number of entities and third party administrators through a series of subsequent agreements to which SPARTA was not a party.

In 2021, OBIC, renamed Bedivere Insurance Company ("Bedivere"), entered liquidation. At that time, Bedivere had been administering the AEIC Claims through a third party administrator. Bedivere stopped paying for the AEIC Claims. When policyholders started asking SPARTA to pay for the AEIC Claims, SPARTA asked PGIC to (1) comply with its obligations under the 2005 T&A to administer and pay for the AEIC Claims in the first instance and, in the alternative, (2) comply with PGIC's obligations under the 2007 SPA to indemnify SPARTA for losses related to the AEIC Claims. PGIC refused to do either and forced SPARTA to bring this action.

SPARTA's motion for summary judgment asks this Court to enforce the unambiguous terms of the 2005 T&A and the 2007 SPA as they are written. The plain terms of the 2005 T&A state that PGIC assumed liability for the AEIC Claims and is therefore directly liable for them. The plain terms of the 2007 SPA state that PGIC is responsible for indemnifying

SPARTA for any losses related to the AEIC Claims. Because of PGIC's undisputed failure to administer and pay the AEIC Claims and indemnify SPARTA for them, SPARTA paid $75,735,002.60 through November 30, 2024 in respect of the AEIC Claims.

PGIC baselessly contests its unambiguous contractual obligations. PGIC invites this Court to follow it through the looking glass to find that the 2005 T&A and the 2007 SPA should *not* be enforced according to their unambiguous terms because, PGIC claims, (1) the parties to the 2007 SPA did not intend to make PGIC a party to the 2007 SPA despite PGIC being a signatory and appearing in the agreement more than 200 times, and (2) the 2005 T&A and the 2007 SPA were novated and PGIC's obligations thereunder extinguished through subsequent agreements, none of which SPARTA was a party to or aware of prior to their execution. The Court should decline PGIC's invitation.

The Court should instead grant SPARTA's motion for summary judgment, because the undisputed material facts demonstrate that (1) the 2005 T&A and the 2007 SPA are enforceable against PGIC according to their terms, (2) PGIC breached its obligations under both agreements by failing to administer and pay for the AEIC Claims, and (3) SPARTA incurred at least $75,735,002.60 in damages through November 30, 2024 (plus interest and fees).

## FACTUAL BACKGROUND

PGIC and SPARTA are both insurance companies. (SMF ¶¶ 1, 6.)[1] Neither has any direct employees. (*Id.* ¶¶ 226, 345.) Instead, they have contractual arrangements with entities in their respective corporate families that provide services to the insurance companies pursuant to those contracts. (*Id.*)

---

[1] Citations to "SMF ¶ __" are to SPARTA's Local Rule 56.1 Statement Of Material Facts As To Which There Is No Genuine Issue To Be Tried and to "Clark Decl. ¶ __" are to the Declaration of Christopher G. Clark In Support of SPARTA's Motion For Summary Judgment.

## A.     In 2005, PGIC Assumed Substantially All Of AEIC's Liabilities

In 2005, PGIC assumed substantially all of the assets and liabilities of AEIC

pursuant to a Transfer and Assumption Agreement dated June 15, 2005, by and between PGIC

and AEIC (previously defined as the "2005 T&A"). (SMF ¶¶ 7-36.) The assumed liabilities

included claims made on AEIC policies issued before June 30, 2005 (previously defined as the

"AEIC Claims"). (*Id.* ¶¶ 26-28.) At the time of the 2005 T&A, PGIC owned 100% of the stock

of AEIC. (*Id.* ¶ 16.) Both PGIC and AEIC were part of the OneBeacon corporate family that

was ultimately owned by OneBeacon Insurance Group LLC ("OBIG"). (*Id.* ¶ 57; *see also id.*

¶ 279.) PGIC and AEIC both signed the 2005 T&A, (*id.* ¶¶ 8-14), and PGIC and AEIC never

agreed to modify, amend, terminate or novate the 2005 T&A, (*Id.* ¶¶ 37-56).

## B.     In 2007, SPARTA Acquired AEIC And PGIC Agreed
##         To Indemnify SPARTA For Any Losses Related To Pre-2007 AEIC Policies

Two years later, in 2007, PGIC sold AEIC to SPARTA[2] pursuant to a Stock

Purchase Agreement dated March 12, 2007, by and between PGIC as "Seller," SPARTA as

"Purchaser," and OBIC as "Guarantor" (previously defined as the "2007 SPA"). (SMF ¶¶ 58, 72,

76, 78.) At the time, OBIC was another insurance company in the OneBeacon corporate family.

(*Id.* ¶ 57.) PGIC, SPARTA, and OBIC each signed the 2007 SPA. (*Id.* ¶¶ 64-79.) The parties to

the 2007 SPA agreed that PGIC would indemnify SPARTA for a number of losses, including

losses that SPARTA incurred related to the AEIC Claims or to PGIC's breaches of its

representations and warranties. (*Id.* ¶¶ 116-18.) The parties further agreed that OBIC would

guarantee to SPARTA the "performance by [PGIC] of all of [PGIC's] covenants, agreements and

---

[2]      SPARTA Insurance Company is the successor-in-interest to SPARTA Insurance
Holdings, Inc. as a result of a subsequent merger in 2015 in which SPARTA Insurance Company
was the surviving entity. (SMF ¶¶ 4-5.) For ease of reference, this brief will generally refer to
SPARTA Insurance Holdings, Inc. and SPARTA Insurance Company as "SPARTA."

3

obligations, including, but not limited to, the prompt and complete payment by [PGIC] . . . of all amounts payable by [PGIC] to [SPARTA] and [AEIC], arising under, out of or in any way related to" the 2007 SPA or the 2005 T&A. (*Id.* ¶ 139; *see also id.* ¶ 138, 140-41.) The 2007 SPA states that it can be amended only by a writing executed by PGIC, SPARTA, and OBIC, or their respective successors in interest. (*Id.* ¶¶ 130-33.) After the close of the 2007 SPA, PGIC, SPARTA, and OBIC never executed a writing altering PGIC's indemnification obligations to SPARTA. (*Id.* ¶¶ 176-212.) Effective as of the close of the 2007 SPA, AEIC was renamed SPARTA Insurance Company. (*Id.* ¶ 3.)

> **C.**  **In 2012, In A Subsequent Transactions That Did Not Involve SPARTA, North American Casualty Co. Purchased PGIC Pursuant To <u>A Stock Purchase Agreement That Disclosed The 2005 T&A Three Times</u>**

In 2012, North American Casualty Co. ("NAC") purchased PGIC pursuant to a Stock Purchase Agreement dated June 8, 2012, and entered into by OBIG and NAC (the "2012 SPA"). (SMF ¶ 216-18.) ████████████████████████████████████████ ████████████████████████████████████████ (*Id.* ¶¶ 261-70.)[3] After NAC and OBIG executed

---

[3] ████████████████████████████████████████████████████
████████████████████████████████████████████████████
(SMF ¶¶ 261-67.) ████████████████████████████████████████
████████████████████████████████████████████████████
████████████████ (*Id.* ¶ 270.) Notably, NAC did not retain outside counsel to assist with its purchase of PGIC, and instead relied upon Jeffrey Silver, its general counsel, who testified that, ████████████████████████████████████ he "didn't need to see" the 2005 T&A itself, "because of the nature of the transaction." (*Id.* ¶¶ 219-20, 271-72.) Moreover, Steven Menzies, PGIC's current president and the individual who signed the 2012 SPA on NAC's behalf, candidly testified that he did not recall reading the 2012 SPA before signing it, but that he "trust[ed] [Mr. Silver's] judgment." (*Id.* ¶¶ 223-29, 232-34.) As PGIC surely knows, "[p]arties to merger and acquisition negotiations almost inevitably retain counsel in order to ensure that their interests – as opposed to the interests of the party with whom they are negotiating – are protected." *10X Genomics, Inc. v. Celsee, Inc.*, 505 F. Supp. 3d 334, 340 (D. Del. 2020) (cited in PGIC's Opening Br. re: Motion to Compel (ECF 137) at 7).

the 2012 SPA but before the acquisition closed, OBIC and PGIC entered into a Transfer and Assumption Agreement dated October 1, 2012 (the "2012 T&A"), pursuant to which OBIC assumed substantially all of PGIC's liabilities. (*Id.* ¶¶ 273-78, 293.) SPARTA was not a party to the 2012 SPA or the 2012 T&A, was not aware of them until months *after* they were executed, and did not receive a copy of either agreement until 2021. (*Id.* ¶¶ 237-60, 280-87, 298-315.)

## D. In 2021, PGIC Disclaimed Its Contractual Obligations To SPARTA, Forcing SPARTA To Administer And Pay The AEIC Claims

From the close of the 2007 SPA through 2021, SPARTA did not administer or pay the AEIC Claims. (SMF ¶ 343.)[4] Instead, SPARTA and its affiliates tendered any notices or communications they received regarding such claims for administration and payment pursuant to the terms of the 2007 SPA. (*Id.* ¶ 344.) In March 2021, the Pennsylvania Commonwealth Court placed OBIC, now known as Bedivere, into liquidation. (*Id.* ¶¶ 316-17.) That meant that the AEIC Claims that Bedivere had been paying were no longer being paid. (*Id.* ¶¶ 318, 346.)

When SPARTA learned that the AEIC Claims were not being paid, SPARTA asked PGIC to confirm that PGIC would comply with its obligations under the 2005 T&A and 2007 SPA to administer and pay the AEIC Claims. (*Id.* ¶ 346, 357-71.) PGIC refused, despite:



- ¶¶ 290-93; *see id.* ¶¶ 288-89.)

- PGIC's vice president and chief accounting officer stating in April 2012 that "a Transfer & Assumption does not represent a legal extinguishment of PGIC's obligation." (*Id.* ¶¶ 294-97.)

---

[4]     Today, PGIC is a subsidiary of NAC managed by employees of Applied Underwriters, Inc. pursuant to a management agreement. (SMF ¶¶ 216, 225.) SPARTA is an indirect subsidiary of Catalina Holdings (Bermuda) Ltd. managed by employees of Catalina U.S. Insurance Services LLC pursuant to an administrative services agreement. (SMF ¶ 345.)

- 

  (*Id.* ¶¶ 221-22, 350-52.)

- (*Id.* ¶¶ 353-56.)

Because PGIC refused to administer and pay the AEIC Claims, on October 1,

2021, SPARTA engaged A.G. Risk Management Inc. ("AGRM") as a third-party administrator

("TPA") to administer the AEIC Claims. (*Id.* ¶¶ 347-48, 370-71.) Months before SPARTA

engaged AGRM, PGIC itself engaged AGRM

. (*Id.* ¶¶ 319-42.) Both SPARTA and PGIC engaged AGRM in part because AGRM has

been administering these claims for Bedivere since at least 2014. (*Id.* ¶¶ 322, 332.)

Between May 2021 and November 30, 2024, SPARTA paid at least

$75,735,002.60 in connection with AEIC Claims and sought indemnification from PGIC for that

amount. (*Id.* ¶¶ 474-75.) PGIC refuses to indemnify SPARTA for or accept tender of the AEIC

Claims, except for two individual claims that PGIC accepted tender of in July 2024. (*Id.* ¶¶ 402-

405, 468-71, 476.) As a result, SPARTA was forced to bring this action seeking (1) declarations

that PGIC must administer the AEIC Claims under the 2005 T&A and indemnify SPARTA for

losses SPARTA incurs as a result of the AEIC Claims under the 2007 SPA and (2) judgment on

SPARTA's claims that PGIC breached the 2005 T&A and the 2007 SPA.

## PROCEDURAL BACKGROUND

SPARTA filed its original complaint in this litigation on July 26, 2021. (ECF No.

1.) SPARTA filed an amended complaint on October 4, 2021, and PGIC moved to dismiss that

complaint for lack of subject matter jurisdiction and for failure to state a claim. (ECF Nos. 19, 21.) On August 9, 2022, this Court denied PGIC's motion to dismiss. (ECF No. 38.) On September 19, 2022, SPARTA filed a motion for judgment on the pleadings. (ECF No. 59.) PGIC cross-moved for judgment on the pleadings on October 19, 2022. (ECF No. 64.) The Court denied both motions for judgment on the pleadings on January 13, 2023. (ECF No. 85.) SPARTA filed a second-amended complaint (the operative "Complaint"), which added two breach of contract claims, on February 28, 2023. (ECF No. 90.)[5]

In the meantime, the Parties conducted extensive discovery. Discovery began in August 2022 and lasted over two years. During discovery, the Parties and non-parties produced over 22,000 documents. Additionally, the Parties (i) issued 37 third-party subpoenas, (ii) exchanged and responded to 57 interrogatories and 55 requests for admission, (iii) took 11 days of depositions, (iv) fully briefed two motions to compel, and (v) exchanged expert reports. (Clark Decl. ¶ 8.) With discovery complete, SPARTA now requests that this Court grant summary judgment to SPARTA on all Counts of SPARTA's Complaint.

## LEGAL STANDARD

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Bose Corp. v. Ejaz*, 732 F.3d 17, 21 (1st Cir. 2013); *see also* Fed. R. Civ. P. 56(a). "If a party resists summary judgment by pointing to a factual dispute on which it bears the burden at trial [*e.g.*, an affirmative defense], that party must point to evidence affirmatively tending to prove the fact in its favor." *Soc'y of the*

---

[5]    At the time that the Complaint was filed, SPARTA had issued and PGIC had refused to pay one indemnification demand for damages incurred by SPARTA through September 30, 2022. Since filing the Complaint, SPARTA issued 13 additional indemnification demands for damages incurred by SPARTA through November 30, 2024, which PGIC also refused to pay. The parties agreed that SPARTA may pursue claims as to all indemnification demands made to date in this litigation, without moving to conform the Complaint to the evidence.

*Holy Transfiguration Monastery v. Archbishop Gregory of Denver*, 754 F. Supp. 2d 219, 223 (D. Mass. 2010) (alteration in original), *aff'd* 689 F.3d 29, (1st Cir. 2012); *see also Zurich Am. Ins. Co. v. Watts Regul. Co.*, 860 F. Supp. 2d 78, 90 (D. Mass. 2012) ("A defendant asserting novation as a defense bears the burden of proof in establishing its elements."). As such, this Court should enter summary judgment if there is "an absence of evidence to support the non-moving party's case." *Barbour v. Dynamics Rsch. Corp.*, 63 F.3d 32, 37 (1st Cir. 1995).

Under Massachusetts law,[6] "[t]he interpretation of an unambiguous contractual provision presents a question of law for the court," as does the determination of "whether the provision is ambiguous" in the first instance. *Minturn v. Monrad*, 64 F.4th 9, 14 (1st Cir. 2023). A contract is ambiguous only "where its terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken." *Id.* Absent ambiguity, the court should "resolve interpretive disputes based on the language of the contract, without resort to extrinsic evidence." *Id.* And "[w]here the wording of the contract is unambiguous, it must be enforced according to its terms." *TransCanada Power Mktg. Ltd. v. Narragansett Elec. Co.*, 542 F. Supp. 2d 127, 135 (D. Mass. 2008), *order clarified*, 2008 WL 11512024 (D. Mass. July 10, 2008).

## ARGUMENT

## I. THE COURT SHOULD GRANT SPARTA SUMMARY JUDGMENT ON ITS DECLARATORY JUDGMENT CLAIMS

The Court should grant SPARTA's motion for summary judgment on the first two counts of SPARTA's Complaint, which seek declarations that the 2005 T&A and 2007 SPA are

---

[6] The 2007 SPA states that "the rights and obligations of the parties hereto, shall be enforced by and construed in accordance with the laws of the Commonwealth of Massachusetts other than the insurance laws thereof." (SMF ¶ 63.)

valid contracts enforceable against PGIC. As explained below, (i) the unambiguous terms of the 2005 T&A require PGIC to assume and administer the AEIC Claims and (ii) the unambiguous terms of the 2007 SPA require PGIC to indemnify SPARTA for any losses that SPARTA incurs in connection with the AEIC Claims. Throughout this litigation, PGIC strained to overcome these contracts' unambiguous terms by arguing that (1) OBIC is the "real party in interest" to the 2007 SPA despite the fact that the 2007 SPA identifies PGIC as a "part[y]," was signed by PGIC, and refers to PGIC over 250 times, and (2) both contracts – without SPARTA's knowledge or consent – were novated in 2012 and that PGIC ostensibly has no further obligations under them.

In its decision on the Parties' motions for judgment on the pleadings, this Court stated that "[a]t the end of the day, th[ese] defense[s] may prove to be unsupported by the evidence." *SPARTA Ins. Co. v. Pa. Gen. Ins. Co.*, 651 F. Supp. 3d 391, 400 (D. Mass. 2023). It is now "the end of the day," and PGIC's defenses find no support in the record or law. Summary judgment on the first two counts of SPARTA's Complaint is therefore warranted. *See Shepperson v. Metro. Prop. & Cas. Ins. Co.*, 312 F. Supp. 3d 183, 200 (D. Mass. 2018) (granting plaintiff's motion for partial summary judgment on defendant's liability under insurance contract and entering a "declaratory judgment so holding").

### A. The Court Should Declare That PGIC Is Directly Liable For And Must Administer The AEIC Claims

#### 1. The Plain Language Of The 2005 T&A States That PGIC Assumed AEIC's Liabilities

The unambiguous language of the 2005 T&A plainly provides that PGIC assumed AEIC's liabilities as of June 30, 2005. Specifically, PGIC and AEIC agreed in the 2005 T&A[7]

---

[7] There can be no dispute that the 2005 T&A is a valid and enforceable contract under Massachusetts law. *See Quinn v. State Ethics Comm'n*, 401 Mass. 210, 216 (1987) (the "essential elements" of a contract are "offer, acceptance, and consideration"). PGIC offered to

that (1) PGIC shall "succeed to the liabilities and assets of [AEIC]" and (2) that "all liabilities of

every nature and description of [AEIC] at the time of the Transfer and Assumption shall attach to

and be assumed by [PGIC] to the same extent as if such liabilities had been originally incurred or

contracted by [PGIC]." (SMF ¶¶ 21, 33.) The contractual language is broad and unambiguous:

PGIC "assumed" and "succeed[ed] to" "all" of AEIC's liabilities.[8] The Parties to the 2005 T&A

have never amended nor modified these or any provisions of the 2005 T&A. (*Id.* ¶¶ 37-56.)

The AEIC liabilities transferred to PGIC included any claims made against

policies that AEIC had issued on or prior to June 30, 2005. The 2005 T&A defines AEIC's

"liabilities" to "include any and all of [AEIC's] liabilities or contractual commitments of every

nature and description, whether absolute, accrued, contingent or otherwise or whether due now

or in the future." (*Id.* ¶ 26.) The 2005 T&A provides as specific examples of "liabilities" "any

and all liabilities under any and all contracts" and "any and all subsequent actions, proceedings,

or liabilities arising from any of the foregoing [listed] liabilities or assets of" AEIC. (*Id.* ¶¶ 27-

28.) This definition plainly includes the AEIC Claims, which are claims made on AEIC policies

issued before June 30, 2005, *i.e.*, "liabilities" on AEIC's "contracts" that are now due. Therefore,

under the unambiguous terms of the 2005 T&A, PGIC "assumed" the AEIC Claims.

---

assume AEIC's assets and liabilities, AEIC offered to transfer its assets and liabilities to PGIC, and both offers were accepted. (SMF ¶¶ 11-15, 22-31, 91-96, 103-15.) As consideration, among other things, PGIC received substantially all of AEIC's assets via an $88,753,505 extraordinary dividend from AEIC, and in exchange AEIC had no liabilities. (*Id.* ¶¶ 36.)

[8]    *See Aluminum Co. of Am. v. Beazer E., Inc.*, 124 F.3d 551, 566 (3d Cir. 1997) (holding that contractual language that buyer "assume[d] all of the liabilities and obligations of [company] of whatsoever nature" was "clear and unambiguous").

## 2. Because PGIC Expressly Assumed The AEIC Liabilities, PGIC Is Directly Liable For Them

As other courts in this District have explained, a company – like PGIC – that "assumes" the liabilities of another – like AEIC – is "directly" liable for those liabilities. *Town of Lexington v. Pharmacia Corp.*, No. 12–cv–11645, 2015 WL 1321457, at *5 (D. Mass. Mar. 24, 2015). For example, in *Town of Lexington v. Pharmacia Corp.*, Judge Casper held on a summary judgment record that a town could bring claims directly against Solutia, Inc., even though the town's claims stemmed from the business operations of Pharmacia Corporation (f/k/a Monsanto Company) ("Old Monsanto"), because Solutia "expressly assumed Old Monsanto's tort liability" in a contract executed by Old Monsanto and Solutia. *Id.* at *4. Solutia argued that the town had "no direct cause of action" against it because Solutia was a "mere indemnitor[] against which a direct cause of action d[id] not lie." *Id.* at *2.

The Court disagreed and held that the contract "makes it clear that Solutia expressly assumed Old Monsanto's tort liability." *Id.* at *4. Specifically, "[t]he relevant section of the [contract] state[d] that Solutia shall retain or *assume*, as the case may be, *and shall indemnify* and hold harmless each member of Monsanto Group [defined as Old Monsanto n/k/a Pharmacia and its subsidiaries]." *Id.* (fourth alteration in original) (internal quotation marks omitted). The "plain reading of the [contract] indicat[ed] that Solutia both assumed liability and indemnified [Old Monsanto] against liability." *Id.* The Court held that because "Solutia assumed direct liability," the town could "assert its claims directly against Solutia." *Id.* at *5.

As in *Town of Lexington*, PGIC expressly "assumed" "all [of AEIC's] liabilities of every nature and description ... at the time of the Transfer and Assumption." (SMF ¶ 33.) Consistent with *Town of Lexington*, PGIC thus assumed "direct liability" for the AEIC Claims and, in turn, is *directly liable* for them. *See Town of Lexington*, 2015 WL 1321457, at *5.

11

### 3. Because PGIC Is Directly Liable For The AEIC Claims, PGIC Must Administer Them

Because PGIC is *directly liable* for the AEIC Claims, PGIC must administer them. Any other result would render PGIC's assumption of AEIC's liabilities "meaningless" because AEIC (now SPARTA) would still be responsible for liabilities that it transferred to PGIC and that PGIC assumed. *See Town of Lexington*, 2015 WL 1321457, at *3 (rejecting argument that "successor liability does not apply where the original manufacturer of the product at issue still exists" because "[a]n express assumption of liability of the successor [entity] would be meaningless if it was unenforceable during the continued life of the predecessor entity"). That would be inconsistent with Massachusetts law that a contract "should be interpreted in a manner that avoids absurd results and give[s] it effect as a rational business instrument." *Wipro Ltd. v. Analog Devices, Inc.*, 527 F. Supp. 3d 93, 98 (D. Mass. 2021) (alteration in original) (internal quotation marks omitted). It would also be inconsistent with the 2005 T&A's plain language that "all liabilities of every nature and description of [AEIC] at the time of the Transfer and Assumption" – including the AEIC Claims – "may be enforced against [PGIC] *to the same extent* as if such liabilities had been *originally incurred or contracted by*" PGIC. (SMF ¶ 33 (emphasis added).)[9]

For all of these reasons, the Court should declare that PGIC is directly liable for the AEIC Claims and directly responsible for administering them.

---

[9] The 2007 SPA further shows that PGIC, not AEIC, was responsible for administering the AEIC Claims under the 2005 T&A, as there PGIC warrants that AEIC had no pending lawsuits other than "proceedings with respect to claims under insurance policies issued by [AEIC] . . . which have been assumed and administered by [PGIC] under the [2005 T&A]," and PGIC covenants that it will continue to provide administrative services "to perform its obligations under the [2005 T&A]" after the close of the sale. (SMF ¶¶ 101-02, 128.)

**B.      The Court Should Declare That PGIC Must
Indemnify SPARTA For Losses Related To The AEIC Claims**

**1.      The Plain Language Of The 2007 SPA States That PGIC Must
Indemnify SPARTA For Losses Related To The AEIC Claims**

PGIC and SPARTA agreed in the 2007 SPA[10] that PGIC, as the Seller, agreed to

indemnify and hold SPARTA harmless from Losses:

> arising out of or resulting from (i) any breach of representation or warranty
> (including any misrepresentation in, or omission from, any certificate or other
> document furnished or to be furnished by [PGIC] to [SPARTA] hereunder) or
> nonfulfillment of any covenant or agreement on the part of Seller [PGIC] under
> th[e] [2007 SPA]; (ii) the failure by [PGIC] to perform any of its obligations
> under the [2005 T&A]; (iii) any Loss arising out of or resulting from the existence
> of [AEIC] prior to [August 7, 2007] or the conduct of the Business or other
> operations by or of [AEIC] prior to [August 7, 2007]; (iv) all filing fees and
> administrative assessments for insurance guaranty funds and/or insurance
> department expenses and all other assessments, levies or liabilities of any kind
> arising out of and/or associated with the conduct of the Business of [AEIC] prior
> to [August 7, 2007]; . . .; and (vi) all actions, suits, proceedings, demands,
> assessments, judgments, costs and expenses incident to any of the foregoing (any
> and all of which are hereafter referred to as a "Claim").

(SMF ¶ 117.)[11]

Losses that SPARTA incurs related to its administration of the AEIC Claims

"aris[e] out of or result[] from" multiple indemnifiable Claims, including (i) "the failure by

---

[10]      As with the 2005 T&A, there can be no dispute that the 2007 SPA is a valid and
enforceable contract under Massachusetts law. *See Quinn*, 401 Mass. at 216.  PGIC – defined as
"Seller" – offered to sell AEIC, SPARTA – defined as "Purchaser" – offered to buy AEIC and
both offers were accepted.  (SMF ¶¶ 2, 58-60, 64-66, 70-71, 80-84.)  As consideration, among
other things, SPARTA paid PGIC $47,167,670.  (*Id.* ¶¶ 83-87.)

[11]      PGIC represented and warranted to SPARTA that, among other things, (1) the 2005 T&A
"does, and will, at Closing, constitute a legal, valid and binding obligation of each of [PGIC] and
[AEIC], enforceable against each of [PGIC] and [AEIC], respectively, in accordance with its
terms"; (2) "[a]ll liabilities of [AEIC] that have arisen or could arise, under any insurance
contract or any reinsurance treaty or otherwise, have been and will be assumed by [PGIC]
pursuant to the [2005 T&A]"; (3) AEIC "has, and will at Closing have, no liabilities of any
nature, whether absolute, accrued, contingent or otherwise or whether due or to become due,
other than those assumed by [PGIC] pursuant to the [2005 T&A]"; and (4) the 2007 SPA
"constitutes the legal, valid and binding obligation of each of [PGIC] and [OBIC], enforceable

[PGIC] to perform any of its obligations under the [2005 T&A]," (ii) "the conduct of the Business or other operations by or of [AEIC] prior to [August 7, 2007]," and (iii) "all actions, suits, proceedings, demands, assessments, judgments, costs and expenses incident to any of the foregoing." (*Id.* ¶ 117.) The unambiguous terms of the 2007 SPA therefore require PGIC to indemnify SPARTA for the AEIC Claims.

The parties to the 2007 SPA – SPARTA as "Purchaser," PGIC as "Seller," and OBIC as "Guarantor" – never amended nor modified the 2007 SPA to eliminate PGIC's obligation to indemnify SPARTA for the AEIC Claims. (*Id.* ¶¶ 145-213.) SPARTA, PGIC, and OBIC agreed that the 2007 SPA could not be "amended except by, *and only by*, a written instrument executed by the parties" to the 2007 SPA "or their respective successors in interest." (*Id.* ¶ 130 (emphasis added); *see id.* ¶ 134.) It is undisputed that SPARTA, PGIC, and OBIC never "executed" a "written instrument" amending PGIC's indemnification obligations. (*Id.* ¶¶ 145-212.) [12] PGIC's indemnification obligations to SPARTA thus never changed. The Court should therefore declare that, pursuant to the express written terms of the 2007 SPA, PGIC is obligated to indemnify SPARTA for Losses arising out of or relating to the AEIC Claims.

### 2. PGIC's Theory That PGIC Somehow Is Not The "Real Party In Interest" To The 2007 SPA Is Meritless

Despite the unambiguous terms of the 2007 SPA identifying PGIC as the party responsible for indemnifying SPARTA for the AEIC Claims, PGIC attempts to avoid its

---

against each of [PGIC] and [OBIC] in accordance with its terms." (SMF ¶¶ 88-90, 97-100, 105-07; *see also id.* ¶¶ 61-62, 91-96, 128-29, 101-04.) If any of those representations and warranties is untrue, then PGIC must indemnify SPARTA for Losses "arising out of or resulting from" those breaches, which would include Losses related to the AEIC Claims.

[12] PGIC and SPARTA knew how to amend the 2007 SPA when they wanted to. PGIC and SPARTA executed four written agreements amending provisions of the 2007 SPA (none at issue here). (SMF ¶¶ 145-213.)

obligations to SPARTA by reading itself out of the 2007 SPA.  PGIC argues that – despite

signing the 2007 SPA in its own name as a party and being identified **_286_** times in the 2007 SPA

and **_18_** times in the 2007 SPA's indemnification provision alone (SMF ¶¶ 64-66, 72-75) – PGIC

never had any obligations under the 2007 SPA (indemnification or otherwise) because the parties

to the 2007 SPA "understood" OBIC to be the "real party in interest."  (PGIC's Opposition to

SPARTA's Motion for Judgment on the Pleadings (ECF No. 63) at 11-12 (hereinafter, "PGIC

Opp. to MJOP").)  This argument fails for multiple reasons.

   *First*, PGIC's reading of the 2007 SPA contradicts the express terms of the 2007

SPA, which plainly identify PGIC as (i) a party to the 2007 SPA and (ii) "the party responsible

for" indemnifying SPARTA for the AEIC Claims.  *Zurich*, 860 F. Supp. 2d at 86; (*See*

SMF ¶¶ 63-65, 71-72, 116-17).  Courts in this District routinely find that the party identified as

being responsible for liabilities is, in fact, the party responsible for them.  For example, in *Zurich*

*American Insurance Co. v. Watts Regulator Co.*, this Court rejected at summary judgment a

manufacturer's argument that it was not liable for retrospective premiums under insurance

agreements where the agreements "unambiguously identif[ied] [the manufacturer] as the party

responsible for paying retrospective premium[s]."  860 F. Supp. 2d at 86.  The Court refused to

"consider whether the [p]arties' subsequent course of conduct resolve[d] any textual ambiguity

by illustrating the [p]arties' intent" because "[t]heir intent is clear from the contractual language."

*Id.*  So too here.  The intent of PGIC, SPARTA, and OBIC "is clear from the contractual

language":  the parties intended PGIC to indemnify SPARTA for Losses related to the AEIC

Claims.  (SMF ¶¶ 117-18, 127.)

   *Second*, the preeminence of the 2007 SPA's written terms is heightened by the

fact that PGIC, SPARTA, and OBIC agreed that the 2007 SPA "contains the entire agreement

between the parties and supersedes any and all prior agreements, arrangements or understandings between the parties relating to the subject matter hereto." (*Id.* ¶ 137.) As a result, any "evidence" that PGIC cobbles together to speculate that SPARTA "understood [OBIC] to be the exclusive entity responsible for any AEIC liabilities" is legally irrelevant (and factually inaccurate). (PGIC Opp. to MJOP, *supra* at 12.) As Massachusetts courts have explained, "where, as here, sophisticated business people, represented by counsel, have negotiated and executed a complex written document touching on all significant aspects of their transaction, and have included an integration clause," courts in Massachusetts do not "resort" to extrinsic evidence to "divine the intention of the parties on the question of integration" or to contradict the terms of the contract. *Realty Fin. Holdings, LLC v. KS Shiraz Manager, LLC*, 86 Mass. App. Ct. 242, 248, 250 (2014) (refusing to consider extrinsic evidence on what the parties allegedly "understood" to be an agreement's effective date and granting summary judgment to company on claim that financing entities breached the agreement's unambiguous terms).

   *Third*, PGIC's "real party in interest" theory renders numerous provisions of the 2007 SPA superfluous and thereby violates the "basic principle of contract law that constructions that render contract terms meaningless should be avoided." *LSDP 15, LLC v. EAC Organics, Inc.*, No. 17-10333-RGS, 2018 WL 491660, at *4 (D. Mass. Jan. 19, 2018) (citation omitted) (granting summary judgment *sua sponte* and rejecting interpretation of lease that would read a provision "out of the [l]ease entirely, rendering it superfluous"). For example, PGIC's theory that OBIC is the "real party in interest" would render the entire section of the 2007 SPA on OBIC's guaranty superfluous. If OBIC is both the guarantor and the "real party in interest," then OBIC would be the guarantor of its own obligations. That defeats the entire purpose of a guaranty, which is when "*some one else* is primarily liable for a debt . . . that the guarantor will pay . . . if

the primary debtor does not." *Charlestown Five Cents Sav. Bank v. Wolf*, 309 Mass. 547, 549

(1941) (emphasis added), *superseded by statute on separate issue as stated in D'Annolfo v.*

*D'Annolfo Constr. Co.*, 39 Mass. App. Ct. 189 (1995). Indeed, the First Circuit has refused to

hold that guarantors are "primary obligors" – as PGIC asks this Court to do – where so holding

would render portions of an agreement "superfluous." *F.D.I.C. v. Hopping Brook Tr.*, 117 F.3d

639, 640-41 (1st Cir. 1997) (per curiam). In *F.D.I.C. v. Hopping Brook Trust*, two guarantors

argued that they were entitled to a notice of intent to foreclose on a mortgage that they

guaranteed "because, despite the use of the term 'guarantor' in the agreements, they [were] not

really guarantors but primary obligors." *Id.* at 640. In affirming the District Court's grant of

summary judgment against the guarantors, the First Circuit rejected that argument because the

agreements contained provisions that "would have been superfluous if [the guarantors] were

primary obligors rather than guarantors." *Id.* at 641. Similarly here, the 2007 SPA contains

many provisions – including the entire "Guarantee" article – that "would . . . be[] superfluous if"

OBIC is the "primary obligor[] rather than [the] guarantor[]." *See id.*; (*see also* SMF ¶¶ 138-44.)

Under the plain terms of the 2007 SPA, PGIC is responsible for indemnifying

SPARTA for the AEIC Claims. The Court should decline PGIC's invitation to find otherwise.

*See Realty Fin.*, 86 Mass. App. Ct. at 251 ("A judge uses summary judgment for the purpose for

which it was intended when, as in this case, a party seeks to alter what the agreement provides by

saying, in effect, 'that was not what we meant at all.'" (citation omitted)).

C.    **PGIC's Obligations To SPARTA Under**
       **The 2005 T&A And 2007 SPA Have Not Been Novated**

PGIC's claim that the 2005 T&A and 2007 SPA were novated in 2012 – without

SPARTA's knowledge or consent – fares no better. Discovery has confirmed that SPARTA was

not provided any notice of the 2012 agreements before they were executed and SPARTA never

consented to either agreement; indeed, its consent was never sought by the parties to those 2012

transactions. Because PGIC's novation arguments fail as a matter of law and as a matter of fact,

this Court should find that PGIC's obligations under the 2005 T&A and 2007 SPA remain in

force and enter judgment in SPARTA's favor as to the first two counts of SPARTA's Complaint.

## 1.    **A Contract Can Be Novated Only If All Parties Consent**

A novation requires "not only . . . that there was an existing valid original

obligation, but that there was an agreement of all parties to the new contract, the extinguishment

of the old contract, and a valid new contract." *Zurich*, 860 F. Supp. 2d at 90 (citation omitted).[13]

"Without the agreement of the parties to an extinguishment of the prior contract and to a

substitution of the new contract, there can be no novation." *Tsitsilianos v. City of Worcester*, No.

001623, 2005 WL 3729023, at *14 (Mass. Super. Ct. Dec. 23, 2005) (citation omitted).[14]  "[A]

mere promise by a third party to assume the obligor's duty, not offered in substitution for that

---

[13]    For the purposes of this motion, SPARTA does not address, and the Court need not
consider, whether either the 2005 T&A or the 2007 SPA novated AEIC's obligations to AEIC
policyholders. At issue here is only PGIC's claim that PGIC's *contractual* obligations to
SPARTA were novated to OBIC in 2012.

[14]    *See also Robinson v. Guarantee Tr. Life Ins. Co.*, 389 F.3d 475, 480 (5th Cir. 2004)
(finding no genuine issue of material fact to suggest that a reinsurance agreement was intended
to be a novation where one of the parties to the original contract was not a party to the
reinsurance agreement because there was "no evidence produced to the district court which
would support a meeting of the minds on the essential terms of the novation"); *Wistron Neweb
Corp. v. Genesis Networks Telecom Servs., LLC*, No. 22-cv-2538 (LJL), 2023 WL 4493542, at
*17 (S.D.N.Y. July 12, 2023) (granting plaintiff summary judgment and finding no novation
because "[w]here the original contract includes a clause requiring modifications to be in writing
and there is no such writing, continued dealing is insufficient to present a jury question as to an
implied novation"); *Rsrvs. Dev. LLC v. Crystal Props., LLC*, 986 A.2d 362, 370 (Del. 2009)
(holding that the "obligor is discharged by the substitution of a new obligor only if the contract
so provides or if the obligee makes a binding manifestation of assent, forming a novation" and
finding that an assignment was not intended as a novation where there was no evidence that the
obligee intended to accept the assignee as the sole source of liability (citation omitted)); *Craig J.
Duchossois Revocable Tr. UAD 9/11/1989 v. CDX Lab'ys, Inc.*, 495 F. Supp. 2d 869, 871 (N.D.
Ill. 2006) (granting motion for judgment on pleadings and holding that a novation requires
"agreement of all parties to the new obligation" as well as "consideration").

duty, does not result in a novation. . . . For a novation to take place, the obligee must assent to the discharge of the obligor's duty in consideration for the promise of the third party to undertake that duty." *Sec. Benefit Life Ins. Co. v. F.D.I.C.*, 804 F. Supp. 217, 225, 227 (D. Kan. 1992) (quoting Restatement of Contracts (Second) § 280 cmt. d (1979)) (granting summary judgment where there was no evidence of the nonparty consenting to treat a reinsurance agreement as a novation, despite receiving notice, because "[t]he fact that a creditor has knowledge of the assumption of his debtor's obligation by a third person does not necessarily establish implied assent, and mere acquiescence to an assumption is not an assent to a novation").

       *Zurich* is again instructive. In *Zurich*, an insurance company moved for partial summary judgment on liability for its breach of contract claim and argued that the insured manufacturer breached the terms of its insurance contracts by failing to pay retrospective premiums to the insurance company. The manufacturer argued that "the Parties' post-agreement conduct novated or modified the insurance contracts, or acted as a waiver." *Zurich*, 860 F. Supp. 2d at 86. The Court rejected that argument and held that the parties did not modify or novate the insurance contracts because there was no evidence that the insurance company "agreed to relieve [the manufacturer] of its obligations under the insurance contracts." *Id.* at 90. The Court also noted that the fact that the insurance company tried to collect the retrospective premium from the party to which the obligations had supposedly been novated did not extinguish the manufacturer's obligations under the insurance contracts. *Id.*; *see also Union Mut. Life Ins. Co. v. Chrysler Corp.*, 793 F.2d 1, 12-14 (1st Cir. 1986) (finding creditor accepting payments from third parties insufficient to effect a novation); *Fusco v. City of Union City*, 261 N.J. Super. 332, 338, 618 A.2d 914, 917 (App. Div. 1993) (noting that "[g]enerally, an agreement to novate is not to be implied from the mere assumption of the liability of a debtor by a third person" and citing

cases). The manufacturer thus remained "liable to [the insurance company] for any premium due under the insurance contracts at issue," and the Court granted summary judgment for the insurance company on liability. *Zurich*, 860 F. Supp. 2d at 85.

## 2. SPARTA Never Consented To Novation Of The 2005 T&A Or The 2007 SPA

As in *Zurich*, the record here is clear: there is no evidence that SPARTA consented to the novation of PGIC's obligations to OBIC. It is undisputed that SPARTA was not a party to and did not consent to either 2012 agreement, whether in the form of a signed writing or verbal consent. (SMF ¶¶ 214-15, 230-45, 257-59, 280-87, 307-13.) Indeed, the record evidence shows that SPARTA was not made aware of either the 2012 T&A or the 2012 SPA at the time that those agreements were signed or the date that they both became effective on October 1, 2012. (*Id.* ¶¶ 246-56, 260, 298-306, 314-15.) SPARTA would not learn of OneBeacon's sale of PGIC until at least eight months later, in May of 2013, and would not receive copies of either agreement until 2021. (*Id.* ¶¶ 253-55, 260, 301-06, 315.)[15]

Absent any evidence of express consent by SPARTA to the novation of PGIC's obligations to SPARTA, those agreements could not constitute a novation. Accordingly, there is no genuine dispute of material fact regarding the purported novation of PGIC's obligations to SPARTA under the 2012 agreements.

## II. THE COURT SHOULD GRANT SPARTA SUMMARY JUDGMENT ON ITS BREACH OF CONTRACT CLAIMS

The Court should also grant SPARTA's motion for summary judgment on the

---

[15] Even if SPARTA received prior notice of the 2012 agreements, there is no evidence that SPARTA would have understood them to be intended to be novations of PGIC's duties to SPARTA ███████████████████████████████████████████

███████████████████████████████████████ (SMF ¶ 288.)

20

third and fourth counts of SPARTA's complaint, which seek damages for PGIC's breaches of the 2005 T&A and the 2007 SPA.

"To demonstrate a breach of contract under Massachusetts law, [a party] must prove that a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiff sustained damages as a result of the breach." *Minturn*, 64 F.4th at 14 (internal quotation marks omitted) (affirming grant of summary judgment for plaintiff on breach of contract claim). As explained above, both the 2005 T&A and 2007 SPA are "valid [and] binding contract[s]" that respectively obligate PGIC to administer the AEIC Claims and indemnify SPARTA for Losses related to them. *See id.* As explained below, there can be no genuine dispute of material fact that (1) PGIC breached those agreements by refusing to administer and pay the AEIC Claims and to indemnify SPARTA for amounts that SPARTA spent administering them, and (2) SPARTA sustained $75,735,002.60 in damages through November 30, 2024 because of those breaches.

### A.    PGIC Breached The 2005 T&A By Failing To Pay Or Administer AEIC Claims

PGIC has not administered or paid any of the AEIC Claims that SPARTA tendered to it since 2021, with the exception of two AEIC Claims that PGIC accepted tender of in July 2024. (SMF ¶¶ 402-03.)[16] Instead, PGIC unequivocally stated that PGIC "is not responsible for [AEIC's] liability claims or any other AEIC claims notwithstanding" the 2005

---

[16]    On May 28, 2024, SPARTA sent PGIC ten letters, pursuant to Section 8.1 of the 2007 SPA, "provid[ing] notice that SPARTA has received notice of . . . claim[s] made against a policy issued by [AEIC] prior to SPARTA's acquisition of AEIC," and enclosing the relevant policy and notice of claim. (SMF ¶¶ 398-401.) On July 17, 2024, PGIC agreed to assume the defense of two of the claims but "declined to assume responsibility for the other [eight] claims." (SMF ¶ 402.) PGIC did not explain why it decided to assume the defense of only two of the ten claims or why it selected those two claims in particular. (*Id.*)

T&A and that PGIC will "not accept any AEIC claim files for handling since [PGIC] has no liability for any AEIC claims." (*Id.* ¶ 342.) Thus, once this Court finds that the 2005 T&A obligates PGIC to administer and pay the AEIC Claims (as it should), this Court should also find that PGIC breached the 2005 T&A by failing to do so.

**B. PGIC Breached The 2007 SPA By Failing To Indemnify SPARTA For Amounts SPARTA Paid In Respect Of AEIC Claims**

The Court should find that PGIC breached the 2007 SPA by failing to indemnify SPARTA for Losses that SPARTA incurred related to the AEIC Claims.

As explained *supra* Part I.B.1, the AEIC Claims are Losses that PGIC agreed to indemnify SPARTA for pursuant to the unambiguous terms of the 2007 SPA. There can be no genuine dispute of material fact that SPARTA incurred indemnifiable Losses in respect of the AEIC Claims. (SMF ¶ 474-76.) PGIC refused to indemnify SPARTA for those Losses. (*See id.* ¶¶ 402-03, 468-76.) PGIC breached the 2007 SPA by failing to do so.

Throughout this litigation, PGIC manufactured a range of excuses for its failure to indemnify SPARTA because (1) PGIC has no obligations to SPARTA under the 2007 SPA and (2) SPARTA did not send indemnification notices with sufficient information. (SMF ¶¶ 468-73.) Both defenses fail.

PGIC's first defense fails because the 2007 SPA obligates PGIC to indemnify SPARTA and the parties to the 2007 SPA have never amended, modified, or novated PGIC's indemnification obligations. (*See supra* Parts II.B.2 and II.C.) PGIC's second defense fails because SPARTA delivered to PGIC numerous notices of indemnification and demands for indemnification that provided PGIC with more than sufficient information about the AEIC Claims and the amount of indemnifiable Losses that SPARTA incurred. (*E.g.*, SMF ¶¶ 357-401,

406-67.) Tellingly, PGIC never explained to SPARTA what substantive information regarding SPARTA's indemnifiable Losses PGIC does not have access to. (*Id.* ¶¶ 123, 470.)

### 1. SPARTA Delivered To PGIC Section 8.1 Notices Identifying AEIC Claims With Respect To Which SPARTA Seeks Indemnification

Section 8.1 of the 2007 SPA provides that SPARTA shall give PGIC "written notice by certified or registered mail or overnight courier of any Claim with respect to which [SPARTA] seeks indemnification" (the "Section 8.1 Notices"). (SMF ¶ 119; *see id.* ¶¶ 120-21, 134-36.) Since May 28, 2021, SPARTA delivered to PGIC at least 40 Section 8.1 Notices that identify the AEIC Claims with respect to which SPARTA seeks indemnification. (*Id.* ¶¶ 357-401.) In addition to notifying PGIC of specific notices of claims that SPARTA has received, SPARTA also repeatedly advised PGIC that SPARTA was seeking indemnification for the AEIC Claims that ARGM had been managing and paying prior to Bedivere's liquidation. (*E.g., id.* ¶¶ 359, 362, 365.) ████████████████████████████████████

████████████████████████████████████████

████████████████████████ (*E.g., id.* ¶¶ 319-336, 357.)

Under the 2007 SPA, PGIC has ten business day from the receipt of each Section 8.1 Notice to inform SPARTA if PGIC would assume control of the defense of the noticed claims. (SMF ¶ 120.) If PGIC did not timely inform SPARTA that it has assumed the defense of the noticed claim, or if PGIC did not in fact assume the defense of such claim, SPARTA could, but was not required to, "pay, compromise or settle such Claim," in which case SPARTA "shall be fully entitled to indemnification" from PGIC. (SMF ¶ 121.) Consistent with this provision, SPARTA advised PGIC that, if PGIC did not assume the defense of the AEIC Claims within ten business days, then SPARTA would protect its (and policyholders') interests and thereafter seek indemnification from PGIC. (*E.g., id.* ¶¶ 359, 364.) It is undisputed that PGIC

has repeatedly refused to assume the defense of all but two AEIC Claims. SPARTA is entitled to indemnification from PGIC for Losses in connection SPARTA's efforts to pay, compromise or settle all other AEIC Claims. (*Id.* ¶¶ 340-42, 403-05.) SPARTA engaged AGRM – the same TPA that PGIC engaged █████████████████████████████████

████████ – to administer the AEIC Claims and SPARTA provided funds to resolve them. (*Id.* ¶¶ 321-36, 340-42, 347-49.) Under Section 8.1 of the 2007 SPA, SPARTA is entitled to indemnification of the amounts it expended in doing so.[17]

### 2. SPARTA Delivered To PGIC Section 8.3 Notices Providing Reasonable Detail For The Calculation Of The Amount Of SPARTA's Indemnification Claims

Section 8.3 of the 2007 SPA provides that, after SPARTA "has determined the dollar amount of any Claim, [SPARTA] shall provide written notice to [PGIC] of the amount of such Claim, which notice shall include in reasonable detail information explaining calculation of the amount of such Claim" (a "Section 8.3 Notice"). (SMF ¶ 122.) Under the 2007 SPA, after receiving a Section 8.3 Notice, PGIC has 30 "business days after the receipt of such notice" to advise SPARTA in writing if PGIC "does not concur with [SPARTA's] determination of the amount of the Claim." (*Id.* ¶ 124.) If PGIC did not timely object to SPARTA's "determination of the amount of" any indemnification Claim, then "the amount of such Claim provided in such notice shall conclusively be deemed to have been accepted by [PGIC] and to be the agreed amount which [SPARTA] . . . [is] entitled to receive by way of indemnification from" PGIC. (*Id.*) If PGIC does timely object to SPARTA's determination, then SPARTA and PGIC have ten business days "to negotiate in good faith to resolve the issue or issues which form the basis of

---

[17]     PGIC concedes that its position that it "is not liable for most of the specific claims for which SPARTA seeks indemnity because SPARTA did not submit" notices compliant with Section 8.1 "may not apply to 100% of the claims." (SMF ¶¶ 404-05.) It is remarkable that even PGIC cannot fully stand by its own defense.

their disagreement." (*Id.* ¶ 125.)  If no resolution was reached, then SPARTA "may commence litigation with respect to such disagreement." (*Id.* ¶ 126.)

These provisions make clear that the purpose of the Section 8.3 Notices is to allow PGIC to evaluate SPARTA's "calculation of the amount of" the AEIC Claims so that PGIC can decide whether to "concur with [SPARTA's] determination of the amount of the [AEIC] Claim" or to dispute SPARTA's calculation. (*Id.* ¶¶ 122, 124); *see N. Am. Specialty Ins. Co. v. MPF Corp.*, 2010 WL 5452721, at *2 (D. Mass. Dec. 29, 2010) ("An indemnity provision is not to be read with any bias in favor of the indemnitor and against the indemnitee; rather, it is to be interpreted like any ordinary contract, with attention to language, background, and purpose."). SPARTA's Section 8.3 Notices provide PGIC sufficient information to do so.

SPARTA's Section 8.3 Notices contained "in reasonable detail information explaining calculation of the amount of" the AEIC Claims.  Each of SPARTA's Section 8.3 Notices (1) advises PGIC how much SPARTA expended on the AEIC Claims and service fees paid to AGRM for administering them during the applicable time period and (2) attaches a spreadsheet listing for every payment on an AEIC Claim included at least ***eighteen*** pieces of information about those payments, as well as the service fees that SPARTA paid to AGRM for administering them.  (SMF ¶¶ 406-10, 417-67.)

PGIC's actions belie its assertion that SPARTA's Section 8.3 Notices lacked "reasonable detail." (*Id.* ¶ 470.)



(*Id.* ¶ 334.)

| SPARTA's Section 8.3 Notices | | | |
|---|---|---|---|
| Claim Number | | | |
| Claimant Name | | | |
| Insured Name | | | |
| Coverage | | | |
| Payee | | | |
| Transaction Type | | | |
| Check Number | | | |
| Amount | | | |
| Check Posted Date | | | |
| Transaction Date | | | |
| Entry Date | | | |
| Approval Date | | | |
| Status | | | |
| Payment Type | | | |
| Adjuster Name | | | |
| Underwriting Company | | | |
| Payor | | | |
| Record ID | | | |

(*Id.* ¶¶ 335, 408-10, 417-67.)[18]

(*Id.* ¶ 336.)

If PGIC wanted more than the "reasonable detail" SPARTA provided, all PGIC

had to do was ask. Every single Section 8.3 Notice ends with "[p]lease contact me if you need

additional information or believe any of this is incorrect." (*E.g., Id.* ¶ 411.)[19] PGIC never asked

SPARTA for "additional information" on any of the payments listed in the Section 8.3 Notices

nor explained what "additional information" PGIC thinks is required. (*Id.* ¶¶ 468-71.) PGIC's

---

[18] All but one of SPARTA's Section 8.3 Notices included the policy number for the claim and whether the claim was an expense, indemnity, or medical payment. (SMF ¶¶ 417-467.)

[19] PGIC also could have asked AGRM for additional detail on the claims that AGRM administered. (SMF ¶ 339.) Indeed, PGIC *has* asked AGRM for such detail: PGIC issued a third-party subpoena to AGRM seeking "[a]ll Documents concerning any track of receipt, payment or administration of AEIC Claims." (*Id.* ¶ 338.)

(*Id.* ¶ 337.)

conclusory assertion that SPARTA's 8.3 Notices did not include "reasonable detail" neither creates a dispute of material fact nor finds support in the record.

At summary judgment, courts reject similarly unsupported and conclusory assertions that an indemnitee is not entitled to indemnification for its purported failure to comply with an indemnification provision. In *North American Specialty Insurance Co. v. MPF Corp.*, Judge Sorokin held at summary judgment that an indemnitor breached an indemnification agreement by failing to pay the indemnitee for its undisputed losses. 2010 WL 5452721, at *1-2. The contract stated that the indemnitor must pay the indemnitee "for any and all disbursements made by it in good faith" related to surety bonds issued by the indemnitee. *Id.* at *1 (emphasis omitted). The indemnitee indisputably "received claims" on the bonds and "resolved the claims by making payments to the claimants." *Id.* The indemnitor argued in "conclusory fashion" that the indemnitee did not resolve the claims "in good faith." *Id.* at *3. The Court held that the indemnitor's "conclusory" assertions were "not sufficient to create a genuine dispute under Rule 56." *Id.* The same is true here: PGIC's "conclusory" assertion that SPARTA's Section 8.3 Notices did not contain "reasonable detail" is "not sufficient to create a genuine dispute under Rule 56," particularly where the summary judgment record undercuts that assertion. *See id.*

## C.    SPARTA Has Sustained Undisputed Damages As A Result Of PGIC's Breaches

SPARTA has sustained the same measure of damages for PGIC's breach of the 2005 T&A as it has for PGIC's breach of the 2007 SPA: at least $75,735,002.60 that SPARTA paid to administer the AEIC Claims through November 30, 2024, plus pre-judgment interest.[20]

---

[20]    This represents SPARTA's damages through November 30, 2024, as set forth in the indemnification demands that SPARTA served on PGIC through that date. Because SPARTA is continuing to administer the AEIC Claims, and thus continuing to incur costs that are properly PGIC's obligation, SPARTA expects to serve additional indemnification demands upon PGIC to recover additional costs in the future.

(SMF ¶ 475.) Thus, and although PGIC breached both the 2005 T&A and 2007 SPA, the Court need only determine that PGIC breached *one* of those agreements, resulting in damage to SPARTA, for SPARTA to be entitled to its requested damages judgment.

1. **Because PGIC Failed To Administer The AEIC Claims, SPARTA Incurred Damages Of $75,735,002.60**

Because of PGIC's refusal to comply with its contractual obligations to administer and pay the AEIC Claims, SPARTA incurred at least $75,735,002.60 in damages through November 30, 2024: (1) $73,369,452.60 in payments that SPARTA paid to claimants in connection with AEIC Claims, net of the amounts it recovered from reinsurance, and (2) $2,365,550.00 in service fees that SPARTA paid to AGRM for administering the AEIC Claims. (SMF ¶¶ 474-75.) SPARTA provided PGIC detailed information on these payments in the Section 8.3 indemnification demands that SPARTA served on PGIC, none of which PGIC paid. (*Id.* ¶¶ 406-67, 476.) PGIC has not identified any claim- or payment-specific disputes regarding these amounts and this Court can thus grant SPARTA summary judgment on its claim that PGIC breached the 2005 T&A and order PGIC to pay SPARTA $75,735,002.60, plus pre- and post-judgment interest. (*Id.* ¶ 473.) *See also R&T Roofing Contractor, Corp. v. Fusco Corp.*, 265 F. Supp. 3d 145, 156, 158 (D.P.R. 2017) (granting summary judgment on breach of contract claim where breaching party made a "blanket denial" as to damages and did "not raise any factual dispute or any legal argument as to [non-breaching party's] measure of damages").

2. **Because PGIC Failed To Indemnify SPARTA For Losses Related To The AEIC Claims, SPARTA Incurred Damages Of $75,735,002.60**

In the alternative, PGIC's refusal to comply with its indemnification obligations under the 2007 SPA also damaged SPARTA in the amount of at least $75,735,002.60 through November 30, 2024. (SMF ¶¶ 474-76.) As with the 2005 T&A, PGIC has not raised any disputes regarding the specific amounts of Losses incurred for any particular AEIC Claim. (*Id.*

¶ 473.) Thus, this Court can grant summary judgment to SPARTA on its claim that PGIC breached the 2007 SPA and order PGIC to pay SPARTA $75,735,002.60. *See R&T Roofing*, 265 F. Supp. 3d at 156, 158.

PGIC is liable to indemnify SPARTA for the entire $75,735,002.60. But PGIC has "conclusively accepted" and SPARTA is "entitled to receive" *at least* ▓▓▓▓▓ of that amount because PGIC failed to timely object to SPARTA's November 7, 2022 Section 8.3 Notice (the "November 7, 2022 Notice"). On November 8, 2022, SPARTA delivered to PGIC the November 7, 2022 Notice, which demanded ▓▓▓▓▓ for the amounts SPARTA paid on the AEIC Claims through September 30, 2022. (SMF ¶¶ 406-12.)[21] PGIC did not respond to the November 7, 2022 Notice within 30 business days of receiving it. (*Id.* ¶ 415.) PGIC thus "conclusively . . . accepted" ▓▓▓▓▓ as "the agreed amount" that SPARTA is "entitled to receive by way of indemnification from" PGIC. (SMF ¶¶ 124, 416.) As a result, there can be no genuine dispute that PGIC must pay SPARTA *at least* $12,468,897.

### 3. SPARTA Is Entitled To An Award Of More Than Seven Million Dollars In Pre-Judgment Interest

SPARTA is entitled to pre-judgment interest on damages that SPARTA incurred as a result of PGIC's breaches of the 2005 T&A and the 2007 SPA at a rate of "twelve per cent per annum from the date of the breach or demand." Mass. Gen. Laws ch. 231, § 6C; (SMF ¶ 496). For PGIC's breaches of the 2005 T&A, pre-judgment interest accrued at the latest from

---

[21]     The package that SPARTA delivered to PGIC contained two versions of the letter dated November 7, 2022. (SMF ¶¶ 407, 409.) The package included a thumb drive on which was saved an electronic version of the letter that included the amount of $11,849,047, which was the amount that SPARTA paid to claimants on AEIC Claims through September 30, 2022. (*Id.* ¶¶ 409, 413-14.) The printed version included in the package stated that SPARTA expended ▓▓▓▓▓ which is simply $11,849,047 plus the ▓▓▓▓▓ in TPA service fees paid by SPARTA as of September 30, 2022. (*Id.* ¶¶ 407-08, 414.)

29

the date of SPARTA's Section 8.3 Notices. The pre-judgment interest accrued to date is $9,349,621.52. (SMF ¶¶ 490-91; *see id.* ¶¶ 477-89) For PGIC's breaches of the 2007 SPA, pre-judgment interest accrued either from 35 business days after PGIC received SPARTA's Section 8.3 Notices stating amounts that PGIC "conclusively accepted" or 45 business days after PGIC received SPARTA's Section 8.3 Notices stating amounts that PGIC disputed. (*Id.* ¶¶ 481, 483.) The pre-judgment interest accrued (a) from 35 business days after PGIC received SPARTA's Section 8.3 Notices to date is $8,032,592.87 and (b) from 45 business days after PGIC received SPARTA's Section 8.3 Notices to date is $7,654,488.94. (*Id.* ¶¶ 492-95; *see id.* ¶¶ 477-89.)

### 4. SPARTA Is Entitled To An Award Of Its Costs, Expenses And Reasonable Attorneys' Fees

Under the 2007 SPA, SPARTA is entitled to its costs, expenses, and reasonable attorneys' fees incurred in obtaining PGIC's compliance with its obligations under the 2007 SPA and 2005 T&A. (SMF ¶¶ 117-18.) SPARTA has paid, and expects that it will continue to incur, attorneys' fees, costs and expenses in connection with this litigation and its other efforts to obtain PGIC's compliance with PGIC's contractual obligations. (SMF ¶ 497.) SPARTA requests that the Court award SPARTA its costs, expenses and reasonable attorneys' fees in an amount to be determined pursuant to a fee petition to be filed following the Court's ruling on this motion.

### CONCLUSION

For the foregoing reasons, SPARTA's motion for summary judgment should be granted in its entirety.

Dated: January 6, 2025
Boston, Massachusetts

Respectfully submitted,

/s/ *Christopher G. Clark*
James R. Carroll (BBO #554426)
Christopher G. Clark (BBO #663455)
Catherine A. Fisher (BBO #686163)
Anne E. Rabon (BBO #709625)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
christopher.clark@skadden.com
catherine.fisher@skadden.com
anne.rabon@skadden.com

*Counsel for Plaintiff*
*SPARTA Insurance Company*

<u>**CERTIFICATE OF SERVICE**</u>

I, Christopher G. Clark, hereby certify that on January 6, 2025, a true copy of the unredacted version of the foregoing document was served by email upon all counsel of record for Defendant Pennsylvania General Insurance Company as follows:

Samuel C. Kaplan
skaplan@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, D.C. 20005

Maxwell V. Pritt
Reed D. Forbush
Mariah J. Noah
mpritt@bsfllp.com
rforbush@bsfllp.com
mnoah@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, California 94104

Christopher M. Hennessey
chennessey@cohenkinne.com
COHEN, KINNE, VALICENTI & COOK
28 North Street, 3rd Floor
Pittsfield, Massachusetts 01201

Dated: January 6, 2025

/s/ *Christopher G. Clark*
Christopher G. Clark