# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

———————————————————————— )
SPARTA INSURANCE COMPANY )
(as successor in interest to Sparta )
Insurance Holdings, Inc.), )
 )
            Plaintiff, )
 )
      v. )        **Civil Action No.**
 )        **21-11205-FDS**
PENNSYLVANIA GENERAL )
INSURANCE COMPANY (now known )
as Pennsylvania Insurance Company), )
 )
          Defendant. )
———————————————————————— )

## MEMORANDUM AND ORDER ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

**SAYLOR, J.**

       This is a dispute between insurance companies concerning an assumption and indemnity

obligation.  Plaintiff SPARTA Insurance Company contends that defendant Pennsylvania

General Insurance Company ("PGIC") is obligated to indemnify it for certain claims under

contracts executed in 2005 and 2007.   PGIC contends that subsequent developments, including

the execution of two contracts in 2012—to which SPARTA was not a party—resulted in an

implied novation that extinguished PGIC's obligations to SPARTA.  PGIC further contends that

SPARTA's claims are barred by waiver and laches and that SPARTA breached the implied

covenant of good faith and fair dealing.  The parties also dispute, assuming the contractual

requirement remains in force, whether SPARTA is entitled to recover its claimed damages.

Both parties have moved for summary judgment in their favor.  For the following reasons, PGIC's motion will be denied, and SPARTA's motion will be granted in part and denied in part.

## I.     Background

The following facts are undisputed unless otherwise noted.

### A.     The Parties

SPARTA Insurance Company is a Connecticut corporation with headquarters in Farmington, Connecticut.  (Pl.'s Stmt. Mat. Facts ["Pl.'s SMF"] ¶ 1, Dkt. No. 183).  In 2007, SPARTA Insurance Holdings, Inc. acquired American Employers' Insurance Company ("AEIC"), a Massachusetts insurance company.  (*Id.* ¶¶ 2, 59).  Later that year, AEIC was renamed SPARTA Insurance Company.  (*Id.* ¶ 3).  SPARTA Insurance Company and SPARTA Insurance Holdings merged in 2015.  (*Id.* ¶ 5).  SPARTA Insurance Company is the surviving entity and successor-in-interest to SPARTA Insurance Holdings.  (*Id.* ¶¶ 4-5).[1]

Pennsylvania General Insurance Company, now known as Pennsylvania Insurance Company, is a New Mexico corporation with headquarters in Omaha, Nebraska.  (Def.'s Stmt. Mat. Facts ["Def.'s SMF"] ¶ 6, Dkt. No. 192).[2]

### B.     Factual Background

#### 1.     The OneBeacon Insurance Group

In 2005, OneBeacon Insurance Group LLC ("OBIG") directly or indirectly owned a number of subsidiaries, including AEIC, PGIC, and OneBeacon Insurance Company ("OBIC").

---

[1] SPARTA is an insurance company without any direct employees.  (Pl.'s SMF ¶ 345).  Instead, SPARTA is managed by employees of its corporate parent, Catalina U.S. Insurance Services LLC.  (*Id.*).

[2] Like SPARTA, PGIC is an insurance company without employees; it operates through a management agreement with a third party.  (Pl.'s SMF ¶ 226).  PGIC is owned by North American Casualty Co.  (Def.'s SMF ¶ 57).

(Pl.'s SMF ¶ 57). PGIC wholly owned AEIC. (*Id.* ¶ 59). These subsidiaries operated through a reinsurance pool. (Def.'s SMF ¶¶ 7-19). Under the pooling agreement, OBIC processed and administered claims on behalf of the other pool members. (*Id.* ¶ 16).

At some point in 2005, OBIG decided to sell off "unneeded companies" as "shell entities ready for sale." (Def.'s SMF ¶ 21). According to PGIC, the insurance industry has a practice of buying and selling companies as "clean shells" without assets or liabilities. (Kaplan Decl. Ex. 14 ¶¶ 52-54, Dkt. No. 195). State insurance licenses are tied to a given company and cannot be bought or sold. (*Id.* ¶ 52). To avoid the onerous licensing process, insurance companies may instead purchase existing companies that already hold the requisite licenses. (*Id.* ¶ 53). To create a "ready-to-write" company without outstanding risks, insurance holding companies typically use transfer and assumption agreements to shift assets and liabilities to another subsidiary. (*Id.* ¶ 53-54).

### 2. 2005 Transfer and Assumption Agreement

In 2005, PGIC and AEIC entered into a Transfer and Assumption Agreement (the "2005 T&A") to facilitate the sale of AEIC to a third party. (Pl.'s SMF ¶¶ 17-18). Under the agreement, PGIC assumed substantially all of AEIC's assets and liabilities. (*Id.* ¶¶ 21-22).

The 2005 T&A required AEIC to notify its active policyholders about the insurer change. (Pl.'s SMF ¶¶ 32). It was not required to notify holders of lapsed policies who could nevertheless still assert claims for events that occurred during the policy's term period. (*Id.* ¶¶ 30-32; Kaplan Decl. Ex. 14 ¶ 68). AEIC remained liable to these policyholders, which the 2005 T&A defined as the "Retained Business." (Pl.'s SMF ¶ 29-30). PGIC "assum[ed] as 100% reinsurance" the Retained Business. (*Id.* at 29). It also agreed to "perform any and all administrative functions for such Retained Business . . . and . . . reimburse [AEIC] for any and all out of pocket expenses related thereto." (*Id.* at 31).

After the 2005 T&A, OBIC continued to administer AEIC's claims as it had before. (Def.'s SMF ¶¶ 16, 38).

### 3.    2007 Stock Purchase Agreement

In 2007, OBIG found a buyer for AEIC. That March, SPARTA Holdings, PGIC, and OBIC entered into a Stock Purchase Agreement (the "2007 SPA") in which Sparta Holdings purchased AEIC from PGIC, its immediate corporate parent. (Pl.'s SMF ¶ 58). AEIC was not a party to the 2007 SPA. (*Id.* ¶ 82). The 2007 SPA attached the 2005 T&A as an exhibit and stated that the 2005 T&A "remain[ed] in full force and effect." (Def.'s SMF ¶ 35).

The 2007 SPA included indemnification and guarantee provisions. PGIC agreed to indemnify SPARTA Holdings for any loss arising from "any breach of representation or warranty," its failure "to perform any of its obligations under the [2005 T&A]," or "the existence of [AEIC] prior to the Closing." (Pl.'s SMF ¶ 117). OBIC guaranteed PGIC's obligations. It "absolutely and unconditionally guarantee[d] . . . the performance by [PGIC] of all of its covenants, agreements, and obligations, including . . . the prompt and complete payment . . . of all amounts payable by [PGIC] to [SPARTA Holdings] and [AEIC], arising under" the 2007 SPA or the 2005 T&A. (*Id.* ¶ 139).

The agreement contained a series of procedural provisions for seeking indemnification. Section 8.1 stated that SPARTA Holdings "shall give [PGIC] written notice by certified or registered mail or overnight courier of any Claim with respect to which [SPARTA Holdings] seeks indemnification." (Def.'s SMF ¶ 144). PGIC would then have "ten business days from the date of receipt . . . to notify [SPARTA Holdings] that [PGIC] [would] assume the entire control of the defense, compromise or settlement." (*Id.*). If PGIC failed to do so, SPARTA Holdings may "pay, compromise or settle such Claim . . . and be fully entitled to indemnification" from PGIC. (*Id.*). Section 8.3 described the valuation of claims for indemnification. It provided that

an indemnified party "shall provide written notice to indemnifying party of the amount of such

Claim, which notice shall include in reasonable detail information explaining calculation of the

amount of such Claim." (*Id.* ¶ 177). The indemnifying party had thirty days to contest the claim.

If it did not, the amount in the written notice would "conclusively be deemed to have been

accepted by the indemnifying party and to be the agreed amount which the indemnified

party . . . [is] entitled to receive by way of indemnification." (*Id.*).

Finally, the 2007 SPA required that any amendment, modification, or waiver be in

writing. (Pl.'s SMF ¶ 131). The parties have not identified any written document to which

SPARTA was a party terminating, novating, modifying, or amending the 2007 SPA after

February 2008. (*Id.* ¶¶ 186-89).[3]

After the 2007 SPA, OBIC continued to administer AEIC's claims as it had before.

(Def.'s SMF ¶¶ 16, 38).

### 4.    2012 Transfer and Assumption Agreement and 2012 Stock Purchase Agreement

In 2012, OBIG decided to sell PGIC to North American Casualty Co. ("NAC"). In June,

OBIG and NAC entered into a Stock Purchase Agreement (the "2012 SPA") under which NAC

purchased PGIC from OBIG. (Def.'s SMF ¶ 57). The agreement anticipated that at closing

OBIG would provide NAC evidence of the termination of contracts with outstanding liabilities,

which included the 2005 T&A between AEIC and PGIC. (*Id.* ¶¶ 59-60). The sale closed on

October 1, 2012. (*Id.* ¶ 61)

To facilitate the sale, on October 1, 2012, OBIC and PGIC also entered into a Transfer

and Assumption Agreement (the "2012 T&A") with the stated intent to turn PGIC into a clean

---

[3] The parties executed a series of written amendments in 2007 and early 2008. (Pl.'s SMF ¶¶ 145-85). Neither party maintains that these amendments affect the rights and obligations at issue in this litigation.

shell with no outstanding liabilities. (Def.'s SMF ¶¶ 49-50). The 2012 T&A stated that "all liabilities of every nature and description of PGIC . . . shall attach to and be assumed by OBIC." (*Id.* ¶ 52).

SPARTA was not a party to the 2012 T&A or the 2012 SPA. (Pl.'s SMF ¶¶ 237-44, 280-287). There is no evidence that PGIC, OBIC, or NAC sought the assent of SPARTA in connection with the execution of either agreement, or that either party notified SPARTA of either agreement at the time they were executed. (*Id.* ¶¶ 246-48, 298-300).

### 5.    May 2013 Emails

SPARTA employees learned of PGIC's sale no later than May 7, 2013, a little more than eight months after the October 2012 closing. (Def.'s SMF ¶ 76, 83). On May 2, 2013, Beth Terrell, the Senior Vice President and Chief Regulatory Compliance Officer for SPARTA, emailed Virginia McCarthy, the Associate General Counsel and Secretary for OBIG. (*Id.* ¶¶ 77, 79, 82). In response to news that OBIG might be "selling off some business," McCarthy asked: "[W]hat is happening to [PGIC], the entity that assumed all of AEIC's liabilities?" (*Id.* ¶ 82). On May 7, McCarthy responded that PGIC "was sold last fall" and had "transferred to and [OBIC] assumed of all of [PGIC's] liabilities effective October 1, 2012." (*Id.* ¶ 83). In a follow-up email, Terrell asked for a copy of the 2012 T&A between OBIC and PGIC "for our files." (*Id.* ¶ 85). There is no evidence in the record that a copy of the agreement was ever sent in response to this inquiry. (Pl.'s SMF ¶¶ 303-305).[4]

---

[4] SPARTA contends that May 7, 2013, was the first time it learned of PGIC's sale. (Pl.'s Opp'n.to Def.'s Mot. Summ. J. ["Pl.'s Opp'n"] at 14, Dkt. No. 210). SPARTA also contends that it did not receive a copy of the 2012 T&A until 2021. (Pl.'s SMF ¶¶ 302). PGIC disputes that those contentions are supported by admissible evidence. (Def.'s Opp'n to Pl.'s SMF ¶¶ 260, 302, Dkt. No. 193). But PGIC has not proffered any communications within or to SPARTA that indicate knowledge of PGIC's sale prior to May 7, 2013. PGIC also has not proffered any evidence that SPARTA did receive the 2012 T&A prior to 2021.

After May 7, 2013, SPARTA continued to tender claims made on AEIC policies to OBIC, OBIG, or third-party administrators working on behalf of OBIC, OBIG, or its successors. (Def.'s SMF ¶ 104). Between the sale of PGIC in 2007 and the OBIC liquidation in 2021, SPARTA and PGIC had no communications. (*Id.* ¶ 107).

### 6.     OBIC Liquidation

In 2014, Armour Group Holdings Limited purchased OBIC from OBIG. (Def's SMF ¶ 112). OBIC was renamed Bedivere Insurance Company. (*Id.* ¶ 113). Bedivere was ordered into liquidation in March 2021 and stopped paying or administering AEIC claims. (*Id.* ¶¶ 114, 116). Instead, it tendered those claims back to AEIC, now SPARTA. (*Id.* ¶¶ 114, 116).

On May 28, 2021, SPARTA emailed PGIC's general counsel asking for confirmation that PGIC would now administer and pay AEIC claims "as it [was] obligated to do under the relevant agreements." (Pl.'s SMF ¶ 358). PGIC's general counsel responded that the company had been acquired as a clean shell and the current ownership had "never heard of [AEIC] until approximately 30 days ago." (Def.'s SMF ¶ 122). He told SPARTA that PGIC, under current ownership, had never adjusted AEIC or SPARTA claims and that it was investigating the alleged obligations. (*Id.* ¶ 126).

### 7.     SPARTA's Claim and Indemnification Notices

The May 28, 2021 email to PGIC' s general counsel listed four litigation matters arising from AEIC claims in which SPARTA had been named and served. (Pl.'s SMF ¶ 357). Over the next two months, SPARTA sent PGIC additional tenders of claims arising from AEIC policies. (*Id.* 359-63). Those notices asked PGIC to confirm that it would administer the claims or reimburse SPARTA for doing so. (*Id.*). While PGIC and SPARTA continued discussions about the contractual obligations throughout the summer, PGIC did not confirm its financial responsibility for the AEIC claims. (Def.'s SMF ¶ 122-140).

In July 2021, SPARTA commenced this action seeking a judicial declaration that PGIC must "honor its contractual obligations" and indemnify SPARTA. (Compl. Declaratory J. ¶ 2, Dkt. No. 1). In October 2021, it contracted with a third-party administer to handle the AEIC claims. (Pl.'s SMF ¶ 348).

SPARTA continued to send PGIC notices of claims arising from AEIC policies. According to SPARTA, it sent at least forty claim notices pursuant to section 8.1 of the 2007 SPA between May 2021 and May 2024. (Pl.'s SMF ¶¶ 357-401). Except for two individual claims, PGIC has not assumed the defense of any other noticed AEIC claim. (*Id.* ¶¶ 402-405).

In November 2022, SPARTA sent PGIC an indemnification notice "[p]ursuant to Section 8.3 of the [2007] SPA." (Pl.'s SMF ¶ 406). SPARTA sought more than $12 million for amounts paid on AEIC claims and administrative expenses. (*Id.* ¶ 408). The notice included a spreadsheet providing information about the underlying claims. (*Id.* ¶ 410). PGIC did not respond within thirty days of receipt of the notice. (*Id.* ¶ 415). SPARTA continued to send section 8.3 notices to PGIC through December 2024. (*Id.* ¶ 417-70). In total, SPARTA has requested indemnification for claims and expenses totaling more than $75 million. (*Id.* ¶ 474).

**C.**    **Procedural Background**

SPARTA filed the second amended complaint, which is the operative complaint, on February 28, 2023. Count 1 asserts a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 seeking a judicial determination of the rights of SPARTA and PGIC under the 2007 SPA.[5] Count 2 similarly asserts a claim for declaratory judgment pursuant to 28 U.S.C.

---

[5] In its motion for summary judgment, SPARTA asserts that under the 2007 SPA it is entitled to costs, expenses, and reasonable attorney's fees incurred in connection with this litigation. (Pl.'s Mem. Supp. Mot. Summ. J. ["Pl.'s Mem."] at 30, Dkt. No. 184). Because the issue of whether SPARTA is entitled to such litigation expenses has not been briefed, the Court will not address it at this time.

§§ 2201 and 2202 seeking a judicial determination of the rights of SPARTA and PGIC under the 2005 T&A.  Counts 3 and 4 assert claims for breach of contract under the 2007 SPA and 2005 T&A, respectively, that seek money damages.  Both parties have moved for summary judgment as to all counts.

## II.  <u>Legal Standard</u>

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)).  Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party."  *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted).  In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party.  *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993).  When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotations omitted).  The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence."  *Id.* at 256-57.

"Generally, in deciding cross-motions for summary judgment, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration.  But where, as here, the motion and cross-motion

seek a determination of the same issues, the Court may consider them together." *ExteNet Sys., Inc. v. Village of Pelham*, 377 F. Supp. 3d 217, 223 (S.D.N.Y. 2019) (citation modified); *see also Pacamor Bearings, Inc. v. Minebea Co.*, 918 F. Supp. 491, 496 (D.N.H. 1996) ("Because the issues raised in the motion and cross-motion are identical, the court will discuss and resolve [them] in unison.").

## III.  Analysis

As noted, the complaint asserts claims for declaratory relief and breach of contract under the 2007 SPA and 2005 T&A.  Because the Court finds the 2007 SPA and 2005 T&A are valid and enforceable against PGIC, it will reach both sets of claims.

The 2007 SPA contains a choice-of-law provision specifying that Massachusetts law shall apply in actions to enforce or construe the agreement.  (Pl.'s SMF ¶ 63).  The parties do not contest that Massachusetts law applies to this dispute.

### A.    Declaratory Judgment under the 2007 SPA and 2005 T&A (Counts 1 and 2)

PGIC asserts that its contractual obligations under the 2005 T&A and 2007 SPA have been extinguished or that SPARTA's rights are not enforceable.

#### 1.    Novation

PGIC first contends that its obligations under the 2005 T&A and 2007 SPA were extinguished after its sale in 2012 because those obligations were transferred to OBIC as part of a contractual novation.  It is undisputed that SPARTA did not expressly assent to any such novation.  Instead, PGIC maintains that its assent should be "implied through surrounding facts and circumstances."  (Def.'s Mem. Supp. Mot. Summ. J. ["Def.'s Mem."] at 1, Dkt. No. 191).

Whether a novation occurred is a question of fact.  *See Fauci v. Denehy*, 332 Mass. 691, 697 (1955).  Novation is also an affirmative defense.  *Tudor Press, Inc. v. University Distrib. Co.*, 292 Mass. 339, 340 (1935).  At summary judgment, defendant bears the burden of

production "to generate a trialworthy issue on its novation claim." *Able Int'l Corp. v. B.P. Chemicals Am., Inc.*, 145 F.3d 67, 68 (1st Cir. 1998).

Under Massachusetts law, novation requires (1) "an existing valid original obligation," (2) "an agreement of all parties to the new contract," (3) "the extinguishment of the old contract," and (4) "a valid new contract." *Zurich Am. Ins. Co. v. Watts Regul. Co.*, 860 F. Supp. 2d 78, 90 (D. Mass. 2012) (quoting *Larson v. Jeffrey–Nichols Motor Co.*, 279 Mass. 362, 366 (1932)). Novation "may be inferred from the circumstances and from the conduct of the parties," *Clark v. General Cleaning Co.*, 345 Mass. 62, 64 (1962), "despite a lack of express language to that effect," *Lipson v. Adelson,* 17 Mass. App. Ct. 90, 94 (1983). However, the parties' intent to extinguish the original obligation must be "clear and definite." *Pagounis v. Pendleton*, 52 Mass. App. Ct. 270, 273 (2001) (quoting *Lipson*, 17 Mass. App. Ct. at 92). Furthermore, that intent "is not to be determined by the secret thought or unexpressed intent of any of the parties, but is to be determined by the intent as expressed by words and acts of all the parties in the light of the circumstances." *Tudor Press*, 292 Mass. at 341.

Here, PGIC has "an existing valid original obligation" under the 2005 T&A and 2007 SPA to reinsure and indemnify SPARTA. The 2012 T&A and 2012 SPA are new contracts, under which OBIC assumed PGIC's liabilities to facilitate its sale. The issue is whether *all* parties—SPARTA, PGIC, and OBIC—agreed that OBIC's assumption of PGIC's obligations in 2012 extinguished PGIC's obligations under the 2005 T&A and 2007 SPA. While PGIC and OBIC may have intended to extinguish those obligations, their intent alone is not enough. To prove novation, SPARTA must have clearly and definitely expressed its intent to accept OBIC in full substitution for PGIC and thus completely release it from liability. *See Tudor Press*, 292 Mass. at 341.

Again, SPARTA was not a party to either the 2012 T&A or the 2012 SPA. (Pl.'s SMF ¶¶ 244, 283). And PGIC has not identified any other writing or statement in which SPARTA consented to novate either agreement. (Pl.'s SMF ¶¶ 40, 189). Without an express agreement, PGIC instead contends that the facts and circumstances establish that SPARTA impliedly assented to a novation. (Def.'s Mem. at 22-23).

First, PGIC contends that SPARTA's post-2013 conduct—specifically, its failure to take any action—demonstrates an intent to acquiesce in the new arrangements, and therefore to novate the contracts. (Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. Summ. J. ["Def.'s Reply"] at 3-8, Dkt. No. 216). The parties dispute when SPARTA became aware of PGIC's sale. (Def.'s Mem. at 28; Pl.'s Opp'n to Def.'s Mot. Summ. J. ["Pl.'s Opp'n"] at 14, Dkt. No. 210). It is undisputed, however, that SPARTA learned of PGIC's sale and OBIC's assumption of liabilities no later than May 2013. (Def.'s SMF ¶ 76). PGIC contends that from 2013 to Bedivere's liquidation in 2021, SPARTA took virtually no action despite being made aware of the sale. Specifically, it did not investigate to whom PGIC had been sold, examine PGIC's financial condition, or communicate with PGIC at all. (*Id.* ¶¶ 98, 99, 107). It asserts that SPARTA's failure to communicate with or monitor a company it understood was assuming the indemnity obligation amounted to an acquiescence to a novation. (Def.'s Reply at 4-6).[6]

Second, PGIC alleges that the economic realities underlying the various transactions support novation. From the 2007 SPA to the 2021 liquidation of OBIC, SPARTA exclusively tendered AEIC insurance claims to OBIC, the guarantor under the 2007 SPA. (Def.'s SMF ¶ 104). According to PGIC, SPARTA understood that OBIC was providing its indemnification,

---

[6] PGIC also points to SPARTA internal emails that refer to OBIC as retaining liabilities but that do not mention PGIC. (Def.'s Mem. at 24-27).

not PGIC independently. (Def.'s Reply at 8-9). It contends that when PGIC transferred its assets to OBIC with the 2012 T&A, SPARTA maintained the same level of protection as it had before. *Id.*

Finally, PGIC contends that industry practices and principles support novation. (Def.'s Reply at 10-12). According to PGIC, it is widely known in the industry that clean shells are sold without assets or liabilities. (Def.'s Mem. at 30-31). It also contends that companies in different corporate families do not generally reinsure the same liabilities at the same time. (*Id.* at 30). As a sophisticated industry participant, SPARTA would have understood that PGIC's sale entailed a complete transfer of liabilities. (*Id.*). Its failure to object is thus evidence of its implied assent to release PGIC.

PGIC's arguments run afoul of basic principles of contract law. A "mere acquiescence to an assumption is not an assent to a novation." *Security Ben. Life Ins. Co. v. F.D.I.C.*, 804 F. Supp. 217, 227 (D. Kan. 1992); *see Tudor*, 292 Mass. at 341 (finding that a creditor's willingness to accommodate the substitute debtor did not release the original debtor). Thus, for example, in *Zurich American Insurance Co. v. Watts Regulator Co.*, the court found at summary judgment that plaintiff's failure to object when notified about the assumption of an insurance contract and then seeking payment from the substitute insurer did not affect a novation. 860 F. Supp. 2d 78, 89-90 (D. Mass. 2012). That conduct "hardly manifest[ed] plaintiff's] intention to abandon its contractual rights vis-a-vis [defendant]." *Id.* at 89. Likewise, to meet its burden, PGIC must show something more than SPARTA's acquiescence to OBIC assuming primary liability.

PGIC has not identified any case in which a party's failure to object or failure to modify its course of conduct, without more, constituted a novation. Instead, it relies on two cases involving reinsurance agreements.

In *Mississippi Casualty Insurance Co. v. General Reinsurance Corp.*, two insurance companies entered into an assumption reinsurance agreement that transferred the original insurance companies' liabilities to the substitute insurance company.  No. 2004-337, 2005 WL 6589741 (Miss. Ch. June 08, 2005).  The substitute insurance company sent certificates of assumption to policyholders explaining the assumption.  *Id.*  The policyholders then made payments to the substitute insurance company.  *Id.*  The court found that policyholders accepted the substitute insurance company and released the original insurance company from liability "by not canceling the insurance or voicing any concerns after they received the notices," because the "language [of the notice] was clear" and the policyholders were businessman not "ignorant of what these things mean."  *Id.*

Similarly, in *Epland v. Meade Insurance Agency Associates, Inc.*, an insurance policy was assumed by a substitute insurance company.  564 N.W.2d 203, 205 (Minn. 1997)  The substitute company sent notices to policyholders "telling them of the assumption, assuring them that their coverage remained the same, . . . instructing them to send their premium payments to [the substitute debtor][, and] . . . include[ing] a statement indicating that by sending payments to [the substitute debtor], the [creditors] would be consenting to release [the original debtor]."  *Id.*  The court found that the insured's subsequent payment to the substitute insurer constituted consent to novation and released the original insurer from liability.  *Id.* at 207-08.

In both *Mississippi* and *Epland*, the policyholders modified their subsequent conduct by tendering payment to the substitute insurance company.  Here, SPARTA tendered claims to OBIC prior to the 2012 T&A and 2012 SPA and continued to do so afterwards.  (Def.'s SMF ¶ 104).  Looking to OBIC for payment is thus not an analogous change of conduct indicating assent to novation.

14

More importantly, in both cases the insurance company provided the policyholder clear and direct notice of both the assumption agreement *and* the fact that the agreement would alter the policyholder's rights and remedies under the original contract. *See Mississippi*, No. 2004-337 ("The effect of this agreement on *you* is that Legion Insurance Company is now the insurer of your policy and is responsible for paying all claims due under your policy." (emphasis added)); *Epland*, 564 N.W.2d at 205 (including a statement that sending payments to the substitute insurer would be consent to release the original insurer). In both cases, the policyholders failed to object after receiving clear and direct notice that the assumption impacted their rights.

Even assuming that *Mississippi* and *Epland* provide the relevant standard, whatever notice SPARTA received of the 2012 transactions did not clearly or directly address how, if at all, PGIC's sale impacted its rights. PGIC has identified only one communication sent to SPARTA by PGIC, OBIC, or OBIG concerning the 2012 sale. As noted, in May 2013, a senior corporate officer at SPARTA reached out to OBIG's associate general counsel to "touch base" on the sale of OBIC, what was happening with PGIC, and the impact on SPARTA. (Def.'s SMF ¶ 82). The OBIG general counsel responded:

> Assuming all regulatory approvals are obtained, we expect to close in the second half of the year. Pennsylvania General was sold last fall. Pennsylvania General transferred to and OneBeacon Insurance Company assumed of all of Pennsylvania General's liabilities effective October 1, 2012. When the OneBeacon/Armour deal closes, the Transfer & Assumption Agreement will remain with OneBeacon. This should not have any impact on Sparta other than new contact information.

(*Id.* ¶ 83). The next day, SPARTA's corporate officer asked for a copy of the 2012 T&A "for our files" and OBIG's general counsel responded that she would look into it. (*Id.* ¶ 85-86). PGIC has provided no evidence that SPARTA actually received a copy of the 2012 T&A at any point prior to Bedivere's 2021 liquidation.

Without question, that exchange did not provide SPARTA clear notice that its rights and remedies had changed—or that a failure to object would imply consent to the complete release of PGIC from any liability.  The email exchange occurred eight months after PGIC's sale had closed.[7]  And the email did not even address the impact of PGIC's sale on SPARTA, much less suggest that PGIC considered its obligations to be extinguished.  Under the circumstances, SPARTA's failure to take further action is far from a manifestation of assent to a new contractual arrangement.

More fundamentally, PGIC's argument turns the concept of "assent" on its head.  If PGIC wanted SPARTA's assent to a novation, it could have simply asked for it.  It elected not to ask—presumably, because that assent would not have been forthcoming, or would have been given only for a price.[8]  Instead, PGIC remained silent.  And it now claims both that its own silence is irrelevant and that SPARTA's silence is dispositive—because by remaining silent, SPARTA acquiesced to a novation that extinguished a multimillion-dollar obligation.  In any event, under basic principles of contract law, mere acquiescence is not sufficient to create a novation.

PGIC's attempts to bolster its arguments based on economic realities and industry practices fare no better.  At most, it presents circumstantial evidence that SPARTA should have known that PGIC would have been sold as a shell without any outstanding liabilities.  It does not explain, however, how that knowledge would serve as an assent that extinguished its obligations to SPARTA.  And it has not presented any evidence that it is industry custom to effect a novation

---

[7] It is noteworthy that PGIC did not give notice to SPARTA of that sale; the email exchange was initiated by SPARTA.

[8] It is unclear what, if any, consideration or benefit SPARTA received from the novation.  Under the original contracts, PGIC was obligated to indemnify SPARTA, and that obligation was guaranteed by OBIC.  If those contracts were novated, SPARTA had only one company, not two, to look to for indemnification; it therefore incurred a detriment and it is unclear what, if any, benefit it received.  In any event, because neither side has raised the issue of consideration, the Court will not rest its decision on that basis.

through silence, nor has it cited any legal authority in support of such a proposition.  It must prove that SPARTA had a "clear and definite intent" to novate, and the proffered evidence of industry practice and customs does not come close to doing so.

In short, it was not SPARTA's burden to remind PGIC of its contractual obligations, and it was not required to attempt to derail the 2012 agreements to prevent a novation.  Nor is it now SPARTA's burden to prove that it intended to assent to a novation and release PGIC.  Instead, to survive summary judgment, it is PGIC's burden to show that a rational trier of fact could find that SPARTA clearly and definitely intended to release it from liability.  Because PGIC has failed to adduce evidence to meet that burden, summary judgment will be granted in SPARTA's favor on the issue of novation.

### 2.    Modification/Waiver

PGIC next contends that the parties modified or waived the 2005 T&A and 2007 SPA. (Def.'s Mem. at 36-38).  That argument fails for the same reason as novation.  The 2007 SPA contains a provision requiring that all modifications or waivers be made in writing.  (Pl.'s SMF ¶ 131).  It is true that such a provision, without more, is not dispositive.  "[I]t is well settled Massachusetts law that parties, through their words or conduct, may modify a contract despite a provision requiring modifications to be in writing." *Bachorz v. Miller-Forslund*, 703 F.3d 27, 33 (1st Cir. 2012).  Nonetheless, waiver inferred from a party's conduct must be "clear, decisive, and unequivocal." *Id.* (quoting *Glynn v. City of Gloucester,* 9 Mass. App. Ct. 454 (1980)).  That conduct must be "consistent with and indicative of an intent to relinquish voluntarily a particular right such that no other reasonable explanation of the conduct is possible." *Id.* at 32 (quoting *KACT, Inc. v. Rubin*, 62 Mass. App. Ct. 689, 695 (2004) (citation modified)).  For essentially the reasons set forth above, PGIC has failed to show that SPARTA clearly and unequivocally

intended to relinquish its rights, and summary judgment will not be granted in its favor on the issue of waiver.

### 3.    Laches

PGIC next contends that SPARTA's claims are barred by reason of laches.  Laches is an equitable defense "against a plaintiff whose unreasonable delay in bringing a claim results in some injury or prejudice to the defendant."  *West Broadway Task Force v. Bos. Hous. Auth.*, 414 Mass. 394, 400 (1993).  A defendant asserting laches must establish both unreasonable and prejudicial delay.  *See Melrose Fish & Game Club, Inc. v. Tennessee Gas Pipeline Co., LLC*, 89 Mass. App. Ct. 594, 602 (2016).

Under Massachusetts law, laches is generally not applicable for claims seeking purely legal relief.  *See Srebnick v. Lo-L. Transit Mgmt., Inc.*, 29 Mass. App. Ct. 45, 46 (1990) (citing *Cohen v. Bailly*, 266 Mass. 39, 48-49 (1929); *Bedford Heating & Air Conditioning Co. v. Milano*, 6 Mass. App. Ct. 898 (1978); Smith & Zobel, Rules Practice § 8.17 (1974)).  Some courts, however, have expressed hesitancy about whether or to what extent laches is available in actions at law.  *See Cranberry Commons, Ltd. v. Bimbo Bakeries USA, Inc*, 2012 WL 2914403, at *2 (D. Mass. July 18, 2012) (citing *DiPietro v. Sipex Corp.*, 69 Mass. App. Ct. 29, 40 (2007) (addressing estoppel)).[9]

The Court need not decide the issue, because PGIC has not presented sufficient evidence of laches to survive summary judgment.  Even assuming that SPARTA knew or should have known in 2013 that PGIC considered its liabilities extinguished by novation, at that point it had

---

[9] PGIC cites only to cases involving either equitable claims or applying the law of other jurisdictions. (Def.'s Reply at 29 n.20).  *See Marcucci v. Hardy*, 65 F.3d 986, 989 (1st Cir. 1995) (discussing a constructive trust claim and applying New Hampshire law); *Puerto Rican-Am. Ins. Co. v. Benjamin Shipping Co.*, 829 F.2d 281, 283 (1st Cir. 1987) (applying admiralty law); *Taydus v. Cisneros*, 902 F. Supp. 278, 288 (D. Mass. 1995) (discussing equitable relief such as adjustment of compensation dates).

no legal claim for damages to assert. Under the 2012 T&A, OBIC was the primary reinsurer for AEIC's liabilities and OBIC continued to cover these claims until its liquidation in 2021. (Def.'s SMF ¶¶ 52, 104). The evidence does not suggest that SPARTA ever considered that OBIC might not be able to cover its liabilities and thus it might have to look to PGIC for payment. Nor did SPARTA know that once it was presented with the AEIC claims, PGIC would decline to make indemnity payments, thus giving rise to a breach of contract action. In substance, PGIC is contending that SPARTA should have warned it that possible future events might give rise to future claims, and that its failure to do so amounts to laches. But the "wrong" SPARTA is seeking to rectify with this action did not occur until 2021, when PGIC declined to indemnify it. When that occurred, SPARTA brought this action without undue delay. Its claims are therefore not barred by laches.

### 4.    Implied Covenant of Good Faith and Fair Dealing

Finally, PGIC contends that SPARTA violated the implied covenant of good faith and fair dealing. A covenant of good faith and fair dealing is implied in every contract, and provides that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Speakman v. Allmerica Fin. Life Ins*., 367 F. Supp. 2d 122, 132 (D. Mass. 2005) (quoting *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471-72 (1991)). "[T]he purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." *UNO Rests., Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004).

To prevail on such a claim, the plaintiff must "present evidence of bad faith or an absence of good faith," *Young v. Wells Fargo Bank, N.A*., 717 F.3d 224, 238 (1st Cir. 2013), indicating that the defendant "unfairly leverag[ed] the contract terms for undue economic advantage," *Blake v. Pro. Coin Grading Serv*., 898 F. Supp. 2d 365, 389 (D. Mass. 2012). Breach of an

express term of the contract is not a prerequisite to finding a breach of the implied covenant.  *See Speakman*, 367 F. Supp. 2d at 132.  The essential inquiry is whether the challenged conduct "conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall spirit of the bargain, not whether the defendant abided by the letter of the contract in the course of performance."  *Id.*

PGIC contends that SPARTA breached the implied covenant of good faith and fair dealing by failing to communicate with it about its contractual obligations.  It points to the notice provisions in sections 8.1 and 8.3 as evidence that the 2007 SPA contemplated ongoing communications, and that SPARTA's silence frustrated its ability to realize the fruits of the contract; without that notice, it contends, it was not able to take remedial steps, such as obtaining reinsurance, that would enable it to perform its contractual obligations.  (Def.'s Reply at 22-24.).

The implied covenant protects the parties expectations at the time of contracting.  *See Lanza v. Fin. Indus. Regul. Auth.*, 953 F.3d 159, 164 (1st Cir. 2020) ("It is clear beyond hope of contradiction that the implied covenant of good faith and fair dealing 'does not create rights or duties beyond those the parties agreed to when they entered into the contract.'" (quoting *Bos. Med. Ctr. Corp. v. Sec'y of Exec. Office of Health & Human Servs.*, 463 Mass. 447 (2012)).  The 2007 SPA contemplated that SPARTA would pay PGIC $47 million, and that in return PGIC would assume certain obligations and indemnify SPARTA.  (Pl.'s SMF ¶ 87).  SPARTA's actions—or, more precisely, its inaction—did nothing to upset that basic agreement.

PGIC cites *Bay Colony* for the proposition that "reasonable expectations of a party may properly require additional action by a counterparty . . . when the parties learn circumstances have changed."  (Def.'s Reply at 23).  In *Bay Colony*, Yarmouth entered into a contract with Bay Colony Railroad Corporation to transport the town's solid waste.  *Bay Colony R.R. Corp. v.*

*Town of Yarmouth*, 470 Mass. 515, 516 (2015).  When the Commonwealth terminated Bay Colony's lease of the rail line, it could no longer transport the waste by rail.  *Id.*  The contract, however, included a clause that if its lease was terminated, Bay Colony would be permitted to continue to transport waste "by other modes of transporation."  *Id.*  Bay Colony notified Yarmouth that it intended to do so by truck.  *Id.*  Yarmouth instead decided to contract with the new leaseholder.  *Id.*  In defense to a suit for breach of contract, Yarmouth argued that trucking the waste would be in violation of its DEP operating permit.  *Id.* at 517.  The Supreme Judicial Court found that where the contract gave the company the right to transport by truck; the town's manual contained the prohibition on trucking; the town had originally written the provision; and the town could have applied for an exception, a jury could have found it violated the implied covenant to not apply for an exception.  *Id.* at 523-24.  The court thus concluded that the implied covenant was violated when the town itself had created and controlled the obstacle to an objective that was anticipated by the contract.

The circumstances here are quite different.  First, the contracts did not provide that PGIC's obligations could be transferred to another corporation, much less impose a continuing obligation on SPARTA to keep track of what that corporation was.  In fact, the 2007 SPA contained an express provision prohibiting assignments "without prior written consent of the other parties" (with the exception that SPARTA Holdings could assign any or all portions of the agreement to affiliates).  (Pl.'s SMF ¶ 132).  And perhaps most importantly, SPARTA did not control any obstacle that prevented PGIC from realizing the fruits of its bargain.

Put simply, PGIC's injuries are self-inflicted.  PGIC and OBIC, not SPARTA, took actions that undercut (or attempted to undercut) the original contractual arrangements.  PGIC transferred its assets to OBIC without seeking or obtaining SPARTA's assent (or retaining

sufficient assets or reinsurance to cover any future obligations). SPARTA was not a party to the 2012 Agreements and its mere inaction once it learned of them cannot be deemed to constitute bad faith. Under the circumstances, SPARTA did not breach the implied covenant of good faith and fair dealing, and summary judgment will not be entered against it on that ground.

***

In summary, PGIC's obligations under the 2005 T&A and 2007 SPA have not been novated, waived, modified, or barred by laches or the implied covenant of good faith and fair dealing, and the contracts remain enforceable against PGIC. The Court will therefore grant summary judgment in SPARTA's favor on Counts 1 and 2 for declaratory relief, and deny summary judgment in PGIC's favor.

### B.    Breach of Contract (Counts 3 and 4)

SPARTA also seeks summary judgment against PGIC for breach of contract. To prevail on a claim for breach of contract under Massachusetts law, a plaintiff must "show the existence of a valid and binding contract, that the defendant breached the contract's terms, and that the plaintiff suffered damages as a result of that breach." *Scholz v. Goudreau*, 901 F.3d 37, 43 (1st Cir. 2018).

Again, the 2005 T&A and 2007 SPA are valid contracts enforceable against PGIC. Under the plain meaning of those contracts, PGIC has assumed and indemnified liabilities arising from AEIC prior to closing. And it has now declined to "to accept any AEIC claim files for handling [under the belief that it] has no liability for any AEIC claims." (Pl. SMF ¶ 342).

The parties contest whether SPARTA can recover for any damages suffered as a result of any breach. Specifically, they dispute whether the procedural requirements in sections 8.1 and section 8.3 of the 2007 SPA either bar recovery entirely—or, alternatively, limit SPARTA's damages as a matter of law.

Whether damages may be awarded is a question of contract interpretation. "Contract interpretation questions, under Massachusetts law, are ordinarily questions of law for a court." *Nadherny v. Roseland Prop. Co.*, Inc., 390 F.3d 44, 48 (1st Cir. 2004). In interpreting a contract, a court seeks to give "effect to the parties' intentions and construe the language to give it reasonable meaning wherever possible." *Shea v. Bay State Gas Co.*, 383 Mass. 218, 224-25 (1981). In addition, a court "construe[s] a contract as a whole, so as to give reasonable effect to each of its provisions." *James B. Nutter & Co. v. Estate of Murphy*, 478 Mass. 664, 669 (2018) (citation modified). A court must interpret it in accordance with its ordinary and plain meaning. *See Balles v. Babcock Power Inc.*, 476 Mass. 565, 571, 70 (2017).

### 1.    Damages Under the 2005 T&A

SPARTA first contends that it may recover directly under the 2005 T&A without complying with the procedural provisions of the 2007 SPA. (Pl.'s Opp'n at 31-34). In the 2005 T&A, PGIC "assume[d] as 100% reinsurance" AEIC's retained business. (Pl.'s SMF ¶ 29). The agreement requires PGIC to directly administer and pay policyholder claims arising from that retained business. (*Id.* ¶¶ 31). SPARTA alleges that PGIC breached the 2005 T&A by refusing to administer AEIC claims. (Pl.'s Opp'n at 34). PGIC responds that the procedures laid out in sections 8.1 and 8.3 of the 2007 SPA "govern all claims for reimbursement that might arise between the parties," and that SPARTA can therefore only recover under the 2005 T&A if it follows those requirements. (*Id.* at 25).

Interpreting the relationship between the 2005 T&A and 2007 SPA requires an understanding of the relationship of the parties as they stood in 2007, not as they stand now in 2025. At that time, SPARTA Insurance Company did not exist. Rather, in the 2007 SPA, SPARTA Holdings purchased AEIC from PGIC. (Pl.'s SMF ¶ 2). AEIC was then renamed SPARTA Insurance Company. (*Id.* ¶ 3). Eight years later, in 2015, SPARTA Insurance

Company merged with SPARTA Holdings. (*Id.* ¶ 3). Two separate companies, with separate rights and obligations, thus became one. In this lawsuit, SPARTA Insurance Company stands in the shoes of both SPARTA Holdings, the purchaser in the 2007 SPA, and AEIC, the purchased company. It seeks to directly enforce not only the contractual rights of SPARTA Holdings but also those of AEIC.

Turning back to the contracts, it is clear that the 2007 SPA did not restrict AEIC's right to enforce its own claims against PGIC under the 2005 T&A. First, the 2007 SPA is between PGIC, OBIC, and SPARTA Holdings. (Pl.'s SMF ¶¶ 64-82). AEIC is not a party, which certainly casts doubt on how the contract could bind it to the procedures in sections 8.1 and 8.3.

Second, the 2007 SPA expressly reaffirms that the 2005 T&A "does, and will at Closing, constitute a legal, valid and binding obligation of each of [PGIC] and [AEIC], enforceable against each of [PGIC] and [AEIC], respectively, in accordance with its terms." (*Id.* ¶ 100). Read plainly, that provision suggests AEIC can enforce its rights under the 2005 T&A in accordance with the terms of the 2005 T&A. Indeed, interpreting AEIC's rights under the 2005 T&A to be limited by the terms of the 2007 T&A is directly inconsistent with that language. Furthermore, the 2007 SPA includes the condition precedent to closing that "[t]he [2005 T&A] shall be in full force and effect." (*Id.* ¶ 114-15). That language likewise reinforces that interpretation. *See Sevelitte v. Guardian Life Ins. Co. of Am.*, 55 F.4th 71, 83 (1st Cir. 2022) ("The phrase 'full force and effect' commonly is used in contracts to specify that no changes may be made to the referenced document.").

Third, section 8.1 of the 2007 SPA confers rights on SPARTA Holdings and designates procedures for enforcing those rights. It does not discuss AEIC's ability to enforce its own preexisting rights. In that section, PGIC agreed to indemnify SPARTA Holdings for "the failure

24

by [PGIC] to perform any of its obligations under the [2005 T&A]," among others.  (Pl.'s SMF ¶ 117).  That language presupposes that PGIC has independent obligations to AEIC.  Once PGIC has "fail[ed]" to meet its 2005 T&A obligations to AEIC, SPARTA Holdings may seek indemnification for any losses incurred by itself or by AEIC.  Under section 8.3, if there is a disagreement over the indemnification amount, SPARTA Holdings may bring suit "on behalf of itself" or AEIC.  (*Id.*).  In all, those provisions confer on SPARTA Holdings the right to enforce, through indemnification, the 2005 T&A.  But conferring a right on SPARTA Holdings does not strip AEIC's ability to enforce the 2005 T&A on its behalf.

Now, after SPARTA Holdings and AEIC have merged, the distinction between AEIC's direct enforcement of rights and PGIC's enforcement of rights "on behalf of AEIC" through indemnification has perhaps blurred.  But SPARTA Holdings and AEIC operated as separate companies for eight years following the 2007 SPA.  While SPARTA Holdings is *now* the successor-in-interest to AEIC, from 2007 to 2015 it was a parent company with its own legal rights and obligations.  The 2007 SPA's procedures governing SPARTA Holdings cannot therefore be read as procedures governing the rights of AEIC, a distinct corporate entity.

Finally, PGIC's reading would substantively change the nature of its obligations under the 2005 T&A.  In the 2005 T&A, PGIC assumed "100% reinsurance" for AEIC's retained businesses.  Under the agreement, PGIC "shall, at its sole expense, perform any and all administrative functions for such Retained Business, including without limitation claims handling, underwriting, and regulatory functions, and shall reimburse [AEIC] for any and all out of pocket expenses related thereto."  (Pl.'s SMF ¶ 31).  PGIC therefore has a contractual obligation to perform administrative functions.  In the 2007 SPA, by contrast, SPARTA Holdings is required to provide notice to PGIC for claims for which it is seeking indemnification.

PGIC then has the option of whether to assume the defense itself or allow SPARTA Holdings to settle the claim and subsequently seek indemnification for the cost. (*Id.* ¶ 121). If AEIC were bound by the section 8.1 procedures, then PGIC would no longer have an enforceable duty to administer claims. Rather, it could simply elect whether to do so. It is implausible that the parties intended to effect such a substantive change through the procedural notice provisions of section 8.1.

Thus, SPARTA, the successor by merger to AEIC, may directly enforce the rights of AEIC under the 2005 T&A against PGIC without following the 2007 SPA procedures. That, in turn, raises the question of what damages are recoverable.

SPARTA contends that PGIC's breach of its duty to administer entitles it to more than $75 million in damages incurred in payments to AEIC claimants and related administrative costs. (Pl.'s Opp'n at 41-42). As evidence, it submits the spreadsheets that were attached to its section 8.3 indemnification notices. According to SPARTA, those spreadsheets "contain information maintained in the ordinary course of business regarding (i) claim payments made by or on SPARTA's behalf with respect of AEIC Claims, and (ii) services fees that SPARTA paid to a third-party administrator." (Pl.'s Stmt. Additional Mat. Facts ("Pl.'s SAMF") ¶ 89, Dkt. No. 211). It contends that it is entitled to summary judgment on that amount because "PGIC has not identified any claim- or payment-specific disputes" and "blanket denial[s]" do not create a genuine issue of material fact as to damages. (Pl.'s Mem. Supp. Mot. Summ. J. ["Pl.'s Mem."] at 28, Dkt. No. 184 (quoting *R & T Roofing Contractor, Corp. v. Fusco Corp.*, 265 F. Supp. 3d 145, 158 (D.P.R. 2017))).

PGIC does not directly address the measure of damages under the 2005 T&A.[10] Nonetheless, its response is more than a blanket denial.  It contends that the section 8.3 spreadsheets "fail to provide even the barest level of detail explaining what the expense was for" or "the underlying policy at any step or any documentation of the expense."  (Def.'s Mem. at 43-44).

Notably, the duty to administer under the 2005 T&A is narrower than the indemnification provision of the 2007 SPA.  In the 2005 T&A, PGIC assumed the duty to administer AEIC's retained business and reimburse any related expenses.  In the 2007 SPA, PGIC agreed to indemnify SPARTA Holdings not only for PGIC's failure to perform obligations under the 2005 T&A but also "any Loss arising out of or resulting from the existence of [AEIC] prior to the Closing."  The section 8.3 spreadsheets were created with the 2007 SPA's catch-all indemnification provision in mind.  PGIC therefore refers generally to "AEIC claims" and does not provide documentation that those claims relate to AEIC's retained business prior to the execution of the 2005 T&A.  That may very well turn out to be true, but SPARTA has not established that fact, at least on this record.  The Court therefore concludes that there is a genuine issue of material fact as to whether the claimed expenses were incurred as a result of PGIC's breach of the 2005 T&A.  Because SPARTA has not conclusively established its damages for PGIC's breach of the 2005 T&A, summary judgment will be denied as to Count 3.

## 2.    Damages Under the 2007 SPA

SPARTA, at the successor-in-interest to SPARTA Holdings, has the right to seek indemnification from PGIC under the 2007 SPA.  PGIC contends that section 8.1 and section 8.3

---

[10] As PGIC notes, "the primary dispute is over whether the obligations continue to bind PGIC and whether SPARTA has complied with §§ 8.1 and 8.3."  (Def.'s Reply at 3 n.2).

notices are conditions precedent for indemnification. (Def.'s Mem. at 41-48). First, it alleges

that SPARTA failed to comply with section 8.1 notices for most of its claims. (*Id.* at 42).

Second, it asserts that SPARTA did not meet section 8.3's requirement for "reasonable detail."

(*Id.* at 45-46).

> Section 8.1 lays out procedures for notifying PGIC about claims. It states:
>
> [SPARTA Holdings] shall give [PGIC] written notice by certified or registered mail or overnight courier of any Claim with respect to which [SPARTA Holdings] seeks indemnification. [PGIC] shall have ten business days from the date of receipt of such notice to notify [SPARTA Holdings] that [PGIC] will assume the entire control of the defense, compromise or settlement . . . and at its own expense. If [PGIC] Seller shall assume such Defense, it shall promptly advise [SPARTA Holdings] of its activities and efforts in connection therewith and of the ultimate resolution of such Claim. Seller shall have the right to settle, compromise or adjust any such Claim . . . . In such event, [SPARTA] shall be fully entitled to indemnification hereunder.

(Def.'s SMF ¶ 144).

SPARTA contends that the section 8.1 notice requirement is not a condition precedent

because "shall" is not an "emphatic word" that courts look for as establishing condition

precedents. (Pl.'s Opp'n at 34 (quoting *Massachusetts Mun. Wholesale Elec. Co. v. Town of*

*Danvers*, 411 Mass. 39, 46 (1991)). It also points to other sections of the 2007 SPA that use

unequivocal language to create conditions precedents. (*Id.* at 35 (citing Pl.'s SAMF ¶¶ 51-54)).

That argument overlooks the rights-creating language in section 8.1. *See Massachusetts*

*Mun. Wholesale Elec. Co.*, 411 Mass. at 46 ("[E]mphatic or precise words are not absolutely

necessary to create a condition. . . . In the absence of the usual words, a condition precedent may

nonetheless be found to exist if the intent of the parties to create one is clearly manifested in the

contract as a whole."). Section 8.1 gives PGIC "the right to settle, compromise or adjust" any of

SPARTA's covered losses. (Def.'s SMF ¶ 144). That right would be meaningless if SPARTA

could skip section 8.1 notice, settle the claim itself, then seek full indemnification. PGIC cannot

exercise its right without prior notice.  Section 8.1 also *does* contain emphatic language that limits SPARTA's right to settle claims itself.  ("*If* [PGIC] fails to notify [SPARTA] . . . [SPARTA] may . . . compromise or settle such Claim . . . .  *In such event*, [SPARTA] shall be fully entitled to indemnification hereunder."  (*Id.* (emphases added)).  Section 8.1 notice must be a condition precedent for those rights and limitations to have force.

The inclusion of conditions precedent in other sections of the 2007 SPA does not require a different reading.  Article 6 and Article 7 contain "Conditions Precedent to Obligation of [SPARTA and PGIC] to Close."  (Clark Decl. Ex. 2, Dkt. No. 182).  While the inclusion of conditions precedents in those sections tends to imply their exclusion in others, attention must be paid to context and placement.  *See Owens v. City of Malden*, 85 F.4th 625, 632 (1st Cir. 2023) ("[T]he canon expressio unius est exclusio alterius does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an associated group or series, justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." (citation modified) (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003)).  Articles 6 and 7 list conditions precedent for closing.  Section 8.1 notice concerns indemnification claims after closing.  The 2007 SPA, moreover, does not name any "condition precedent" outside of Articles 6 and 7.  The placement of conditions precedent in Articles 6 and 7 therefore does not overcome the plain language and purpose of section 8.1.

The parties also dispute whether SPARTA has complied with section 8.1.  For purposes of summary judgment, the Court need not decide as to each specific notice whether SPARTA has fulfilled the requirements of section 8.1.  PGIC acknowledges that at least some of the section 8.1 notices may be compliant.  (Def.'s Mem. at 41).  Assuming so, with the condition precedent met, the next question is whether any of SPARTA's section 8.3 demands for indemnification are

enforceable as a matter of law based on the current evidentiary record. Because the Court finds that they are not, the validity of the section 8.1 notices is not dispositive at this stage.

Section 8.3 concerns the "[v]aluation of [c]laims." (Def.'s SMF ¶ 177). It requires that SPARTA provide PGIC written notice of indemnification demands with "reasonable detail information explaining calculation of the amount." (*Id.*). PGIC then has thirty days to respond. (*Id.*). If it does not, the amount "provided in such written notice shall conclusively be deemed to have been accepted." (*Id.*). PGIC failed to timely respond to a notice delivered on November 8, 2022. (Pl.'s SMF ¶¶ 406-15). SPARTA contends it is entitled to at least the $12 million amount demanded in that notice because it has been "conclusively accepted" through PGIC's silence. (P.'s Mem. at 29).

The parties dispute what constitutes "reasonable detail." "The meaning of an unambiguous contract term is a question of law, while the meaning of an ambiguous contract term is a question of fact." *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 783 (1st Cir. 2011). Under Massachusetts law, a contract term is ambiguous "where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken." *Minturn v. Monrad*, 64 F.4th 9, 14 (1st Cir. 2023) (citation modified). Having determined that section 8.1 notices are a condition precedent to section 8.3 demands, "reasonable detail" must include some way to associate the requested amount with a prior section 8.1 notice. SPARTA contends that PGIC could have easily obtained that information by asking the third-party administrator that generated the data. (Pl.'s Opp'n at 40-41). A reasonable person could interpret "reasonable detail" as sufficient information for the party receiving the notice to conduct its own investigation. A reasonable person could also interpret "reasonable detail" as all material information. In any event, the term is ambiguous. What constitutes reasonable detail

for section 8.3 indemnification requests is therefore a question of fact for the factfinder, and damages under the 2007 SPA cannot be determined as a matter of law.

For that reason, SPARTA's motion for summary judgment with respect to Count 4 will be denied.

## IV.    <u>Conclusion</u>

For the foregoing reasons, defendant's motion for summary judgment is DENIED.  The plaintiff's motion for summary judgment is GRANTED as to Counts 1 and 2 and DENIED as to Counts 3 and 4.


**So Ordered.**

                                                          /s/ F. Dennis Saylor IV
                                                          F. Dennis Saylor IV
Dated:  September 30, 2025              United States District Judge